Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams. PLLC
Attorney for Plaintiffs
2 Penn Plaza. Suite 1910
New York, New York 10121
(212)292-5663

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                    :

MALIK M. HASAN and SEEME G. HASAN,  :

              Plaintiffs,        :

     v.                  : 08-cv-_3189 (GBD)

                                   :

AMERICAN ARBITRATION ASSOCIATION,  :
INC.,                                  :

             Defendant.     :

-------------------------------------------------------------X

## VERIFIED COMPLAINT

          Plaintiffs, Malik M. Hasan, M.D. and Seeme G. Hasan (collectively

referred to as the "Hasans"), through their undersigned counsel, Law Office of Daniel L.

Abrams PLLC and G.W. MERRICK & ASSOCIATES, LLC, for their Verified

Complaint (the "Complaint") against Defendant, American Arbitration Association, Inc.

("AAA"), allege as follows:

### I.    Preliminary Statement

          The Hasans bring this action seeking to specifically enforce (via

declaratory, injunctive and other relief described herein) the representations, promises,

commitments and assurances extended to them as arbitration clients of the AAA.  In particular, the AAA represented, promised, committed and assured the Hasans -- in writing and as an integral part of that to which the AAA is contractually bound  -- that disputes submitted to AAA-sponsored arbitration would be determined only by arbitrators who have made full, fair and timely disclosures consonant with: (i) the governing ethical code, (ii) the AAA's commitments to clients set forth on its website, and (iii) the sworn affirmations by AAA arbitration panel members.    Specific enforcement of the representations, promises, commitments and assurances published by the AAA is essential to insuring the fair and just application of the Federal Arbitration Act, 9 U.S.C. §§1 *et seq.*, which presumes that the parties will participate in the arbitrator selection process based upon being furnished with full, fair and timely information.

## II.    Parties, Jurisdiction and Venue

1.    Malik M. Hasan, M.D. ("M. Hasan") is an individual over the age of twenty-one (21) years who at all times material to this Complaint has been a citizen and domiciliary of the State of Nevada.  Dr. Hasan is Pakistani immigrant and a committed and faithful follower of Islam.  At all times material to this Complaint, Dr. Hasan has been the husband of Seeme G. Hasan.

2.    Seeme G. Hasan is an individual over the age of twenty-one (21) years who at all times material to this Complaint has been a citizen and domiciliary of the State of Nevada.  Ms. Hasan is a Pakistani immigrant and a committed and faithful follower of Islam.  At all times material to this Complaint, Ms. Hasan has been the wife of Dr. Hasan.

3.      The AAA is a New York not-for-profit corporation which maintains its headquarters and principal place of business in New York City, State of New York.   The AAA is engaged in providing to its users and clients conflict management and resolution services, including arbitration services.   This case involves the AAA's arbitration services of which the Hasans are clients.

4.      This Court possesses subject matter jurisdiction to adjudicate the claims for relief set forth herein under the provisions of 28 U.S.C. §1331, as they arise under the laws of the United States, and 28 U.S.C. §1332(a), as this is a case between citizens of different states and the matter in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5.      Venue is proper in this judicial district under the provisions of 28 U.S.C. §1391(b) as the AAA is a resident of this judicial district.

### III.     Background Allegations

6.      The Hasans incorporate by reference the Preliminary Statement and each of the allegations set forth in Paragraphs 1-5 of this Complaint as if set forth in full here.

7.      As a result of disputes arising out of the solicitation of and investment by the Hasans in two Exchange Funds promoted, sponsored, constructed and managed by Goldman Sachs & Co. and certain of its affiliates (including Goldman Sachs 1998 Exchange Place Fund, L.P., Goldman Sachs 1999 Exchange Place Fund, L.P., Goldman Sachs Management Partners, L.P., Goldman Sachs Management, Inc. and The Goldman Sachs Group, Inc.) suit was initiated by the Hasans in 2004 in the federal district court in Denver. *Hasan, et al.  v. Goldman Sachs 1998 Exchange Place Fund,*

3

*L.P., et al.,* Civil Action No. 04-MK-1225, United States District Court, District of Colorado.

8.    The federal and state law claims identified in the Hasans' Complaint target Goldman Sachs' solicitation of the Hasans, and the Hasans' subsequent investment of approximately $8 million in two Goldman Sachs Exchange Funds.    As a consequence of their investments in the Exchange Funds, the Hasans seek recovery of many millions of dollars.    Should the Hasans' allegations be sustained, Goldman Sachs may face many hundreds of millions of dollars in exposure from other innocent investors in these Exchange Funds.

9.    Upon motion filed by the Goldman Sachs Defendants in the federal court action in Denver, the federal judge presiding over that action determined that under the Federal Arbitration Act, 9 U.S.C. §§1 *et seq.*, the Hasans are bound by one or more instruments requiring resolution of their claims in AAA-sponsored arbitration in New York City.    Accordingly, the federal judge in Denver transferred the case to the United States District Court for the Southern District of New York for purposes of enforcing the arbitration determination.

10.    Upon transfer to the United States District Court for the Southern District of New York, Judge Naomi Buchwald entered an Order on May 3, 2006 compelling binding arbitration. *Hasan, et al. v. Goldman Sachs 1998 Exchange Place Fund, L.P., et al.,* Case Nos. 05 Civ 10508 (NRB) and 05 Civ 10509 (NRB), United States District Court, Southern District of New York.

11.    As a result of Judge Buchwald's Order, the litigation that had been transferred from Denver was thereafter consolidated into an AAA-arbitration proceeding

4

that had been commenced, and was being prosecuted, in New York City. *Hasan, et al. v. Goldman Sachs 1998 Exchange Place Fund, L.P., et al.,* AAA Arbitration Case No. 13 168 01990 04 (New York City) (the "New York Arbitration").

12. From and after that time, the claims that were initially brought in the federal district court in Denver have been prosecuted by the Hasans in the New York Arbitration. The Hasans have incurred to the AAA substantial fees, in an aggregate amount greater than Seventy Five Thousand Dollars ($75,000.00), for the AAA's services in connection with the New York Arbitration.

