Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams. PLLC
Attorney for Plaintiffs
2 Penn Plaza. Suite 1910
New York, New York 10121
(212)292-5663


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                    :
MALIK M. HASAN and SEEME G. HASAN,                                  :
                                                                    :
                         Plaintiffs,                                :
                                                                    :
           v.                                                       : 08 Civ. 3189 (GBD)
                                                                    :
AMERICAN ARBITRATION ASSOCIATION,                                   :
INC.,                                                               :
                                                                    :
                         Defendant.                                 :
                                                                    :
------------------------------------------------------------------ X

---

## AFFIDAVIT OF GLENN W. MERRICK IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF AND REQUEST FOR EXPEDITED CONSIDERATION THEREOF

---

Glenn W. Merrick, being first duly sworn, deposes and states as follows:

1.      I am over the age of twenty-one (21) years, and except where expressly stated to the contrary I have personal knowledge of the matters set forth herein.

2.      I am an attorney licensed to practice in the Colorado, and have been continuously licensed to practice in Colorado since 1979. I have been admitted to practice in the states of Colorado and Texas, the United States District Court for the District of Colorado, and the United States Courts of Appeal for the Fifth Circuit and the

Tenth Circuit.  For more than twenty-five (25) years I have been practicing in the field of complex civil litigation and arbitration.  Currently, I am Managing Member of G.W. MERRICK & ASSOCIATES, LLC, which maintains its offices in Greenwood Village, Colorado.

   3. I serve as lead counsel for the Claimants, Malik M. Hasan, M.D. and Seeme G. Hasan (collectively, the "Hasans"), in an arbitration sponsored by the American Arbitration Association ("AAA") that is pending in New York City, *Hasan, et al.  v. Goldman Sachs 1998 Exchange Place Fund, L.P. et al.,* AAA Case No. 13 168 01990 04 (the "New York Arbitration").

## I. <u>The Federal Court Litigation and Follow on Arbitration</u>

   4. <u>The Hasans and the Exchange Funds</u>. As reflected in the Verified Complaint in the captioned litigation, the Hasans are Pakistani immigrants, and each is a committed and faithful follower of Islam.  They are residents of Nevada but maintain property in Colorado.

   5. During 1998 and 1999, the Hasans were approached in Colorado by members of the Private Client Services group of Goldman Sachs & Co., and they were induced to invest approximately $8 million in two Exchange Funds that were sponsored, promoted and managed by Goldman Sachs and its affiliates.[1]  According to materials published by Goldman Sachs, these two Exchange Funds were constructed with billions of dollars in contributed equity securities, raised from many hundreds of investors

---

   [1] Specifically, the Hasans invested in the 1998 Exchange Place Fund, L.P. and Goldman Sachs 1999 Exchange Place Fund, L.P.

nationwide, and have generated nearly $200 million in fees and commissions for Goldman Sachs and its affiliates.

6.    <u>The Federal Court Suit in Denver</u>.    In 2004, my firm filed suit for the Hasans in the federal district court in Denver seeking rescission and/or monetary damages arising out of the Hasans' purchase of limited partnership interests in these two Exchange Funds.    The Hasans alleged that Goldman Sachs and certain of its affiliates who sponsored, promoted and managed these Exchange Funds (collectively referred to as "Goldman Sachs") materially misrepresented and misled the Hasans in specific particulars respecting the selection of securities for inclusion in the Exchange Funds, and the subsequent management of the Exchange Funds.    The Hasans further alleged that Goldman Sachs were grossly negligent in the selection of these securities and the subsequent management of the Exchange Funds. The Hasans' pleadings underscore numerous and manifest violations of federal and state statutes and rules, as well as under numerous claims for relief under the common law.

7.    <u>Transfer and Arbitration Enforcement</u>.    Ultimately, the federal court in Denver determined that the Hasans are bound under the terms of the Exchange Funds' limited partnership agreements to pursue their claims in arbitration sponsored by the AAA in New York City.    Accordingly, the federal judge in Denver transferred the case to the United States District Court for the Southern District of New York (for purposes of enforcing the arbitration determination).    Upon transfer, Judge Naomi Buchwald entered an Order compelling arbitration.    As a result of Judge Buchwald's Order, the litigation that had been transferred to her was consolidated into an AAA-

sponsored arbitration case that has been prosecuted in New York City -- the New York Arbitration.

8.    <u>The Initial Claims in the New York Arbitration</u>.    The Hasans' Statement of Claim in the New York Arbitration alleges that Goldman Sachs materially misrepresented and misled the Hasans in specific particulars respecting the selection of securities for inclusion in the Exchange Funds, and the subsequent management of the Exchange Funds. The Hasans further alleged that Goldman Sachs were grossly negligent in the selection of these securities and the subsequent management of the Exchange Funds. These allegations apply literally to the securities of <u>hundreds</u> of issuers that were chosen for inclusion in the Funds. The Hasans' pleadings underscore numerous and manifest violations of federal and state statutes and rules, as well as under numerous claims for relief under the common law.

9.    <u>The New York Arbitration Panel</u>.    The AAA circulated an initial list of fifteen names of potential arbitrators in the New York Arbitration. When the parties failed to agree on a panel from that initial list, the AAA appointed to the arbitration panel three lawyers -- each of whom practice in prestigious law firms on the East Coast -- to hear and determine the merits of the Hasans' claims against Goldman Sachs.

A.    The AAA appointed William L.D. Barrett, a former member of the AAA Board of Directors and a former member of its Executive Committee, who practices law in New York City. At the time of his appointment, Mr. Barrett disclosed that Goldman Sachs is one of the underwriters for municipal bonds issued by one of his firm's clients. The Hasans timely objected to the retention of Mr. Barrett as a member of

the panel, *See* **<u>Exhibit A</u>**, but that objection was overruled by the AAA. Mr. Barrett was subsequently selected as the panel Chair. In his Notice of Appointment form, Mr. Barrett affirmed, *<u>under oath</u>*, that he understands that as an AAA arbitrator he is governed by the Ethical Code. *See* **<u>Exhibit B</u>**.

        B.      The AAA also appointed Ronald Case Sharp (who practices law in Bridgeport, Connecticut) and Richard L. Mattiaccio (who practices law in New York City). In his Notice of Appointment form, Mr. Sharp affirmed under oath that he had nothing to disclose in connection with the New York Arbitration. *See* **<u>Exhibit C</u>**. Each of Messrs. Sharp and Mattiaccio affirmed, *<u>under oath</u>*, in their respective Notice of Appointment forms, that they understood that as AAA arbitrators they are governed by the Ethical Code. *See* **<u>Exhibit C</u>** and **<u>Exhibit D</u>**.

        10.      On or about April 27, 2007, Mr. Barrett advised the parties in writing that his law firm (Hollyer, Brady, Barrett and Hines, LLP) would the following month be acquired by Butzel Long P.C. In connection with that acquisition, Mr. Barrett disclosed that "Butzel Long *has performed* real estate work for Goldman Sachs Europe Limited." *See* **<u>Exhibit E</u>**. Mr. Barrett declined to disclose the nature, duration, breadth or financial magnitude of the Goldman Sachs past engagement of his new law firm.

        11.      On or about May 29, 2007, Mr. Mattiaccio advised the parties in writing that he was leaving his current law firm (Pavia & Harcourt, LLP) for the New York City branch of Squire Sanders & Dempsey, LLP ('SSD"). Mr. Mattiaccio made no further disclosures in connection with that move. *See* **<u>Exhibit F</u>**. (He would not disclose that SSD represents Goldman Sachs until mid-October of 2007 -- and only then under duress of the Hasans' removal motion. *See* ¶14, *infra*.)

## II.    The Rulings Prior and Following the Arbitrators' Change in Law Firms

12.    Commencing some months before Messrs. Barrett and Mattiaccio publicly announced plans to change their law firm affiliations, and continuing consistently after those announcements, the panel in the New York Arbitration began issuing perplexing rulings that were highly damaging to the Hasans.  These rulings depart substantially from established substantive and procedural rules of law.  By way of example only, and without any effort to be exhaustive:

A.    Procedural Order No. 14:    In "Procedural Order No. 14," dated October 12, 2006, the New York Arbitration panel declared that in an effort to make the case "*more manageable,*" the Hasans would only be permitted to conduct discovery -- and would only be permitted to present evidence at the hearing on the merits -- in respect of modest numbers of securities of issuers specifically identified in Paragraph 46 of the Hasans' Statement of Claim.  That paragraph of the Statement of Claim sets forth only examples of misconduct; it identifies only a small fraction of the hundreds of securities targeted in the Hasans' Statement of Claim.[2]  The ruling was stunning because the Hasans' Statement of Claim does not state or suggest that their claims are limited to the securities specifically identified in Paragraph 46.

Indeed, the securities identified in Paragraph 46 of the Hasans' Statement of Claim were identified only for purposes of <u>illustrating</u> Goldman Sachs' culpability in

---

[2]    Paragraph 46 of the Hasans' Statement of Claim describes -- *by way of example only* -- the securities of twenty three issuers that became the subject of securities class action litigation.  In an astonishing ruling, however, Procedural Order No. 14 bars the Hasans from conducting discovery or offering evidence at the hearing on the merits in respect of any securities other than those that are *specifically identified* in Paragraph 46 of the Statement of Claim and that lost value in the time since the Exchange Funds closed.

the selection and management of securities included in the Exchange Funds.    Of

significance, in Procedural Order No. 14 the Panel acknowledges as much:

> The Funds together have more than 800 investors and are
> compromised of more than 400 different securities … The
> claims assert possible wrongdoing with respect to *all of the*
> *securities* in the Funds, and an unspecified number of culpable
> partners.

The Panel's severe restriction on the Hasans' presentation of relevant evidence in respect

of their arbitration Statement of Claim constitutes gross misconduct under the Federal

Arbitration Act. *See,* 9 U.S.C. § 10(a)(3) (The Federal Arbitration Act provides that

arbitrators are "guilty of misconduct" when they fail to properly "hear evidence pertinent

and material to the controversy").[3]

      B.    Procedural Order No. 19:    In March-April of 2007, the Hasans

obtained a limited number of documents from Goldman Sachs, and they conducted

depositions of three Goldman Sachs representatives.  This discovery revealed -- for the

first time -- that Goldman Sachs published to the Hasans materially false and misleading

statements in the Exchange Funds' solicitation and offering materials respecting process

for selecting securities for inclusion in the Exchange Funds and the subsequent

"management" of those Exchange Funds.

      On June 15, 2007 -- following the Hasans' receipt of the deposition

transcripts -- the Hasans filed "Claimants' Motion to Clarify and Amend the Statement of

Claim" and an "Amended Statement of Claim" to reflect claims supported by this new

evidence.  However, in Procedural Order No. 19, dated June 28, 2007, the Panel refused

---

[3]    Further, Canon IV(B) of the AAA Code of Ethics for Arbitrators in Commercial Disputes
(2004) provides that the "arbitrator should allow each party a fair opportunity to present its evidence and
arguments."

to permit any clarification/amendment based upon newly discovered evidence that could not have been known prior to the Goldman Sachs document production and depositions. In so doing, the Panel demonstrated a definite bent of mind and prejudgment:

> There is simply no basis on which we could in fairness allow the Hasans to amend their demand in this case, because of the extreme prejudice to the Goldman Parties and the slender likelihood, based upon what has been presented to us, that the Hasans' charges resulted in any pecuniary harm to them …

Further -- similar to Procedural Order No. 14 -- Procedural Order No. 19 champions the view that any benefit associated with permitting the Hasans the right to pursue their full range of claims, and the corresponding document discovery that may be associated with such claims, would be too costly and burdensome to Goldman Sachs. Of course, this view ignores the gargantuan fees mined by Goldman Sachs for their modest effort in respect of securities selection and subsequent management of the Exchange Funds. The cost of producing materials germane to the Hasans' amended arbitration claims is dwarfed by Goldman Sachs' haul from the Exchange Fund investors.[4]

        C.        <u>Mr. Barrett's Bizarre Remarks During the July 19, 2007 Telephone Conference Call</u>. In a telephone conference conducted on July 19, 2007, Mr. Barrett (as Panel Chair) addressed the future hearing on the arbitration merits. He proved highly deferential and accommodating respecting the schedules of Goldman Sachs and their counsel. Although the arbitration hearing had originally been scheduled for two weeks, Mr. Barrett deferred to Goldman Sachs' counsel -- over the vigorous protest of the Hasans' counsel -- and reduced the scheduled hearing dates to four days.

---

[4]        Since inception of the Exchange Funds, it appears that Goldman Sachs have earned in placement fees, management fees and other expenses nearly $200 million. The very modest effort invested by Goldman Sachs and its affiliates in constructing and managing the Exchange Funds is summarized in the deposition testimony of Kent Clark.

Next, Goldman Sachs' counsel indicated that they would be available during specific days in December of 2007 -- particularly, December 17-20, 2007. When Mr. Barrett was informed that the Hasans' counsel needed to clear those proposed hearing dates with the Hasans (who were not participating in the call), Mr. Barrett sternly directed that Dr. Hasan be admonished that he would do well to make himself available for the December 17-20 dates, and that the panel would not respond favorably to any unavailability of the Hasans on those dates.[5] Although Dr. Hasan had plans to be out of the country on those dates, when he was advised of the not-so-subtle threat by the Panel Chair those plans were quickly changed.

D.    The Refusal to Entertain the Hasans' Partial Summary Judgment Motion.    During the July 19, 2007 conference call, counsel for the Hasans requested leave of Mr. Barrett to submit a motion for partial summary judgment (targeting Goldman Sachs' attorney fee counterclaims). Despite clear language in the Exchange Funds' limited partnership agreements -- that expressly provide that in the event of dispute each party shall be responsible for that party's attorney fees and expert witness costs -- Mr. Barrett refused to permit the Hasans to submit their partial summary judgment motion. The ruling was baffling because partial summary judgment respecting these counterclaims would: (i) clearly simplify the dispute in arbitration, and (ii) materially reduce the arbitration costs for the parties. Moreover, earlier in the arbitration proceedings Goldman Sachs had been permitted to submit, and the Panel had decided (in Procedural Order No. 11), Goldman Sachs' summary judgment motion. As a direct

---

[5]    Neither of the Hasans have ever cited calendar conflict as a basis for moving a hearing (or failed to attend a hearing which they were asked to attend) in the New York Arbitration. The July 19, 2007 heavy-handedness of the panel Chair toward Dr. Hasan was wholly undeserved, and bordered on surrealistic.

consequence of Mr. Barrett's refusal to permit the Hasans to submit their corresponding partial summary judgment motion, the Hasans have been required to expend hundreds of thousands of dollars in unnecessary legal fees and expert witness charges to address these unfounded counterclaims.

E.    The Panel Chair's Pro-Jewish/Anti-Islamic Comment.    On September 19, 2007, counsel for Goldman Sachs sent the panel an e-mail indicating that there had been a delay in transmission of Procedural Order No. 22.  Counsel for Goldman Sachs requested an extension of time to comply with the document production required by that Procedural Order.  The following day, without affording the Hasans' counsel any opportunity to be heard or comment,[6] the panel Chair granted the extension of time requested by Goldman Sachs.

Three days later, on the afternoon of September 22, 2007 (a Saturday), the Hasans' counsel transmitted an e-mail to the panel (of course, not expecting that it would be read over the weekend).  Given that there would be a delay in receiving the Goldman Sachs production (as a result of the panel Chair's recent ruling granting Goldman Sachs' request for an extension), the Hasans' counsel requested a corresponding extension of time to produce the Hasans' expert witness report(s) -- which might well be impacted by that production.  Within two hours, one of the lawyers for Goldman Sachs urged via e-mail that the panel not act upon the Hasans' request.  This lawyer emphasized that lead counsel for Goldman Sachs is Jewish, was observing Yom Kippur, and would not be back in the office until the following Monday.  Mr. Barrett's e-mail reply, transmitted

---

[6]    The request from counsel for the Goldman Sachs arrived during a time when the Hasans were observing Ramadan.  Counsel attempted to contact them immediately about this request, but the Hasans are more difficult to contact during this period of religious observance.

within hours, is not limited to a standard concurrence that Goldman Sachs should be afforded an opportunity to be heard. Disturbingly, he declared: "*a New York panel* would not consider it seemly to give cognizance to papers served on *the holy day*, and the same will not be reviewed until the next business day." (Emphasis supplied).[7] ***See*** **Exhibit G**. Mr. Barrett entered Procedural Order No. 23 a few days later (on September 26, 2007). Notably, despite having affording the Goldman Sachs additional time to produce their documents he categorically rejected any extension of time for the Hasans to lodge their follow on expert reports.

F.    Additional Indications of Bias Favoring Goldman Sachs.    During late September and early October 2007, Mr. Barrett reset conference calls. In an e-mail to Mr. Barrett dated October 8, 2007, Goldman Sachs' counsel stated "[w]e look forward to the conference call with the Panel tomorrow morning to schedule the proceedings up to the hearings in December …" Mr. Barrett replied shortly thereafter via e-mail: "There seems to be some confusion about the time of the conference call. It will be a 2:00 p.m. eastern time with the Chair only. Its purpose is to discuss hearing procedures." The Hasans' counsel responded to Mr. Barrett's e-mail by reminding that he had previously and expressly (in writing) moved the telephone conference with the Chair to October 16, 2007 at 2:00 p.m. The Hasans' counsel advised that in reliance he had accepted a conflicting professional commitment for October 9, 2007. Goldman Sachs' counsel

---

[7]    As Pakistani immigrants, and as committed and faithful followers of Islam, the Hasans have experienced grave concern respecting whether they will be able to have their claims against Goldman Sachs fairly determined by a panel of impartial arbitrators in New York City. They are mindful that it is widely reported that those responsible for the horrific September 11, 2001 attack on New York City are Islamic extremists, directed by Osama Bin Laden. It is also frequently reported that these persons are said to be extended sanctuary in a mountainous region of Pakistan bordering Afghanistan. The instruments providing for arbitration in New York City all antedate the hideous sneak attack on New York City. The limited partnership agreements and solicitation materials respecting the Exchange Funds at issue in the New York Arbitration all antedate by several years the September 11, 2001 terrorist attack.

followed with an e-mail which declared that Goldman Sachs' counsel would be unavailable in the afternoon of October 9, 2007. Flatly ignoring the e-mail from the Hasans' counsel, Mr. Barrett responded (literally within one minute of receipt of the e-mail from counsel for Goldman Sachs): "*By popular demand*, there will be a conference call tomorrow [October 9, 2007] at 11."

