Theodore L. Hecht (TH-5497)
Schnader Harrison Segal & Lewis LLP
140 Broadway, Suite 3100
New York, New York 10005-1101
Phone No.: (212) 973-8000
Fax No.:    (212) 972-8798
E-mail:  thecht@schnader.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MALIK M. HASAN and SEEME G. HASAN,                          :
                                                            :
                            Plaintiffs,                     :    **DECLARATION**
                                                            :
      - against -                                           :    08-CV-03189 (GBD)
                                                            :
AMERICAN ARBITRATION ASSOCIATION,                           :
INC.,                                                       :
                                                            :
                            Defendant.                      :
------------------------------------------------------------X


            THEODORE L. HECHT, pursuant to 28 U.S.C. 1746, declares under perjury that

the following is true and correct:

            1.      I am a member of the bar of this Court and attorney for the defendant

American Arbitration Association ("AAA").  This declaration is submitted in support of AAA's

motion to dismiss the Complaint pursuant to Rules 12(b)(6), Fed. R. Civ. P.

            2.      Attached hereto as Exhibit A is a copy of the Complaint filed in this

action.

      3.     Attached hereto as Exhibit B are the American Arbitration Association's Commercial Arbitration Rules and Mediation Procedures as amended September 15, 2005 ("AAA Rules"). The AAA Rules are referred to in AAA's Memorandum of Law in support of the motion for dismissal. The Court is respectfully requested to take judicial notice of the AAA Rules.

Executed on April 30, 2008

SCHNADER HARRISON SEGAL & LEWIS LLP

BY: _____

    THEODORE L. HECHT (TH-5497)

2

**EXHIBIT A**

Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams. PLLC
Attorney for Plaintiffs
2 Penn Plaza. Suite 1910
New York, New York 10121
(212)292-5663

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

MALIK M. HASAN and SEEME G. HASAN,                          :
                                                            :
                    Plaintiffs,                             :
                                                            :
         v.                                                 : 08-cv- $3189 (GBD)
                                                            :
AMERICAN ARBITRATION ASSOCIATION,                           :
INC.,                                                       :
                                                            :
                    Defendant.                              :
-------------------------------------------------X

## VERIFIED COMPLAINT

        Plaintiffs, Malik M. Hasan, M.D. and Seeme G. Hasan (collectively

referred to as the "Hasans"), through their undersigned counsel, Law Office of Daniel L.

Abrams PLLC and G.W. MERRICK & ASSOCIATES, LLC, for their Verified

Complaint (the "Complaint") against Defendant, American Arbitration Association, Inc.

("AAA"), allege as follows:

### I.    Preliminary Statement

        The Hasans bring this action seeking to specifically enforce (via

declaratory, injunctive and other relief described herein) the representations, promises,

commitments and assurances extended to them as arbitration clients of the AAA. In particular, the AAA represented, promised, committed and assured the Hasans -- in writing and as an integral part of that to which the AAA is contractually bound -- that disputes submitted to AAA-sponsored arbitration would be determined only by arbitrators who have made full, fair and timely disclosures consonant with: (i) the governing ethical code, (ii) the AAA's commitments to clients set forth on its website, and (iii) the sworn affirmations by AAA arbitration panel members. Specific enforcement of the representations, promises, commitments and assurances published by the AAA is essential to insuring the fair and just application of the Federal Arbitration Act, 9 U.S.C. §§1 *et seq.*, which presumes that the parties will participate in the arbitrator selection process based upon being furnished with full, fair and timely information.

## II.    **Parties, Jurisdiction and Venue**

1.      Malik M. Hasan, M.D. ("M. Hasan") is an individual over the age of twenty-one (21) years who at all times material to this Complaint has been a citizen and domiciliary of the State of Nevada. Dr. Hasan is Pakistani immigrant and a committed and faithful follower of Islam. At all times material to this Complaint, Dr. Hasan has been the husband of Seeme G. Hasan.

2.      Seeme G. Hasan is an individual over the age of twenty-one (21) years who at all times material to this Complaint has been a citizen and domiciliary of the State of Nevada. Ms. Hasan is a Pakistani immigrant and a committed and faithful follower of Islam. At all times material to this Complaint, Ms. Hasan has been the wife of Dr. Hasan.

3.    The AAA is a New York not-for-profit corporation which maintains its headquarters and principal place of business in New York City, State of New York.  The AAA is engaged in providing to its users and clients conflict management and resolution services, including arbitration services.  This case involves the AAA's arbitration services of which the Hasans are clients.

4.    This Court possesses subject matter jurisdiction to adjudicate the claims for relief set forth herein under the provisions of 28 U.S.C. §1331, as they arise under the laws of the United States, and 28 U.S.C. §1332(a), as this is a case between citizens of different states and the matter in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5.    Venue is proper in this judicial district under the provisions of 28 U.S.C. §1391(b) as the AAA is a resident of this judicial district.

### III.    <u>Background Allegations</u>

6.    The Hasans incorporate by reference the Preliminary Statement and each of the allegations set forth in Paragraphs 1-5 of this Complaint as if set forth in full here.

7.    As a result of disputes arising out of the solicitation of and investment by the Hasans in two Exchange Funds promoted, sponsored, constructed and managed by Goldman Sachs & Co. and certain of its affiliates (including Goldman Sachs 1998 Exchange Place Fund, L.P., Goldman Sachs 1999 Exchange Place Fund, L.P., Goldman Sachs Management Partners, L.P., Goldman Sachs Management, Inc. and The Goldman Sachs Group, Inc.) suit was initiated by the Hasans in 2004 in the federal district court in Denver. *Hasan, et al. v. Goldman Sachs 1998 Exchange Place Fund,*

3

*L.P., et al.,* Civil Action No. 04-MK-1225, United States District Court, District of Colorado.

8.    The federal and state law claims identified in the Hasans' Complaint target Goldman Sachs' solicitation of the Hasans, and the Hasans' subsequent investment of approximately $8 million in two Goldman Sachs Exchange Funds. As a consequence of their investments in the Exchange Funds, the Hasans seek recovery of many millions of dollars. Should the Hasans' allegations be sustained, Goldman Sachs may face many hundreds of millions of dollars in exposure from other innocent investors in these Exchange Funds.

9.    Upon motion filed by the Goldman Sachs Defendants in the federal court action in Denver, the federal judge presiding over that action determined that under the Federal Arbitration Act, 9 U.S.C. §§1 *et seq.*, the Hasans are bound by one or more instruments requiring resolution of their claims in AAA-sponsored arbitration in New York City. Accordingly, the federal judge in Denver transferred the case to the United States District Court for the Southern District of New York for purposes of enforcing the arbitration determination.

10.    Upon transfer to the United States District Court for the Southern District of New York, Judge Naomi Buchwald entered an Order on May 3, 2006 compelling binding arbitration. *Hasan, et al. v. Goldman Sachs 1998 Exchange Place Fund, L.P., et al.,* Case Nos. 05 Civ 10508 (NRB) and 05 Civ 10509 (NRB), United States District Court, Southern District of New York.

11.    As a result of Judge Buchwald's Order, the litigation that had been transferred from Denver was thereafter consolidated into an AAA-arbitration proceeding

4

that had been commenced, and was being prosecuted, in New York City. *Hasan, et al. v. Goldman Sachs 1998 Exchange Place Fund, L.P., et al.,* AAA Arbitration Case No. 13 168 01990 04 (New York City) (the "New York Arbitration").

12.    From and after that time, the claims that were initially brought in the federal district court in Denver have been prosecuted by the Hasans in the New York Arbitration. The Hasans have incurred to the AAA substantial fees, in an aggregate amount greater than Seventy Five Thousand Dollars ($75,000.00), for the AAA's services in connection with the New York Arbitration.

## IV.    The AAA's Promises, Assurances and Commitments Respecting Disclosure

13.    The AAA was founded in 1925 following enactment of the Federal Arbitration Act, with the specific goal of helping to implement arbitration as an out-of-court solution to resolving disputes. The AAA is now the nation's largest full-service alternative dispute resolution (ADR) provider..

14.    The AAA website ("About Us" page) informs that "[t]he AAA role in the dispute resolution process is to administer cases, from filing to closing." http://www.adr.org/about.    It states that the "AAA's ... administrative services include assisting in the appointment of ... arbitrators." *Id.* Finally, the AAA website ("About American Arbitration Association" page) declares that "[o]nce a case is filed, parties may select from the AAA's National Roster of *over 8,000* impartial experts, or "neutrals," to hear and resolve their cases." http://www.adr.org/about_aaa. (Emphasis supplied).