## IV. The AAA's Promises, Assurances and Commitments Respecting Disclosure

13. The AAA was founded in 1925 following enactment of the Federal Arbitration Act, with the specific goal of helping to implement arbitration as an out-of-court solution to resolving disputes. The AAA is now the nation's largest full-service alternative dispute resolution (ADR) provider..

14. The AAA website ("About Us" page) informs that "[t]he AAA role in the dispute resolution process is to administer cases, from filing to closing." http://www.adr.org/about. It states that the "AAA's ... administrative services include assisting in the appointment of ... arbitrators." *Id.* Finally, the AAA website ("About American Arbitration Association" page) declares that "[o]nce a case is filed, parties may select from the AAA's National Roster of *over 8,000* impartial experts, or "neutrals," to hear and resolve their cases." http://www.adr.org/about_aaa. (Emphasis supplied).

15. The AAA website repeatedly affirms and emphasizes to users and clients of AAA arbitration services (including the Hasans) the dedication and

5

commitment of the AAA to ethics and integrity -- particularly with respect to the persons who serve as AAA arbitrators. For example:

A.    The AAA website ("AAA Mission and Principles" page) declares that the AAA's mission statement and vision statement are based upon three core values; one of the three is "integrity." http://www.adr.org/aaa_mission. That webpage commits and assures AAA clients that the "AAA has long *held* its … arbitrators to *strict* codes of ethics and model standards of conduct to ensure fairness and impartiality in conflict management." *Id.* (Emphasis supplied).

B.    In its "Statement of Ethical Principles for the American Arbitration Association, an ADR Provider Organization," the AAA proclaims its "Foundation of Integrity." The clients of the AAA arbitration services are guaranteed that one of the cornerstones of the AAA's "foundation of integrity" is that "[a]rbitrators that serve on AAA panels are <u>bound</u> by the Code of Ethics for Arbitrators in Commercial Disputes." http://www.adr.org/sp.asp?id=22036. (Emphasis supplied).

C.    The AAA website ("Arbitration and Mediation" page) affirms that the conduct of AAA arbitrators "is guided by the [AAA's] Code of Ethics." http://www.adr.org/arb_med.

D.    The AAA website also contains a "NEUTRALS eCenter" site ("Qualification Criteria for Admittance to the AAA National Roster of Arbitrators and Mediators") that commits and assures clients that one of the critical qualifications of AAA arbitrators is dedication "to <u>upholding</u> the AAA Code of Ethics for Arbitrators." http://www.adr.org/si.asp?id=4223. (Emphasis supplied).

16.    In furtherance of its representations, promises, commitments and assurances to its arbitration clients and potential clients, the AAA has adopted the

6

"Code of Ethics for Arbitrators in Commercial Disputes Effective March 1, 2004" (the "Ethical Code"). In its Preamble, the Ethical Code instructs that it "sets forth generally accepted standards of ethical conduct" for AAA arbitrators.

          A.     Canon II.A.(1) of the Ethical Code requires disclosure by AAA arbitrators of direct and *indirect* interests in the outcome of the arbitration.

          B.     Canon II.A.(2) of the Ethical Code requires AAA arbitrators to disclose present and past financial, business or professional relationships "that might reasonably affect impartiality or lack of independence *in the eyes of any of the parties*." (Emphasis supplied). And, Canon II.D. of the Ethical Code instructs AAA arbitrators that "*any doubt* as to whether disclosure is to be made or not should be resolved in favor of disclosure." (Emphasis supplied).

          C.     Finally, Canon II.C. of the Ethical Code dictates that the duty to disclose by AAA arbitrators is a continuing one that applies throughout all phases of the arbitration.

          17.     Further underscoring the AAA's assurance of full disclosure by arbitrators to arbitration clients is the "Notice of Appointment" form used by the AAA to appoint the members of its arbitration panels. This form, executed by each of the proposed arbitrators in the New York Arbitration, was distributed by the AAA to the Hasans. The "Notice of Appointment" form expressly -- and conspicuously -- requires that the proposed AAA arbitrators disclose "*any past or present relationship* with the parties ... *direct or indirect, whether financial, professional ... or of any other kind*." That form goes on to instruct that "*any doubts* should be resolved in favor of disclosure." (Emphasis supplied).

18.    Additionally, the "NEUTRALS eCenter" location of the AAA website underscores the AAA's commitment of broad and comprehensive disclosure to the parties.  Under "Disclosure and Challenge of an Arbitrator," the following imperative is set forth:

> Q:    Are there any general principals regarding disclosures?
> A:    Yes. They are as follows:
> 1.    Every disclosure, *no matter how insignificant*, should be communicated to the parties …

http://www.adr.org/si.asp?id=2521.  (Emphasis supplied).

19.    Finally, the AAA website contains an "Education" corner -- where the AAA Online Library is located.  One of the sections of the library is "Commercial Finance," and one of the two AAA publications in that section is "Resolving Commercial Financial Disputes – a Practical Guide."    http://www.adr.org/sp.asp?id=34090.    That AAA publication underscores (at page 5) that AAA arbitrators "must disclose *any relationship* with the parties, their attorneys or others involved in the case."  (Emphasis supplied).

## V.    Appointment of the New York Arbitration Panel

20.    The AAA proposed potential arbitrators for the 3-person arbitration panel that would preside over the New York Arbitration.  Eventually, the AAA administratively appointed a panel of three (3) practicing lawyers from the East Coast.

A.    William L.D. Barrett (of New York City), a former member of the AAA Board of Directors and of the AAA Executive Committee, was administratively appointed.  At the time of his appointment Mr. Barrett disclosed that Goldman Sachs was one of the underwriters for municipal bonds issued by one of his law firm's clients

8

(which issued bonds for institutions such as the Museum of Modern Art). The Hasans timely registered their objection to the retention of Mr. Barrett on the panel, but that objection was overruled by the AAA. Mr. Barrett was subsequently selected as the arbitration panel Chair. In the Notice of Appointment Form that he executed and dated March 18, 2005, a copy of which is attached as Exhibit A, Mr. Barrett affirmed, under oath, that he understands that as an AAA arbitrator he is governed by the Ethical Code (including his sworn duty to make full, fair and timely disclosures).