**III.    Discovery of the Arbitrators Undisclosed Connections with Goldman Sachs**

13.    With mounting evidence of the appearance of partiality and actual bias (particularly in the wake of Mr. Barrett's September 22, 2007 e-mail suggesting pro-Jewish/anti-Islamic bias), on October 9, 2007, the Hasans lodged with the AAA a Verified Motion seeking to remove Messrs. Barrett and Mattiaccio from the panel.

14.    On October 11, 2007, after being made aware that he was a target of the Hasans' removal motion, Mr. Mattaccio issued a "supplemental disclosure." In his supplemental disclosure, Mr. Mattiaccio revealed, for the first time, that "one or more Goldman Sachs-related entities are clients of SSD [his law firm]." *See* **Exhibit H**. At no time prior to October 11, 2007 had Mr. Mattaccio disclosed this crucial information. On October 31, 2007, under pressure from the Hasans' removal motion filed earlier in the month, the AAA removed Mr. Mattaccio as a panel member.[8] In that same document, the AAA reaffirmed Mr. Barrett as an arbitrator.

15.    After the removal of Mr. Mattiaccio, the Hasans began an investigation respecting other undisclosed relationships/connections involving Goldman Sachs and the remaining panel members and/or their law firms. Since the Hasans do not have access to these law firms' conflicts check systems, their investigation has, of

---

[8]    After Mr. Mattaiccio was removed, the AAA appointed Joanne Barak (of New York City) to the panel on January 7, 2008.

necessity, been limited to the incomplete information that can be gleaned via internet searches using online search engines. As a result of their searches, the Hasans discovered that the law firms in which Messrs. Sharp and Barrett have long been principals have enjoyed and profited from several *undisclosed* connections/relationships with Goldman Sachs and/or its affiliates. ***Goldman Sachs had remained silent about these connections and relationships throughout the New York Arbitration proceedings***. The Hasans promptly notified the AAA in writing of the undisclosed connections/relationships that they had uncovered, and they sought the removal of Messrs. Sharp and Barrett.

16.    The Hasans learned and reported to the AAA that Mr. Sharp's law firm (Pullman & Comley, LLC) had substantial and undisclosed relationships with Goldman Sachs. A few years prior to the commencement of the New York Arbitration that firm had been engaged to represent Goldman Sachs and other underwriters in respect of the issuance by the State of Connecticut of $708 million in investment bonds. The Hasans also learned and reported to the AAA that Mr. Sharp's law firm had previously represented an issuer (Peoples Bank Credit Card Mutual Trust) of hundreds of millions of dollars of securities that were underwritten by Goldman Sachs and others. None of this information had been disclosed by Mr. Sharp, and he declined to disclose how long these key relationships with Goldman Sachs continued.

17.    In the case of Mr. Barrett, the Hasans' searches revealed (and they promptly reported to the AAA) that two of Mr. Barrett's flagship mutual fund clients maintain financial relationships with Goldman Sachs. One of these clients (Pacific Capital Cash Assets Trust) has for several years held in its portfolio approximately $20 million in commercial paper issued by Goldman Sachs. The other mutual fund client

(The Alger Institutional Funds) had established a financial arrangement under which it compensates Goldman Sachs representatives for introducing clients to its mutual fund investment opportunity. These relationships between Mr. Barrett's clients and Goldman Sachs are believed to have continued to the present.

18.    Following discovery of these undisclosed relationships, the Hasans moved the AAA to remove Messrs. Sharp and Barrett from the New York Arbitration panel. Prompted by the Hasans' reports to the AAA, on January 3, 2008 the AAA transmitted a letter to Messrs. Sharp and Barrett requesting full disclosure (and particularly respecting identified clients). *See* **Exhibit I**.

19.    Mr. Barrett responded within a matter of hours. He disclosed that Pacific Capital Cash Assets Trust and The Alger Institutional Funds are clients of his prior and current law firm. In sharp contrast to his April 27, 2007 disclosure (which recites that Goldman Sachs Europe is a *former client* of Butzel Long P.C.), *see* **Exhibit E**, Mr. Barrett's January 3, 2008 disclosure states that "Goldman Sachs Europe *is* a [current] client of [Butzel Long, P.C.]." *See* **Exhibit J**. He again refused to disclose the nature, duration, breadth or financial magnitude of the Goldman Sachs engagement to his firm. And, again, Mr. Barrett declined to disclose the continuing relationships/connections between his mutual fund clients and Goldman Sachs.

20.    Mr. Sharp responded to the AAA's January 3, 2008 letter the following day. He acknowledged that his law firm had previously represented People's Bank Credit Card Master Trust. But he again declined to disclose his firm's representation of Goldman Sachs in a very significant bond offering by the State of Connecticut. He also declined to disclose that Goldman Sachs underwrote hundreds of

millions of dollars in securities issued by People's Bank Credit Card Master Trust.  ***See***
**Exhibit K**.

       21.    Based upon the continuing failure of Messrs. Sharp and Barrett to
make full, fair and timely disclosures (even in the face of the AAA's January 3, 2008
letter emphasizing the need for disclosure) -- as required by the Ethical Code, the AAA's
promises, assurances, commitments and representations published on its website, and the
sworn attestations set forth in the arbitrators' Notice of Appointment forms, on January
22, 2008 the Hasans lodged with the AAA their renewed motion to remove Messrs. Sharp
and Barrett from the New York Arbitration panel. The Hasans attached copies of the
results of their internet searches to corroborate their assertions respecting the material
non-disclosures.  ***See* Exhibit L**.

       22.    On February 12, 2008, Mr. Barrett published yet another
inconsistent disclosure respecting his firm's relationship/connection with Goldman
Sachs.  (One must recall that Mr. Barrett had already made conflicting disclosures
respecting whether Goldman Sachs is a *former client* of his firm, (***see* Exhibit E** dated
April 27, 2007) or a *current client* of his firm (***see* Exhibit J** dated January 3, 2008).  In
his most recent February 12, 2008 disclosure Mr. Barrett asserted that "the *principal
client* on the matter was JPMorganChase, not Goldman Sachs," and that the most recent
work on the matter -- involving the release of a mortgage -- was performed in July of
2007).  ***See* Exhibit M**.

       23.    Mr. Barrett's disclosures about his current firm's relationship with
Goldman Sachs are deeply troubling, shifting and contradictory.  Indeed, in the latest of
Mr. Barrett's disclosures, that dated February 12, 2008, he attempts to draw a distinction

between his law firm's relationship with a "client" and his law firm's relationship with a "principal client."  Of course, no such distinction is recognized in the arena of professional ethics governing the conduct of attorneys.  Lawyers owe a solemn fiduciary duty of <u>undivided</u> <u>loyalty</u> to <u>all</u> of their firm's clients (whether they are "principal clients" or not).  The most likely reason that Mr. Barrett attempts to make such a distinction is that he recognizes that he has repeatedly and seriously failed in his arbitrator disclosure obligations.

24.    Despite being advised and provided with written corroboration of material undisclosed relationships/connections between Goldman Sachs and the law firms in which Messrs. Sharp and Barrett are principals, on February 12, 2008 -- without comment other than reciting that it had reviewed the arguments of the parties -- the AAA reaffirmed the appointment of Messrs. Sharp and Barrett to the New York Arbitration panel. *See* **Exhibit N**.

Further affiant sayeth not.

Glenn W. Merrick

STATE OF COLORADO    )
                     ) ss.
COUNTY OF ARAPAHOE    )

Subscribed and sworn to before me this 28th day of April, 2008 by Glenn W. Merrick, Esq.

Witness my hand and official seal.

Notary Public

My commission expires: 1|6|2010

DYANNA SPICHER
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires 01/06/2010

16

# SENN • VISCIANO • KIRSCHENBAUM • MERRICK P.C.

ATTORNEYS AT LAW
1801 CALIFORNIA STREET, SUITE 4300
DENVER, COLORADO 80202-2604
TELEPHONE  (303) 298-1122
FACSIMILE   (303) 296-9101
www.SennLaw.com

Lee Katherine Goldstein
LGoldstein@Sennlaw.com

March 30, 2005

*SENT VIA FACSIMILE*

Paula C. Dubois
Case Coordinator
American Arbitration Association
950 Warren Avenue
East Providence, Rhode Island  02914

> Re:  *Goldman Sachs Exchange Place Fund, L.P. et al. v. Hasan, et al.,*
> *AAA Case No. 13 168 01990 04*

Dear Ms. Dubois:

We represent the Respondents, Malik M. Hasan, M.D. and Seeme G. Hasan (the "Hasans"), in the above referenced matter.   This letter is in response to your correspondence dated March 18 and March 24, 2005, regarding disclosures made by arbitrator William Barrett.   The Hasans respectfully object to the appointment of Mr. Barrett as an arbitrator in this case.

Mr. Barrett has disclosed that his law firm represents the Trust for Cultural Resources, which issues municipal bonds for institutes such as the Museum of Modern Art.  Mr. Barrett has disclosed that Goldman Sachs is one of the underwriters for these bonds.  This disclosure has caused the Hasans to be concerned regarding potential partiality issues in connection with the appointment of Mr. Barrett.

The  AAA  Rules  for  Commercial  Arbitration  provide  for  disqualification  of arbitrators for partiality:

### R-17. Disqualification of Arbitrator

(a) Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for

(i) partiality or lack of independence,

* * *

(iii) any grounds for disqualification provided by applicable law. * * *

**EXHIBIT**

A

Sᴇɴɴ • Vɪsᴄɪᴀɴᴏ • Kɪʀsᴄʜᴇɴʙᴀᴜᴍ • Mᴇʀʀɪᴄᴋ ᴘ.ᴄ.

Paula C. Dubois
March 30, 2005
Page 2

(b) Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

In this case, the fact that Mr. Barrett is a member of a firm which represents a client whose municipal bonds are underwritten by Goldman Sachs raises reasonable concerns regarding the potential for partiality in favor of the Claimants. Specifically, the potential exists that that a decision adverse to the Claimants could adversely impact Mr. Barrett's firm's client. The Hasans respectfully request that Mr. Barrett be disqualified from serving on the panel.

Very truly yours,

Lee Katherine Goldstein

cc:    Malik M. Hasan, M.D.
       Seeme G. Hasan
       Nancy I. Ruskin, Esq.
       Bruce Featherstone, Esq.

# Senn • Visciano • Kirschenbaum • Merrick P.C

ATTORNEYS AT LAW
1801 CALIFORNIA STREET, SUITE 4300
DENVER, COLORADO  80202-2604
TELEPHONE  (303) 298-1122
FACSIMILE   (303) 296-9101
www.SennLaw.com

Kendel L. Dye
Legal Secretary
KDye@SennLaw.com

March 30, 2005

**TO:**      Paula C. Dubois, AAA
             Nancy Ruskin, Esq.
             Bruce Featherstone, Esq.

**FAX:**     (401) 435-6529
             (212) 225-~~2834~~ 3999
             (303) 626-7101

**FROM:**    Kendel L. Dye

**CLIENT:**  **2958-001**

**CASE NO:**  AAA Case No. 13 168 01990 04

**PAGES (including cover sheet):** 3


**MESSAGE:**

        Please see attached correspondence from Lee Katherine Goldstein, dated March
30, 2005.


Please call me at (303) 298-1122 if you do not receive all pages

Our telecopier number is (303) 296-9101

Original will not follow by mail


THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE
ATTORNEY/WORK PRODUCT PRIVILEGES.  IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE, AND
THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY FACSIMILE.  IF THE PERSON ACTUALLY
RECEIVING THIS FACSIMILE OR ANY OTHER READER OF THE FACSIMILE IS NOT THE NAMED RECIPIENT, OR THE
EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION
OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN
ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE
ADDRESS VIA THE U.S. POSTAL SERVICE.  THANK YOU.

# SENN · VISCIANO · KIRSCHENBAUM · MERRICK P.C

ATTORNEYS AT LAW
1801 CALIFORNIA STREET, SUITE 4300
DENVER, COLORADO 80202-2604
TELEPHONE (303) 298-1122
FACSIMILE   (303) 296-9101
www.SennLaw.com

Kendel L. Dye
Legal Secretary
KDye@SennLaw.com

March 30, 2005

**TO:**        Paula C. Dubois, AAA
              Nancy Ruskin, Esq.
              Bruce Featherstone, Esq.

**FAX:**       (401) 435-6529
              (212) 225-2834 *3997*
              (303) 626-7101

**FROM:**      Kendel L. Dye

**CLIENT:**    2958-001

**CASE NO:**   AAA Case No. 13 168 01990 04

**PAGES (including cover sheet):** 3

**MESSAGE:**

    Please see attached correspondence from Lee Katherine Goldstein, dated March
30, 2005.

              Please call me at (303) 298-1122 if you do not receive all pages

                    Our telecopier number is (303) 296-9101

                        Original will not follow by mail

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY/WORK PRODUCT PRIVILEGES.  IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE, AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY FACSIMILE.  IF THE PERSON ACTUALLY RECEIVING THIS FACSIMILE OR ANY OTHER READER OF THE FACSIMILE IS NOT THE NAMED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

Group Send Report

Time     : Mar-30-05  04:35pm
Tel line : 3032969101
Name     : SENN VISCIANO KIRSCHENBAUM MERRICK P.C.


Job number      :   332

Date            :   Mar-30 04:32pm

Document pages  :   03

Start time      :   Mar-30 04:32pm

End time        :   Mar-30 04:35pm

Successful

    Fax number

        ☎14014356529
        ☎12122253999
        ☎3036267101


Unsuccessful                                                        Pages sent

American Arbitration Association
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President

Christopher Pracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

March 18, 2005

Via Facsimile

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO 80202

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

Dear Parties:

Inasmuch as we were unable to complete the panel from the arbitrator list submitted, we have, in accordance with the Rules, administratively appointed William Barrett. Enclosed please find his biographical data. Also enclosed, please find Arbitrator Barrett's disclosure.

Please advise the Association of any objections to the appointment of Arbitrator Barrett by March 25, 2005, copying the other side.

If any objections are raised, the other party may respond within five (5) business days. The AAA will make a determination regarding the arbitrator's service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten (10) days.

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

Paula C. Dubois
Case Manager
401 431 4789
duboisp@adr.org

Katharine M. Legeros
Supervisor
401 431 4714
LegerosK@adr.org

**EXHIBIT**

8

Encl.

Docketed 3.21.05 KLD

Action Due 3.25 Objs Due
3.29 Conflicts Due

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

## NOTICE OF APPOINTMENT

To: William Barrett

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. If any additional direct or indirect contact arises during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. The AAA will call the facts to the attention of the parties' counsel.

If you are able to accept this responsibility as Arbitrator, please sign and return this form to the AAA.

☐   I HAVE NOTHING TO DISCLOSE.

☐   SEE DISCLOSURE DATED _____

☑   I HEREBY DISCLOSE THE FOLLOWING: (attach additional sheets if necessary, but please type – do not hand write – your disclosures below or provide them in a typed letter which can be forwarded to the parties).

*I have served as arbitrator with Mrs. Ruth Kurtz.*

☑   MY DISCLOSURE WILL IN NO WAY PREVENT ME FROM FAIRLY AND IMPARTIALLY DISCHARGING MY DUTIES AS ARBITRATOR IN THE ABOVE-REFERENCED MATTER.

## THE ARBITRATOR'S OATH

State of New York   }
                SS:
County of New York  }

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

    I attest that the panel biography provided by the American Arbitration Association is accurate and complete.

Dated: *March 18, 2005*     Signed: _____

Sworn before me this *18th* day of *March*   20 05          DEBORAH A. REAGAN

**Contact** American Arbitration Association
950 Warren Avenue
East Providence, RI 02914
telephone: 866-293-4053  facsimile: 401-435-6529

Commercial Panel
**William L.D. Barrett, Esq.**

**Current Employer-Title**   Hollyer Brady Smith & Hines, LLP - Partner

**Profession**   Attorney

**Work History**   Partner, Hollyer Brady Smith & Hines, LLP, 1987-present; Partner/Associate,
Webster & Sheffield, 1963-86.

**Experience**   60% of practice devoted to corporate and securities law matters, including the
representation of a group of mutual funds in all corporate governance matters; creation, maintenance,
and acquisition of funds; and extensive work with the Securities and Exchange Commission.
Involved in the acquisition of companies, construction, and contract matters.  40% of practice devoted
to arbitration and mediation including serving as an arbitrator and mediator, representing parties,
providing advice related to the presentation of issues in arbitration, and serving as an expert witness.
Recipient of the Whitney North Seymour Award, 1993.

**Alternative Dispute Resolution Experience**   Experienced sole arbitrator or panel
chairman for the AAA, 1984 to present.  Heard multimillion-dollar cases involving specialty
chemicals and elevator servicing.  Arbitrated patent and distribution cases relating to aviation
products, industrial pallets (international), consumer products (international), and food distribution.
Arbitrated pharmaceutical cases including a nuclear imaging process, a chemotherapy product, and
temperature measurement devices.  Arbitrated real estate cases including hotel ownership and office
building management.  Arbitrated securities cases relating to brokerage and initial public offerings.
Arbitrated construction cases including Pittsburgh subway system, a steel mill concrete subcontractor,
a pulp mill engineer constructor, a New York City office building interior renovations, and an
electrical contractor (transportation).  Arbitrated international cases relating to securities and
executive employment.  As a mediator, handled approximately 30 significant cases inkling disputes
about indemnification from multimillion-dollar RICO and fraud case; renovation of interior of New
York City office space; electric utility (construction, fuel cost, and contract matters); acquisitions of
textile business, wireless technology company, domestic insurance company by Finnish company,
office supplies company, and title insurance business by major thrift institution; dispute between a
computer software vendor and a New York City department; dispute between a county and New York
State office; and commercial cases from major department store's bankruptcy.