15.    The AAA website repeatedly affirms and emphasizes to users and clients of AAA arbitration services (including the Hasans) the dedication and

commitment of the AAA to ethics and integrity -- particularly with respect to the persons who serve as AAA arbitrators. For example:

A.    The AAA website ("AAA Mission and Principles" page) declares that the AAA's mission statement and vision statement are based upon three core values; one of the three is "integrity." http://www.adr.org/aaa_mission. That webpage commits and assures AAA clients that the "AAA has long *held* its ... arbitrators to *strict* codes of ethics and model standards of conduct to ensure fairness and impartiality in conflict management." *Id.* (Emphasis supplied).

B.    In its "Statement of Ethical Principles for the American Arbitration Association, an ADR Provider Organization," the AAA proclaims its "Foundation of Integrity." The clients of the AAA arbitration services are guaranteed that one of the cornerstones of the AAA's "foundation of integrity" is that "[a]rbitrators that serve on AAA panels are bound by the Code of Ethics for Arbitrators in Commercial Disputes." http://www.adr.org/sp.asp?id=22036. (Emphasis supplied).

C.    The AAA website ("Arbitration and Mediation" page) affirms that the conduct of AAA arbitrators "is guided by the [AAA's] Code of Ethics." http://www.adr.org/arb_med.

D.    The AAA website also contains a "NEUTRALS eCenter" site ("Qualification Criteria for Admittance to the AAA National Roster of Arbitrators and Mediators") that commits and assures clients that one of the critical qualifications of AAA arbitrators is dedication "to upholding the AAA Code of Ethics for Arbitrators." http://www.adr.org/si.asp?id=4223. (Emphasis supplied).

16.    In furtherance of its representations, promises, commitments and assurances to its arbitration clients and potential clients, the AAA has adopted the

6

"Code of Ethics for Arbitrators in Commercial Disputes Effective March 1, 2004" (the "Ethical Code"). In its Preamble, the Ethical Code instructs that it "sets forth generally accepted standards of ethical conduct" for AAA arbitrators.

A.    Canon II.A.(1) of the Ethical Code requires disclosure by AAA arbitrators of direct and *indirect* interests in the outcome of the arbitration.

B.    Canon II.A.(2) of the Ethical Code requires AAA arbitrators to disclose present and past financial, business or professional relationships "that might reasonably affect impartiality or lack of independence *in the eyes of any of the parties.*" (Emphasis supplied). And, Canon II.D. of the Ethical Code instructs AAA arbitrators that "*any doubt* as to whether disclosure is to be made or not should be resolved in favor of disclosure." (Emphasis supplied).

C.    Finally, Canon II.C. of the Ethical Code dictates that the duty to disclose by AAA arbitrators is a continuing one that applies throughout all phases of the arbitration.

17.    Further underscoring the AAA's assurance of full disclosure by arbitrators to arbitration clients is the "Notice of Appointment" form used by the AAA to appoint the members of its arbitration panels. This form, executed by each of the proposed arbitrators in the New York Arbitration, was distributed by the AAA to the Hasans. The "Notice of Appointment" form expressly -- and conspicuously -- requires that the proposed AAA arbitrators disclose "*any past or present relationship* with the parties ... *direct or indirect, whether financial, professional ... or of any other kind.*" That form goes on to instruct that "*any doubts* should be resolved in favor of disclosure." (Emphasis supplied).

7

18.    Additionally, the "NEUTRALS eCenter" location of the AAA website underscores the AAA's commitment of broad and comprehensive disclosure to the parties.  Under "Disclosure and Challenge of an Arbitrator," the following imperative is set forth:

> Q:    Are there any general principals regarding disclosures?
> A:    Yes. They are as follows:
> 1.    Every disclosure, *no matter how insignificant*, should be communicated to the parties ...

http://www.adr.org/si.asp?id=2521.  (Emphasis supplied).

19.    Finally, the AAA website contains an "Education" corner -- where the AAA Online Library is located.  One of the sections of the library is "Commercial Finance," and one of the two AAA publications in that section is "Resolving Commercial Financial Disputes – a Practical Guide."    http://www.adr.org/sp.asp?id=34090.    That AAA publication underscores (at page 5) that AAA arbitrators "must disclose *any relationship* with the parties, their attorneys or others involved in the case."  (Emphasis supplied).

## V.    Appointment of the New York Arbitration Panel

20.    The AAA proposed potential arbitrators for the 3-person arbitration panel that would preside over the New York Arbitration.  Eventually, the AAA administratively appointed a panel of three (3) practicing lawyers from the East Coast.

A.    William L.D. Barrett (of New York City), a former member of the AAA Board of Directors and of the AAA Executive Committee, was administratively appointed.  At the time of his appointment Mr. Barrett disclosed that Goldman Sachs was one of the underwriters for municipal bonds issued by one of his law firm's clients

8

(which issued bonds for institutions such as the Museum of Modern Art). The Hasans timely registered their objection to the retention of Mr. Barrett on the panel, but that objection was overruled by the AAA. Mr. Barrett was subsequently selected as the arbitration panel Chair. In the Notice of Appointment Form that he executed and dated March 18, 2005, a copy of which is attached as Exhibit A, Mr. Barrett affirmed, under oath, that he understands that as an AAA arbitrator he is governed by the Ethical Code (including his sworn duty to make full, fair and timely disclosures).

          B.     Ronald Case Sharp (of Bridgeport, Connecticut) was administratively appointed. He affirmatively stated on his Notice of Appointment form, a copy of which is attached as Exhibit B, that he had no disclosures to make in connection with the New York Arbitration. In the Notice of Appointment form that he executed and dated March 29, 2005, Mr. Sharp affirmed, under oath, that he understands that as an AAA arbitrator he is governed by the Ethical Code (including his sworn duty to make full, fair and timely disclosures).

          C.     Richard L. Mattiaccio (of New York City) was administratively appointed. He affirmatively indicated on his Notice of Appointment form, a copy of which is attached as Exhibit C. In the Notice of Appointment form that he executed and dated May 13, 2005, Mr. Mattiaccio affirmed, under oath, that he understands that as an AAA arbitrator he is governed by the Ethical Code (including his sworn duty to make full, fair and timely disclosures).

          21.     The AAA has been paid substantial monies (more than $75,000.00) by the Hasans for the services of these three persons as arbitrators in respect of the New York Arbitration.

9

## VI.    The Hasans' Efforts to Enforce the AAA's Disclosure Commitments

22.    On or about April 27, 2007, Mr. Barrett advised the parties in writing that his then law firm (Hollyer, Brady, Barrett and Hines, LLP) would the following month be acquired by Butzel Long P.C.  In connection with that acquisition, Mr. Barrett disclosed that "Butzel Long has performed real estate work for Goldman Sachs Europe Limited."  (Emphasis supplied).

23.    On or about May 29, 2007, Mr. Mattaccio advised the parties in writing that he was leaving his current law firm, Pavia & Harcourt, LLP for the New York City branch of Squire Sanders & Dempsey, LLP.  Mr. Mattaccio made no further disclosures in connection with that move.

24.    On or about October 9, 2007, following a series of material and prejudicial procedural rulings, the Hasans' counsel received an e-mail authored by Mr. Barrett which very disturbingly suggested a pro-Jewish bias.  More particularly, in addressing a non-emergency motion which happened to be lodged with the panel by the Hasans on Yom Kippur -- which merely sought a brief extension of time, and which did not seek any expedited attention or treatment -- Mr. Barrett wrote, "*a New York panel* would not consider it seemly to give cognizance to papers served on *the holy day*, and the same will not be reviewed until the next business day."[1]

---

[1]    As Pakistani immigrants, and as committed and faithful followers of Islam, the Hasans have experienced grave concern respecting whether they will be able to have their claims against Goldman Sachs fairly determined by a panel of impartial arbitrators in New York City.  They are mindful that it is widely reported that those responsible for the horrific September 11, 2001 attack on New York City are Islamic extremists, directed by Osama Bin Laden.  It is also frequently reported that these persons are said to be extended sanctuary in a mountainous region of Pakistan bordering Afghanistan.  The instruments providing for arbitration in New York City all antedate the hideous sneak attack on New York City.

25.     While Yom Kippur is a sacred time for the followers of Judaism, it is not regarded as "the holy day" to the followers of Islam. To the followers of Islam, Ramadan (the period during which the Quran was revealed) is most holy. The disturbing phrasing of Mr. Barrett's September 22 e-mail communicates a subtle (or perhaps not-so-subtle) undercurrent of anti-Islamic bias among one or more members of a "New York panel." Accentuating the Hasans' concern was that a few weeks earlier Mr. Barrett had granted a Goldman Sachs extension request (which arrived during Ramadan) without affording the Hasans any opportunity to be heard.

26.     Shortly thereafter, the Hasans filed a Verified Motion with the AAA seeking to remove Messrs. Barrett and Mattaccio as arbitrators in the New York Arbitration. The Hasans' Verified Motion emphasized actual bias, the appearance of partiality and deficiencies in the disclosures by Messrs. Barrett and Mattiaccio.