B. Ronald Case Sharp (of Bridgeport, Connecticut) was administratively appointed. He affirmatively stated on his Notice of Appointment form, a copy of which is attached as Exhibit B, that he had no disclosures to make in connection with the New York Arbitration. In the Notice of Appointment form that he executed and dated March 29, 2005, Mr. Sharp affirmed, under oath, that he understands that as an AAA arbitrator he is governed by the Ethical Code (including his sworn duty to make full, fair and timely disclosures).

C. Richard L. Mattiaccio (of New York City) was administratively appointed. He affirmatively indicated on his Notice of Appointment form, a copy of which is attached as Exhibit C. In the Notice of Appointment form that he executed and dated May 13, 2005, Mr. Mattiaccio affirmed, under oath, that he understands that as an AAA arbitrator he is governed by the Ethical Code (including his sworn duty to make full, fair and timely disclosures).

21. The AAA has been paid substantial monies (more than $75,000.00) by the Hasans for the services of these three persons as arbitrators in respect of the New York Arbitration.

9

**VI.    The Hasans' Efforts to Enforce the AAA's Disclosure Commitments**

22.    On or about April 27, 2007, Mr. Barrett advised the parties in writing that his then law firm (Hollyer, Brady, Barrett and Hines, LLP) would the following month be acquired by Butzel Long P.C.  In connection with that acquisition, Mr. Barrett disclosed that "Butzel Long has performed real estate work for Goldman Sachs Europe Limited." (Emphasis supplied).

23.    On or about May 29, 2007, Mr. Mattaccio advised the parties in writing that he was leaving his current law firm, Pavia & Harcourt, LLP for the New York City branch of Squire Sanders & Dempsey, LLP.  Mr. Mattaccio made no further disclosures in connection with that move.

24.    On or about October 9, 2007, following a series of material and prejudicial procedural rulings, the Hasans' counsel received an e-mail authored by Mr. Barrett which very disturbingly suggested a pro-Jewish bias.  More particularly, in addressing a non-emergency motion which happened to be lodged with the panel by the Hasans on Yom Kippur -- which merely sought a brief extension of time, and which did not seek any expedited attention or treatment -- Mr. Barrett wrote, "*a New York panel* would not consider it seemly to give cognizance to papers served on *the holy day*, and the same will not be reviewed until the next business day."[1]

---

[1]    As Pakistani immigrants, and as committed and faithful followers of Islam, the Hasans have experienced grave concern respecting whether they will be able to have their claims against Goldman Sachs fairly determined by a panel of impartial arbitrators in New York City.  They are mindful that it is widely reported that those responsible for the horrific September 11, 2001 attack on New York City are Islamic extremists, directed by Osama Bin Laden.  It is also frequently reported that these persons are said to be extended sanctuary in a mountainous region of Pakistan bordering Afghanistan.  The instruments providing for arbitration in New York City all antedate the hideous sneak attack on New York City.

25.    While Yom Kippur is a sacred time for the followers of Judaism, it is not regarded as "the holy day" to the followers of Islam. To the followers of Islam, Ramadan (the period during which the Quran was revealed) is most holy. The disturbing phrasing of Mr. Barrett's September 22 e-mail communicates a subtle (or perhaps not-so-subtle) undercurrent of anti-Islamic bias among one or more members of a "New York panel." Accentuating the Hasans' concern was that a few weeks earlier Mr. Barrett had granted a Goldman Sachs extension request (which arrived during Ramadan) without affording the Hasans any opportunity to be heard.

26.    Shortly thereafter, the Hasans filed a Verified Motion with the AAA seeking to remove Messrs. Barrett and Mattaccio as arbitrators in the New York Arbitration. The Hasans' Verified Motion emphasized actual bias, the appearance of partiality and deficiencies in the disclosures by Messrs. Barrett and Mattiaccio.

27.    After being made aware of the filing of the Hasans' Verified Motion seeking to remove him from the New York Arbitration panel, on October 11, 2007, Mr. Mattaccio issued a supplemental disclosure. In his supplemental disclosure Mr. Mattiaccio revealed for the first time that "one or more Goldman Sachs-related entities are clients of [Squires, Sanders & Dempsey, LLP]." At no time prior to October 11, 2007 had Mr. Mattaccio disclosed this critical information.

28.    On October 31, 2007, under pressure from the Hasans' Verified Motion filed earlier in the month, the AAA removed Mr. Mattaccio as a panel member in the New York Arbitration. In that same order, the AAA reaffirmed Mr. Barrett as a member of the arbitration panel.

11

29.    Following the removal of Mr. Mattiaccio, the Hasans moved the AAA to require Mr. Mattiaccio to refund the monies that had been paid to him for his services on the New York Arbitration panel.    The Hasans reasoned that: (a) Mr. Mattiaccio had materially breached his disclosure obligations, (b) his defalcations had seriously compromised the integrity of the New York Arbitration proceedings, and (c) the Hasans had obtained no benefit as a result of Mr. Mattiaccio's services.    Despite the Hasans' urgings, the AAA has not reported that it has secured a refund of the monies paid to Mr. Mattiaccio.

30.    Following the startling disclosure by Mr. Mattiaccio, the Hasans began an investigation for undisclosed relationships/connections involving Goldman Sachs and the other panel members and/or their law firms.    Since the Hasans do not have access to these law firms' conflicts check systems, their investigation has, of necessity, been limited to that which can be learned via internet searches using online search engines.

31.    As a result of their online research, the Hasans discovered that the law    firms    in    which    Messrs.    Sharp    and    Barrett    have    long    been partners/shareholders/members have enjoyed and profited from several *undisclosed* relationships with and/or connections to Goldman Sachs & Co. and/or its affiliates.    The Hasans    promptly    notified    the    AAA,    in    writing,    of    the    undisclosed relationships/connections, and sought the removal of Messrs. Sharp and Barrett.