**Alternative Dispute Resolution Training**   ACE003 - Arbitrator Ethics & Disclosure,
05/04; AAA Construction Industry Arbitrator II Training, New York, 3/02; AAA Arbitrator Update
2001; AAA Construction Arbitrator Training, New York, 3/97; AAA LCCP Arbitrator Training, New
York 4/93; various other ADR training.

*William L.D. Barrett, Esq.*

**Professional Licenses**   Admitted to the Bar:  New York, 1964; U.S. District Court: Southern (1966) and Eastern (1966) Districts of New York; U.S. Court of Appeals, Second Circuit, 1967.

**Professional Associations**   American Arbitration Association (Past Board of Directors; Past Executive Committee; Budget Finance and Administration Committee, Past Chair).

**Education**   Yale University (BA-1960); Harvard University (LLB-1963).

**Publications and Speaking Engagements**   "Managing Cross-Examination: The Arbitrator's Perspective," ADR CURRENTS, Summer 1996; "Measures of Quality," DISPUTE RESOLUTION JOURNAL, April 1996; "Tactics of an Arbitrator," DONOVAN LEISURE ADR PRACTICE BOOK, Wiley Publications, 1990; "Arbitration of a Complex Commercial Case: Practical Guidelines for Arbitrators and Counsel," THE ARBITRATION JOURNAL, December 1986.

**Compensation**          $350.00 Per Hour
Hourly rate for study time.

**Languages**  French

**Citizenship**  United States of America

**Locale**  New York, NY

*William L.D. Barrett, Esq.*

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date: March 18, 2005

To
Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO 80202

Fax Number:        212-225-3999
                     303-296-9101

From: Paula C. Dubois

Number of Pages: (including cover) 5

Re: 13 168 01990 04
     Goldman Sachs 1998 Exchange Place Fund, L.P.,
     Goldman Sachs 1999 Exchange Place Fund, L.P.,
     Goldman Sachs Management Partners, L.P., The
     Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
     Goldman Sachs Management, Inc.
     and
     Malik M. Hasan, M.D. and Seeme G. Hasan

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

March 24, 2005

Via Facsimile

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO 80202

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

Dear Parties:

Arbitrator Barrett made the enclosed disclosure.

Please advise the Association of any objections to the appointment of Arbitrator Barrett by March 31, 2005, copying the other side. The arbitrator shall not be copied on any comments related to the disclosure.

If any objections are raised, the other party may respond within five business days. The AAA will make a determination regarding the arbitrator's continued service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten days.

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

Paula C. Dubois
Case Manager
401 431 4789
duboisp@adr.org

Katharine M. Legeros
Supervisor
401 431 4714
LegerosK@adr.org

Docketed 3-24-05 KLD

Action Due 3-31-05 (b) Due

Paula Dubois

Sent:      Wednesday, March 23, 2005 10:44 AM
To:        Paula Dubois
Subject:   Goldman Sachs

Dear Paula:

Our office has run a computer check on this case and I have the following additional disclosures:

My firm represents the Trust for Cultural Resources which issues municipal bonds for institutions such as the Museum of Modern Art. Goldman Sachs is one of the underwriters for these bonds.

Cleary Gottlieb represented a party in an arbitration in 2002 where my firm represented the opposing party.

Please advise the parties of these disclosures.

Many thanks for your help.

Bill Barrett

Paula Dubois

Sent:      Wednesday, March 23, 2005 12:03 PM
To:        Paula Dubois
Subject:   Goldman Sachs

Dear Paula:

Please add to the disclosure I sent you this morning that I have no personal involvement with these matters and they would not affect my ability to be impartial in this arbitration.

I should have added this in the original letter.

Many thanks,

Bill Barrett

American Arbitration Association
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date: March 24, 2005

To
Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY  10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO  80202

Fax Number:          212-225-3999
                     303-296-9101

From: Paula C. Dubois

Number of Pages: (including cover) 4

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

March 31, 2005

Via Facsimile

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO 80202

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

Dear Parties:

This will acknowledge receipt of a letter dated March 30, 2005, from Respondent, a copy of which has been exchanged with the other party.

At this time we are requesting the comments of Claimant with respect to Respondent's letter. Said comments are to be received by April 7, 2005.

Inasmuch as we were unable to complete the panel from the arbitrator list submitted, we have, in accordance with the Rules, administratively appointed Ronald Case Sharp. Enclosed please find Arbitrator Sharp's biographical data, signed oath and notice of fee arrangements.

Please advise the Association of any factual objections to the appointment of Ronald Case Sharp by April 7, 2005, copying the other side.

If any objections are raised, the other party may respond within five (5) business days. The AAA will make a determination regarding the arbitrator's service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten (10) days.

**EXHIBIT**

C

Docketed ___3:31.05 KLD___

Action Due __4.7.05__ _C's Comments Due_

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

Paula C. Dubois
Case Manager
401 431 4789
duboisp@adr.org

Katharine M. Legeros
Supervisor
401 431 4714
LegerosK@adr.org

Encl.

In the Matter of Arbitration Between:

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

## NOTICE OF APPOINTMENT

**To: Ronald Case Sharp**

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☑ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☑ |
| 7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☑ |
| 8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? | ☐ | ☑ |

|  | Yes | No |
|---|---|---|
| 9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? | ☐ | ☒ |
| 10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration? | ☐ | ☒ |
| 11. Have you ever sued or been sued by either party or its representative? | ☐ | ☒ |
| 12. Do you or your spouse own stock in any of the companies involved in this arbitration? | ☐ | ☒ |
| 13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators? | ☐ | ☒ |
| 14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? | ☐ | ☒ |

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☒ I have conducted a check for conflicts and have **nothing to disclose.**

☐ I have conducted a check for conflicts and have **made disclosures on an attached sheet.**

## THE ARBITRATOR'S OATH

State of **Connecticut**  }
County of **Fairfield**   }  ss: **BRIDGEPORT**

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: **March 29, 2005**    Signed: _____
                                    RONALD CASE SHARP

Sworn before me this **29** day of **March**, **2005**

**JOSEPH LIPNICKAS**
**NOTARY PUBLIC**

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
   Goldman Sachs 1998 Exchange Place Fund, L.P.,
   Goldman Sachs 1999 Exchange Place Fund, L.P.,
   Goldman Sachs Management Partners, L.P., The
   Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
   Goldman Sachs Management, Inc.
   and
   Malik M. Hasan, M.D. and Seeme G. Hasan

## Notice of Compensation Arrangements

To: Ronald Case Sharp

You have been invited to serve as an arbitrator in the above matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your panel biography states otherwise, you are willing to comply with the Association's *Billing Guidelines for Commercial, Construction, and Employment Neutrals*, which are enclosed. If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your panel biography, you must notify the Association prior to accepting your appointment so that the parties can determine whether they still seek your services as an arbitrator.

### *Your Compensation*

This matter is being administered under the Regular procedures of the Commercial Arbitration Rules. As such, you will be compensated at the following rates, per the rate structure indicated on your biographical record:

| | |
|---|---|
| Hearing Time: | $275.00 per hour |
| Study Time: | $225.00 per hour |
| Travel Time: | $150.00 per hour |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

### *Your Expenses*

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your Case Manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

*Deposits and Payment*

Payment for your compensation is the obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payment. During the course of the proceeding the Case Manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, the Case Manager will advise you of the total amount on deposit. Should the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees. *The time to deal with this issue is prior to the commencement of the hearings.* Should you decide to suspend the proceedings, your Case Manager can assist you in issuing an appropriate order to the parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform the Case Manager *prior to exhausting the current deposit.* The Case Manager will then make arrangements with the parties for additional deposits per your instructions.

In order to receive payment, please submit bills promptly. Your bills should be submitted in a format that is presentable to the parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the AAA will release payment from the amounts deposited by the parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one party's deposit to cover another party's obligation without written permission to do so.

In the event your Award is delivered prior to payment by the parties of the agreed upon compensation, the Association is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The Association may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the Association be liable for any failure to collect any or all the monies due. The Association is authorized to subtract a reasonable amount for collection and attorney's fees.

## Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the AAA's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your Case Manager.

## ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may view this information by logging in to the AAA's Neutrals eCenter. You may also contact your Case Manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _R C Shp_   Ronald Case Sharp   Date: _3/29/05_

**Contact** American Arbitration Association
950 Warren Avenue
East Providence, RI 02914
telephone: 866-293-4053  facsimile: 401-435-6529

**Commercial Panel**
**Ronald Case Sharp, Esq.**

**Current Employer-Title**  Pullman & Comley, LLC - Partner

**Profession**  Attorney - Corporate Law, Tax Law, General Business Law, Securities, Contracts, Mergers and Acquisitions, Employment, Banking, Business Succession, Estate Planning

**Work History**  Partner, Chair of Business Enterprises Department and Chair of the International Law Section, Pullman & Comley, LLC, 1991-present; Partner, Brody & Brody, 1964-91.

**Experience**  Engaged as a specialist in business and tax planning and transfers, the purchase and sale of businesses, family-owned businesses, estate planning, operations and administration and the succession of family owned business from one generation to another.  Represented clients involved in complex business and financial transactions, the sale or purchase of businesses, international and commercial transactions, antitrust issues, tax-free organizations and business restructuring and dissolutions.  Represents many non-profit organizations involved in obtaining state and federal grants.  Over 20 years' experience as a lecturer on business and tax subjects for the Connecticut Bar Review and for various professional and trade groups.  Represents medical professionals regarding their medical practice, ownership of medical buildings, operation of affiliated health-related enterprises and compliance with federal and state laws, including Medicare regulations.  Represents foreign clients in the U.S. including a large French manufacturer and a foreign partner in a manufacturing joint venture.  Established in the U.S. a business and factory for a Danish manufacturer using industrial development bonds.  Established leveraged employee stock ownership plans.  Has handled numerous estates, both simple and complex, including estate planning.  Represents closely held businesses, professional practices and lending institutions in all business matters, including commercial transactions, tax and business planning, financing, retirement plans, reorganizations, acquisitions, mergers and dissolutions.

**Alternative Dispute Resolution Experience**  Experienced arbitrator in commercial and securities disputes.  Has handled hearings in Bridgeport, Stamford, and New Haven, Connecticut, over the years, either as the sole arbitrator, a member of a three-arbitrator panel, or as the chairperson of a panel, with awards ranging from $1 to over $1 million, including the following:  sole arbitrator of a dispute to determine the value of a minority equity interest in a managed care organization owned by a hospital and a publicly traded HMO; panel chairperson on a dispute over substantial damages and recoverable assets on a securities fraud matter between a broker and his brokerage firm employer with a reasoned award; and sole arbitrator of a contract and employment dispute with a reasoned award.

**Alternative Dispute Resolution Training**  Attended AAA Neutrals Conference, Atlanta,

*Ronald Case Sharp, Esq.*
*22261*

10/04; ACB004 - Practical Tips for Dealing with Delay Tactics of Parties and Advocates, Atlanta,
10/04; Arbitrator Roundtable on Discovery: Enough is Enough, or is it?, East Hartford 9/04;
Arbitrator Roundtable: The Revised Commercial Arbitrator Code of Ethics; What Does it Mean for
You?, East Hartford, 2/04; Attended AAA Neutrals Conference, Providence, 8/03; ACB002 - Pro Se:
Managing Cases Involving Self-Represented Parties, Providence, 8/03; Annual Arbitrator Update
2002; AAA Commercial Arbitrator II Training, Hartford, 2/01; AAA Commercial Arbitrator
Training, Orlando, 10/98; Commercial Arbitrator Training Workshop, Hartford, 1994; Mediator
Training Workshop, Hartford, 1994.

**Professional Licenses**  Admitted to the Bar: Connecticut, 1964; U.S. District Court, District
of Connecticut, 1964.

**Professional Associations**  American Bar Association (Tax Section, Continuing Legal
Education Committee of Closely Held Corporations, Vice Chairman); Connecticut Bar Association.

**Education**  Yale University (BA-1957); U.S. Marine Corps School (Lieutenant-1961); University
of Connecticut (JD-1964).

**Publications and Speaking Engagements**  Guest lecturer on arbitration, Fairfield
University Business School.

**Compensation**        $250.00 Per Hour
$200.00 per hour for study time and executive sessions.  No travel time charge for hearings in New
Haven or Fairfield counties in Connecticut.

**Citizenship**  United States of America

**Locale**  Bridgeport, CT

*Ronald Case Sharp, Esq.*



American Arbitration Association
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date:  March 31, 2005

To
Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY  10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO  80202

Fax Number:            212-225-3999
                       303-296-9101

From:  Paula C. Dubois

Number of Pages:  (including cover) /O

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS
ADDRESSED.  IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR
OTHERWISE EXEMPT FROM DISCLOSURE.  IF YOU ARE NOT THE INTENDED RECIPIENT OR THE
PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS
FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED
ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

May 17, 2005

Via Facsimile

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY  10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO  80202

Re: 13 168 01990 04
      Goldman Sachs 1998 Exchange Place Fund, L.P.,
      Goldman Sachs 1999 Exchange Place Fund, L.P.,
      Goldman Sachs Management Partners, L.P., The
      Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
      Goldman Sachs Management, Inc.
      and
      Malik M. Hasan, M.D. and Seeme G. Hasan


Dear Parties:

Inasmuch as we were unable to complete the panel from the arbitrator list submitted, we have, in accordance with the Rules, administratively appointed Richard Mattiaccio. Enclosed please find Mr. Mattaccio's biographical data and disclosure.

Please advise the Association of any objections to the appointment of Richard by May 24, 2005, copying the other side.

If any objections are raised, the other party may respond within five (5) business days. The AAA will make a determination regarding the arbitrator's service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten (10) days.

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

Paula C. Dubois
Case Manager
401 431 4789
duboisp@adr.org

Katharine M. Flanagan
Supervisor
401 431 4714
FlanaganK@adr.org

**EXHIBIT**

D

Docketed  5-17-05 KLD

Action Due  5-24-05 Obj's Due

Encl.

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

## NOTICE OF APPOINTMENT

**To:**    Richard Mattiaccio

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☒ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☒ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☒ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☒ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☒ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☒ | ☒ No. RL9M |

**7.** Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? ☐ ☒

**8.** Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? ☐ ☒

**9.** Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? ☒ ☐

**10.** Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration? ☐ ☒

**11.** Have you ever sued or been sued by either party or its representative? ☐ ☒

**12.** Do you or your spouse own stock in any of the companies involved in this arbitration? ☒

**13.** If there is more than one arbitrator appointed to this case, have you had any professional or social  relationships with any of the other arbitrators? ☐ ☒

**14.** Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? ☐ ☒

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☐   I have conducted a check for conflicts and have **nothing to disclose.**

☒   I have conducted a check for conflicts and have **made disclosures on an attached sheet.**

<h2 style="text-align:center">THE ARBITRATOR'S OATH</h2>

State of  New York   ⎫
                 ⎬   SS:
County of  New York  ⎭

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: _May 13, 2005_    Signed: _Richard L. Mattiaccio_

Sworn before me this 13 day of May , 20 05

_Kostadina Lambrou_

KOSTADINA LAMBROU
Notary Public, State of New York
No. 01LA5041943
Qualified in Queens County
Commission Expires April 10, 2008

## Disclosures of Arbitrator Richard L. Mattiaccio

1.  In the early or mid-1990's, I served as an arbitrator in a commercial arbitration in New York in which Mr. Gitter and his then-firm, Paul Weiss, served as counsel for one of the parties. I do not recall whether Mr. Gitter represented claimant or respondent. I do not recall any of the details of the award or of the case, other than that the product was baby wipes manufactured in Israel. If the parties request further information regarding this matter, I could review a file that is now in off-site storage. (Due to a less-than-perfect conversion to a new computer system since that case, I am unable to access any information of that vintage by computer.)

2.  I have served as counsel in two separate litigated matters in which Cleary Gottlieb has been opposing counsel. In the early 1990's, I represented Ferrara Foods, a former U.S. importer against the Italian pasta company, DeCecco, in a case in the S.D.N.Y. in which my client alleged breach of an agreement to renew the exclusive distribution agreement. The case was settled after denial of defendant's summary judgment motion. The Cleary partner handling the matter for defendant was Jonathan Blackman. In the late-1990's, I represented Ugo Castellano, an individual plaintiff in a federal securities fraud case in the S.D.N.Y. against Young & Rubicam, in which plaintiff alleged a failure to disclose material information regarding the value of his shares at the time he agreed to retire, giving rise to a call on his shares at book value. Following an appeal of summary judgment, the case was tried to a jury, resulting in a verdict for plaintiff in 2002, and the case was settled. The Cleary partner representing Y&R was Lawrence Friedman.

3.  From approximately October 1997 through October 1999, in connection with her employment as Vice President of the New York branch of the French Bank CIC-Union Européenne, Martha Skidmore, who is now an associate at Pavia & Harcourt LLP, was the bank's account officer responsible for the lending relationship with the Goldman Sachs Group. (This occurred before Ms. Skidmore attended law school.) In that capacity, Ms. Skidmore managed the bank's credit exposure to Goldman Sachs entities and interacted regularly with members of Goldman's treasury department, especially with respect to their needs for letters of credit.
    I generally do not communicate with attorneys at my firm regarding matters in which I serve as an arbitrator, and I would not communicate with Ms. Skidmore regarding this case.

I do not believe the matters disclosed herein would affect my impartiality or ability to perform my oath.