27.     After being made aware of the filing of the Hasans' Verified Motion seeking to remove him from the New York Arbitration panel, on October 11, 2007, Mr. Mattaccio issued a supplemental disclosure. In his supplemental disclosure Mr. Mattiaccio revealed for the first time that "one or more Goldman Sachs-related entities are clients of [Squires, Sanders & Dempsey, LLP]." At no time prior to October 11, 2007 had Mr. Mattaccio disclosed this critical information.

28.     On October 31, 2007, under pressure from the Hasans' Verified Motion filed earlier in the month, the AAA removed Mr. Mattaccio as a panel member in the New York Arbitration. In that same order, the AAA reaffirmed Mr. Barrett as a member of the arbitration panel.

11

29.    Following the removal of Mr. Mattiaccio, the Hasans moved the AAA to require Mr. Mattiaccio to refund the monies that had been paid to him for his services on the New York Arbitration panel.    The Hasans reasoned that: (a) Mr. Mattiaccio had materially breached his disclosure obligations, (b) his defalcations had seriously compromised the integrity of the New York Arbitration proceedings, and (c) the Hasans had obtained no benefit as a result of Mr. Mattiaccio's services.    Despite the Hasans' urgings, the AAA has not reported that it has secured a refund of the monies paid to Mr. Mattiaccio.

30.    Following the startling disclosure by Mr. Mattiaccio, the Hasans began an investigation for undisclosed relationships/connections involving Goldman Sachs and the other panel members and/or their law firms.    Since the Hasans do not have access to these law firms' conflicts check systems, their investigation has, of necessity, been limited to that which can be learned via internet searches using online search engines.

31.    As a result of their online research, the Hasans discovered that the law    firms    in    which    Messrs.    Sharp    and    Barrett    have    long    been partners/shareholders/members have enjoyed and profited from several *undisclosed* relationships with and/or connections to Goldman Sachs & Co. and/or its affiliates.    The Hasans    promptly    notified    the    AAA,    in    writing,    of    the    undisclosed relationships/connections, and sought the removal of Messrs. Sharp and Barrett.

A.    In the case of Mr. Sharp, the Hasans' research revealed -- and they promptly reported to the AAA -- that his law firm (Pullman & Comley, LLC), had within the past several years been engaged to represent directly Goldman Sachs & Co. and other

12

underwriters in respect of the issuance by the State of Connecticut of hundreds of millions of dollars of investment bonds. The Hasans also learned and reported that Pullman & Comley, LLC had represented an issuer (Peoples Bank Credit Card Mutual Trust) of hundreds of millions of dollars of securities that were underwritten by Goldman Sachs & Co. and others. As the Hasans' access to information is limited, it was not possible to determine how late these engagements continued, but internet research reflected that these engagements were active in the last couple of years of the 1990s.

    B.  In the case of Mr. Barrett, the Hasans' research revealed (and they promptly reported to the AAA) that two of Mr. Barrett's flagship mutual fund clients maintain financial relationships with Goldman Sachs. One of these clients (Pacific Capital Cash Assets Trust) has for several years held in its portfolio approximately $20 million in commercial paper issued by Goldman Sachs & Co. And, Mr. Barrett's long-time partner (Edward Hines) has for many years been the Secretary of Pacific Capital. The other mutual fund client (The Alger Institutional Funds) has an ongoing financial arrangement under which it compensates Goldman Sachs & Co. representatives for introducing clients to its mutual fund investment opportunity and for other activities. These relationships between Mr. Barrett's clients and Goldman Sachs & Co. are believed to be ongoing through the present.

    32.  Following discovery of these undisclosed relationships, the Hasans moved the AAA to remove Messrs. Sharp and Barrett from the New York Arbitration panel. The Hasans emphasized that under applicable law, the removal of Mr. Mattiaccio required the removal of the balance of the members of the panel to assure that improper influence had not infected the panel and its decision making. The Hasans also urged that

the removal of Messrs. Sharp and Barrett was required as they had materially breached their sworn duty of full, fair and timely disclosure of all relationships with and connections to Goldman Sachs.

33.     In late December of 2007 or early January of 2008, and following the lodging with the AAA of the motion to remove Messrs. Sharp and Barrett, the Hasans' counsel received a telephone call from representatives of the AAA's Northeast Case Management Center in East Providence, Rhode Island. During that telephone call, the AAA representatives instructed the Hasans' counsel that the AAA declined to ask Messrs. Sharp and Barrett to disclose the full range of information described on the AAA website. Counsel for the Hasans was told that the members of the panel should be aware of what disclosures were required of them. Finally, the AAA representatives advised the Hasans' counsel that a more narrow request would be transmitted by the AAA to Messrs. Sharp and Barrett.

34.     Shortly thereafter, on January 3, 2008, the AAA transmitted a letter to Messrs. Sharp and Barrett identifying the specific client entities discovered as a result of the Hasans' online investigation and requesting disclosures with regard to these entities, the arbitrators and the participants (including Goldman Sachs) in the New York Arbitration. A copy of the January 3, 2008 letter sent to Messrs. Sharp and Barrett is attached hereto as Exhibit D.

A.     Mr. Barrett responded within a matter of hours. He disclosed that Pacific Capital Cash Assets Trust and The Alger Institutional Funds are clients of his past and current law firm (Butzel Long P.C.). But he elected not to disclose that these are his individual clients, and he elected not to disclose that these clients have long-standing and

14

continuing business dealings with Goldman Sachs & Co. as set forth in Paragraph 31B of this Complaint. However, in sharp contrast to his April 27, 2007 disclosure (which recites that Goldman Sachs Europe is a *former client* of Butzel Long P.C.), Mr. Barrett's January 3, 2008 disclosure states that "Goldman Sachs Europe *is* a [current] client of [Butzel Long, P.C.]."[2]  A copy of Mr. Barrett's January 3, 2008 disclosure is attached as Exhibit E.[3]

      B.    Mr. Sharp responded the following day. He acknowledged that his law firm had previously represented People's Bank Credit Card Master Trust. Mr. Sharp elected not to disclose his firm's previous representation of Goldman Sachs & Co., and he elected not to disclose the relationship between People's Bank Credit Card Master Trust and Goldman Sachs. A copy of Mr. Sharp's January 4, 2008 disclosure is attached as Exhibit F.

      35.    Based upon the continuing failure of Messrs. Sharp and Barrett to make full, fair and timely disclosures as required by the Ethical Code, the commitments set forth on the AAA website and the sworn attestations set forth in the arbitrators' Notice of Appointment forms, on January 22, 2008 the Hasans lodged with the AAA their renewed Motion to remove Messrs. Sharp and Barrett from the New York Arbitration panel. The Hasans attached copies of the results of their internet research to corroborate their assertions respecting the arbitrators' non-disclosures.

---

[2]    Mr. Barrett has declined to disclose the length and breadth (full scope) of the attorney-client relationship enjoyed by Butzel Long P.C. with Goldman Sachs Europe. Mr. Barrett has further declined to disclose the magnitude of fees and other revenue generated by Butzel Long P.C. from its representation of Goldman Sachs Europe. This information continues to remain concealed through the present.

[3]    On February 12, 2008, Mr. Barrett issued yet another written disclosure. This time Mr. Barrett declared that "Goldman Sachs Europe is not a current client of Butzel Long." This February 12,

36.     On February 12, 2008, without comment other than reciting that it had reviewed the arguments of the parties, the AAA reaffirmed the appointment of Messrs. Sharp and Barrett to the New York Arbitration panel.   The AAA also underscored that any further appeal to the AAA would be futile.  In the AAA's February 12, 2008 letter, the AAA Case Manager emphasized that "[p]ursuant to Commercial Rule R-17(b), [the AAA's] determinations are conclusive."

37.     Currently, there are no conferences, deadlines or hearings scheduled in the New York Arbitration.  As a result of the recent and unexpected need for opposing counsel in Denver to undergo a surgical procedure, a conference call that had been set with the members of the arbitration panel to establish a future schedule for the New York Arbitration has been adjourned *sine die*.

## VII.    First Claim for Relief

38.     The Hasans incorporate by reference the Preliminary Statement and each of the allegations set forth in Paragraphs 1-37 of this Complaint as if set forth in full here.

39.     The AAA has repeatedly and emphatically represented, assured, promised and committed to the clients of AAA-sponsored arbitrations (including the Hasans), that it is fully and uncompromisingly committed to insuring the fairness, transparency and integrity of its arbitration proceedings.

40.     The AAA has repeatedly and emphatically represented, assured, promised and committed to the clients of the arbitrations that it sponsors (including the Hasans), that it will permit to serve as arbitrators in AAA-sponsored arbitrations only

---

2008 disclosure avers that "the principal client on the matter was JPMorganChase, not Goldman Sachs"

persons who make full, fair and timely disclosures as required by: (a) the Ethical Code, (b) the commitments set forth on the AAA website, and (c) the assurances and commitments set forth in the Notice of Appointment forms executed under oath by each of the AAA arbitrators.