A.    In the case of Mr. Sharp, the Hasans' research revealed -- and they promptly reported to the AAA -- that his law firm (Pullman & Comley, LLC), had within the past several years been engaged to represent directly Goldman Sachs & Co. and other

underwriters in respect of the issuance by the State of Connecticut of hundreds of millions of dollars of investment bonds. The Hasans also learned and reported that Pullman & Comley, LLC had represented an issuer (Peoples Bank Credit Card Mutual Trust) of hundreds of millions of dollars of securities that were underwritten by Goldman Sachs & Co. and others. As the Hasans' access to information is limited, it was not possible to determine how late these engagements continued, but internet research reflected that these engagements were active in the last couple of years of the 1990s.

B.      In the case of Mr. Barrett, the Hasans' research revealed (and they promptly reported to the AAA) that two of Mr. Barrett's flagship mutual fund clients maintain financial relationships with Goldman Sachs. One of these clients (Pacific Capital Cash Assets Trust) has for several years held in its portfolio approximately $20 million in commercial paper issued by Goldman Sachs & Co. And, Mr. Barrett's long-time partner (Edward Hines) has for many years been the Secretary of Pacific Capital. The other mutual fund client (The Alger Institutional Funds) has an ongoing financial arrangement under which it compensates Goldman Sachs & Co. representatives for introducing clients to its mutual fund investment opportunity and for other activities. These relationships between Mr. Barrett's clients and Goldman Sachs & Co. are believed to be ongoing through the present.

32.      Following discovery of these undisclosed relationships, the Hasans moved the AAA to remove Messrs. Sharp and Barrett from the New York Arbitration panel. The Hasans emphasized that under applicable law, the removal of Mr. Mattiaccio required the removal of the balance of the members of the panel to assure that improper influence had not infected the panel and its decision making. The Hasans also urged that

13

the removal of Messrs. Sharp and Barrett was required as they had materially breached their sworn duty of full, fair and timely disclosure of all relationships with and connections to Goldman Sachs.

33. In late December of 2007 or early January of 2008, and following the lodging with the AAA of the motion to remove Messrs. Sharp and Barrett, the Hasans' counsel received a telephone call from representatives of the AAA's Northeast Case Management Center in East Providence, Rhode Island. During that telephone call, the AAA representatives instructed the Hasans' counsel that the AAA declined to ask Messrs. Sharp and Barrett to disclose the full range of information described on the AAA website. Counsel for the Hasans was told that the members of the panel should be aware of what disclosures were required of them. Finally, the AAA representatives advised the Hasans' counsel that a more narrow request would be transmitted by the AAA to Messrs. Sharp and Barrett.

34. Shortly thereafter, on January 3, 2008, the AAA transmitted a letter to Messrs. Sharp and Barrett identifying the specific client entities discovered as a result of the Hasans' online investigation and requesting disclosures with regard to these entities, the arbitrators and the participants (including Goldman Sachs) in the New York Arbitration. A copy of the January 3, 2008 letter sent to Messrs. Sharp and Barrett is attached hereto as Exhibit D.

A. Mr. Barrett responded within a matter of hours. He disclosed that Pacific Capital Cash Assets Trust and The Alger Institutional Funds are clients of his past and current law firm (Butzel Long P.C.). But he elected not to disclose that these are his individual clients, and he elected not to disclose that these clients have long-standing and

14

continuing business dealings with Goldman Sachs & Co. as set forth in Paragraph 31B of this Complaint. However, in sharp contrast to his April 27, 2007 disclosure (which recites that Goldman Sachs Europe is a *former* *client* of Butzel Long P.C.), Mr. Barrett's January 3, 2008 disclosure states that "Goldman Sachs Europe *is* a [current] client of [Butzel Long, P.C.]."[2]  A copy of Mr. Barrett's January 3, 2008 disclosure is attached as Exhibit E.[3]

B.       Mr. Sharp responded the following day. He acknowledged that his law firm had previously represented People's Bank Credit Card Master Trust. Mr. Sharp elected not to disclose his firm's previous representation of Goldman Sachs & Co., and he elected not to disclose the relationship between People's Bank Credit Card Master Trust and Goldman Sachs. A copy of Mr. Sharp's January 4, 2008 disclosure is attached as Exhibit F.

35.      Based upon the continuing failure of Messrs. Sharp and Barrett to make full, fair and timely disclosures as required by the Ethical Code, the commitments set forth on the AAA website and the sworn attestations set forth in the arbitrators' Notice of Appointment forms, on January 22, 2008 the Hasans lodged with the AAA their renewed Motion to remove Messrs. Sharp and Barrett from the New York Arbitration panel. The Hasans attached copies of the results of their internet research to corroborate their assertions respecting the arbitrators' non-disclosures.

---

[2]      Mr. Barrett has declined to disclose the length and breadth (full scope) of the attorney-client relationship enjoyed by Butzel Long P.C. with Goldman Sachs Europe. Mr. Barrett has further declined to disclose the magnitude of fees and other revenue generated by Butzel Long P.C. from its representation of Goldman Sachs Europe. This information continues to remain concealed through the present.

[3]      On February 12, 2008, Mr. Barrett issued yet another written disclosure. This time Mr. Barrett declared that "Goldman Sachs Europe is not a current client of Butzel Long." This February 12,

36.    On February 12, 2008, without comment other than reciting that it had reviewed the arguments of the parties, the AAA reaffirmed the appointment of Messrs. Sharp and Barrett to the New York Arbitration panel. The AAA also underscored that any further appeal to the AAA would be futile. In the AAA's February 12, 2008 letter, the AAA Case Manager emphasized that "[p]ursuant to Commercial Rule R-17(b), [the AAA's] determinations are conclusive."

37.    Currently, there are no conferences, deadlines or hearings scheduled in the New York Arbitration. As a result of the recent and unexpected need for opposing counsel in Denver to undergo a surgical procedure, a conference call that had been set with the members of the arbitration panel to establish a future schedule for the New York Arbitration has been adjourned *sine die*.