May 13, 2005

Richard L. Mattiaccio

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

## Notice of Compensation Arrangements

**To:**   Richard Mattiaccio

You have been invited to serve as an arbitrator in the above matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your panel biography states otherwise, you are willing to comply with the Association's *Billing Guidelines for Commercial, Construction, and Employment Neutrals*, which are enclosed. If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your panel biography, you must notify the Association <u>prior to accepting your appointment</u> so that the parties can determine whether they still seek your services as an arbitrator.

### *Your Compensation*

This matter is being administered under the Regular procedures of the Commercial Arbitration Rules. As such, you will be compensated at the following rates, per the rate structure indicated on your biographical record:

| | |
|---|---|
| Hearing Time: | $3,000.00 per day |
| Study Time: | $425.00 per hour |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

### *Your Expenses*

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your Case Manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

*Deposits and Payment*

Payment for your compensation is the obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payment. During the course of the proceeding the Case Manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, the Case Manager will advise you of the total amount on deposit. Should the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees. *The time to deal with this issue is prior to the commencement of the hearings.* Should you decide to suspend the proceedings, your Case Manager can assist you in issuing an appropriate order to the parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform the Case Manager prior to exhausting the current deposit. The Case Manager will then make arrangements with the parties for additional deposits per your instructions.

In order to receive payment, please submit bills promptly. Your bills should be submitted in a format that is presentable to the parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the AAA will release payment from the amounts deposited by the parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one party's deposit to cover another party's obligation without written permission to do so.

In the event your Award is delivered prior to payment by the parties of the agreed upon compensation, the Association is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The Association may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the Association be liable for any failure to collect any or all the monies due. The Association is authorized to subtract a reasonable amount for collection and attorney's fees.

## Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the AAA's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your Case Manager.

## ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may contact your Case Manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _Richard L. Mattiaccio_          Date: _5/13/05_

**Contact** American Arbitration Association
950 Warren Avenue
East Providence, RI 02914
telephone: 866-293-4053  facsimile: 401-435-6529

**Commercial Panel**
**Richard L. Mattiaccio, Esq.**

**Current Employer-Title**  Pavia & Harcourt - Partner, Chair of Litigation and Arbitration Practice Group

**Profession**  Litigating Attorney - International, Commercial, Licensing, Distribution and Franchise, Trademark/Copyright, Antitrust, Business Torts, Media and Entertainment, Securities, Banking, Product Liability, Executive Employment, Art Law

**Work History**  Pavia & Harcourt, 1983-present; Associate, Simpson, Thacher & Bartlett, 1979-83; Law Clerk, Chief Judge Daniel M. Friedman, U.S. Court of Claims, 1978-79.

**Experience**  Litigation practice has included pre-trial, trial, and appellate work in complex civil cases involving the above-mentioned areas of law; counseling European clients in the avoidance of litigation; negotiating and drafting exclusive license and distribution agreements; advice in connection with the purchase and sale of privately-held companies or their assets and in connection with the merger of professional services firms.  Recent experience as an advocate in litigation has included:  defense of an Italian bank in class actions brought against foreign bank defendants pursuant to U.S. antitrust and anti-terrorism laws; representation of plaintiff, a retired manager-director-shareholder of an employee-owned advertising agency, in a federal securities fraud case that proceeded to a jury trial and verdict for plaintiff; defense of Lanham Act, RICO and common law claims brought by alleged New Jersey and Florida franchisees of an Italian supplier of high-fashion clothing and accessories; service as plaintiffs' counsel and as defense counsel in claims of wrongful termination or non-renewal of exclusive licensing, distribution and franchise agreements in a variety of fields; representation of an oppressed minority shareholder of a Delaware corporation manufacturing in South Carolina, resulting in the buy-out of the majority shareholder; defense of a licensor/supplier of high-fashion eyewear in a case in which the U.S. licensee/distributor sought to enjoin termination of the exclusive license agreement; representation of terminated executives and employers of terminated executives in various disputes as to whether there was cause for termination under the governing employment agreements; enforcement of the rights of the owner of a film library; and  representation of the Republic of Italy, in the U.S. District Court, Southern District of New York and U.S. Court of Appeals, Second Circuit, to obtain the repatriation of a fourth-century B.C. artifact of cultural significance.

**Alternative Dispute Resolution Experience**  Experience as a neutral has included service as sole arbitrator, chair, and panel member in claims of wrongful termination of license and distribution agreements; shareholder disputes in privately-held companies; contract dispute between a hedge fund manager and the founders of funds under management; an investment banker's claim to a guaranteed minimum bonus; a dispute regarding termination of a patent consulting and representation agreement; a claim of infringement of a certification mark; an ASCAP appeal; a dispute between a

*Richard L. Mattiaccio, Esq.*

performing artist and his manager as to scope of representation; and partnership disputes, including a claim brought under a law firm partnership agreement. Advocacy has included representation of claimants/respondents in international, commercial and large/complex arbitration cases arising from termination or failure to renew license to manufacture, exclusive supply, franchise-type or distribution agreements; represented claimant is oil services supplier in UNCITRAL arbitration against a multi-national organization; defense of a claim for stipulated damages under an international aircraft charter agreement; representation of the purchaser of certain assets and liabilities of an engineering firm in an arbitration to adjust the purchase price; and representation of a minority shareholder in an arbitration brought to determine the fair value of his shares.

**Alternative Dispute Resolution Training**  Faculty, AAA Workshop, Safeguarding the Award: Top Strategies for Protecting an Arbitration Award from Vacatur, New York, December 7, 2004; Attended AAA Neutrals Conference, Atlanta, 10/04; ACE001 - Arbitration Awards: Safeguarding, Deciding & Writing Awards, Atlanta, 10/04; faculty, AAA Workshop, Arbitration Awards, Tips & Traps-Reduce or Minimize Challenges When the Case is Over, New York, September 22, 2004; Arbitrator Update 2004, Atlanta, 10/04; Annual Arbitrator Update 2002; AAA Commercial Arbitrator II Workshop, New York, 2/01; AAA Commercial Arbitrator Training, New York, 9/00; AAA Advanced Arbitrator Training, New York, 4/91.

**Professional Licenses**  Admitted to the Bar: New York, 1979; U.S. District Court: Southern and Eastern Districts of New York; U.S. Court of Appeals: Second, District of Columbia, and Federal Circuits; U.S. Supreme Court.

**Professional Associations**  New York State Bar Association (Commercial Section; Federal Litigation Section); Association of the Bar of the City of New York (Product Liability Committee, Past Chair; Professional Responsibility Committee).

**Education**  Columbia University (BA-1975; JD-1978).

**Publications and Speaking Engagements**  Speaker, "Avoiding the Arbi-Trial: How B2B Arbitration Can Be Expeditious and Cost Effective," at ABA Section of Dispute Resolution, Sixth Annual Conference, April 17, 2004; co-editor, chapter on Italy, INTERNATIONAL E-COMMERCE, CCH, 2001; author of articles for non-lawyers on U.S. legal practice, published in several languages.

**Compensation**      $3,000.00 Per Day
                      $425.00 Per Hour
Hourly rate applies to conferences, study time, and deliberations. The first three hours of conference and study time are without charge.

**Languages**  Italian

*Richard L. Mattiaccio, Esq.*

**Citizenship** United States of America, Italy

**Locale** New York, NY

*Richard L. Mattiaccio, Esq.*

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

# FAX

Date: May 17, 2005

To
Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY  10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO  80202

Fax Number:             212-225-3999
                        303-296-9101

From:  Paula C. Dubois

Number of Pages: (including cover)  12

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS
ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR
OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE
PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS
FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED
ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

American Arbitration Association
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

April 27, 2007

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

**VIA E-MAIL**

Bruce A. Featherstone, Esq.
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 2400
Denver, CO 80202

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006

Glenn W. Merrick, Esq.
G.W. Merrick & Associates, LLC
5445 DTC Parkway
Suite 912
Greenwood Village, CO 80111

Re: 13 168 01990 04
    Malik M. Hasan, M.D. and Seeme G. Hasan
    (claimants)
    and
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc. John Does 1-100
    and Lender Parties 1-100 (Respondents)

Dear Parties:

William Barrett has made a disclosure, as detailed in the enclosed letter dated April 27, 2007.

Please advise the Association of any objections to the appointment of Mr. Barrett by May 4. 2007, copying the other side. The arbitrator shall not be copied on any comments related to the disclosure.

You may also share and manage correspondence through AAA's WebFile. The Case Manager will determine who should receive viewing privileges and grant access accordingly.

If any objections are raised, the other party may respond within five business days. The AAA will make a determination regarding the arbitrator's continued service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten days



EXHIBIT

E

Please do not hesitate to contact me with any questions and/or concerns.

Sincerely,

Lilay Kollie for Hannah R. Cook
Case Manager
401 431 4708
cookh@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

Encl.

Dear Hannah:

Would you please advise the parties and the other arbitrators of the following disclosure.

It is expected that on May 4, 2007, Hollyer Brady Barrett and Hines, where I have been a partner for 20 years, will be acquired by Butzel Long PC, based in Detroit. Hollyer Brady will become the New York City office of that firm. I will become a shareholder of that firm.

A conflicts check of that firm has turned up the following:

Butzel Long has performed real estate work for Goldman Sachs Europe Limited.

It represents National life Insurance Company in a matter adverse to Goldman Sachs.

These matters would not affect my ability to be an impartial arbitrator in this case.

Many thanks for your help.

Bill Barrett

---

See what's free at AOL.com.

4/27/2007

<u>RICHARD L. MATTIACCIO  SUPPLEMENTAL ARBITRATOR DISCLOSURE</u>

Malik M. Hasan, M.D. and Seeme G. Hasan, v. Goldman Sachs 1998 Exchange Place
Fund, L.P., et. al


AAA Commercial Rules Case No. 13 168 01990 04


Disclosure Date:  May 29, 2007


I have the following disclosure:

   I will be leaving Pavia & Harcourt LLP (P&H) in July 2007 to become a partner in
   Squire Sanders & Dempsey LLP.  I will be joined in this new endeavor by two P&H
   partners, Steven Skulnik and Victor Genecin.  We will be located in the New York
   office:

Squire Sanders & Dempsey, LLP

350 Park Avenue

New York, New York 10022-6022

Tel: 212.872.9800

I am not aware of any reason why the matters disclosed herein would affect in any way
my neutrality in this case.

I request that the parties and their counsel disclose at this time any contacts they may
have had with me, P&H or Squire Sanders & Dempsey LLP that are not mentioned in
this or prior disclosures I have made, and that the parties and their counsel update their
disclosures as the case proceeds.


_____
                    Richard L. Mattiaccio

**EXHIBIT**

F

-----Original Message-----
From: William BARRETT [mailto:BARRETT@butzel.com]
Sent: Sat 9/22/2007 3:28 PM
To: STKaiser@cgsh.com; rsharp@pullcom.com; rmattiaccio@ssd.com
Cc: cookh@adr.org; mgitter@cgsh.com; bfeatherstone@featherstonelaw.com;
Glenn W. Merrick
Subject: Re: Hasan et al. v. Goldman Sachs 1998 Exchange Place Fund,L.P. et
al., Case No. 13 168 01990 04

Dear All:

Please understand that a New York panel would not consider it seemly to give
cognizance to papers served on the holy day, and the same will not be
reviewed until the next business day.

WLD Barrett

-----Original Message-----
From: "Stephen T Kaiser" <STKaiser@cgsh.com>
To: BARRETT, William <BARRETT@butzel.com>
rsharp@pullcom.com
rmattiaccio@ssd.com
CC: cookh@adr.org
GITTER, Max <mgitter@cgsh.com>
bfeatherstone@featherstonelaw.com
gwm@gwmerrick.com
Creation Date: 9/22 2:08 pm
Subject: Fw: Hasan et al. v. Goldman Sachs 1998 Exchange Place Fund, L.P. et
al., Case No. 13 168 01990 04

Dear Arbitrators,

Respondents respectfully request that the Panel take no action on Mr.
Merrick's requests, which would entail serious prejudice to Respondents,
until Mr. Gitter has had an opportunity to respond. Today is Yom Kippur
and Mr. Gitter cannot do so, and Mr. Featherstone cannot respond as he is
currently out of the country. Mr. Gitter will respond to Mr. Merrick's
requests by Monday morning.

Respectfully,

_____
Stephen T. Kaiser
Cleary Gottlieb Steen & Hamilton LLP
Tel: 212 225 2769
email: STKaiser@cgsh.com


"Glenn W. Merrick" <gwm@gwmerrick.com>
22 September 2007  12:34 PM

To
"William BARRETT" <barrett@butzel.com>, rsharp@pullcom.com,
rmattiaccio@ssd.com
cc
cookh@adr.org, "Max GITTER" <mgitter@cgsh.com>,

EXHIBIT

G

bfeatherstone@featherstonelaw.com, Mmhasanmd@aol.com
Subject
RE: Hasan et al. v. Goldman Sachs 1998Exchange Place Fund, L.P. et al.,
Case No. 13 168 01990 04

Dear Arbitrators:

In light of the arbitration panel's ruling extending the time for the
Goldman Sachs Respondents to produce the supplemental discovery responses
ordered by the panel, the Hasans respectfully request a one (1) week
extension of the deadline for the production and submission of their
expert reports.  The Hasans observe that the additional materials are
likely more than trivial in volume (according to Mr. Gitter's assertion as
to the length of time it will take to comply) and these materials may
materially impact the expert opinions/reports to be furnished by the
Hasans.

In addition, the Hasans respectfully request that the panel reconsider
Procedural Order No. 22 only insofar as it provides that the hearing in
December will include evidence relating to attorneys fees incurred by the
Goldman Sachs Respondents' in connection with the judicial proceedings in
Denver and New York.  The Hasans respectfully submit that such evidence
will be necessary only if it is determined that the Goldman Sachs
Respondents are entitled to an award of attorney fees for those
proceedings (the liability issue).  Much has been made by the Goldman
Sachs Respondents about the alleged cost of these proceedings.  It would
seem to make sense not to cause the parties to incur the expense of
battling over the amount of these claimed fees (including expert reports
and testimony) at the December hearing because the arbitration panel may
conclude that the Goldman Sachs Respondents are not entitled to recover
such fees.  If the ruling is to the contrary, of course, the battle over
the amount, reasonableness and necessity of such fees can be heard by the
arbitration panel at a later date.

Thank you for your kind attention to these requests.

Respectfully,

Glenn W. Merrick
G.W. MERRICK & ASSOCIATES, LLC
5445 DTC Parkway, Suite 912
Greenwood Village, Colorado 80111
Telephone:    303-831-9400
Facsimile:    303-771-5803
Cell:         720-839-7553
Email:        gwm@gwmerrick.com
Website:      www.gwmerrick.com

IRS Circular 230 Disclosure: To ensure compliance with U.S. Treasury
Regulations governing tax practice, we inform you that:  Any U.S. tax
advice contained in this communication (including attachments) was not
written to be used for and cannot be used for (i) purposes of avoiding any

tax related penalties that may be imposed under Federal tax laws, or (ii) the promotion, marketing or recommending to another party of any transaction or matter addressed herein.

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify G.W. MERRICK & ASSOCIATES, LLC at 303-831-9400 and purge the communication immediately without making any copy or distribution. of town until the end of the week, I submit this emergency application by email rather than by formal brief.  Respondents believe good cause is shown in the substance of the application, and given the brevity of this document, it does not appear to make any sense to formally separate the showing of good cause from the application (which in any event would simply duplicate one another). This message is being sent from a law firm and may contain confidential or privileged information.  If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.


To comply with U.S. Treasury Regulations: This communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the tax laws of the United States, or promoting, marketing or recommending to another party any transaction or matter addressed in this communication (and any attachment).

Confidentiality Statement:
This message (including any attachments) is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information that is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from disseminating or distributing this information (other than to the intended recipient) or copying this information. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (313) 225-7000. To learn more about Butzel Long, please visit our website at http://www.butzel.com

## RICHARD L. MATTIACCIO  SUPPLEMENTAL ARBITRATOR DISCLOSURE

Malik M. Hasan, M.D. and Seeme G. Hasan, v. Goldman Sachs 1998 Exchange Place Fund, L.P., et. al.

AAA Commercial Rules Case No. 13 168 01990 04

Disclosure Date:  October 11, 2007

I have the following disclosure:

On May 29, 2007, I made a supplemental disclosure that I would be leaving Pavia & Harcourt LLP (P&H) in July 2007 to become a partner in Squire Sanders & Dempsey ("SSD").  I indicated at that time that I was not aware of any reason why the move to SSD would affect in any way my neutrality in this case.  I also requested that the parties and their counsel disclose any contacts they may have had with me, P&H or SSD that were not mentioned in my disclosures.  I am not aware of any response from any attorney or party to my request.

My May 29, 2007 disclosure followed a conflicts check conducted by SSD based on a list of parties and counsel in all matters, including this arbitration, that I anticipated might follow me to SSD.  I had been informed just prior to my May 29, 2007 disclosure by the partner responsible for SSD's firm-wide Advocacy Group that SSD's conflicts check turned up clean.

When I realized this week that Claimant was making an application to have me removed as arbitrator for potentially undisclosed conflicts, I requested a new conflicts check be done at SSD in order to update, at least, my disclosures.  I learned this afternoon that one or more Goldman Sachs-related entities are clients of SSD.  I do not yet know why the SSD conflicts check failed to turn this up in April/May 2007. I am writing immediately so that the parties can be made aware of this fact as soon as possible.

I have not up to now been influenced in any way by the SSD/Goldman Sachs connection, since I was not aware of it. It may be that I could continue to serve with the construction of an appropriate ethical wall, but I leave that for others to decide.  If there is any interest in such an approach, I would have to learn more about, and then make more detailed disclosures regarding the SSD/Goldman Sachs relationship.

Please confirm receipt of this disclosure by counsel for all parties.  Thank you.