41.    Strict and specific enforcement of the AAA representations, assurances, promises and commitments described in Paragraph 40 of this Complaint is absolutely essential to establishing and maintaining the integrity, trust and confidence in AAA arbitration proceedings, including the New York Arbitration proceeding.

42.    Strict and specific enforcement of the AAA representations, assurances, promises and commitments described in Paragraph 40 of this Complaint is necessary to assure the just and even-handed performance and operation of the Federal Arbitration Act, 9 U.S.C. §§1, *et seq.,* and to assure appropriate implementation of the Orders entered by the federal courts in Denver and New York City compelling arbitration of the Hasans' claims at issue in the New York Arbitration.

43.    Absent strict and specific enforcement of the AAA representations, assurances, promises and commitments described in Paragraph 40 of this Complaint, the Hasans will continue to suffer immediate, substantial, palpable and irreparable harm and injury. For example, and without being exhaustive:

A.    The Hasans will be compelled to participate in an AAA-sponsored arbitration proceeding in which the fundamental fairness and integrity of the arbitration is called into serious doubt by the extensive participation of an arbitrator (Mr. Mattiaccio) who was removed for cause by the AAA. Absent removal of Messrs. Sharp and Barrett,

---

(emphasis supplied), and that the most recent work on this engagement had occurred in July of 2007.

17

the participation of Mr. Mattaccio likely improperly influenced the other panel members and has materially infected the New York Arbitration proceeding.

B.    The Hasans will be compelled to participate in an AAA-sponsored arbitration proceeding in which the fundamental fairness and integrity of the arbitration is called into serious doubt by the material default of Messrs. Sharp and Barrett to make the full, fair and timely disclosures required by: (a) the Ethical Code, (b) the commitments set forth on the AAA website, and (c) the assurances and commitments set forth in the Notice of Appointment forms executed under oath by each of the AAA arbitrators.

C.    The Hasans confront the very real prospect that the benefits to which they would otherwise be entitled under the Federal Arbitration Act will be curbed, minimized and/or distorted by entry of an award by arbitrators who have consistently refused to disclose relationships/connections with one or more parties (or their affiliates) who are adverse to the Hasans.

44.    Given the limited scope of judicial review of AAA arbitration awards permitted under the Federal Arbitration Act, the potential injury, loss and damage accruing to the Hasans by the refusal of the AAA to fully, faithfully and timely fulfill and discharge its representations, assurances, promises and commitments described in Paragraph 40 of this Complaint is likely substantial, irreparable and not subject to reasonable measure or calculation.

45.    The benefit to the Hasans from specific enforcement (by declaratory, injunctive and other relief sought herein) of the representations, assurances, promises and commitments described in Paragraph 40 of this Complaint substantially outweighs the injury, if any, to the AAA from the relief sought herein.

46.     Specific enforcement (by declaratory, injunctive and other relief sought herein) of the representations, assurances, promises and commitments described in Paragraph 39 of this Complaint is fully consistent with public policy as reflected in the Federal Arbitration Act.

47.     The Hasans have fully and timely performed all of their obligations to the AAA in respect of the New York Arbitration.

48.     All conditions precedent and subsequent to the Hasans' right to initiate and maintain this claim against the AAA have been performed, waived or have otherwise occurred.

## VIII.    Second Claim for Relief

49.     The Hasans incorporate by reference the Preliminary Statement and each of the allegations set forth in Paragraphs 1-48 of this Complaint as if set forth in full here.

50.     Prior to his removal from the New York Arbitration panel, Mr. Mattaccio participated fully and extensively as a panel member in the arbitration.  In particular, Mr. Mattiaccio was an active contributor in the panel's review and consideration of numerous motions and arguments presented by the parties, and he influenced and materially helped shape the panel's decisions respecting critical pre-hearing motions and requests for procedural and substantive relief.

51.     During a significant portion of the time before his removal from the New York Arbitration, Mr. Mattiaccio was engaged in discussions and negotiations respecting his joining Squire, Sanders & Dempsey, LLP as a partner, or was a partner in that law firm.  As noted above, at no time prior to October 11, 2007 did Mr. Mattiaccio or

19

Goldman Sachs disclose that Squire Sanders & Dempséy, LLP represents one or more Goldman Sachs entities.

52.     Upon removal of Mr. Mattiaccio, it became incumbent upon the AAA to remove the balance of the New York Arbitration panel (Messrs. Sharp and Barrett). Such removal is legally required to insure the parties that Mr. Mattiaccio has not unduly influenced or infected the panel's thinking and deliberations on account of his potential to join and subsequent joinder of a law firm that actively represents Goldman Sachs.

53.     Absent removal of the balance of the New York Arbitration panel, the AAA's representation, promise and assurance that it is fully committed to the integrity of its arbitration proceedings will be nullified and gutted.

54.     Despite appropriate and timely request of the AAA to remove Messrs. Sharp and Barrett for the reasons stated the AAA has repeatedly and wrongfully refused to do so.

55.     All conditions precedent and subsequent to the Hasans' right to initiate and maintain this claim against the AAA have been performed, waived or have otherwise occurred.

## PRAYER FOR RELIEF

WHEREFORE, the Hasans respectfully pray that this Court enter appropriate Orders and Judgment in their favor, and against the AAA, as follows:

A.     Declaring that that AAA is lawfully and contractually bound to the Hasans to fully, faithfully and timely fulfill and discharge its representations, assurances, promises and commitments that the New York Arbitration will be decided by a panel of

arbitrators who provide full, fair and timely disclosures fully consistent with the Ethical Code, the commitments and assurances set forth on the AAA website and the arbitrator Notice of Appointment form;

B.    Entering a Temporary Restraining Order, preliminary injunction and permanent injunction enjoining the AAA from authorizing or permitting the current New York Arbitration panel to make any further decisions, or to preside over any further proceedings, in that arbitration pending reconstitution of the panel by the AAA;

C.    Entering a Temporary Restraining Order, preliminary injunction and permanent injunction requiring the AAA to: (i) remove Ronald C. Sharp and William L.D. Barrett from the New York Arbitration panel based upon their (a) prolonged, extensive and intensive participation as members of the arbitration panel with a member of the panel (Richard L. Mattiaccio) who was removed for cause, and (b) consistent failure to make appropriate disclosures required by the Ethical Code, the commitments set forth on the AAA website and the affirmations contained in the Notice of Appointment forms signed by each of these individuals, and (ii) replace each of those persons with arbitrators who will make full, fair and timely disclosures and who are free from bias and the appearance of partiality;

D.    Entering a declaratory judgment and injunctive relief in favor of the Hasans, and against the AAA, requiring the AAA to credit against any future fees and charges by the AAA all amounts that the Hasans have heretofore paid to the AAA for the period from the appointment of Messrs Mattiaccio, Sharp and Barrett through the present; and

E.    Awarding the Hasans their reasonable attorneys' fees, expert witness fees, interest, costs of suit and such other and further relief which the Court deems equitable and just or to which the Hasans may be entitled under the prevailing circumstances.

Dated:  March 31, 2008.



Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams, PLLC
2 Penn Plaza, Suite 1910
New York, NY 10121
Phone:  (212) 292-5663
Fax:  (646) 536-8905
Dan@LawyerQuality.com

G.W. MERRICK & ASSOCIATES, LLC
Glenn W. Merrick
Marc L. Schatten
Suite 912, 5445 DTC Parkway
Greenwood Village, Colorado 80111
Telephone: 303-831-9400
Facsimile:  303-771-5803
E-mail:      gwm@gwmerrick.com

ATTORNEY FOR PLAINTIFFS MALIK M.
HASAN, M.D. and SEEME G. HASAN

22

23

## VERIFICATION

Malik M. Hasan, M.D., being first duly sworn, deposes and states that he has read the foregoing VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF and that the allegations contained in this document are true and correct to the best of his knowledge, information and belief.

_Malik M Hasan_

Malik M. Hasan, M.D.

STATE OF COLORADO                )
                                 )  ss.
COUNTY OF __Wash. DC.__          )

Subscribed and sworn to before me this 26 day of March, 2008 by Malik M. Hasan, M.D.

Witness my hand and official seal.

_Lynn E Hight_

Notary Public

LYNN E. HIGHT
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires April 14, 2011

District of Columbia: SS
Subscribed and sworn to before me, in my presence,
this 26 day of March, 2008
_Lynn E Hight_
Notary Public, D.C.
My commission expires 4-14-2011

23

EXHIBITS TO VERIFIED COMPLAINT

HASAN V. AAA

08 Civ. 3189 (GBD)

MAR. 18. 2005  4:27PM                                          NO. 036   P. 3/5
MAR-18-2005 FRI 12:18 PM                    FAX NO.                      P. 02

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.,
    Goldman Sachs Management, Inc,
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

## NOTICE OF APPOINTMENT

To: William Barrott

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. If any additional direct or indirect contact arises during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubt should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. The AAA will call the facts to the attention of the parties' counsel.