## VII.    First Claim for Relief

38.    The Hasans incorporate by reference the Preliminary Statement and each of the allegations set forth in Paragraphs 1-37 of this Complaint as if set forth in full here.

39.    The AAA has repeatedly and emphatically represented, assured, promised and committed to the clients of AAA-sponsored arbitrations (including the Hasans), that it is fully and uncompromisingly committed to insuring the fairness, transparency and integrity of its arbitration proceedings.

40.    The AAA has repeatedly and emphatically represented, assured, promised and committed to the clients of the arbitrations that it sponsors (including the Hasans), that it will permit to serve as arbitrators in AAA-sponsored arbitrations only

---

2008 disclosure avers that "the principal client on the matter was JPMorganChase, not Goldman Sachs"

persons who make full, fair and timely disclosures as required by: (a) the Ethical Code, (b) the commitments set forth on the AAA website, and (c) the assurances and commitments set forth in the Notice of Appointment forms executed under oath by each of the AAA arbitrators.

41.    Strict and specific enforcement of the AAA representations, assurances, promises and commitments described in Paragraph 40 of this Complaint is absolutely essential to establishing and maintaining the integrity, trust and confidence in AAA arbitration proceedings, including the New York Arbitration proceeding.

42.    Strict and specific enforcement of the AAA representations, assurances, promises and commitments described in Paragraph 40 of this Complaint is necessary to assure the just and even-handed performance and operation of the Federal Arbitration Act, 9 U.S.C. §§1, *et seq.,* and to assure appropriate implementation of the Orders entered by the federal courts in Denver and New York City compelling arbitration of the Hasans' claims at issue in the New York Arbitration.

43.    Absent strict and specific enforcement of the AAA representations, assurances, promises and commitments described in Paragraph 40 of this Complaint, the Hasans will continue to suffer immediate, substantial, palpable and irreparable harm and injury.  For example, and without being exhaustive:

A.    The Hasans will be compelled to participate in an AAA-sponsored arbitration proceeding in which the fundamental fairness and integrity of the arbitration is called into serious doubt by the extensive participation of an arbitrator (Mr. Mattiaccio) who was removed for cause by the AAA.  Absent removal of Messrs. Sharp and Barrett,

---

(emphasis supplied), and that the most recent work on this engagement had occurred in July of 2007.

the participation of Mr. Mattaccio likely improperly influenced the other panel members and has materially infected the New York Arbitration proceeding.

        B.     The Hasans will be compelled to participate in an AAA-sponsored arbitration proceeding in which the fundamental fairness and integrity of the arbitration is called into serious doubt by the material default of Messrs. Sharp and Barrett to make the full, fair and timely disclosures required by: (a) the Ethical Code, (b) the commitments set forth on the AAA website, and (c) the assurances and commitments set forth in the Notice of Appointment forms executed under oath by each of the AAA arbitrators.

        C.     The Hasans confront the very real prospect that the benefits to which they would otherwise be entitled under the Federal Arbitration Act will be curbed, minimized and/or distorted by entry of an award by arbitrators who have consistently refused to disclose relationships/connections with one or more parties (or their affiliates) who are adverse to the Hasans.

        44.     Given the limited scope of judicial review of AAA arbitration awards permitted under the Federal Arbitration Act, the potential injury, loss and damage accruing to the Hasans by the refusal of the AAA to fully, faithfully and timely fulfill and discharge its representations, assurances, promises and commitments described in Paragraph 40 of this Complaint is likely substantial, irreparable and not subject to reasonable measure or calculation.

        45.     The benefit to the Hasans from specific enforcement (by declaratory, injunctive and other relief sought herein) of the representations, assurances, promises and commitments described in Paragraph 40 of this Complaint substantially outweighs the injury, if any, to the AAA from the relief sought herein.

46.     Specific enforcement (by declaratory, injunctive and other relief sought herein) of the representations, assurances, promises and commitments described in Paragraph 39 of this Complaint is fully consistent with public policy as reflected in the Federal Arbitration Act.

47.     The Hasans have fully and timely performed all of their obligations to the AAA in respect of the New York Arbitration.

48.     All conditions precedent and subsequent to the Hasans' right to initiate and maintain this claim against the AAA have been performed, waived or have otherwise occurred.

## VIII.  Second Claim for Relief

49.     The Hasans incorporate by reference the Preliminary Statement and each of the allegations set forth in Paragraphs 1-48 of this Complaint as if set forth in full here.

50.     Prior to his removal from the New York Arbitration panel, Mr. Mattaccio participated fully and extensively as a panel member in the arbitration.  In particular, Mr. Mattiaccio was an active contributor in the panel's review and consideration of numerous motions and arguments presented by the parties, and he influenced and materially helped shape the panel's decisions respecting critical pre-hearing motions and requests for procedural and substantive relief.

51.     During a significant portion of the time before his removal from the New York Arbitration, Mr. Mattiaccio was engaged in discussions and negotiations respecting his joining Squire, Sanders & Dempsey, LLP as a partner, or was a partner in that law firm.  As noted above, at no time prior to October 11, 2007 did Mr. Mattiaccio or

19

Goldman Sachs disclose that Squire Sanders & Dempséy, LLP represents one or more Goldman Sachs entities.

52.    Upon removal of Mr. Mattiaccio, it became incumbent upon the AAA to remove the balance of the New York Arbitration panel (Messrs. Sharp and Barrett). Such removal is legally required to insure the parties that Mr. Mattiaccio has not unduly influenced or infected the panel's thinking and deliberations on account of his potential to join and subsequent joinder of a law firm that actively represents Goldman Sachs.

53.    Absent removal of the balance of the New York Arbitration panel, the AAA's representation, promise and assurance that it is fully committed to the integrity of its arbitration proceedings will be nullified and gutted.

54.    Despite appropriate and timely request of the AAA to remove Messrs. Sharp and Barrett for the reasons stated the AAA has repeatedly and wrongfully refused to do so.