Richard L. Mattiaccio



 American Arbitration Association
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

January 3, 2008

Via Electronic Mail

William L.D. Barrett, Esq.
Butzel Long
380 Madison Avenue, 22nd Floor
New York, NY 10017

Mr. Ronald Case Sharp, Esq.
Pullman and Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06604

Re: 13 168 01990 04
    Malik M. Hasan, M.D. and Seeme G. Hasan
    (Claimants)
    and
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc. John Does 1-100
    and Lender Parties 1-100 (Respondents)


Dear Arbitrators:

The American Arbitration Association is requesting that the arbitrators review and make
disclosures with regard to the following entities and the firms, arbitrators and/or other
participants in this case:

- Pacific Capital Cash Assets Trust
- The Alger Institutional Funds
- Enbridge Energy Partners
- Peoples Bank Credit Card Master Trust
- The Trust for Cultural Resources
- The Museum of Modern Art
- Goldman Sachs Europe Limited

With respect to each of these entities, please make full and complete disclosure in accordance
with the Code of Ethics and the AAA's rules. Note also that an arbitrator's obligation to make
disclosures is ongoing, and should you have any other disclosures you should make them
promptly and immediately upon becoming aware of the potential conflict.

**EXHIBIT**

tabbies®          I

Please forward your response, if any, no later than January 10, 2008.

Sincerely,

Hannah R. Cook
Case Manager
401 431 4708
cookh@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

cc:     Max Gitter
        Bruce Featherstone
        Glenn Merrick

**Hannah R. Cook**

| | |
|---|---|
| **From:** | William BARRETT [BARRETT@butzel.com] |
| **Sent:** | Thursday, January 03, 2008 3:24 PM |
| **To:** | Hannah R. Cook; Ronald C. Sharp |
| **Cc:** | mgitter@cgsh.com; bfeatherstone@featherstonelaw.com; Glenn W. Merrick; Marc L. Schatten |
| **Subject:** | Re: AAA CASE 13 168 01990 04--Hasan and Goldman |

Dear All:

Re: 13 168 01990 04
      Malik M. Hasan, M.D. and Seeme G. Hasan
      (Claimants)
      and
      Goldman Sachs 1998 Exchange Place Fund, L.P.,
      Goldman Sachs 1999 Exchange Place Fund, L.P.,
      Goldman Sachs Management Partners, L.P., The
      Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
      Goldman Sachs Management, Inc. John Does 1-100
      and Lender Parties 1-100 (Respondents)

The American Arbitration Association has requested that the arbitrators review and make disclosures with regard to the following entities and the firms, arbitrators and/or other participants in this case:

I am responding to the above request with respect to myself and my law firm (Butzel Long "BL" and its predecessor (Hollyer Brady Barrett and Hines LLP "HB"). I have no information about the following entities' relationships with the firms, arbitrators or other arbitrators in this case, other than that reflected in previous disclosures. The following represents information obtained by a computer search ordered today in response to the request.

Pacific Capital Cash Assets Trust

This entity is a mutual fund, client of BL and formerly a client of HB.
We represent the entity and its independent trustees; my partner, Edward Hines is the corporate secretary.

The Alger Institutional Funds

This entity is a mutual fund, client of BL and formerly a client of HB.

Enbridge Energy Partners is a co-defendant with a client of BL named Wolverine Energy Partners.

Peoples Bank Credit Card Master Trust — no information about this entity.

The Trust for Cultural Resources is a client of BL and formerly of HB.

The Museum of Modern Art has been a client of HB; has had funding through Trust for Cultural Resources.

Goldman Sachs Europe Limited is a client of BL (real estate).

None of the foregoing matters would affect my impartiality in the above case.


Yours truly,

WLD Barrett



EXHIBIT

J

1

This message is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information which is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from disseminating or distributing this information (other than to the intended recipient) or copying this information. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (212) 818-1110. Thank you

To comply with U.S. Treasury Regulations: This communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the tax laws of the United States, or promoting, marketing or recommending to another party any transaction or matter addressed in this communication (and any attachment).

Confidentiality Statement:
This message (including any attachments) is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information that is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from disseminating or distributing this information (other than to the intended recipient) or copying this information. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (313) 225-7000. To learn more about Butzel Long, please visit our website at http://www.butzel.com

# PULLMAN & COMLEY, LLC
## ATTORNEYS AT LAW

RONALD C. SHARP
850 Main Street – 8th Floor
P.O. Box 7006
Bridgeport, CT 06601-7006
p   203 330 2148
f   203 330 2088
rsharp@pullcom.com
www.pullcom.com

January 4, 2008

**Via E-Mail: cookh@adr.org and U.S. Mail**

Hannah Cook, Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, RI  02914

**Re:**    131 68 01990 04

Dear Hannah:

Pursuant to your January 3, 2008 letter requesting my review and disclosures with regard to the entities set forth therein, please be advised that I have no information on any of the entities listed except as follows:

1. <u>People's Bank Credit Card Master Trust</u>.   Many years ago, my law firm (Pullman & Comley, LLC) was asked by the Trustee (I believe Banker's Trust) to issue third party type opinion letters to People's Bank with respect to UCC-1 filings in Connecticut and to Connecticut Banking law compliance.  We have had no other contact concerning the Master Trust.  I was not involved in any way as to providing the opinion letters.

2. <u>The Museum of Modern Art</u>.  My wife has been a member for many years.

None of the foregoing would in any way affect my impartiality in the above-referenced case.

Very truly yours,

*R C Sharp*

Ronald C. Sharp

/psk

Bridgeport/1.1/RCS/666333v1

EXHIBIT

K

**BRIDGEPORT        GREENWICH        HARTFORD        STAMFORD        WESTPORT        WHITE PLAINS**

# AMERICAN ARBITRATION ASSOCIATION

## NEW YORK, NEW YORK

### Case No. 13 168 01990 04

---

MALIK M. HASAN, M.D. and SEEME G. HASAN,

            Claimants,

Vs.

GOLDMAN SACHS 1998 EXCHANGE PLACE FUND, L.P.,
GOLDMAN SACHS 1999 EXCHANGE PLACE FUND, L.P.,
GOLDMAN SACHS MANAGEMENT PARTNERS, L.P.,
GOLDMAN SACHS MANAGEMENT, INC.,
GOLDMAN, SACHS & CO.,
JOHN DOES 1-100, and
LENDER PARTIES 1-100,

            Respondents.

---

## CLAIMANTS' OBJECTION TO THE RETENTION OF, AND MOTION TO REMOVE, WILLIAM L.D. BARRET AND RONALD SHARP AS ARBITRATION PANEL MEMBERS

---

Claimants, Malik M. Hasan, M.D. and Seeme G. Hasan (collectively referred to as "Hasans"), through their undersigned counsel, G.W. MERRICK & ASSOCIATES, LLC, respectfully object to the continued retention of, and move to remove, William L. D. Barrett and Ronald C. Sharp as members of the arbitration panel in the captioned American Arbitration



Association ("AAA") arbitration proceedings.  As grounds for this Objection and Motion, the Hasans advise the AAA as follows:

## I.     The AAA Representation and Assurance to Clients

The AAA represents and assures those that choose to use its arbitration procedures that "[t]he conduct of AAA arbitrators is regulated by codes of ethics …" **AAA Website at www.adr.org/arb_med.**[1]  The AAA further represents and assures that the "Qualification Criteria for the AAA National Roster of Arbitrators and Mediators" includes "Dedicat[ion] to upholding the AAA Code of Ethics for Arbitrators …" ***Id.*** **at www.adr.org/si.asp?id=4223.**  Thus, those that choose arbitration sponsored by the AAA are assured -- and are able to repose trust and confidence based upon these representations and assurances -- that the AAA will insure that its arbitrators fully and timely comply with all disclosure requirements contained in the AAA Code of Ethics for Arbitrators.

## II.     The Requirement of Full and Timely Disclosure

**A.     Disclosure Requirments Under the Ethical Code**.  In its Preamble, the AAA Code of Ethics for Arbitrators in Commercial Disputes (2004) (the "Ethical Code") instructs that the Ethical Code "sets forth generally accepted standards of ethical conduct." Canon II.A.(1) of the Ethical Code requires disclosure by arbitrators of all direct and ***indirect*** interests in the outcome of the arbitration.  Canon II.A.(2) of the Ethical Code requires disclosure of present and ***past*** financial, business or professional relationships "that ***might*** reasonably affect impartiality or lack of independence ***in the eyes of any of the parties***" (Emphasis supplied). Canon II.D. of the Ethical Code instructs that "any doubt as to whether disclosure is to be made

---

[1]     The AAA has very recently modified this webpage to read that the conduct of its arbitrators is "guided" by the AAA's Code of Ethics.  Prior to the recent change, the website advised that the conduct of AAA arbitrators is "regulated" by the AAA Code of Ethics.

or not should be resolved in favor of disclosure." Finally, Canon II.C. of the Ethical Code dictates that the duty to disclose is a _continuing_ one that persists through all phases of the arbitration.[2]

Underscoring the imperative of comprehensive disclosure by AAA arbitrators is the "Neutrals eCenter" location of the AAA website. Under "Disclosure and Challenge of an Arbitrator," the following commitment respecting AAA arbitrators is found:

> Q:    Are there any general principals regarding disclosures?
> A:    Yes. They are as follows:
> 1.    _Every disclosure, no matter how insignificant, should be communicated to the parties_ ...

**B.      The Independent Duty of Arbitrators to Investigate Diligently for Potential Conflicts.** The Ethical Code confirms that AAA arbitrators have an independent duty to make diligent inquiry respecting any matters or relationships that may give rise to the appearance of "impartiality or lack of independence in the eyes of any of the parties." Canon II.B. requires that arbitrators "should make a reasonable effort to inform themselves of any interests or relationships" for which disclosure should be made.[3] Canon II.D. of the Ethical Code expressly provides that AAA arbitrators "should avoid conduct ... that give the _appearance of partiality_ toward or against any party" (Emphasis supplied).

The judicial decisions reviewing arbitrations have further underscored the independent duty of the arbitrator to investigate diligently -- and to disclose fully -- direct and

---

[2]     The comprehensive disclosure obligation is underscored in the AAA **Notice of Appointment** form executed, under oath, by each of the arbitrators and transmitted to the parties by the AAA. By execution of this appointment form each arbitrator represents to the parties that such arbitrator has disclosed "any _past_ or present relationship with the parties ... direct or _indirect_, whether financial, professional ... or of any other kind" (Emphasis supplied). The arbitrator further acknowledges that "[a]ny doubts [have been] resolved in favor of disclosure."

[3]     In the AAA **Notice of Appointment** form, each arbitrator represents, among other things, that such arbitrator has "diligently conducted a conflicts check ... and I have performed  my obligations and duties to disclose in accordance with the ... Code of Ethics for Commercial Arbitrators ..."

indirect relationships potential conflicts. Failure to do so creates the "reasonable impression of partiality." *Schmitz v. Zilveti*, 20 F.3d 1043, 1048 (9th Cir. 1994); *accord, New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1105-10 (9th Cir. 2007); *Close v. Motorists Mut. Ins. Co.*, 486 N.E.2d 1275, 1278-79 (Ohio App. 1985); *see also, Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 138 (2nd Cir. 2007).

### III.    The Inadequate Disclosures by William L.D. Barrett

**A.    Mr. Barrett's Failures to Disclose**. When Mr. Barrett was first selected for membership on the arbitration panel, he disclosed a single, indirect relationship with Goldman Sachs. In his March 23, 2005 letter to Paula Dubois, Mr. Barrett disclosed only that his firm [Hollyer Brady Barrett and Hines, LLP] "represents the Trust for Cultural Resources which issues municipal bonds for institutions such as the Museum for Modern Art. Goldman Sachs is one of the underwriters for such bonds." No other direct or indirect relationship with Goldman Sachs was disclosed.[4]

Hollyer Brady Barrett and Hines, LLP was acquired by Butzel Long P.C. in May of 2007. At that time, Mr. Barrett provided a supplemental disclosure. However, he disclosed only that Goldman Sachs was a <u>former client</u> of Butzel Long, P.C. His disclosure, in late April of 2007, reads: "Butzel Long *has performed* real estate work for Goldman Sachs Limited." No other information was provided, and there was no elaboration on the circumstances of the past attorney-client relationship with Goldman Sachs (as required by the "Neutrals eCenter" location of the AAA website).

Seeking to test the accuracy and completeness of these disclosures is not easy because the Hasans are limited to publicly available information accessible via the Internet. Of

---

[4]    On March 30, 2005, the Hasans lodged an objection with the AAA to Mr. Barrett's retention as a member of the arbitration panel in this case. That objection was overruled.

course, the overwhelming majority of information respecting attorney-client and other relationships is not available via Internet research; that is why voluntary and comprehensive disclosures by AAA arbitrators are essential.    Nevertheless, using only crude Internet research (which may not uncover complete or the more recent information), the Hasans were able to discover that Mr. Barrett's disclosures were materially incomplete.  The Hasans discovered that:

      1.    At all times during this arbitration proceeding one of Mr. Barrett's important clients has been Pacific Capital Cash Assets Trust.  Pacific Capital is one of the Aquila Group of Mutual Funds highlighted on Mr. Barrett's profile on his firm's website.  One of Mr. Barrett's current and long-time partners, Edward M.W. Hines (who was a name partner with Mr. Barrett in Hollyer Brady Barrett & Hines, LLP and is now a shareholder with him at Butzel Long PC), is the Secretary of Pacific Capital.  The Annual Reports for Pacific Capital reflect that Pacific Capital holds $20 million in commercial paper issued by The Goldman Sachs Group, Inc.  *See* **Exhibit A** attached.  This relationship is <u>undisclosed</u> in Mr. Barrett's disclosures.

      2.    Another important mutual fund client of Hollyer Brady Barrett & Hines throughout these arbitration proceedings has been The Alger Institutional Funds (the "Funds").  The Registration Statement for the Funds reflects that Goldman Sachs is a financial intermediary that is instrumental in effecting investments in the Funds, and is one of those "with whom Alger Inc. (the Distributor of the Funds) has its most significant arrangements to make additional cash compensation payments."  *See* **Exhibit B** attached.  This relationship is <u>undisclosed</u> in Mr. Barrett's disclosures.

      3.    Enbridge Energy Partners L.P. ("Enbridge") has been a client of Butzel Long PC.  For example, the law firm wrote one or more opinion letters in connection with an Underwriting Agreement relating to an Enbridge public offering.  One of the three lead underwriters, and a party to the Underwriting Agreement, is Goldman Sachs.  Goldman Sachs also provides research coverage for Enbridge securities.  *See* **Exhibit C** attached.  This relationship is <u>undisclosed</u> in Mr. Barrett's disclosures.

      **B.**    <u>**Mr. Barrett's Continuing Failures to Disclose.**</u>    The Hasans have been deeply troubled by the continuing failure of Mr. Barrett to disclose that which is required to be disclosed.  They published their concerns to the AAA, and in response the AAA transmitted a January 3, 2008 letter to Messrs. Barrett and Sharp.  The AAA directed -- in the context of the ongoing arbitration with Goldman Sachs -- that Messrs. Barrett and Sharp make "full disclosures in accordance with the Code of Ethics and the AAA rules" respecting, among others matters,

Pacific Capital Cash Assets Trust, The Alger Institutional Funds, Enbridge Energy Partners and Goldman Sachs Europe Limited.

Mr. Barrett responded within a matter of hours of his receipt of the January 3, 2008 letter. He expressly confined his January 3, 2008 e-mail response to that shown in "a computer search ordered today." Mr. Barrett stated only that Pacific Capital Cash Assets Trust and The Alger Institutional Funds are current clients of Butzel Long P.C., and past clients of Hollyer Brady Barrett and Hines, LLP. He also acknowledged that his partner, Mr. Hines, is the corporate secretary of Pacific Capital Assets Trust. Mr. Barrett chose not to disclose: (i) the relationship(s) between Pacific Capital Cash Assets Trust and Goldman Sachs, (ii) the relationship(s) between The Alger Institutional Funds and Goldman Sachs, and (iii) that Enbridge Energy Partners, L.P. is a past and/or current client of Butzel Long and has relationships with Goldman Sachs.

Of equal or greater significance, Mr. Barrett's January 3, 2008 e-mail discloses, for the first time, that "Goldman Sachs Europe Limited *is* a [current] client of [Butzel Long, P.C.]" At no time prior to his January 3, 2008 e-mail did Mr. Barrett reveal that his law firm is <u>currently</u> <u>representing</u>, and performing ongoing work for, Goldman Sachs. This is the identical situation that led to the removal of Richard L. Mattiaccio from the arbitration panel in this case. It is a highly material fact that should have been -- ***but was not*** -- disclosed by the arbitrator.[5]

### C.    <u>Application of the Disclosure Rules Requires Removal of Mr. Barrett</u>.

As noted above, Canon II.A.(1) and Canon II.A.(2) of the Ethical Code require disclosure of present and past financial, business or professional relationships (whether direct or <u>indirect</u>) "that <u>*might*</u> reasonably affect impartiality or lack of independence *in the eyes of any of the parties*"

---

[5]    The AAA **Notice of Appointment** form described above (*see* f.n. 2 & 3, *supra*) affirms that the arbitrator understands "that failing to make appropriate and timely disclosures may result in [such arbitrator's] removal as arbitrator from the case."

(Emphasis supplied). Canon II.D. of the Ethical Code instructs that "any doubt as to whether disclosure is to be made or not should be resolved in favor of disclosure." Finally, Canon II.C. of the Ethical Code dictates that the duty to disclose is a continuing one the persists through all phases of the arbitration. Of no great surprise, the decisions of the federal and state courts are in full agreement respecting the need for complete disclosure, even with respect to *indirect* relationships. *See, e.g., Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 51 F.3d 157 (8th Cir. 1995) (award vacated when arbitrator failed to disclose business relationship between his firm and a party even though the arbitrator was not involved in any of the business); *Sanko S.S. Co. v. Cook Industries, Inc.*, 495 F.2d 1260, 1263-64 (2nd Cir. 1973)(arbitrator must disclose dealings "that might create an impression of possible bias" regardless of whether the relationship with a party "be of a direct or indirect nature"); *City School Dist. v. Oswego Classroom Teacher's Ass'n*, 473 N.Y.S.2d 284, 287-88 (App.Div. 1984)(arbitration award vacated when indirect business relationship with one of the parties not disclosed).