If you are able to accept this responsibility as Arbitrator, please sign and return this form to the AAA.

☐ I HAVE NOTHING TO DISCLOSE.

☐ SEE DISCLOSURE DATED _____.

☑ I HEREBY DISCLOSE THE FOLLOWING: (attach additional sheets if necessary, but please type – do not hand write – your disclosures below or provide them in a typed letter which can be forwarded to the parties).

*I have served as arbitrator with Ms. Ruth Kurtz.*

☑ MY DISCLOSURE WILL IN NO WAY PREVENT ME FROM FAIRLY AND IMPARTIALLY DISCHARGING MY DUTIES AS ARBITRATOR IN THE ABOVE-REFERENCED MATTER.

## THE ARBITRATOR'S OATH

EXHIBIT

A

State of New York
County of New York } SS:

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

I attest that the panel biography provided by the American Arbitration Association is accurate and complete.

Dated: March 18, 2005    Signed: _____

Sworn before me this 18th day of March, 2005.    DEBORAH A. REAGAN

AR 24, 2005  3:46PM                                                    NO. 505    P. 2

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Freeaux, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401 435-6529
internet: http://www.adr.org/

March 24, 2005

Via Facsimile

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO 80202

Re: 13 168 01990 04
      Goldman Sachs 1998 Exchange Place Fund, L.P.,
      Goldman Sachs 1999 Exchange Place Fund, L.P.,
      Goldman Sachs Management Partners, L.P., The
      Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
      Goldman Sachs Management, Inc.
      and
      Malik M. Hasan, M.D. and Seeme G. Hasan

Dear Parties:

Arbitrator Barrett made the enclosed disclosure.

Please advise the Association of any objections to the appointment of Arbitrator Barrett by March 31, 2005, copying the other side. The arbitrator shall not be copied on any comments related to the disclosure.

If any objections are raised, the other party may respond within five business days. The AAA will make a determination regarding the arbitrator's continued service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten days.

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

Paula C. Dubois
Case Manager
401 431 4789
duboisp@adr.org

Katharine M. Legeros
Supervisor
401 431 4714
LegerosK@adr.org

Docketed 3-24-05 KLD

Action Due 3-31-05 CB, BL

MAR. 24. 2005  5:46PM                                                    NO. 305   P. 3 of 1

**Paula Dubois**

Sent:     Wednesday, March 23, 2005 10:44 AM
To:       Paula Dubois
Subject:  Goldman Sachs

Dear Paula:

Our office has run a computer check on this case and I have the following additional disclosures:

My firm represents the Trust for Cultural Resources which issues municipal bonds for institutions such as the Museum of Modern Art. Goldman Sachs is one of the underwriters for these bonds.

Cleary Gottlieb represented a party in an arbitration in 2002 where my firm represented the opposing party.

Please advise the parties of these disclosures.

Many thanks for your help.

Bill Barrett

3/23/2005

MAR. 31. 2005  1:08PM        PULLMAN & COMLEY BPT                203 NO. 76 1288  P.  4/10
MAR-29-2005  11:08

In the Matter of Arbitration Between:

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

**EXHIBIT**

**B**

## NOTICE OF APPOINTMENT

To: Ronald Case Sharp

It is most important that the parties have complete confidence in the arbitrator's impartiality.  Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind.  This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed.  Any doubts should be resolved in favor of disclosure.  If you are aware of direct or indirect contact with such individuals, please describe it below.  Failure to make timely disclosures may forfeit your ability to collect compensation.  The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association.  Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☑ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☑ |
| 7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☑ |
| 8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case? | ☐ | ☑ |

MAR. 31. 2005  1:08PM    PU⸱MAN & COMLEY BPT                      NO. 7612B3  P. 5/10

|  | Yes | No |
|---|---|---|
| 9.  Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? | ☐ | ☒ |
| 10.  Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration? | ☐ | ☒ |
| 11.  Have you ever sued or been sued by either party or its representative? | ☐ | ☒ |
| 12.  Do you or your spouse own stock in any of the companies involved in this arbitration? | ☐ | ☒ |
| 13.  If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators? | ☐ | ☒ |
| 14.  Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? | ☐ | ☒ |

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

Please indicate one of the following:

☒   I have conducted a check for conflicts and have nothing to disclose.

☐   I have conducted a check for conflicts and have made disclosures on an attached sheet.

## THE ARBITRATOR'S OATH

State of CONNECTICUT  }
County of Fairfield   }  SS:  BRIDGEPORT

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: March 29, 2005       Signed: _____
                                      RONALD CASE SHARP

Sworn before me this  29  day of  March , 2005  _____

                                              JOSEPH LIPNICKAS
                                              NOTARY PUBLIC
                                              MY COMMISSION EXPIRES JANUARY 31, 2005

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
   Goldman Sachs 1998 Exchange Place Fund, L.P.,
   Goldman Sachs 1999 Exchange Place Fund, L.P.,
   Goldman Sachs Management Partners, L.P., The
   Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
   Goldman Sachs Management, Inc.
   and
   Malik M. Hasan, M.D. and Seeme G. Hasan

**EXHIBIT C**

## NOTICE OF APPOINTMENT

To:    Richard Mattiaccio

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment.

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☒ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☒ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☒ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☒ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☒ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☒ | ☒ NO. RL9M - |

7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned?

8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case?

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration?

11. Have you ever sued or been sued by either party or its representative?

12. Do you or your spouse own stock in any of the companies involved in this arbitration?

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☐  I have conducted a check for conflicts and have nothing to disclose.

☒  I have conducted a check for conflicts and have made disclosures on an attached sheet.

## THE ARBITRATOR'S OATH

State of  New York  }
County of  New York  }    SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: May 13, 2005        Signed: _Richard L. Mattiaccio_

Sworn before me this 13 day of May , 2005

_Kostadina Lambrou_

**KOSTADINA LAMBROU**
Notary Public, State of New York
No. 01LA5041943
Qualified in Queens County
Commission Expires April 10, 2008

## Disclosures of Arbitrator Richard L. Mattiaccio

1. In the early or mid-1990's, I served as an arbitrator in a commercial arbitration in New York in which Mr. Gitter and his then-firm, Paul Weiss, served as counsel for one of the parties. I do not recall whether Mr. Gitter represented claimant or respondent. I do not recall any of the details of the award or of the case, other than that the product was baby wipes manufactured in Israel. If the parties request further information regarding this matter, I could review a file that is now in off-site storage. (Due to a less-than-perfect conversion to a new computer system since that case, I am unable to access any information of that vintage by computer.)

2. I have served as counsel in two separate litigated matters in which Cleary Gottlieb has been opposing counsel. In the early 1990's, I represented Ferrara Foods, a former U.S. importer against the Italian pasta company, DeCecco, in a case in the S.D.N.Y. in which my client alleged breach of an agreement to renew the exclusive distribution agreement. The case was settled after denial of defendant's summary judgment motion. The Cleary partner handling the matter for defendant was Jonathan Blackman. In the late-1990's, I represented Ugo Castellano, an individual plaintiff in a federal securities fraud case in the S.D.N.Y. against Young & Rubicam, in which plaintiff alleged a failure to disclose material information regarding the value of his shares at the time he agreed to retire, giving rise to a call on his shares at book value. Following an appeal of summary judgment, the case was tried to a jury, resulting in a verdict for plaintiff in 2002, and the case was settled. The Cleary partner representing Y&R was Lawrence Friedman.

3. From approximately October 1997 through October 1999, in connection with her employment as Vice President of the New York branch of the French Bank CIC-Union Européenne, Martha Skidmore, who is now an associate at Pavia & Harcourt LLP, was the bank's account officer responsible for the lending relationship with the Goldman Sachs Group. (This occurred before Ms. Skidmore attended law school.) In that capacity, Ms. Skidmore managed the bank's credit exposure to Goldman Sachs entities and interacted regularly with members of Goldman's treasury department, especially with respect to their needs for letters of credit.

   I generally do not communicate with attorneys at my firm regarding matters in which I serve as an arbitrator, and I would not communicate with Ms. Skidmore regarding this case.

I do not believe the matters disclosed herein would affect my impartiality or ability to perform my oath.

May 13, 2005

_Richard L. Mattiaccio_
Richard L. Mattiaccio

**Glenn W. Merrick**

| | |
|---|---|
| From: | William BARRETT [BARRETT@butzel.com] |
| Sent: | Thursday, January 03, 2008 1:24 PM |
| To: | Hannah R. Cook; Ronald C. Sharp |
| Cc: | mgitter@cgsh.com; bfeatherstone@featherstonelaw.com; Glenn W. Merrick; Marc L. Schatten |
| Subject: | Re: AAA CASE 13 168 01990 04--Hasan and Goldman |

Dear All:

Re: 13 168 01990 04
    Malik M. Hasan, M.D. and Seeme G. Hasan
    (Claimants)
    and
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc. John Does 1-100
    and Lender Parties 1-100 (Respondents)

The American Arbitration Association has requested that the arbitrators review and make disclosures with regard to the following entities and the firms, arbitrators and/or other participants in this case:

I am responding to the above request with respect to myself and my law firm (Butzel Long "BL" and its predecessor (Hollyer Brady Barrett and Hines LLP "HB"). I have no information about the following entities' relationships with the firms, arbitrators or other arbitrators in this case, other than that reflected in previous disclosures. The following represents information obtained by a computer search ordered today in response to the request.