55.    All conditions precedent and subsequent to the Hasans' right to initiate and maintain this claim against the AAA have been performed, waived or have otherwise occurred.

## PRAYER FOR RELIEF

WHEREFORE, the Hasans respectfully pray that this Court enter appropriate Orders and Judgment in their favor, and against the AAA, as follows:

A.    Declaring that that AAA is lawfully and contractually bound to the Hasans to fully, faithfully and timely fulfill and discharge its representations, assurances, promises and commitments that the New York Arbitration will be decided by a panel of

arbitrators who provide full, fair and timely disclosures fully consistent with the Ethical Code, the commitments and assurances set forth on the AAA website and the arbitrator Notice of Appointment form;

B.    Entering a Temporary Restraining Order, preliminary injunction and permanent injunction enjoining the AAA from authorizing or permitting the current New York Arbitration panel to make any further decisions, or to preside over any further proceedings, in that arbitration pending reconstitution of the panel by the AAA;

C.    Entering a Temporary Restraining Order, preliminary injunction and permanent injunction requiring the AAA to: (i) remove Ronald C. Sharp and William L.D. Barrett from the New York Arbitration panel based upon their (a) prolonged, extensive and intensive participation as members of the arbitration panel with a member of the panel (Richard L. Mattiaccio) who was removed for cause, and (b) consistent failure to make appropriate disclosures required by the Ethical Code, the commitments set forth on the AAA website and the affirmations contained in the Notice of Appointment forms signed by each of these individuals, and (ii) replace each of those persons with arbitrators who will make full, fair and timely disclosures and who are free from bias and the appearance of partiality;

D.    Entering a declaratory judgment and injunctive relief in favor of the Hasans, and against the AAA, requiring the AAA to credit against any future fees and charges by the AAA all amounts that the Hasans have heretofore paid to the AAA for the period from the appointment of Messrs Mattiaccio, Sharp and Barrett through the present; and

E.   Awarding the Hasans their reasonable attorneys' fees, expert witness fees, interest, costs of suit and such other and further relief which the Court deems equitable and just or to which the Hasans may be entitled under the prevailing circumstances.

Dated:  March 31, 2008.



Digitally signed by Daniel L.
Abrams
DN: cn=Daniel L. Abrams, o=Law
Office Of Daniel L. Abrams, PLLC,
ou=email=Dan@lawyerquality.
com, c=US
Date: 2008.03.31 11:40:24 -04'00'

Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams, PLLC
2 Penn Plaza, Suite 1910
New York, NY 10121
Phone:  (212) 292-5663
Fax:  (646) 536-8905
Dan@LawyerQuality.com

G.W. MERRICK & ASSOCIATES, LLC
Glenn W. Merrick
Marc L. Schatten
Suite 912, 5445 DTC Parkway
Greenwood Village, Colorado 80111
Telephone: 303-831-9400
Facsimile:  303-771-5803
E-mail:     gwm@gwmerrick.com

ATTORNEY FOR PLAINTIFFS MALIK M.
HASAN, M.D. and SEEME G. HASAN

22

## VERIFICATION

       Malik M. Hasan, M.D., being first duly sworn, deposes and states that he has read the foregoing VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF and that the allegations contained in this document are true and correct to the best of his knowledge, information and belief.


_____
Malik M. Hasan, M.D.


STATE OF COLORADO         )
                             ) ss.
COUNTY OF _Wash. D.C._   )


       Subscribed and sworn to before me this 26 day of March, 2008 by Malik M. Hasan, M.D.

       Witness my hand and official seal.


_____
Notary Public


LYNN E. HIGHT
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires April 14, 2011


District of Columbia: SS
Subscribed and sworn to before me, in my presence,
this 26 day of March, 2008
_____
Notary Public, D.C.
My commission expires 4-14-2011

23

EXHIBITS TO VERIFIED COMPLAINT

HASAN V. AAA

08 Civ. 3189 (GBD)

MAR. 18. 2005  4:27PM                                          NO. 036  P. 3/5
MAR-18-2005 FRI 12:18 PM              FAX NO.                            P. 02

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

### NOTICE OF APPOINTMENT

To: William Barrett

It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. If any additional direct or indirect contact arises during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. The AAA will call the facts to the attention of the parties' counsel.

If you are able to accept this responsibility as Arbitrator, please sign and return this form to the AAA.

☐ I HAVE NOTHING TO DISCLOSE.

☐ SEE DISCLOSURE DATED _____

☐ I HEREBY DISCLOSE THE FOLLOWING: (attach additional sheets if necessary, but please type – do not hand write – your disclosures below or provide them in a typed letter which can be forwarded to the parties).

*I have served as arbitrator with Ms. Ruth Kurtz.*

☐ MY DISCLOSURE WILL IN NO WAY PREVENT ME FROM FAIRLY AND IMPARTIALLY DISCHARGING MY DUTIES AS ARBITRATOR IN THE ABOVE-REFERENCED MATTER.

### THE ARBITRATOR'S OATH

**EXHIBIT A**

State of New York }
County of New York } SS:

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

I attest that the panel biography provided by the American Arbitration Association is accurate and complete.

Dated: March 18, 2005    Signed: _____

Sworn before me this 18th day of March 2005    DEBORAH A. REAGAN

American Arbitration Association
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President

Christopher Freeman, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401 435-6529
internet: http://www.adr.org/

March 24, 2005

Via Facsimile

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO 80202

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

Dear Parties:

Arbitrator Barrett made the enclosed disclosure.

Please advise the Association of any objections to the appointment of Arbitrator Barrett by March 31, 2005, copying the other side. The arbitrator shall not be copied on any comments related to the disclosure.

If any objections are raised, the other party may respond within five business days. The AAA will make a determination regarding the arbitrator's continued service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten days.