It is now evident that Mr. Barrett's law firm currently represents Goldman Sachs. At the risk of belaboring the obvious that is not acceptable. Moreover, even in the face of direct instructions from the AAA for "full and complete disclosure in accordance with the Code of Ethics," Mr. Barrett continues to fail to fully and fairly disclose the relationships between Goldman Sachs and at least two prominent and influential clients of his firm (*viz.*, Pacific Capital Cash Assets Trust and the Alger Institutional Funds). It simply cannot be gainsaid that the "requirement for full disclosure by arbitrators is a serious and far-reaching one." *Federal Vending, Inc. v. Steak & Ale of Florida, Inc.*, 71 F.Supp.2d 1245, 1249 (S.D. Fla. 1999). The inaccuracies impeach any confidence that the Hasans might otherwise have enjoyed respecting Mr. Barrett's representation that he will "faithfully and fairly hear and decide the matters in

7

controversy between the parties ..." Removal of Mr. Barrett from the arbitration panel in this case has become necessary and wholly unavoidable.

## IV.    The Inadequate Disclosures by Ronald C. Sharp

A.    **Mr. Sharp's Failures to Disclose**.  When Mr. Sharp was selected for membership on the arbitration panel, he submitted a **Notice of Appointment** Form that represented that he had "nothing to disclose." It further represented that he and his firm did not have any direct or indirect connections with Goldman Sachs. At no time has Mr. Sharp filed or circulated any supplemental disclosure.

The Hasans' limited ability to test these representations (again, constrained by the highly limited research available via Internet search engines) has informed that Mr. Sharp's disclosures are not accurate or complete. The Hasan's research uncovered that Mr. Sharp's law firm (Pullman & Comley, LLC) represented the underwriters (including Goldman Sachs) on $708 million in Special Tax Obligation bonds issued by the State of Connecticut. *See* **Exhibit D** attached. In addition, the Hasans have learned that Pullman & Comley, LLC served as special counsel to a securities issuer (Peoples Bank Credit Card Master Trust) for which Goldman Sachs has done significant underwritings involving many hundreds of millions of dollars. *See* **Exhibit E-1** and **Exhibit E-2** attached. None of this is disclosed in Mr. Sharp's disclosures -- and it should have been under the dictates of the AAA's Ethical Code.

In response to the AAA's January 3, 2008 letter seeking "full and complete disclosures" respecting, among other things, Peoples Bank Credit Card Master Trust, Mr. Sharp responded (in a letter dated January 4, 2008). He reported that many years ago his firm was asked by the Trustee "to issue third party type opinion letters to Peoples Bank with respect to UCC-1 filings in Connecticut and to Connecticut Banking law compliance." No mention is

8

made of involvement by Goldman Sachs.  Nor was any mention made of any representation by his firm of the underwriters (including Goldman Sachs) of tax exempt bonds issued by the State of Connecticut.

**B.    Application of the Disclosure Rules Requires Removal of Mr. Sharp**.

The same ethical rules and judicial decisions identified in the discussion respecting Mr. Barrett apply with equal force to Mr. Sharp.  In the case of Mr. Sharp, the undisclosed relationships existed prior to the time that he executed and published his **Notice of Appointment** form.  The undisclosed past representation of Goldman Sachs (as one of the underwriters for the Connecticut tax exempt bonds), and the undisclosed past representation of an issuer for which Goldman Sachs did significant underwriting is unmistakably material.   It certainly lies within the contours of Canon II.A.(2) requiring disclosure of matters "that *might* reasonably affect impartiality or lack of independence *in the eyes of any of the parties.*"  It also falls within the confines of Canon II.D. of the Ethical Code which requires that "any doubt as to whether disclosure is to be made or not should be resolved in favor of disclosure."

As is the case with Mr. Barrett, the absence of disclosure in the face of a recent written request from the AAA for "full disclosures in accordance with the Code of Ethics and the AAA rules" as to specifically identified relationships is deeply disturbing.  The Second Circuit recently opined that "where an arbitrator has *reason to believe* that a nontrivial conflict of interest *might* exist, he must (1) investigate the conflict … or (2) disclose his reasons for believing that there might be a conflict and his intention not to investigate." *Applied Industrial Materials Corp.,* 492 F.3d at 138.  In this case, the January 4, 2008 response from Mr. Sharp evidences neither and is woefully inadequate.

The AAA **Notice of Disclosure** form executed under oath by Mr. Sharp is simply not accurate. This inaccuracy is carried forward in Mr. Sharp's January 4, 2008 conflicts inquiry response letter. The inaccuracies impeach any confidence that the Hasans might otherwise have enjoyed respecting Mr. Sharp's representation that he will "faithfully and fairly hear and decide the matters in controversy between the parties …" As is the case with Mr. Barrett, removal of Mr. Sharp from the arbitration panel in this case has become necessary and wholly unavoidable

## V.  Removal of Mr. Mattiaccio Requires Removal of the Balance of the Panel

On or about October 31, 2007, the AAA removed Mr. Mattiaccio from the arbitration panel in this case. Mr. Mattiaccio was not "unable to perform the duties of [the office of an arbitrator]"; rather he was removed by the AAA. Although the AAA Commercial Arbitration Rules provide a mechanism for filling a vacancy when the vacancy is the result of an arbitrator being "unable to perform the duties of the office" (such as by death or incapacity), [6] the rules are silent with respect to any mechanism for replacing arbitrators that are removed by the AAA for failure to comply with the Ethical Code or other misconduct.

It is obvious that a complex arbitration such as this one consists of more than just a final hearing on the merits. Indeed, in this case the arbitration panel has been exposed to: (a) a very large number of motions, responses, replies and other papers submitted to the panel, (b) numerous telephone conferences among counsel for the parties and the panel members (both with respect to the motions that have been filed and other pre-hearing matters), and (c) at least

---

[6]    Rule R-19 of the AAA Commercial Arbitration Rules provides, in pertinent part, as follows:

(a) If for any reason an arbitrator is _**unable to perform the duties of the office**_, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

one in person pre-hearing conference conducted in New York City among counsel for the parties and members of the arbitration panel. It is indisputable that in this case the panel members have worked closely together, spent a very significant time reviewing and discussing materials and conferring with each other. Some twenty four (24) "Procedural Orders" have been issued. In sum, these panel members have been deeply and profoundly exposed to each other's influence. *See Schmitz,* 20 F.3d at 1049.

It is also now known that from sometime prior to May 29, 2007, Mr. Mattiaccio had been negotiating to move from his previous law firm to Squire Sanders & Dempsey, LLP ("SSD"). Because Mr. Mattiaccio elected not to provide any further disclosure, it is not known how long this mutual courting process had been underway prior. It is also known from Mr. Mattiaccio's October 11 supplemental disclosure that "one or more Goldman Sachs-related entities are clients of SSD." This attorney-client relationship was concealed from the Hasans. Moreover, because Mr. Mattiaccio elected not to make a more robust disclosure on October 11 -- and because the Goldman Sachs Respondents have elected not to champion a candid disclosure -- the length, nature, breadth and depth of the attorney-client relationship between Goldman Sachs and SSD remains concealed.[7]

The current panel situation is intolerable. No one can assure that crucial panel decisions and "Procedural Orders" -- which critically impact the direction of the case and its ultimate resolution -- have not been illicitly influenced by Mr. Mattiaccio (as he pursued the greener pastures of SSD). The Hasans never bargained for this impropriety.

The federal courts have not been reluctant to require the replacement of the entire panel, and the appointment of a new panel, even in much less odious circumstances. *Marine*

---

[7]     The similarities with Mr. Barrett are striking. Mr. Barrett has also declined (even in the face of the AAA's January 3, 2008 letter) to make full disclosure respecting the length, nature, breadth and depth of the representation of Goldman Sachs by Butzel Long P.C.

*Products Export Corp. v. M.T. Global Galaxy,* 977 F.2d 66, 68 (2nd Cir. 1992)(death of a panel member before award is rendered requires beginning again with a new panel); *Pemex – Refinacion v. Tbilisi Shipping Co.,* 2004 U.S. Dist LEXIS 17478 (S.D.N.Y. 2004)(new panel must be appointed in 11-year old arbitration even where party who appointed panel member who died is willing to proceed with substitute panel member); *Cia de Navegacion Omsil, S.A. v. Hugo Neu Corp.,* 359 F.Supp. 898, 899 (S.D.N.Y. 1973) (death of panel member requires appointment of new panel where existing panel members have "worked together and beeen exposed to each other's influence"). It follows that in the wake of the AAA's removal of Mr. Marriaccio, the removal of the balance of the arbitration panel is required.

## VI.    Removal Based Upon Actual Bias and/or Appearance of Partiality

The Hasans have previously sought removal of arbitrators from the panel based upon manifest indications of actual bias and the appearance of partiality. The evidence and arguments have been recorded and detailed in the "Claimant's Revised and Verified Motion to Disqualify/Recuse Arbitrators and Request for Evidentiary Hearing Thereon," dated October 9, 2007. The evidence and arguments advanced there are adopted fully here.

## CONCLUSION

WHEREFORE, the Hasans strongly object to the continued service of Messrs. Barrett and Sharp as arbitrators in the captioned case. The Hasans urge that the AAA fulfill its representations and assurances published to the Hasans by removing each of these individuals and replacing them with impartial arbitrators who will make full and timely disclosures consonant with the AAA rules and the Ethical Code.

Dated:  January 22, 2008.

G.W.  MERRICK & ASSOCIATES, LLC

By:_____
    Glenn W. Merrick
    Marc L. Schatten
    Suite 912, 5445 DTC Parkway
    Greenwood Village, Colorado  80121
    Telephone:  (303) 831-9400
    Facsimile:  (303) 771-5803

ATTORNEYS FOR CLAIMANTS, MALIK M. HASAN,
M.D. and SEEME G. HASAN

## CERTIFICATE OF SERVICE

      The undersigned certifies that on this 22nd day of January, 2008 a true and correct copy of the foregoing CLAIMANTS' OBJECTION TO RETENTION OF, AND MOTION TO REMOVE, WILLIAM L.D. BARRET AND RONALD SHARP AS ARBITRATION PANEL MEMBERS was served via e-mail and U.S. Post upon the following:

| | |
|---|---|
| Hannah R. Cook | Bruce A. Featherstone, Esq. |
| American Arbitration Ass'n | Featherstone Petrie DeSisto, LLP |
| 950 Warren Avenue | 600 Seventeenth Street, Suite 2400S |
| East Providence, RI  02914 | Denver, Colorado  80202-5424 |
| cookh@adr.org | bfeatherstone@featherstonelaw.com |

Max Gitter, Esq.
Cleary Gottlieb Steen &
    Hamilton, LLP
One Liberty Plaza
New York, NY  10006



# ◢PACIFIC
## CAPITAL FUNDS®
### OF
## CASH ASSETS TRUST

### ANNUAL REPORT

May, 2007

Dear Investor:

It gives us considerable pleasure to present the Annual Report for The Pacific Capital Funds of Cash Assets Trust for the fiscal year ended March 31, 2007.

The enclosed Annual Report includes the three series of Cash Assets Trust (the "Trust"): Pacific Capital Cash Assets Trust, Pacific Capital Tax-Free Cash Assets Trust and Pacific Capital U.S. Government Securities Cash Assets Trust and its two classes of shares: Original Shares and Service Shares. The Trust was specifically created to meet the short-term investment needs of Hawaii investors and others.

************************************

### Slowing Economy

During the current report period, the U.S. economy continued to grow, albeit at a somewhat slower pace. It would appear that the Federal Reserve Board's (the "Fed") two-year campaign of raising short-term interest rates to slow the economy may have taken hold. Recall, when the Fed began raising short-term interest rates in March 2004, the Federal Fund's rate – the interest rate member banks charge each other for overnight loans and the primary tool for influencing economic activity – was 1%, a historically low rate environment. After 17 consecutive interest rate hikes of 0.25% each ending in June 2006, the Fed Fund's rate was 5.25%. The Fed's action along with a weakening manufacturing sector, slumping housing market and high oil prices have contributed to the slowing of the U.S. economy to its lowest level in four years.

With mounting evidence of a slowing economy and mixed signs of a rising level of inflation, the Fed's monetary policy has remained steady and noncommittal about the outlook for future rate action. Economic analysts continue to debate the direction of the economy. On the one hand, the Fed could orchestrate an economic "soft landing" with positive growth and low inflation. On the other hand, should the economy surprise and show signs of heating up with inflation rising, the Fed may choose to raise short-term interest rates.

### A Watchful Eye

Rest assured the Trust's investment management team will seek to keep a watchful eye on economic developments, financial markets and interest rate movements, as they steer the course of

NOT A PART OF THE ANNUAL REPORT



EXHIBIT

*A*

PACIFIC CAPITAL
CASH ASSETS TRUST
STATEMENT OF INVESTMENTS
MARCH 31, 2007

| Principal Amount | Commercial Paper (65.9%) | Value |
|---|---|---|
| | Automotive (4.4%) | |
| 20,000,000 | Toyota Motor Credit Corp., 5.21%, 06/27/07 . . . . . . . . . . . . . . . | $ 19,748,183 |
| | Banks (17.6%) | |
| 20,000,000 | Bank of America, 5.21%, 07/02/07 . . . . . . . . . . . . . . . . . . . . . . | 19,733,711 |
| 20,000,000 | Citigroup Global Markets Holdings, Inc., 5.21%, 05/17/07 . . . . . | 19,866,856 |
| 20,000,000 | Rabobank 5.24%, 04/24/07 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19,933,108 |
| 20,000,000 | Societe Generale N.A., Inc., 5.20%, 04/02/07 . . . . . . . . . . . . . . | 19,997,111 |
| | | 79,530,786 |
| | Borrowing Conduit (4.4%) | |
| 20,000,000 | Abbey National North America Corp., 5.24%, 04/12/07 . . . . . . . | 19,967,978 |
| | Brokerage (8.8%) | |
| 20,000,000 | Bear Stearns & Co., 5.24%, 4/11/07 . . . . . . . . . . . . . . . . . . . . | 19,970,889 |
| 20,000,000 | Goldman Sachs Group, Inc., 5.18%, 06/18/07 . . . . . . . . . . . . . | 19,775,533 |
| | | 39,746,422 |
| | Conglomerate (4.4%) | |
| 20,000,000 | General Electric Capital Corp., 5.23%, 04/30/07 . . . . . . . . . . . . | 19,915,739 |
| | Education (8.8%) | |
| 20,000,000 | Harvard University, 5.35%, 04/02/07 . . . . . . . . . . . . . . . . . . . . | 19,997,028 |
| 20,000,000 | Stanford University, 5.23%, 04/10/07 . . . . . . . . . . . . . . . . . . . . | 19,973,850 |
| | | 39,970,878 |
| | Finance (13.1%) | |
| 20,000,000 | American General Finance Corp., 5.13%, 08/24/07 . . . . . . . . . . . | 19,586,347 |
| 20,000,000 | Calyon NA, Inc., 5.23%, 04/23/07 . . . . . . . . . . . . . . . . . . . . . . | 19,936,078 |
| 20,000,000 | PACCAR Financial Corp., 5.22%, 05/15/07 . . . . . . . . . . . . . . . | 19,872,400 |
| | | 59,394,825 |
| | Insurance (4.4%) | |
| 20,000,000 | Prudential Funding, 5.17%, 05/03/07 . . . . . . . . . . . . . . . . . . . . | 19,908,089 |
| | Total Commercial Paper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 298,182,900 |
| | Certificates of Deposit (4.4%) | |
| 20,000,000 | Wells Fargo, 5.40%, 06/15/07 . . . . . . . . . . . . . . . . . . . . . . . . . | 20,000,000 |

2

*SEC Info*   Home   Search   My Interests   Help   Sign In   *Please Sign In*

# Alger Institutional Funds · 497 · On 4/8/04

Filed On 4/8/04 2:18pm ET  ·  SEC File 33-68124  ·  Accession Number 930413-4-1732

| Find |
|------|

in this filing.   Show  docs searched  and every "hit".

Help...   *Wildcards: ? (any letter), * (many), "(phrase)", logical for Docs & hits: (not, & and, | or), for Text: Everywhere, "(&)" mean.*

| As Of | Filer | Filing | As/For/On | Docs:Pgs | Issuer | Agent |
|-------|-------|--------|-----------|----------|--------|-------|
| 4/08/04 | Alger Institutional Funds | 497 | 4-08/04 | 1:30 | | Command Financi..Corp/FA |

Definitive Material · Rule 497

## Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|------------------|-------------|-------|------|
| 1: 497 | Definitive Material | 30 | 207K |

## Document Table of Contents

| Page | (sequential) | | (alphabetic) | Top |
|------|--------------|--|--------------|-----|
| 1 | 1st Page | | • Alternative Formats (RTF, XML, et al.) | |
| 2 | The Alger | | • Alger | |
| 3 | The Funds | | • Alger, The | |
| 4 | Investment Strategies and Policies | | • Appendix | |
| 15 | Net Asset Value | | • Certain Shareholders | |
| 16 | Purchases and Redemptions | | • Code of Ethics | |
| 17 | Expenses | | • Custodian | |
| 18 | Management | | • Dividends and Distributions | |
| 22 | Code of Ethics | | • Expenses | |
| " | Dividends and Distributions | | • Financial Statements | |
| " | Taxes | | • Funds, The | |
| 23 | Custodian | | • Investment Strategies and Policies | |
| " | Transfer Agent | | • Management | |
| " | Certain Shareholders | | • Net Asset Value | |
| 24 | Alger | | • Organization | |
| 25 | Organization | | • Proxy Voting Policies and Procedures | |
| 26 | Proxy Voting Policies and Procedures | | • Purchases and Redemptions | |
| 27 | Financial Statements | | • Taxes | |
| 28 | Appendix | | • The Alger | |
| | | | • The Funds | |
| | | | • Transfer Agent | |

**EXHIBIT**

*tabbies*

B

| 497 | 21st Page of 30 | TOC | 1st | Previous | Next | Bottom | Just 21st |

with certain regulations of the Securities and Exchange Commission. In addition,
Alger Management may select broker-dealers that provide it with brokerage and
research services and may cause a Fund to pay these broker-dealers commissions
that exceed those other broker-dealers may have charged, if it views the
commissions as reasonable in relation to the value of the brokerage and research
services received. Alger Management bears all expenses in connection with the
performance of its services under the Management Agreements.