Pacific Capital Cash Assets Trust

This entity is a mutual fund, client of BL and formerly a client of HB.
We represent the entity and its independent trustees; my partner, Edward Hines is the corporate secretary.

The Alger Institutional Funds

This entity is a mutual fund, client of BL and formerly a client of HB.

Enbridge Energy Partners is a co-defendant with a client of BL named Wolverine Energy Partners.

Peoples Bank Credit Card Master Trust - no information about this entity.

The Trust for Cultural Resources is a client of BL and formerly of HB.

The Museum of Modern Art has been a client of HB; has had funding through Trust for Cultural Resources.

Goldman Sachs Europe Limited is a client of BL (real estate).

None of the foregoing matters would affect my impartiality in the above case.


Yours truly,

WLD Barrett



**EXHIBIT**

1

This message is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information which is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from disseminating or distributing this information (other than to the intended recipient) or copying this information. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (212) 818-1110.  Thank you

To comply with U.S. Treasury Regulations: This communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the tax laws of the United States, or promoting, marketing or recommending to another party any transaction or matter addressed in this communication (and any attachment).

Confidentiality Statement:
This message (including any attachments) is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information that is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from disseminating or distributing this information (other than to the intended recipient) or copying this information. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (313) 225-7000. To learn more about Butzel Long, please visit our website at http://www.butzel.com

2

# PULLMAN & COMLEY, LLC
## ATTORNEYS AT LAW

RONALD C. SHARP
850 Main Street – 8th Floor
P.O. Box 7006
Bridgeport, CT 06601-7006
p   203 330 2148
f   203 330 2088
rsharp@pullcom.com
www.pullcom.com

January 4, 2008

<u>Via E-Mail: cookh@adr.org and U.S. Mail</u>

Hannah Cook, Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

Re:   131 68 01990 04

Dear Hannah:

Pursuant to your January 3, 2008 letter requesting my review and disclosures with regard to the entities set forth therein, please be advised that I have no information on any of the entities listed except as follows:

1. <u>People's Bank Credit Card Master Trust</u>. Many years ago, my law firm (Pullman & Comley, LLC) was asked by the Trustee (I believe Banker's Trust) to issue third party type opinion letters to People's Bank with respect to UCC-1 filings in Connecticut and to Connecticut Banking law compliance. We have had no other contact concerning the Master Trust. I was not involved in any way as to providing the opinion letters.

2. <u>The Museum of Modern Art</u>. My wife has been a member for many years.

None of the foregoing would in any way affect my impartiality in the above-referenced case.

Very truly yours,

Ronald C. Sharp

/psk

Bridgeport/1.1/RCS/666333v1

**EXHIBIT
E**

American Arbitration Association
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

January 3, 2008

Via Electronic Mail

William L.D. Barrett, Esq.
Butzel Long
380 Madison Avenue, 22nd Floor
New York, NY 10017

Mr. Ronald Case Sharp, Esq.
Pullman and Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06604

Re: 13 168 01990 04
    Malik M. Hasan, M.D. and Seeme G. Hasan
    (Claimants)
    and
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc. John Does 1-100
    and Lender Parties 1-100 (Respondents)

Dear Arbitrators:

The American Arbitration Association is requesting that the arbitrators review and make disclosures with regard to the following entities and the firms, arbitrators and/or other participants in this case:

- Pacific Capital Cash Assets Trust
- The Alger Institutional Funds
- Enbridge Energy Partners
- Peoples Bank Credit Card Master Trust
- The Trust for Cultural Resources
- The Museum of Modern Art
- Goldman Sachs Europe Limited

With respect to each of these entities, please make full and complete disclosure in accordance with the Code of Ethics and the AAA's rules. Note also that an arbitrator's obligation to make disclosures is ongoing, and should you have any other disclosures you should make them promptly and immediately upon becoming aware of the potential conflict.

Please forward your response, if any, no later than January 10, 2008.

Sincerely,

Hannah R. Cook
Case Manager
401 431 4708
cookh@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

cc:    Max Gitter
       Bruce Featherstone
       Glenn Merrick

**EXHIBIT B**

# American Arbitration Association

*Dispute Resolution Services Worldwide*

The rules and procedures listed below are not current. For the current versions of our rules and procedures, please go to the Dispute Resolution Services home page and select the desired rules.

Commercial Arbitration Rules and Mediation PROCEDURES
(Including Procedures for Large, Complex Commercial Disputes)
Amended and Effective September 15, 2005 (Fee Update).

## TABLE OF CONTENTS

IMPORTANT NOTICE
INTRODUCTION
STANDARD ARBITRATION CLAUSE
ADMINISTRATIVE FEES
MEDIATION
LARGE, COMPLEX CASES

COMMERCIAL MEDIATION PROCEDURES
M-1. Agreement of Parties
M-2. Initiation of Mediation
M-3. Requests for Mediation
M-4. Appointment of the Mediator
M-5. Qualifications of the Mediator
M-6. Vacancies
M-7. Representation
M-8. Date, Time, and Place of Mediation
M-9. Identification of Matters in Dispute
M-10. Authority of the Mediator
M-11. Privacy
M-12. Confidentiality
M-13. No Stenographic Record
M-14. Termination of Mediation
M-15. Exclusion of Liability
M-16. Interpretation and Application of Procedures
M-17. Expenses
ADMINISTRATIVE FEES

COMMERCIAL ARBITRATION RULES
R-1. Agreement of Parties
R-2. AAA and Delegation of Duties
R-3. National Roster of Arbitrators
R-4. Initiation under an Arbitration Provision in a Contract
R-5. Initiation under a Submission
R-6. Changes of Claim

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 15, ... Page 2 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 3 of 28

R-7. Jurisdiction
R-8. Mediation
R-9. Administrative Conference
R-10. Fixing of Locale
R-11. Appointment from National Roster
R-12. Direct Appointment by a Party
R-13. Appointment of Chairperson by Party-Appointed Arbitrators or Parties
R-14. Nationality of Arbitrator
R-15. Number of Arbitrators
R-16. Disclosure
R-17. Disqualification of Arbitrator
R-18. Communication with Arbitrator
R-19. Vacancies
R-20. Preliminary Hearing
R-21. Exchange of Information
R-22. Date, Time, and Place of Hearing
R-23. Attendance at Hearings
R-24. Representation
R-25. Oaths
R-26. Stenographic Record
R-27. Interpreters
R-28. Postponements
R-29. Arbitration in the Absence of a Party or Representative
R-30. Conduct of Proceedings
R-31. Evidence
R-32. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence
R-33. Inspection or Investigation
R-34. Interim Measures
R-35. Closing of Hearing
R-36. Reopening of Hearing
R-37. Waiver of Rules
R-38. Extensions of Time
R-39. Serving of Notice
R-40. Majority Decision
R-41. Time of Award
R-42. Form of Award
R-43. Scope of Award
R-44. Award upon Settlement
R-45. Delivery of Award to Parties
R-46. Modification of Award
R-47. Release of Documents for Judicial Proceedings
R-48. Applications to Court and Exclusion of Liability
R-49. Administrative Fees
R-50. Expenses
R-51. Neutral Arbitrator's Compensation
R-52. Deposits
R-53. Interpretation and Application of Rules
R-54. Suspension for Nonpayment

EXPEDITED PROCEDURES
E-1. Limitation on Extensions

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 15, ... Page 3 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 4 of 28

E-2. Changes of Claim or Counterclaim
E-3. Serving of Notices
E-4. Appointment and Qualifications of Arbitrator
E-5. Exchange of Exhibits
E-6. Proceedings on Documents
E-7. Date, Time, and Place of Hearing
E-8. The Hearing
E-9. Time of Award
E-10. Arbitrator's Compensation

PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES
L-1. Administrative Conference

L-2. Arbitrators

L-3. Preliminary Hearing

L-4. Management of Proceedings

OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION
O-1. Applicability
O-2. Appointment of Emergency Arbitrator
O-3. Schedule
O-4. Interim Award
O-5. Constitution of the Panel
O-6. Security
O-7. Special Master
O-8. Costs

ADMINISTRATIVE FEES
Fees
Refund Schedule
Hearing Room Rental

IMPORTANT NOTICE

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA. To ensure that you have the most current information, see our Web Site at www.adr.org.

INTRODUCTION

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government.

Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on all forms of out-of-court dispute settlement.

Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

*Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

*We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following controversy: (describe briefly) We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

In transactions likely to require emergency interim relief, the parties may wish to add to their clause the following language:

*The parties also agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to the proceedings.*

These Optional Rules may be found below.

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees.

The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

Mediation

The parties might wish to submit their dispute to mediation prior to arbitration. In mediation, the neutral mediator assists the parties in reaching a settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation

Procedures. There is no additional administrative fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

If the parties want to adopt mediation as a part of their contractual dispute settlement procedure, they can insert the following mediation clause into their contract in conjunction with a standard arbitration provision:

*If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission:

*The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

Large, Complex Cases

Unless the parties agree otherwise, the procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $500,000 exclusive of claimed interest, arbitration fees and costs.

The key features of these procedures include:

§ a highly qualified, trained Roster of Neutrals;

§ a mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;

§ broad arbitrator authority to order and control discovery, including depositions;

§ presumption that hearings will proceed on a consecutive or block basis.

COMMERCIAL MEDIATION PROCEDURES

M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these procedures, they shall be deemed to have made these procedures, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation by filing with the AAA a submission to mediation or a written request for mediation pursuant to these procedures, together with the $325

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 15, ... Page 6 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 7 of 28

nonrefundable case set-up fee. Where there is no submission to mediation or contract providing for mediation, a party may request the AAA to invite another party to join in a submission to mediation. Upon receipt of such a request, the AAA will contact the other parties involved in the dispute and attempt to obtain a submission to mediation.

M-3. Requests for Mediation

A request for mediation shall contain a brief statement of the nature of the dispute and the names, addresses, and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation. The initiating party shall simultaneously file two copies of the request with the AAA and one copy with every other party to the dispute.

M-4. Appointment of the Mediator

Upon receipt of a request for mediation, the AAA will appoint a qualified mediator to serve. Normally, a single mediator will be appointed unless the parties agree otherwise or the AAA determines otherwise. If the agreement of the parties names a mediator or specifies a method of appointing a mediator, that designation or method shall be followed.

M-5. Qualifications of the Mediator

No person shall serve as a mediator in any dispute in which that person has any financial or personal interest in the result of the mediation, except by the written consent of all parties. Prior to accepting an appointment, the prospective mediator shall disclose any circumstance likely to create a presumption of bias or prevent a prompt meeting with the parties. Upon receipt of such information, the AAA shall either replace the mediator or immediately communicate the information to the parties for their comments. In the event that the parties disagree as to whether the mediator shall serve, the AAA will appoint another mediator. The AAA is authorized to appoint another mediator if the appointed mediator is unable to serve promptly.

M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise.

M-7. Representation

Any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

M-8. Date, Time, and Place of Mediation

The mediator shall fix the date and the time of each mediation session. The mediation shall be held at the appropriate regional office of the AAA, or at any other convenient location agreeable to the mediator and the parties, as the mediator shall determine.

M-9. Identification of Matters in Dispute

At least ten days prior to the first scheduled mediation session, each party shall provide the mediator with a brief memorandum setting forth its position with regard to the issues that need to be resolved. At

the discretion of the mediator, such memoranda may be mutually exchanged by the parties.

At the first session, the parties will be expected to produce all information reasonably required for the mediator to understand the issues presented.

The mediator may require any party to supplement such information.

M-10. Authority of the Mediator

The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. The mediator is authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement.

Whenever necessary, the mediator may also obtain expert advice concerning technical aspects of the dispute, provided that the parties agree and assume the expenses of obtaining such advice.

Arrangements for obtaining such advice shall be made by the mediator or the parties, as the mediator shall determine.

The mediator is authorized to end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute between the parties.

M-11. Privacy

Mediation sessions are private. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

M-12. Confidentiality

Confidential information disclosed to a mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the mediator. All records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding:

(a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute;

(b) admissions made by another party in the course of the mediation proceedings;

(c) proposals made or views expressed by the mediator; or

(d) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

M-13. No Stenographic Record

There shall be no stenographic record of the mediation process.

M-14. Termination of Mediation

The mediation shall be terminated:

(a) by the execution of a settlement agreement by the parties;

(b) by a written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or

(c) by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

M-15. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these procedures.

M-16. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

M-17. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and representatives of the AAA, and the expenses of any witness and the cost of any proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

ADMINISTRATIVE FEES

The nonrefundable case set-up fee is $325 per party. In addition, the parties are responsible for compensating the mediator at his or her published rate, for conference and study time (hourly or per diem).

All expenses are generally borne equally by the parties. The parties may adjust this arrangement by agreement.

Before the commencement of the mediation, the AAA shall estimate anticipated total expenses. Each party shall pay its portion of that amount as per the agreed upon arrangement. When the mediation has terminated, the AAA shall render an accounting and return any unexpended balance to the parties.

COMMERCIAL ARBITRATION RULES

R-1. Agreement of Parties*+

(a) The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

(b) Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration fees and costs. Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

(c) Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000, exclusive of claimed interest, arbitration fees and costs. Parties may also agree to use the Procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Sections L-1 through L-4 of these rules, in addition to any other portion of these rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

(d) All other cases shall be administered in accordance with Sections R-1 through R-54 of these rules.

* The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are nonnegotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

+ A dispute arising out of an employer promulgated plan will be administered under the AAA's National Rules for the Resolution of Employment Disputes.

R-2. AAA and Delegation of Duties

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Commercial Arbitrators ("National Roster") and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

R-4. Initiation under an Arbitration Provision in a Contract

(a) Arbitration under an arbitration provision in a contract shall be initiated in the following manner:

(i) The initiating party (the "claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand"), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.

(ii) The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule included with these rules.

(iii) The AAA shall confirm notice of such filing to the parties.

(b) A respondent may file an answering statement in duplicate with the AAA within 15 days after confirmation of notice of filing of the demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of the answering statement to the claimant. If a counterclaim is asserted, it shall contain a statement setting forth the nature of the counterclaim, the amount involved, if any, and the remedy sought. If a counterclaim is made, the party making the counterclaim shall forward to the AAA with the answering statement the appropriate fee provided in the schedule included with these rules.

(c) If no answering statement is filed within the stated time, respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

(d) When filing any statement pursuant to this section, the parties are encouraged to provide descriptions of their claims in sufficient detail to make the circumstances of the dispute clear to the arbitrator.

R-5. Initiation under a Submission

Parties to any existing dispute may commence an arbitration under these rules by filing at any office of the AAA two copies of a written submission to arbitrate under these rules, signed by the parties. It shall contain a statement of the nature of the dispute, the names and addresses of all parties, any claims and counterclaims, the amount involved, if any, the remedy sought, and the hearing locale requested, together with the appropriate filing fee as provided in the schedule included with these rules. Unless the parties state otherwise in the submission, all claims and counterclaims will be deemed to be denied by the other party.

R-6. Changes of Claim

After filing of a claim, if either party desires to make any new or different claim or counterclaim, it shall be made in writing and filed with the AAA. The party asserting such a claim or counterclaim shall provide a copy to the other party, who shall have 15 days from the date of such transmission within which to file an answering statement with the AAA. After the arbitrator is appointed, however, no new

or different claim may be submitted except with the arbitrator's consent.

R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

R-8. Mediation

At any stage of the proceedings, the parties may agree to conduct a mediation conference under the Commercial Mediation Procedures in order to facilitate settlement. The mediator shall not be an arbitrator appointed to the case. Where the parties to a pending arbitration agree to mediate under the AAA's rules, no additional administrative fee is required to initiate the mediation.

R-9. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, potential mediation of the dispute, potential exchange of information, a timetable for hearings and any other administrative matters.

R-10. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within 15 days after notice of the request has been sent to it by the AAA, the locale shall be the one requested. If a party objects to the locale requested by the other party, the AAA shall have the power to determine the locale, and its decision shall be final and binding.

R-11. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

(a) Immediately after the filing of the submission or the answering statement or the expiration of the time within which the answering statement is to be filed, the AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1... Page 12 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 13 of 28

(b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

(c) Unless the parties agree otherwise when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

R-12. Direct Appointment by a Party

(a) If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. The notice of appointment, with the name and address of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

(b) Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-17 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-17(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards.

(c) If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

(d) If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

R-13. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

(a) If, pursuant to Section R-12, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

(b) If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

(c) If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-11, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

R-14. Nationality of Arbitrator

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1...    Page 13 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 14 of 28

Where the parties are nationals of different countries, the AAA, at the request of any party or on its own initiative, may appoint as arbitrator a national of a country other than that of any of the parties. The request must be made before the time set for the appointment of the arbitrator as agreed by the parties or set by these rules.