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

Paula C. Dubois
Case Manager
401 431 4789
duboisp@adr.org

Katharine M. Legeros
Supervisor
401 431 4714
LegerosK@adr.org

Docketed 3-24.05  KLD
Action Due 3-31-05  LD, DL

## Paula Dubois

Sent:     Wednesday, March 23, 2005 10:44 AM

To:       Paula Dubois

Subject: Goldman Sachs

Dear Paula:

Our office has run a computer check on this case and I have the following additional disclosures:

My firm represents the Trust for Cultural Resources which issues municipal bonds for institutions such as the Museum of Modern Art. Goldman Sachs is one of the underwriters for these bonds.

Cleary Gottlieb represented a party in an arbitration in 2002 where my firm represented the opposing party.

Please advise the parties of these disclosures.

Many thanks for your help.

Bill Barrett

MAR. 31. 2005   1:08PM        PU' 'IAN & COMLEY BPT              203 NO. 761288 P. 4/10
MHK-29-2005   11:00        AN

**In the Matter of Arbitration Between:**

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

```
+----------------+
|    EXHIBIT     |
|       B        |
+----------------+
```

## NOTICE OF APPOINTMENT

**To: Ronald Case Sharp**

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | | Yes | No |
|---|---|---|---|
| 1. | Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. | Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. | Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. | Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. | Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☑ |
| 6. | Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☑ |
| 7. | Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☑ |
| 8. | Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? | ☐ | ☑ |

MAR. 31. 2005  1:08PM        PL MAN & COMLEY BPT                    NO. 761288  P. 5/10

|  | Yes | No |
|---|---|---|
| 9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? | ☐ | ☒ |
| 10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration? | ☐ | ☒ |
| 11. Have you ever sued or been sued by either party or its representative? | ☐ | ☒ |
| 12. Do you or your spouse own stock in any of the companies involved in this arbitration? | ☐ | ☒ |
| 13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators? | ☐ | ☒ |
| 14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? | ☐ | ☒ |

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

Please indicate one of the following:

☒ I have conducted a check for conflicts and have nothing to disclose.

☐ I have conducted a check for conflicts and have made disclosures on an attached sheet.

## THE ARBITRATOR'S OATH

State of Connecticut  } SS: BRIDGEPORT
County of Fairfield

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: March 29, 2005     Signed: _____
                                        RONALD CASE SHARP

Sworn before me this 2ⁿᵈ day of March, 2005

_____                    JOSEPH LIPNICKAS
                                            NOTARY PUBLIC
                                            MY COMMISSION EXPIRES JANUARY 31, 2005

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
   Goldman Sachs 1998 Exchange Place Fund, L.P.,
   Goldman Sachs 1999 Exchange Place Fund, L.P.,
   Goldman Sachs Management Partners, L.P., The
   Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
   Goldman Sachs Management, Inc.
   and
   Malik M. Hasan, M.D. and Seeme G. Hasan

**EXHIBIT C**

## NOTICE OF APPOINTMENT

To:    Richard Mattiaccio

It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☒ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☒ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☒ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☒ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☒ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☒ NO. RL-9M - |

7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned?

8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case?

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration?

11. Have you ever sued or been sued by either party or its representative?

12. Do you or your spouse own stock in any of the companies involved in this arbitration?

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

Please indicate one of the following:

☐ I have conducted a check for conflicts and have nothing to disclose.

☒ I have conducted a check for conflicts and have made disclosures on an attached sheet.

## THE ARBITRATOR'S OATH

State of New York  }
County of New York }    SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: May 13, 2005        Signed: Richard L. Mattiaccio

Sworn before me this 13 day of May        , 2005

Kostadina Lambrou

KOSTADINA LAMBROU
Notary Public, State of New York
No. 01LA5041949
Qualified in Queens County
Commission Expires April 10, 2009

## Disclosures of Arbitrator Richard L. Mattiaccio

1.  In the early or mid-1990's, I served as an arbitrator in a commercial arbitration in New York in which Mr. Gitter and his then-firm, Paul Weiss, served as counsel for one of the parties. I do not recall whether Mr. Gitter represented claimant or respondent. I do not recall any of the details of the award or of the case, other than that the product was baby wipes manufactured in Israel. If the parties request further information regarding this matter, I could review a file that is now in off-site storage. (Due to a less-than-perfect conversion to a new computer system since that case, I am unable to access any information of that vintage by computer.)

2.  I have served as counsel in two separate litigated matters in which Cleary Gottlieb has been opposing counsel. In the early 1990's, I represented Ferrara Foods, a former U.S. importer against the Italian pasta company, DeCecco, in a case in the S.D.N.Y. in which my client alleged breach of an agreement to renew the exclusive distribution agreement. The case was settled after denial of defendant's summary judgment motion. The Cleary partner handling the matter for defendant was Jonathan Blackman. In the late-1990's, I represented Ugo Castellano, an individual plaintiff in a federal securities fraud case in the S.D.N.Y. against Young & Rubicam, in which plaintiff alleged a failure to disclose material information regarding the value of his shares at the time he agreed to retire, giving rise to a call on his shares at book value. Following an appeal of summary judgment, the case was tried to a jury, resulting in a verdict for plaintiff in 2002, and the case was settled. The Cleary partner representing Y&R was Lawrence Friedman.

3.  From approximately October 1997 through October 1999, in connection with her employment as Vice President of the New York branch of the French Bank CIC-Union Européenne, Martha Skidmore, who is now an associate at Pavia & Harcourt LLP, was the bank's account officer responsible for the lending relationship with the Goldman Sachs Group. (This occurred before Ms. Skidmore attended law school.) In that capacity, Ms. Skidmore managed the bank's credit exposure to Goldman Sachs entities and interacted regularly with members of Goldman's treasury department, especially with respect to their needs for letters of credit.

    I generally do not communicate with attorneys at my firm regarding matters in which I serve as an arbitrator, and I would not communicate with Ms. Skidmore regarding this case.

I do not believe the matters disclosed herein would affect my impartiality or ability to perform my oath.

May 13, 2005

*Richard L. Mattiaccio*

Richard L. Mattiaccio

P&H - 415944.3 :99999/217

## Glenn W. Merrick

| | |
|---|---|
| **From:** | William BARRETT [BARRETT@butzel.com] |
| **Sent:** | Thursday, January 03, 2008 1:24 PM |
| **To:** | Hannah R. Cook; Ronald C. Sharp |
| **Cc:** | mgitter@cgsh.com; bfeatherstone@featherstonelaw.com; Glenn W. Merrick; Marc L. Schatten |
| **Subject:** | Re: AAA CASE 13 168 01990 04--Hasan and Goldman |

Dear All:

Re: 13 168 01990 04
      Malik M. Hasan, M.D. and Seeme G. Hasan
      (Claimants)
      and
      Goldman Sachs 1998 Exchange Place Fund, L.P.,
      Goldman Sachs 1999 Exchange Place Fund, L.P.,
      Goldman Sachs Management Partners, L.P., The
      Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
      Goldman Sachs Management, Inc. John Does 1-100
      and Lender Parties 1-100 (Respondents)

The American Arbitration Association has requested that the arbitrators review and make disclosures with regard to the following entities and the firms, arbitrators and/or other participants in this case:

I am responding to the above request with respect to myself and my law firm (Butzel Long "BL" and its predecessor (Hollyer Brady Barrett and Hines LLP "HB"). I have no information about the following entities' relationships with the firms, arbitrators or other arbitrators in this case, other than that reflected in previous disclosures. The following represents information obtained by a computer search ordered today in response to the request.

Pacific Capital Cash Assets Trust

This entity is a mutual fund, client of BL and formerly a client of HB.
We represent the entity and its independent trustees; my partner, Edward Hines is the corporate secretary.

The Alger Institutional Funds

This entity is a mutual fund, client of BL and formerly a client of HB.

Enbridge Energy Partners is a co-defendant with a client of BL named Wolverine Energy Partners.

Peoples Bank Credit Card Master Trust — no information about this entity.

The Trust for Cultural Resources is a client of BL and formerly of HB.

The Museum of Modern Art has been a client of HB; has had funding through Trust for Cultural Resources.

Goldman Sachs Europe Limited is a client of BL (real estate).

None of the foregoing matters would affect my impartiality in the above case.


Yours truly,

WLD Barrett


EXHIBIT

1

his message is intended on   for the individual or entity t   which it is addressed.  It
may contain privileged, confidential information which is exempt from disclosure under
applicable laws.  If you are not the intended recipient, please note that you are strictly
prohibited from disseminating or distributing this information (other than to the intended
recipient) or copying this information.  If you have received this communication in error,
please notify us immediately by e-mail or by telephone at (212) 818-1110.  Thank you

To comply with U.S. Treasury Regulations: This communication (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of avoiding
penalties under the tax laws of the United States, or promoting, marketing or recommending
to another party any transaction or matter addressed in this communication (and any
attachment).

Confidentiality Statement:
This message (including any attachments) is intended only for the individual or entity to
which it is addressed. It may contain privileged, confidential information that is exempt
from disclosure under applicable laws. If you are not the intended recipient, please note
that you are strictly prohibited from disseminating or distributing this information
(other than to the intended recipient) or copying this information. If you have received
this communication in error, please notify us immediately by e-mail or by telephone at
(313) 225-7000. To learn more about Butzel Long, please visit our website at
http://www.butzel.com

2

# PULLMAN & COMLEY, LLC
## ATTORNEYS AT LAW

RONALD C. SHARP
850 Main Street – 8th Floor
P.O. Box 7006
Bridgeport, CT 06601-7006
p  203 330 2148
f  203 330 2088
rsharp@pullcom.com
www.pullcom.com

January 4, 2008

**Via E-Mail: cookh@adr.org and U.S. Mail**

Hannah Cook, Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

Re:    131 68 01990 04

Dear Hannah:

Pursuant to your January 3, 2008 letter requesting my review and disclosures with regard to the entities set forth therein, please be advised that I have no information on any of the entities listed except as follows:

1. <u>People's Bank Credit Card Master Trust</u>.  Many years ago, my law firm (Pullman & Comley, LLC) was asked by the Trustee (I believe Banker's Trust) to issue third party type opinion letters to People's Bank with respect to UCC-1 filings in Connecticut and to Connecticut Banking law compliance.  We have had no other contact concerning the Master Trust.  I was not involved in any way as to providing the opinion letters.

2. <u>The Museum of Modern Art</u>.  My wife has been a member for many years.

None of the foregoing would in any way affect my impartiality in the above-referenced case.

Very truly yours,

*R C Sharp*

Ronald C. Sharp

/psk

Bridgeport/1.1/RCS/666333v1

EXHIBIT
*E*

American Arbitration Association
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

January 3, 2008

Via Electronic Mail

William L.D. Barrett, Esq.
Butzel Long
380 Madison Avenue, 22nd Floor
New York, NY 10017

Mr. Ronald Case Sharp, Esq.
Pullman and Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06604

Re: 13 168 01990 04
    Malik M. Hasan, M.D. and Seeme G. Hasan
    (Claimants)
    and
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc. John Does 1-100
    and Lender Parties 1-100 (Respondents)

Dear Arbitrators:

The American Arbitration Association is requesting that the arbitrators review and make
disclosures with regard to the following entities and the firms, arbitrators and/or other
participants in this case:

- Pacific Capital Cash Assets Trust
- The Alger Institutional Funds
- Enbridge Energy Partners
- Peoples Bank Credit Card Master Trust
- The Trust for Cultural Resources
- The Museum of Modern Art
- Goldman Sachs Europe Limited

With respect to each of these entities, please make full and complete disclosure in accordance
with the Code of Ethics and the AAA's rules. Note also that an arbitrator's obligation to make
disclosures is ongoing, and should you have any other disclosures you should make them
promptly and immediately upon becoming aware of the potential conflict.

Please forward your response, if any, no later than January 10, 2008.

Sincerely,

Hannah R. Cook
Case Manager
401 431 4708
cookh@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

cc:    Max Gitter
       Bruce Featherstone
       Glenn Merrick