In return for advisory services provided by Alger Management, each Fund has
agreed to pay Alger Management monthly advisory fees equal on an annual basis to
the following percentages of the Funds' average daily net assets:

| FUND | ANNUAL ADVISORY FEE AS PERCENTAGE OF AVERAGE NET ASSETS |
| --- | --- |
| Alger SmallCap Growth Institutional Fund | .85% |
| Alger Capital Appreciation Institutional Fund | .85% |
| Alger MidCap Growth Institutional Fund | .80% |
| Alger Balanced Institutional Fund | .75% |
| Alger LargeCap Growth Institutional Fund | .75% |
| Alger Socially Responsible Growth Institutional Fund | .75% |

For the fiscal years ended October 31, 2001, October 31, 2002 and October 31,
2003, Alger Management earned under the terms of the Management Agreements
$819,995, $718,100 and $627,529, respectively, in respect of the Alger LargeCap
Growth Institutional Fund; $1,147,807, $649,692 and $612,415, respectively, in
respect of the Alger SmallCap Growth Institutional Fund; $1,646,675, $1,909,491
and $2,570,337, respectively, in respect of the Alger MidCap Growth
Institutional Fund; $1,910,346, $1,455,077 and $1,171,206, respectively, in
respect of the Alger Capital Appreciation Institutional Fund; $708, $1,325 and
$9,814, respectively, in respect of the Alger Balanced Institutional Fund, and
$579, $463 and $8,461, respectively, in respect of the Alger Socially
Responsible Growth Institutional Fund.

From time to time Alger Inc., at its expense from its own resources, may
compensate brokers, dealers, investment advisers or others ("financial
intermediaries") who are instrumental in effecting investments by their clients
or customers in the Trust, in an amount up to 1% of those investments. Alger
Inc. may also from time to time, at its expense from its own resources, make
payments to other financial intermediaries that provide shareholder servicing or
transaction processing with such payments structured as a percentage of gross
sales, a percentage of net assets, and/or as a fixed dollar amount (the latter
as a per account fee or as reimbursement for transaction processing and
transmission charges). Payments under these other arrangements may vary but
generally will not exceed 0.50% annually of Trust assets or 0.50% annually of
Trust sales attributable to that financial intermediary. Alger Inc. determines
whether to make any additional cash payments and the amount of any such payments
in response to requests from financial intermediaries, based on factors Alger
Inc. deems relevant. Factors considered by Alger, Inc. generally include the
financial intermediary's reputation, ability to attract and retain assets for
the Trust, expertise in distributing a particular class of shares of the Trust,
entry into target markets, and/or quality of service.

Financial intermediaries with whom Alger Inc. has its most significant
arrangements to make additional cash compensation payments are AG Edwards, Bear
Stearns, Capital Investment Brokerage, CIBC World Markets, Citigroup, Goldman
Sachs, Kemper Investors, Leonard & Company, Lincoln Financial Advisors, Lincoln
Investment Planning, Merrill Lynch Pierce Fenner & Smith, MetLife Securities,
RBC Dain Rauscher, Retirement System Distributors, Ryan Beck & Co., Securities
America, Smith Hayes Financial, UBS, USI Securities and Walnut Street
Securities. In addition, Alger, Inc. may make payments to dealer firms in the
form of payments for marketing support, seminar support, training meetings, or
comparable expenses in the discretion of Alger Inc. Please contact your
financial intermediary for details about revenue sharing payments it may
receive. Any payments described above will not change the price paid by
investors for the purchase of shares of a Fund or the amount of proceeds
received by a Fund on the sale of shares.

Alger Management is a wholly-owned subsidiary of Alger Inc. which in turn is a
wholly-owned subsidiary of Alger Associates, Inc., a financial services holding
company. Fred M. Alger III, who holds in excess of 25% of the outstanding voting
securities of Associates, may be deemed to control that company and its
subsidiaries. Mr. Alger holds his shares through a limited liability company, of
which he is the president and majority shareholder. The officers of the Trust
and Mr. Alger are affiliated persons of the Trust and Alger Management by virtue
of their offices with those entities.

At their meeting called to consider the annual renewal of the Funds' Investment
Management Agreements with Alger Management, the Trustees considered the nature
and quality of the services provided in relation to the fees paid by the Funds
and the other benefits received by Alger Management by virtue of its
rela-

*SEC Info*   Home   Search   My Interests   Help   Sign In   *Please Sign In*

# Enbridge Energy Partners LP · S-3/A · On 10/17/97 · EX-1.1

Filed On 10/17/97 · SEC File 333-36945 · Accession Number 940180-97-907

[ Find ]     in  this filing.        Show  docs searched     and  every "hit".

Help...     *Wildcards: ? (any letter), * (anything). Logic: for Docs & text: Look for Text  [anywhere]. "& " means.*

| As Of | Filer | Filing | On/For/As | Docs:Pgs | Issuer | Agent |
|-------|-------|--------|-----------|----------|--------|-------|
| 10/17/97 | Enbridge Energy Partners LP | S-3/A | | 5:114 | | 940180 |

### Pre-Effective Amendment to Registration Statement for Securities Offered Pursuant to a Transaction · Form S-3
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|------------------|-------------|-------|------|
| 1: S-3/A | Amendment No. 1 to Form S-3 | 77 | 435K |
| **2: EX-1.1** | **Underwriting Agreement** | **33** | **126K** |
| 3: EX-5.1 | Opinion of Andrews and Kurth | 2 | 9K |
| 4: EX-8.1 | Tax Opinion of Andrews and Kurth | 1 | 7K |
| 5: EX-23.1 | Consent of Price Waterhouse | 1 | 7K |

**EX-1.1 · Underwriting Agreement**



Exhibit 1.1
-----------

2,200,000 Class A Common Units

LAKEHEAD PIPE LINE PARTNERS, L.P.

Representing Class A Limited Partner Interests

UNDERWRITING AGREEMENT
----------------------

October __, 1997

SMITH BARNEY INC.
GOLDMAN, SACHS & CO.
MERRILL LYNCH, PIERCE, FENNER & SMITH
            INCORPORATED
  As Representatives of the several Underwriters
  named in Schedule I hereto

c/o SMITH BARNEY INC.
    388 Greenwich Street
    New York, New York 10013

Dear Sirs:

     Lakehead Pipe Line Partners, L.P., a Delaware limited partnership (the
"*Partnership*"), proposes, upon the terms and subject to the conditions set forth
herein, to issue and sell an aggregate of 2,200,000 Class A Common Units
representing Class A limited partner interests in the Partnership (the "*Firm
Units*") to the several Underwriters named in Schedule I hereto (the
"*Underwriters*").  The Partnership also proposes, upon the terms and subject to
the conditions set forth herein, to issue and sell to the several Underwriters
up to an additional 330,000 Class A Common Units representing Class A limited
partner interests in the Partnership (the "*Additional Units*").  The Firm Units
and the Additional Units are hereinafter collectively referred to as the
"*Offered Units,*" and the Offered Units and each unit representing a Class A
Common or Class B Common limited partner interest outstanding on the date hereof
are hereinafter sometimes collectively referred to as the "*Units.*"

     Each of the Partnership, Lakehead Pipe Line Company, Limited Partnership, a
Delaware limited partnership (the "*Operating Partnership*"), and Lakehead Pipe
Line Company, Inc., a Delaware corporation (both in its capacity as general
partner of the Partnership and in its individual capacity, the "*General
Partner*"), wishes to confirm as follows its agreement with you (the
"*Representatives*") and the other several Underwriters on whose behalf you are
acting, in connection with the several purchases of the Offered Units by the
Underwriters.  The Partnership, the Operating Partnership and the General
Partner are sometimes collectively referred to herein as the "*Companies.*"

     1.   Registration Statement and Prospectus.  The Partnership has prepared
          -------------------------------------
and filed with the Securities and Exchange Commission (the "*Commission*") in
accordance with the provisions of the Securities Act of 1933, as amended, and
the rules and regulations of the Commission

SEC Info - Enbridge Energy Partners LP - S-37A - On 10/17/97 - EX-1.1          Page 24 of 35

furnished as counsel for the Companies and the LPL Partnership to you, as
representatives of the several Underwriters, and is solely for the benefit of
the several Underwriters.

(e) You shall have received on the Closing Date an opinion of Sullivan
& Cromwell, counsel for the Companies, dated the Closing Date and addressed to
you, as Representatives of the several Underwriters, to the effect that (i) none
of the Companies or the LPL Partnership is (A) a "subsidiary company" of a
"registered holding company," or of a "holding company" subject to regulation
under the 1935 Act or (B) is an "affiliate" of a "registered holding company,"
or of a "holding company" subject to regulation under the 1935 Act, or of a
"subsidiary company" of a "registered holding company," or of a "holding
company" subject to regulation under the 1935 Act, as such terms are defined in
the 1935 Act, and (ii) no consent, authorization, approval or filing is required
to be obtained or made under the 1935 Act in connection with the issuance and
sale of the Offered Units by the Partnership as contemplated by the Prospectus.

(f) Each of (i) Sidley & Austin, with respect to the State of
Illinois, (ii) Barnes & Thornburg, with respect to the State of Indiana, (iii)
Butzel Long, with respect to the State of Michigan, (iv) Magie, Andresen, Hagg,
Paciotti, Butterworth & McCarthy, P.A., with respect to the State of Minnesota,
(v) Phillips, Lytle, Hitchcock, Blaine & Huber, with respect to the State of New
York, (vi) Pearce & Durick, with respect to the State of North Dakota and (vii)
DeWitt, Ross & Stevens S.C., with respect to the State of Wisconsin, each of
which is acting as special local counsel for the Companies, shall have furnished
to you, as Representatives of the several Underwriters, its written opinion or
opinions, dated as of the applicable Closing Date in form and substance
satisfactory to you, to the effect that:

(i) The Partnership need not be qualified or registered as a
foreign limited partnership for the transaction of business under the laws
of such state.

(ii) [As to Wisconsin and Minnesota only]  The Partnership has
been qualified or registered as a foreign limited partnership to conduct
business in such state.

(iii) The Operating Partnership has been duly qualified or
registered as a foreign limited partnership for the transaction of business
under the laws of such state.

(iv) Each of the Partnership and the Operating Partnership has
all requisite power and authority as a limited partnership under the laws
of such state to own or lease the portion of the assets, properties and
rights relating to the Lakehead System (as defined in the Prepricing
Prospectus) (collectively, the "Properties") located in such state and to
conduct its business in such state; and upon the consummation of the
offering of the Offered Units pursuant to the Prospectus, assuming that the
Partnership will not be liable under the laws of the

23





# OFFICE OF
# STATE TREASURER
# DENISE L. NAPPIER

# NEWS

FOR IMMEDIATE RELEASE
Wednesday, September 26, 2001

## NAPPIER ANNOUNCES SPECIAL TAX OBLIGATION BOND ISSUE WILL SAVE CONNECTICUT TAXPAYERS $21 MILLION

*Bond sale is the largest and has the lowest interest rate of any such bond sale in state history; earned ratings upgrade from Moody's; was delayed but not adversely impacted by World Trade Center tragedy*

Connecticut State Treasurer Denise L. Nappier today announced the successful completion of the State's $708 million issue of Special Tax Obligation bonds. The transaction was the largest Special Tax Obligation bond sale in the State's history, and included a $533 refunding issue to refinance existing bonds to today's lower interest rates, saving Connecticut taxpayers $21 million. The combined true interest cost was 4.28%, the lowest on any bond sale of its kind in state history.

The sale also included $175 million of bonds to provide continued funding of the State's share of the cost of a variety of transportation projects and improvements throughout the State of Connecticut.

The bond sale was in its second day of a retail order period on September 11 when the World Trade Center tragedy brought the financial markets to an abrupt halt. After assessing the condition of the market and ensuring market participants had reestablished operations, the sale was rescheduled for September 25, creating only a two-week delay in the overall schedule.

In preparation for this issue, Moody's Investors Service upgraded this major State bond program from A1 to Aa3 citing the State's effective management of the Special Transportation Fund, the Legislature's commitment to maintaining the Fund's strong and solvent position, and a history of favorable coverage of debt service secured by a diversified stream of dedicated revenues.

"Despite the delay and the extraordinary circumstances," Nappier said, "the bond sale was not adversely impacted as both individual and institutional investors showed their confidence in the Office of the Treasurer and the State of Connecticut. "Individual investors purchased $94 million of the bonds, which is 50% more than for recent bond issues under this program. The response to this issue also underscores the inherent strength

Contact: Bernard L. Kavaler
Director of Communication
(860) 702-3277    FAX (860) 702-3043
BERNARD.KAVALER@PO.STATE.CT.US



**EXHIBIT**

tabbies®

D

of our economy and the full faith and confidence of both individual and institutional investors."

The Treasurer also expressed strong confidence in the vitality of the U.S. economy, and the ability of businesses and consumers to respond to the changed circumstances following the September 11 attack. "These horrific attacks did not diminish my confidence in our economy or the market. We are an active participant and a long-term investor," Nappier said, referring to the State's $21 billion pension fund and regular debt issuances, "and we deploy an investment strategy that embraces a long-term view of the financial markets. That outlook remains strong."

A number of the bond underwriting firms involved in the bond sale were impacted by the World Trade Center disaster, and Treasurer Nappier expressed her "deepest appreciation to the bond underwriting team for the dedication they demonstrated in assisting the State of Connecticut in completing this very important transaction under the most trying of circumstances."

The tax-exempt fixed rate bonds were structured over 20 years. The 2002 through 2004 maturities carry underlying ratings of Aa3/AA-/AA-. The 2005 through 2021 maturities will be insured by FSA and rated Aaa/AAA/AAA. Final pricing took place Tuesday, September 25, 2001 and the bond closing is scheduled for October 11, 2001.

Salomon Smith Barney is the bookrunning senior manager and Goldman, Sachs & Co., Lehman Brothers, and Ramirez & Co., Inc. serve as co-senior managers. Public Financial Management and Loop Capital are the State's financial advisors. Updike, Kelly & Spellacy and Lewis & Munday are bond counsel for the State. Pullman & Comley is representing the underwriters.

CONTACT: BERNARD L. KAVALER
DIRECTOR OF COMMUNICATION
(860) 702-3277    FAX (860) 702-3043
BERNARD.KAVALER@PO.STATE.CT.US

| S-1/A | 1st Page of 123 | TOC | Top | Previous | Next | Bottom | Just 1st |

AS FILED WITH THE SECURITIES AND EXCHANGE COMMISSION ON MARCH  , 1998

REGISTRATION NO. 333-45785
--------------------------------------------------------------------------------
--------------------------------------------------------------------------------

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549
----------------

AMENDMENT NO. 1

TO
FORM S-1
REGISTRATION STATEMENT
UNDER
THE SECURITIES ACT OF 1933
----------------

PEOPLE'S BANK
(ORIGINATOR OF THE TRUST DESCRIBED HEREIN)

(EXACT NAME AS SPECIFIED IN REGISTRANT'S CHARTER)

PEOPLE'S BANK CREDIT CARD MASTER TRUST
(ISSUER OF THE OFFERED CERTIFICATES)

| UNITED STATES | 6025 | 06-1213065 |
|---|---|---|
| (STATE OR OTHER JURISDICTION OF INCORPORATION OR ORGANIZATION) | (PRIMARY STANDARD INDUSTRIAL CLASSIFICATION CODE NUMBER) | (I.R.S. EMPLOYER IDENTIFICATION NO.) |

850 MAIN STREET
BRIDGEPORT, CONNECTICUT 06604
(203) 338-7171

(ADDRESS, INCLUDING ZIP CODE, AND TELEPHONE NUMBER, INCLUDING AREA CODE, OF
REGISTRANT'S PRINCIPAL EXECUTIVE OFFICES)
----------------
WILLIAM T. KOSTURKO, ESQ.
GENERAL COUNSEL

PEOPLE'S BANK
850 MAIN STREET
BRIDGEPORT, CONNECTICUT 06604
(203) 338-7171
(NAME, ADDRESS, INCLUDING ZIP CODE, AND TELEPHONE NUMBER, INCLUDING AREA CODE,
OF AGENT FOR SERVICE)
----------------
COPY TO:

| | |
|---|---|
| LAURA A. DEFELICE, ESQ. | ANDREW M. FAULKNER, ESQ. |
| MAYER, BROWN & PLATT | SKADDEN, ARPS, SLATE, |
| 1675 BROADWAY | MEAGHER & FLOM LLP |
| NEW YORK, NEW YORK 10019 | 919 THIRD AVENUE |
| (212) 506-2500 | NEW YORK, NEW YORK 10022 |
| | (212) 735-3000 |

----------------
APPROXIMATE DATE OF COMMENCEMENT OF PROPOSED SALE TO THE PUBLIC: As soon as
practicable after this registration statement becomes effective.
----------------
If any of the securities being registered on this Form are to be offered on
a delayed or continuous basis pursuant to Rule 415 under the Securities Act of
1933, check the following box. [_]
If this form is filed to register additional securities for an offering
pursuant to Rule 462(b) under the Securities Act, please check the following
box and list the Securities Act registration statement number of the earlier
effective registration statement for the same offering. [_]
If this form is a post-effective amendment filed pursuant to Rule 462(c)
under the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. [_]
If delivery of the prospectus is expected to be made pursuant to Rule 434,
please check the following box. [_]
----------------
CALCULATION OF REGISTRATION FEE
--------------------------------------------------------------------------------
--------------------------------------------------------------------------------

Enlarge/Download Table

TITLE OF EACH CLASS OF          AM            POSED         AMOUNT OF
                                              AGGREGATE REGISTRATION

EXHIBIT

E-1

```
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
+INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION OR AMENDMENT. A     +
+REGISTRATION STATEMENT RELATING TO THESE SECURITIES HAS BEEN FILED WITH THE  +
+SECURITIES AND EXCHANGE COMMISSION. THESE SECURITIES MAY NOT BE SOLD NOR MAY +
+OFFERS TO BUY BE ACCEPTED PRIOR TO THE TIME THE REGISTRATION STATEMENT      +
+BECOMES EFFECTIVE. THIS PROSPECTUS SHALL NOT CONSTITUTE AN OFFER TO SELL OR  +
+THE SOLICITATION OF AN OFFER TO BUY NOR SHALL THERE BE ANY SALE OF THESE     +
+SECURITIES IN ANY STATE IN WHICH SUCH OFFER, SOLICITATION OR SALE WOULD BE   +
+UNLAWFUL PRIOR TO REGISTRATION OR QUALIFICATION UNDER THE SECURITIES LAWS OF +
+ANY SUCH STATE.                                                             +
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
```

SUBJECT TO COMPLETION, DATED MARCH 20, 1998

$370,000,000

PEOPLE'S BANK CREDIT CARD MASTER TRUST

$343,000,000 FLOATING RATE CLASS A ASSET BACKED CERTIFICATES, SERIES 1998-1

$27,000,000 FLOATING RATE CLASS B ASSET BACKED CERTIFICATES, SERIES 1998-1

PEOPLE'S BANK

TRANSFEROR AND SERVICER
----------

Each of the Floating Rate Class A Asset Backed Certificates, Series 1998-1 (the "Class A Certificates") and each of the Floating Rate Class B Asset Backed Certificates, Series 1998-1 (the "Class B Certificates" and, together with the Class A Certificates, the "Offered Certificates") offered hereby will evidence undivided interests in certain assets of the People's Bank Credit Card Master Trust (the "Trust") created pursuant to the Amended and Restated Pooling and Servicing Agreement, dated as of March 18, 1997, amending and restating in its entirety the Pooling and Servicing Agreement dated as of June 1, 1993, and as further amended, from time to time, between People's Bank, as transferor and servicer (the "Transferor"), and Bankers Trust Company, as trustee. In addition, the Collateral Interest (as defined herein), which is not offered hereby, will be issued in the initial amount of $30,000,000 (the Collateral Interest together with the Offered Certificates, the "Certificates"). The property of the Trust includes, among other things, receivables (the "Receivables") generated from time to time in a portfolio of VISA(R) and MasterCard(R) credit card accounts, all monies due or to become due in payment of the Receivables, Recoveries, Interchange, the benefits of the funds and securities on deposit in certain bank accounts with respect to the Certificates and certain interest rate cap agreements, each as defined or described herein. People's Bank services the Receivables, and People's Structured Finance Corp. ("PSFC"), a wholly-owned subsidiary of People's Bank, owns the undivided interest in the Trust not represented by the Certificates or other interests issued by the Trust. The Trust currently has five other series of certificates outstanding, and PSFC and People's Bank may offer from time to time other series of certificates which evidence fractional undivided interests in certain assets of the Trust, which may have terms significantly different from the Certificates, by exchanging a portion of PSFC's interest in the Trust.

(continued on following page)
There currently is no secondary market for the Certificates, and there is no assurance that one will develop.

POTENTIAL INVESTORS SHOULD CONSIDER, AMONG OTHER THINGS, THE INFORMATION SET FORTH IN "RISK FACTORS" COMMENCING ON PAGE 24.
----------

THE CERTIFICATES REPRESENT INTERESTS IN THE TRUST ONLY AND DO NOT REPRESENT INTERESTS IN OR RECOURSE OBLIGATIONS OF PEOPLE'S BANK, PSFC OR ANY OF THEIR AFFILIATES. A CERTIFICATE IS NOT A DEPOSIT AND IS NOT INSURED BY THE FEDERAL DEPOSIT INSURANCE CORPORATION (THE "FDIC"). THE RECEIVABLES ARE NOT INSURED OR GUARANTEED BY THE FDIC OR ANY OTHER GOVERNMENTAL AGENCY.
----------

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.
----------

· Download Table

INITIAL PUBLIC   UNDERWRITING PROCEEDS TO
OFFERING PRICE   DISCOUNT(2)  PSFC(1)(3)
--------------  ------------  -----------

```
        Per Class A Certificate.................        %           %           %
        Per Class B Certificate.................        %           %           %
        Total...................................        $           $           $
```

-----

(1) Plus accrued interest, if any, at the applicable Certificate Rate (as
    defined herein) from the Closing Date.
(2) People's Bank and PSFC have agreed to indemnify the Underwriters (as
    defined herein) against certain liabilities, including liabilities under
    the Securities Act of 1933, as amended.

(3) Before deduction of expenses of the offering payable by People's Bank
    estimated to be $765,000.

----------

   The Offered Certificates are offered by the Underwriters as specified herein,
subject to receipt and acceptance by the Underwriters and subject to their
right to reject in whole or in part. It is expected that the Offered
Certificates will be delivered in book-entry form on or about March  , 1998,
through the facilities of The Depository Trust Company, Cedel Bank, societe
anonyme, and the Euroclear System.

----------

**UNDERWRITERS OF THE CLASS A CERTIFICATES**

**GOLDMAN, SACHS & CO.**

        **J.P. MORGAN & CO.**

                **LEHMAN BROTHERS**

                                **SALOMON SMITH BARNEY**

        **UNDERWRITERS OF THE CLASS B CERTIFICATES**

                **GOLDMAN, SACHS & CO.**
                ----------

        The date of this Prospectus is March  , 1998.

*SEC Info*    Home    Search    My Interests    Help    Sign In    *Please Sign In*

## Peoples Bank Credit Card Master Trust · S-1/A · On 3/20/98 · EX-8.2

Filed On 3/20/98   ·   SEC File 333-45785   ·   Accession Number 950130-98-1354

[Find]                        in this filing.      Show  docs searched   and  every "hit".
Help..    *Wildcards: ? (any letter), * (many). Logic: for Docs: & tand&. | tor|; for Text: | (anywhere), "(t&t" mean..*

| As Of | Filer | Filing | On/For/As Docs:Pgs | Issuer | Agent |
|---|---|---|---|---|---|
| 3/20/98 | Peoples Bank Credit Card M..Trust  S-1/A | | 11:558 | | 950130 |

Pre-Effective Amendment to Registration Statement (General Form)   ·   Form S-1
Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|---|---|---|---|
| 1: S-1/A | Amendment No. 1 to Form S-1 | 123 | 657K |
| 2: EX-1.1 | Underwriting Agreement | 38 | 109K |
| 3: EX-3.1 | Articles of Incorporation (As Amended) | 21 | 92K |
| 4: EX-3.2 | By-Laws (As Amended) | 21 | 81K |
| 5: EX-4.1 | Amended & Restated Pooling & Servicing Agreement | 180 | 613K |
| 6: EX-4.2 | Amendment to Amended & Restated | 7 | 22K |
| 7: EX-4.3 | Form of Series 1998-1 Supplement | 118 | 336K |
| 8: EX-4.4 | Form of Interest Rate Caps | 44 | 154K |
| 9: EX-5.1 | Opinion of Mayer, Brown & Platt (Legality) | 2 | 11K |
| 10: EX-8.1 | Opinion of Mayer, Brown & Platt (Tax Matters) | 2 | 12K |
| 11: EX-8.2 | **Opinion of Pullman & Comley** | **2** | **15K** |

EX-8.2   ·   Opinion of Pullman & Comley

| EX-8.2 | 1st Page of 2 | TOC | Top | Previous | Next | Bottom | Just 1st |
|--------|---------------|-----|-----|----------|------|--------|----------|

EXHIBIT 8.2

[PULLMAN & COMLEY LLC LETTERHEAD]

Reply to:      Bridgeport
Telephone:    (203) 330-2000

March 20, 1998

People's Bank                          Fitch IBCA, Inc.
850 Main Street                        One State Street Plaza
Bridgeport, Connecticut  06604         New York, New York 10004

Goldman, Sachs & Co., as Representa-   Standard & Poor's Ratings Service
tives of the Class A Underwriters      26 Broadway
and as Class B Underwriters            New York, New York 10004
85 Broad Street
New York, New York 10004               Moody's Investors Service, Inc
                                       99 Church Street
Bankers Trust Company                  New York, New York 10007
Four Albany Street
New York, New York 10006               Lehman Brothers Financial Products Inc.
                                       3 World Financial Center
Credit Lyonnais                        New York, New York 10285
New York Branch
1301 Avenue of the Americas
New York, New York 10019

RE:  PEOPLE'S BANK CREDIT CARD MASTER TRUST
     FLOATING RATE CLASS A ASSET BACKED CERTIFICATES, SERIES 1998-1
     FLOATING RATE CLASS B ASSET BACKED CERTIFICATES, SERIES 1998-1
     -------------------------------------------------------------

Gentlemen and Ladies:

     You have requested our opinion as to certain Connecticut income tax
consequences of the issuance of Floating Rate Class A Asset Backed Certificates,
Series 1998-1 and Floating Rate Class B Asset Backed Certificates, Series 1998-1
(collectively, the "Certificates") pursuant to an Amended and Restated Pooling
and Servicing Agreement dated as of March 18, 1997, as amended, supplemented or
otherwise modified from time to time in accordance with its terms, by and
between People's Bank (the "Bank"), as Seller and Servicer, and Bankers Trust
Company, a New York banking corporation, as Trustee on behalf of the holders of
Certificates, as the same is supplemented by the Series 1998-1 Supplement by and
between the same parties

EDGAR Online



Free White
Papers on SEC
Filings and XBRL
Download at
EDGAR Online.

Home   Filings   Profile   Financials   Ownership   Global   IPO's   Transcripts

People Search | My Searches and Alerts | My Folders          SEARCH        Filings          Go    [ Expanded Search ]

federal income tax                    Tax Preparation                    High Yield - CD's - 8%
TaxMasters CPA's and tax preparers personal    Help for businesses and individuals 10-33%    Why settle for less than 8% High interest rate
and business tax experts               discount for new clients              CD's and IRA's
www.TxmStr.com/IncomeTax              www.platzcpa.com                    www.mlnbank.com

                                                                          Ads by Google

P   PEOPLES BANK CREDIT CARD ...  Jump to :  -- Use Sections To Navigate Through The Document --              Format : PDF          File   Back
    Form:S-1/A  Filing Date:3/18/1997

EXHIBIT 8.2

[LETTERHEAD OF PULLMAN & COMLEY, LLC]

Reply to:   Bridgeport

Telephone:  (203) 330-2000

March [   ], 1997

People's Bank                              [
850 Main Street

Bridgeport, Connecticut   06604

]
Goldman, Sachs & Co., as Representa-

tives of the Class A Underwriters         Standard & Poor's Corporation
and as Class B Underwriters               25 Broadway
85 Broad Street                             New York, New York 10004
New York, New York 10004

Bankers Trust Company                     Moody's Investors Service, Inc.
Four Albany Street                        99 Church Street
New York, New York 10006                  New York, New York 10004

RE:  PEOPLE'S BANK CREDIT CARD MASTER TRUST

FLOATING RATE CLASS A ASSET BACKED CERTIFICATES, SERIES 1997-1

FLOATING RATE CLASS B ASSET BACKED CERTIFICATES, SERIES 1997-1

EXHIBIT

E-2

Gentlemen:

You have requested our opinion as to certain Connecticut income tax
consequences of the issuance of Floating Rate Class A Asset Backed Certificates,
Series 1997-1 and Floating Rate Class B Asset Backed Certificates, Series 1997-1
(collectively, the "Certificates") pursuant to an Amended and Restated Pooling
and Servicing Agreement dated as of March [  ], 1997, by and between People's
Bank ("People's"), as seller and servicer, and Bankers Trust Company, a New York
banking corporation,  as trustee acting on behalf of the holders of
Certificates, as the same is supplemented by the Series 1997-1 Supplement by and
between the same parties and dated as of March [  ], 1997 (collectively, the
"Pooling and Servicing Agreement"). Specifically, you have asked us whether the
Certificates will be treated as indebtedness and whether the People's Bank
Credit Card Master Trust (the "Trust") will be disregarded for Connecticut
income tax purposes.

**Page 2**

In connection with your request, we have been furnished with copies of:

(a) the Registration Statement on Form S-1 (as amended by Amendment Nos. 1, 2
and 3 thereto, the "Registration Statement") relating to the Certificates; (b)
the Pooling and Servicing Agreement; and (c) the opinion of Mayer, Brown & Platt
(upon which we have been authorized to rely) as to certain federal income tax
consequences of the issuance of the Certificates. This opinion is based on those
documents.

Mayer, Brown & Platt has opined that for federal income tax purposes, the
Trust will be disregarded and the Certificates will be characterized as
indebtedness secured by the receivables which are transferred to the Trust.  We
assume that opinion to be correct, and based upon that assumption, it is our
opinion that the Trust will be disregarded and the Certificates will be treated
as indebtedness for both the Connecticut income tax applicable to individuals,
trusts and estates and the Connecticut corporation business tax.

Mayer, Brown & Platt has further opined that the issuance of the
Certificates will not adversely affect the federal income tax characterization
of the holder of any outstanding series of asset-backed certificates or any
Certificate Owner (as defined in the Pooling and Servicing Agreement), or result
in the Trust being subject to federal income tax at the entity level.  We assume
that opinion to be correct, and based upon that assumption, it is our opinion
that the issuance of the Certificates will likewise not adversely affect the
Connecticut income and corporation business tax characterization of the holder
of any outstanding series of asset-based certificates or any Certificate Owner,
or result in the Trust being subject to Connecticut income tax at the entity
level.

For purposes of each of the Connecticut income and corporation business
taxes, the Connecticut adjusted gross income upon which tax is payable is the
taxpayer's federal adjusted gross income, subject to certain adjustments which
are not relevant in this case.  Consequently, the characterization properly
accorded to the Trust and the Certificates for federal income tax purposes will
be determinative for purposes of the Connecticut income and corporation business
taxes.

This opinion is for your use, and may not be relied upon by any other
person without our prior written consent.

Very truly yours,

PULLMAN & COMLEY, LLC

## Hannah R. Cook

| | |
|---|---|
| **From:** | William BARRETT [BARRETT@butzel.com] |
| **Sent:** | Tuesday, February 12, 2008 12:26 PM |
| **To:** | Hannah R. Cook |
| **Subject:** | Hasan v. Goldman |

Dear Hannah:

Goldman Sachs Europe is not a current client of Butzel Long.

At the AAA's request, I made a personal inquiry to our Detroit main office regarding the connection of Butzel Long to "Goldman Sachs - Europe" mentioned in my disclosure.

I spoke to the partner in charge of the matter on February 8. I myself have no personal knowledge of this matter, it being one that we inherited when we merged with Butzel long in May, 2007.

I was told that the principal client on the matter was JPMorganChase, not Goldman Sachs, that the matter involved a mortgage some years ago, that the matter was completed at that time, except that in July of 2007 it was necessary to file a release of mortgage, a ministerial act, which resulted in the time entry mentioned. The matter is completely finished and nothing further is to be done on it.

Please let me know if you need anything further.

Best,

Bill Barrett


This message is intended only for the individual or entity to which it is addressed.  It may contain privileged, confidential information which is exempt from disclosure under applicable laws.  If you are not the intended recipient, please note that you are strictly prohibited from disseminating or distributing this information (other than to the intended recipient) or copying this information.  If you have received this communication in error, please notify us immediately by e-mail or by telephone at (212) 818-1110.  Thank you

To comply with U.S. Treasury Regulations: This communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the tax laws of the United States, or promoting, marketing or recommending to another party any transaction or matter addressed in this communication (and any attachment).

Confidentiality Statement:
This message (including any attachments) is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information that is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from disseminating or distributing this information (other than to the intended recipient) or copying this information. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (313) 225-7000. To learn more about Butzel Long, please visit our website at http://www.butzel.com

1



EXHIBIT

M

American Arbitration Association
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

February 12, 2008

Via Electronic Mail

Glenn W. Merrick, Esq.
Marc Schatten, Esq.
G.W. Merrick & Associates, LLC
5445 DTC Parkway
Suite 912
Greenwood Village, CO 80111

Bruce A. Featherstone, Esq.
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 2400S
Denver, CO 80202

Max Gitter, Esq.
Stephen T. Kaiser, Esq.
Cleary Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006-1470

Re: 13 168 01990 04
  Malik M. Hasan, M.D. and Seeme G. Hasan
  (claimants)
  and
  Goldman Sachs 1998 Exchange Place Fund, L.P.,
  Goldman Sachs 1999 Exchange Place Fund, L.P.,
  Goldman Sachs Management Partners, L.P., The
  Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
  Goldman Sachs Management, Inc. John Does 1-100
  and Lender Parties 1-100 (Respondents)

Dear Counsel:

Enclosed is William Barrett's disclosure dated February 12, 2008, in which he has elaborated further on his previous disclosure. The Association has taken into consideration this disclosure submitted by Arbitrator Barrett along with the parties' contentions and has determined to reaffirm his appointment.

The Association has also determined after the review of arguments, to reaffirm the appointment of Ronald Case Sharp and Joanne Barak.

Pursuant to Commercial Rule R-17 (b), the Association's determinations are conclusive.

Upon receipt of the arbitrators' availability for a conference call, a call will be scheduled with the parties.



EXHIBIT
N

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Hannah R. Cook
Case Manager
401 431 4708
cookh@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

Encl.