## R-15. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. A party may request three arbitrators in the demand or answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

## R-16. Disclosure

(a) Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

(b) Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

(c) In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-16 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

## R-17. Disqualification of Arbitrator

(a) Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for

(i) partiality or lack of independence,

(ii) inability or refusal to perform his or her duties with diligence and in good faith, and

(iii) any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-12 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

(b) Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## R-18. Communication with Arbitrator

(a) No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex parte with a candidate for direct appointment pursuant to Section R-12 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings

and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

(b) Section R-18(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-17(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-17(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-18(a) should nonetheless apply prospectively.

R-19. Vacancies

(a) If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

(b) In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

(c) In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

R-20. Preliminary Hearing

(a) At the request of any party or at the discretion of the arbitrator or the AAA, the arbitrator may schedule as soon as practicable a preliminary hearing with the parties and/or their representatives. The preliminary hearing may be conducted by telephone at the arbitrator's discretion.

(b) During the preliminary hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of the issues and claims, a schedule for the hearings and any other preliminary matters.

R-21. Exchange of Information

(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct

i) the production of documents and other information, and

ii) the identification of any witnesses to be called.

(b) At least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

(c) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

R-22. Date, Time, and Place of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1... Page 15 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 16 of 28

adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

R-23. Attendance at Hearings

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person other than a party and its representatives.

R-24. Representation

Any party may be represented by counsel or other authorized representative. A party intending to be so represented shall notify the other party and the AAA of the name and address of the representative at least three days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

R-25. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

R-26. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

R-27. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

R-28. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

R-29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1... Page 16 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 17 of 28

R-30. Conduct of Proceedings

(a) The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

(b) The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

(c) The parties may agree to waive oral hearings in any case.

R-31. Evidence

(a) The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default or has waived the right to be present.

(b) The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

(c) The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

(d) An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

R-32. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence

(a) The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

(b) If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

R-33. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1... Page 17 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 18 of 28

R-34. Interim Measures**

(a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

(b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

(c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

** The Optional Rules may be found below.

R-35. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed. If briefs are to be filed, the hearing shall b e declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Section R-32 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing.

R-36. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

R-37. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

R-38. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

R-39. Serving of Notice

(a) Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1... Page 18 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 19 of 28

representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(b) The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (E-mail), or other methods of communication.

(c) Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

R-40. Majority Decision

When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement, a majority of the arbitrators must make all decisions.

R-41. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

R-42. Form of Award

(a) Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the manner required by law.

(b) The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

R-43. Scope of Award

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

(c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-49, R-50, and R-51. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

(d) The award of the arbitrator(s) may include:

(i) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1... Page 19 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 20 of 28

(ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

R-44. Award upon Settlement

If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses.

R-45. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

R-46. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto.

R-47. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at the party's expense, certified copies of any papers in the AAA's possession that may be required in judicial proceedings relating to the arbitration.

R-48. Applications to Court and Exclusion of Liability

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration.

(c) Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

R-49. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe an initial filing fee and a case service fee to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1... Page 20 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 21 of 28

counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

R-50. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

R-51. Neutral Arbitrator's Compensation

(a) Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation.

(b) If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

(c) Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

R-52. Deposits

The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

R-54. Suspension for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

EXPEDITED PROCEDURES

E-1. Limitation on Extensions

Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the demand for arbitration or counterclaim as provided in Section R-4.

E-2. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, upon the agreement of the other party, or the consent of the arbitrator. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent. If an increased claim or counterclaim exceeds $75,000, the case will be administered under the regular procedures unless all parties and the arbitrator agree that the case may continue to be processed under the Expedited Procedures.

E-3. Serving of Notices

In addition to notice provided by Section R-39(b), the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

E-4. Appointment and Qualifications of Arbitrator

(a) The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed.

(b) The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the submission of additional lists.

(c) The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Section R-17. The parties shall notify the AAA within seven days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

E-5. Exchange of Exhibits

At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

E-6. Proceedings on Documents

Where no party's claim exceeds $10,000, exclusive of interest and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. The arbitrator shall establish a fair and equitable procedure for the submission of documents.

E-7. Date, Time, and Place of Hearing

In cases in which a hearing is to be held, the arbitrator shall set the date, time, and place of the hearing, to be scheduled to take place within 30 days of confirmation of the arbitrator's appointment. The AAA will notify the parties in advance of the hearing date.

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1...    Page 22 of 27

Case 1:08-cv-03189-GBD    Document 11-3    Filed 04/30/2008    Page 23 of 28

E-8. The Hearing

(a) Generally, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two days after the hearing. For good cause shown, the arbitrator may schedule additional hearings within seven business days after the initial day of hearings.

(b) Generally, there will be no stenographic record. Any party desiring a stenographic record may arrange for one pursuant to the provisions of Section R-26.

E-9. Time of Award

Unless otherwise agreed by the parties, the award shall be rendered not later than 14 days from the date of the closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

E-10. Arbitrator's Compensation

Arbitrators will receive compensation at a rate to be suggested by the AAA regional office.

PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES

L-1. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA shall, unless the parties agree otherwise, conduct an administrative conference with the parties and/or their attorneys or other representatives by conference call. The conference will take place within 14 days after the commencement of the arbitration. In the event the parties are unable to agree on a mutually acceptable time for the conference, the AAA may contact the parties individually to discuss the issues contemplated herein. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

(a) to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

(b) to discuss the views of the parties about the technical and other qualifications of the arbitrators;

(c) to obtain conflicts statements from the parties; and

(d) to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

L-2. Arbitrators

(a) Large, Complex Commercial Cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. If the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

Arch. Commercial Arbitration Rules and Mediation Procedures, effective September 1...  Page 23 of 27

Case 1:08-cv-03189-GBD     Document 11-3     Filed 04/30/2008     Page 24 of 28

(b) The AAA shall appoint arbitrator(s) as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the Regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator(s) shall not have served as the mediator in the mediation phase of the instant proceeding.

L-3. Preliminary Hearing

As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the preliminary hearing will be conducted by telephone conference call rather than in person. At the preliminary hearing the matters to be considered shall include, without limitation:

(a) service of a detailed statement of claims, damages and defenses, a statement of the issues asserted by each party and positions with respect thereto, and any legal authorities the parties may wish to bring to the attention of the arbitrator(s);

(b) stipulations to uncontested facts;

(c) the extent to which discovery shall be conducted;

(d) exchange and premarking of those documents which each party believes may be offered at the hearing;

(e) the identification and availability of witnesses, including experts, and such matters with respect to witnesses including their biographies and expected testimony as may be appropriate;

(f) whether, and the extent to which, any sworn statements and/or depositions may be introduced;

(g) the extent to which hearings will proceed on consecutive days;

(h) whether a stenographic or other official record of the proceedings shall be maintained;

(i) the possibility of utilizing mediation or other non-adjudicative methods of dispute resolution; and

(j) the procedure for the issuance of subpoenas.

By agreement of the parties and/or order of the arbitrator(s), the pre-hearing activities and the hearing procedures that will govern the arbitration will be memorialized in a Scheduling and Procedure Order.

L-4. Management of Proceedings

(a) Arbitrator(s) shall take such steps as they may deem necessary or desirable to avoid delay and to achieve a just, speedy and cost-effective resolution of Large, Complex Commercial Cases.

(b) Parties shall cooperate in the exchange of documents, exhibits and information within such party's control if the arbitrator(s) consider such production to be consistent with the goal of achieving a just, speedy and cost-effective resolution of a Large, Complex Commercial Case.

(c) The parties may conduct such discovery as may be agreed to by all the parties provided, however, that the arbitrator(s) may place such limitations on the conduct of such discovery as the arbitrator(s)

shall deem appropriate. If the parties cannot agree on production of documents and other information, the arbitrator(s), consistent with the expedited nature of arbitration, may establish the extent of the discovery.

(d) At the discretion of the arbitrator(s), upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator(s) may order depositions of, or the propounding of interrogatories to, such persons who may possess information determined by the arbitrator(s) to be necessary to determination of the matter.

(e) The parties shall exchange copies of all exhibits they intend to submit at the hearing 10 business days prior to the hearing unless the arbitrator(s) determine otherwise.

(f) The exchange of information pursuant to this rule, as agreed by the parties and/or directed by the arbitrator(s), shall be included within the Scheduling and Procedure Order.

(g) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

(h) Generally hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.

OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION

O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

O-8. Costs

The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the panel to determine finally the apportionment of such costs.

ADMINISTRATIVE FEES

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the *Supplementary Procedures for Consumer-Related Disputes* when filing a consumer-related claim.

The AAA applies the *Supplementary Procedures for Consumer-Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-

application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

Fees

An initial filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|---|---|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 | * | * |
| Nonmonetary Claims** | $3,250 | $1,250 |

Fee Schedule for Claims in Excess of $10 Million .

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee. Expedited Procedures are applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration costs.

Parties on cases held in abeyance for one year by agreement, will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

Refund Schedule

The AAA offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all other cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

- 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.
- 50% of the filing fee will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.
- 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: the date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

Hearing Room Rental

The fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

AAA235

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED