Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams. PLLC
Attorney for Plaintiffs
2 Penn Plaza. Suite 1910
New York, New York 10121
(212)292-5663

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                   :

MALIK M. HASAN and SEEME G. HASAN,     :

                           :
                 Plaintiffs,            :
                           :
      v.                     : 08 Civ. 3189 (GBD)
                           :

AMERICAN ARBITRATION ASSOCIATION,    :
INC.,                                     :
                           :
                 Defendant.       :
                           :
-------------------------------------------------------------------- X

### PLAINTIFFS' MEMORANDUM OF LAW
### IN OPPOSITION TO MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

TABEL OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iii-vi

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

THE LITIGATION/ARBITRATION BACKGROUND . . . . . . . . . . . . . . . .    2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

I.    STANDARD FOR TRIAL COURT REVIEW OF A DISMISSAL
MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

II.    THIS COURT HAS THE POWER TO REMOVE ARBITRATORS
PRIOR TO THE RENDERING OF AN AWARD . . . . . . . . . . . . . . . . . . .    2

III.    THE DOCTRINE OF ARBITRAL IMMUNITY DOES NOT APPLY TO
CASES SEEKING INJUNCTIVE RELIEF . . . . . . . . . . . . . . . . . . . . . . . .    5

    A.    Arbitral Immunity Does Not Extend to Injunctive Relief . . . . . . . . . . .    5

    B.    Sound Policy Rejects Extending Arbitral Immunity to Cases Seeking
Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

    C.    The Cases Cited by the AAA Do Not Support Extending Arbitral
Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

IV.    GIVEN THE NATURE OF THIS DISPUTE, THE AAA IS A PROPER
AND NECESSARY PARTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

V.    THE AAA CANNOT RELY ON ITS EXCULPATORY CLAUSE TO
ESCAPE LIABILTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

    A.    Rule 48(b) Does Not Bar This Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

    B.    Rule 48(d) Does Not Bar This Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

    C.    Exculpatory Provisions are Unmistakenly Disfavored . . . . . . . . . . . . .    15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Aberle Hosiery Co. v. American Arbitration Association,*
337 F.Supp. 90, 92 (E.D.Pa. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,*
492 F.3d 132, 137-38 (2nd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

*Astoria Medical Group v. Health Insurance Plan,*
227 N.Y.S. 2d 401, 403 (N.Y. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

*Austern v. Chicago Board of Option Exch., Inc.,*
898 F.2d 882, 886 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1, 5, 7

*Aviall, Inc. v. Ryder System, Inc.,*
110 F.3d 892, 895 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

*Aviall, Inc. v. Ryder System, Inc.,*
913 F.Supp. 826 (S.D.N.Y. 1996), aff'd , 110 F.3d 892 (2d Cir. 1997) . . . . . . . . . . . .    3

*Belanger v. State Farm Mut. Auto. Ins. Co.,*
74 A.D.2d 938, 426 N.Y.S.2d 140, 141 (3d Dep't 1980) . . . . . . . . . . . . . . . . . . . . . . .    4

*Bradley v. Step Tourism,*
1986 WL 12719, *47-48 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

*Candor Central School Dist. V. American Arbitration Association,*
97 Misc.2d 267, 269, 411 N.Y.S. 2d 162, 164 (Sup. Ct. Tioga Co. 1978) . . . . . . . . . . .    11

*Caudle v. American Arbitration Ass'n,*
233 F.3d 920, 922 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9, 13, 14

*Christina Blouse Corp. v. Intern'l Ladies Garment Workers' Union,*
492 F.Supp. 508, 510-11 (S.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

*Cory v. New York Stock Exchange,*
691 F.2d 1205, 1211 (6th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Curtis Properties Corp. v. Greif Cos.,*
212 A.D.2d 259, 265-266, 628 N.Y.S. 628 (1st Dep't 1995) . . . . . . . . . . . . . . . . . . . .    14

*Ernst, Inc. v. Manhattan Construction Co. of Texas,*
551 F.2d 1026, 1031 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

*Erving v. Virginia Squire Basketball Club, L.P.,*
349 F.Supp. 716, 719 (E.D.N.Y. 1972), aff'd 468 F.2d 1064 (2nd Cir. 1972) . . . . . . . .   3

*Everlast World's Boxing Headquarters Corp. v. Joan Hanson & Co,.*
2005 N.Y. App. Div. LEXIS 5519 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 11

*Federal Vending, Inc. v. Steak & Ale of Florida, Inc.,*
71 F.Supp.2d 1245, 1249 (S.D.Fla. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

*Fleming Companies, Inc. v. FS Kids, L.L.C,.*
2003 WL 21382895, *4 (W.D.N.Y. May 14, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Forrester v. White,*
484 U.S. 219, 230 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Forrester v. White,*
792 F.2d 647, 660 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Garcia v. Wayne homes, LLC and American Arbitration Association,*
2002 WL 628619 (Ohio App. 2. Dist. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 13

*Golden Pacific Bancorp v. F.D.I.C.,*
273 F.3d 509, 515015 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Goldfinger v. Lisker,*
508 N.Y.S. 2d 159, 161 (N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Gross v. Sweet,*
49 N.Y. 102, 107-108 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Health Services Management Corp. v. Hughes,*
975 F.2d 1253, 1259-60 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Hospitality Ventures of Coral Springs, L.C. v. American Arbitration Association,*
755 So.2d 159, 160 (Fla. Dist. Ct. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*International Medical Group v. American Arbitration Association,*
149 F.Supp. 615, 629 (S.D. Ind. 2001) aff'd 312 F.3d 833 (7th Cir. 2002), cert. denied,
540 U.S. 822 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 13

*International Medical Group v. American Arbitration Association,*
312 F.3d 833 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Kemner v. District Council of Painting and Allied Trades No. 36,*        6
768 F.2d 1115 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Masthead Mac Drilling Corp. v. Fleck,*
549 F.Supp. 854, 856 (S.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

*McCarthy v. Dun & Bradstreet Corp.,*
482 F.3d 184, 191 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

*Metropolitan Property and Cas. Ins .Co. v. J.C. Penny Cas. Ins. Co.,*
780 F.Supp. 885, 894 (D.Conn. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

*MJR International, Inc. v. American Arbitration Association,*
2007 WL 2781669 (S.D. Ohio September 24, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Peters Sportsware Co. v. American Arbitration Association,*
427 Pa. 152 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Pulliam v. Allen,*
466 U.S. 533 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6, 7, 8

*Rabinowitz v. Olewski,*
100 A.D.2d 539, 473 N.Y.S. 2d 232 (2d Dep't 1984) . . . . . . . . . . . . . . . . . . . . . . . . .    4

*Schmitz v. Zilveti,*
20 F.3d 1043, 1048 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

*Seligman v. Allstate Ins. Co.,*
195 Misc. 2d 553, 555-56, 756 N.Y.S.2d 403, 405-06 (Sup. Ct. Nassau Co. 2003) . . . .    10

*Sommer v. Federal Signal Corp.,*
79 N.Y. 2d 540, 593 N.E.2d 1365, 1371 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

*Southwire Co. v. NSA Ltd.*
248 Ga. App. 226 (Ga. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10, 11

*Tamari v. Conrad*
552 F.2d 778, 780-81 (7th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8, 9

*Trans World Airlines, Inc. v. Sinicropi*
1994 WL 132233 at *1 (S.D.N.Y. Apr. 14, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

**Statutes and Rules**

Commercial Arbitration Rule R-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

Commercial Arbitration Rule R-16(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Commercial Arbitration Rule R-17(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Commercial Arbitration Rule R-48(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Fed.R.Civ.P. 48 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Fed.R.Civ.P. 48(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Fed.R.Civ.P. 48(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 14

9 U.S.C. §10(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

**Other Citations**

Restatement [Second] of Contracts §195[1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

Weston, *Reexamining Arbitral Immunity in an Age of Mandatory and Professional Arbitration,* 88 MINN. L. REV. 499, 509-10 (2004) . . . . . . . . . . . . . . . . . . . . . . . . .   8

Plaintiffs, Malik M. Hasan, M.D. and Seeme G. Hasan (collectively, the "Hasans"), through their undersigned counsel, respectfully submit this Memorandum in Opposition of the Motion to Dismiss filed by Defendant, American Arbitration Association ("AAA").

## PRELIMINARY STATEMENT

The Second Circuit has specifically limited the scope of arbitral immunity to cases sounding in **money damages**. *See Austern v. Chicago Bd. of Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990). The captioned case seeks **injunctive relief**; the Hasans seek, **via injunction**, to specifically enforce the AAA's express promises, assurances, commitments and representations to the Hasans to remove arbitrators from its arbitration panel who will not fulfill their crucial and sworn duties – including the duty of full, fair and timely disclosure.

This case seeks an Order requiring the AAA to remove two individuals who purport to serve as "neutral" arbitrators in a multi-million dollar dispute between the Hasans and Goldman Sachs & Co. and its affiliates (collectively, "Goldman Sachs"). One arbitrator failed to disclose, *inter alia*, an attorney-client relationship with Goldman Sachs, while the other failed to disclose a prior attorney-client relationship with Goldman Sachs as well as other mutually beneficial arrangements between Goldman Sachs and his law firm.[1] The failures to disclose, and the conflicts themselves, intolerably compromise the integrity of the arbitration proceedings presided over by the present panel.

The AAA does not -- and cannot -- assert that these arbitrators can decide the parties' dispute in an arbitration that is free from bias and the appearance of impropriety. Instead, the AAA proposes that this Court extend the doctrine of "arbitral immunity" beyond that

---

[1]    A third arbitrator was already removed for cause by the AAA due to his failures to disclose relationships with Goldman Sachs, but not before further tainting the two arbitrators who the AAA refuses to remove.

which is recognized in the Second Circuit.  Indeed, the AAA declares that the federal courts are _powerless_ to intervene in an arbitration that it sponsors even where, as here, the process is so obviously tainted that any arbitration hearing serves merely as an expensive prelude to a post-award attack on the composition of the panel and the arbitration award.  The case law and public policy are decidedly to the contrary.

## THE LITIGATION/ARBITRATION BACKGROUND

The Hasans incorporate by reference here Section I ("The Litigation/Arbitration Background"), Section II ("The AAA's Promise, Assurance, Commitment and Representations to the Hasans of Full, Fair and Timely Disclosure by its Arbitrators"), and Section III ("The AAA's New York Arbitration Panel") of "Plaintiffs' Memorandum in Support of Motion for Preliminary Injunctive Relief and Request for Expedited Consideration Thereof," filed on April 28, 2008 (the "Preliminary Injunction Memorandum").  The incorporated sections are found at pp. 1-10 of the Preliminary Injunction Memorandum attached hereto as Exhibit A.

## ARGUMENT

### I.    STANDARD FOR TRIAL COURT REVIEW OF A DISMISSAL MOTION

When considering a motion to dismiss under Rule 12(b)(6), a federal trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." _McCarthy v. Dun & Bradstreet Corp._, 482 F.3d 184, 191 (2d Cir. 2007).

### II.    THIS COURT HAS THE POWER TO REMOVE ARBITRATORS PRIOR TO THE RENDERING OF AN AWARD

This case does not seek money damages.  Rather, it seeks only modest and conventional relief -- specific enforcement, **_via injunction_**, of the AAA's promises, assurances,

2

commitments and representations to the Hasans.  It does so by seeking prompt entry of an Order directing the AAA to replace two arbitrators who have repeatedly refused to publish full, fair and timely disclosures respecting their connections with the Hasans' adversaries.

The Second Circuit has recognized that pursuant to the Federal Arbitration Act ("FAA") the federal courts have the power to direct the pre-award removal of an arbitrator where, as here, the continuation of the arbitration with the present panel would be "invalid under general contract principles." *Aviall, Inc. v. Ryder System, Inc*., 110 F.3d 892, 895 (2d Cir. 1997). Pre-award removal of an arbitrator is justified "when the court concludes that one party has deceived the other, that unforeseen intervening events have frustrated the intent of the parties, or that the unmistakable partiality of the arbitrator will render the arbitration a mere prelude to subsequent litigation."  *Id., citing Aviall, Inc. v. Ryder System, Inc.,* 913 F.Supp. 826 (S.D.N.Y. 1996), *aff'd,* 110 F.3d 892 (2d Cir. 1997); *Fleming Companies, Inc. v. FS Kids, L.L.C.*, 2003 WL 21382895, *4 (W.D.N.Y. May 14, 2003) (citing *Aviall* for the proposition that pre-award removal of arbitrator is appropriate if "the parties' intent to have their dispute resolved by a neutral party had been frustrated.").

Independent of the FAA, numerous New York federal and state court decisions have consistently recognized the inherent judicial power summarily to remove arbitrators prior to the conclusion of arbitration proceedings even in cases not turning on the promises, assurances, commitments and representations of an arbitration sponsor.  *See, e.g., Astoria Medical Group v. Health Insurance Plan,* 227 N.Y.S.2d 401, 403 (N.Y. 1962) ("we are persuaded that, in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been entered"); *Erving v. Virginia Squires Basketball Club, L.P.,* 349 F.Supp. 716, 719 (E.D.N.Y. 1972), *aff'd* 468 F.2d 1064 (2nd Cir. 1972); (arbitrator designated by the contract was

removed because he worked at a law firm representing the defendant in underlying arbitration proceeding); *Masthead Mac Drilling Corp. v. Fleck¸* 549 F.Supp. 854, 856 (S.D.N.Y. 1982)(court has inherent authority to appoint a neutral arbitrator when "potential bias of designated arbitrator would make arbitration proceedings simply a prelude to later judicial proceedings challenging the arbitration award"); *Christina Blouse Corp. v. Intern'l Ladies Garment Workers' Union,* 492 F. Supp. 508, 510-11 (S.D.N.Y. 1980) (former attorney for a party to the arbitration does not qualify as a proper arbitrator if objection is made to him -- he must be displaced); *Rabinowitz v. Olewski*, 100 A.D.2d 539, 473 N.Y.S.2d 232 (2d Dep't 1984) (pre-award removal of arbitrator appropriate under court's inherent power to disqualify an arbitrator).

      The policy considerations which sometimes cause courts to shy from pre-award challenges to an arbitration panel do not obtain in a case (such as this) where bias/appearance of partiality is so manifest that a subsequent award will result in a likely meritorious post-award challenge.  As one federal judge in the Second Circuit observed:

> it simply does not follow that the policy objective of an expeditious and just arbitration with minimal judicial interference is furthered by categorically prohibiting a court from disqualifying an arbitrator prior to arbitration. Here, the parties will not only suffer the delay produced by litigation seeking to vacate the award after arbitration, but risk the additional loss of time and money if the court finds in Met's favor.  Should Penney prevail on the merits of its claim and the court follow Penney's approach of granting relief only *after* arbitration concludes, Met would be entitled to vacate the award and the parties will then have to go through the entire arbitration process all over again before a different arbitration panel.

*Metropolitan Property and Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co*., 780 F. Supp. 885, 894 (D. Conn. 1991) (citations omitted); *cf. Belanger v. State Farm Mut. Auto. Ins. Co.*, 74 A.D.2d 938, 426 N.Y.S.2d 140, 141 (3d Dep't 1980) ("[W]here a party to an arbitration proceeding becomes

4

aware of the misconduct, or probable partiality of an arbitrator, there would appear to be no reason why the court should not exercise its equitable jurisdiction on the application of the party at any time during the proceeding, rather than require the party to wait for the award, and then move to vacate pursuant to CPLR 7511").

The Hasans should not be forced to arbitrate before a panel dominated by individuals who are principals in law firms that have enjoyed lucrative and disqualifying relationships with Goldman Sachs. Those same persons refuse to disclose these relationships in contravention of the AAA's rules[2] and their respective sworn attestations in the "Notice of Appointment" forms. The judiciary has long recognized its power to intervene in such cases prior to an award, and it is difficult to imagine a more appropriate case for such intervention.

## III.    THE DOCTRINE OF ARBITRAL IMMUNITY DOES NOT APPLY TO CASES SEEKING INJUNCTIVE RELIEF

Regardless of the applicability of the doctrine of "arbitral immunity" to lawsuits seeking *money damages* against the AAA, the immunity is limited to cases sounding in money damages. None of the cases cited by the AAA negates the judicial equitable power to direct the AAA's removal of tainted arbitrators.

A.    Arbitral Immunity Does Not Extend To Injunctive Relief. In *Austern v. Chicago Board of Options Exch., Inc.*, 898 F.2d 882 (2d Cir. 1990), the Second Circuit limited arbitral immunity to cases where the relief sought is money damages. "We hold that arbitrators

---

[2]    The AAA rules are consistent with court requirements which repeatedly underscore the independent duty of arbitrators to investigate diligently -- and to *disclose fully* -- direct and indirect relationships and potential conflicts. Failure to do so creates the "reasonable impression of partiality." *Schmitz v. Zilveti*, 20 F.3d 1043, 1048 (9th Cir. 1994); *see also, Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137-38 (2nd Cir. 2007). The "requirement for full disclosure by arbitrators is a serious and far-reaching one." *Federal Vending, Inc. v. Steak & Ale of Florida, Inc.*, 71 F.Supp.2d 1245, 1249 (S.D. Fla. 1999)("arbitrators must take steps to ensure that the parties are not misled into believing that no nontrivial conflict exists"); *see also, Applied Industrial Materials Corp.*, 492 F.3d at 137 (an arbitrator who knows of a material relationship with a party and fails to disclose it would lead a reasonable person to conclude that the arbitrator was partial to one side).

in contractually agreed upon arbitration proceedings are absolutely immune from liability *in damages* for all acts within the scope of the arbitral process. *Id.* at 886 (emphasis supplied). The careful limitation of the Court's holding to "liability in damages" demonstrates that the Second Circuit declines to extend arbitral immunity to cases seeking appropriate injunctive relief. However, in its dismissal motion, the AAA invites this Court to extend absolute immunity for arbitration providers beyond the money damage limitation of *Austern*. The invitation must be declined.

Arbitral immunity is a companion to the doctrine of judicial immunity. The federal courts have extended, by analogy, immunity to arbitrators and arbitration providers reasoning that an arbitrator's role is akin to that of a judge. *See, e.g., Ernst, Inc. v. Manhattan Construction Co. of Texas*, 551 F.2d 1026, 1031 (5th Cir. 1977). It is very clear, however, that judges are <u>not</u> immune from prospective injunctive relief, and there is no logic to extending a broader scope of immunity to arbitration providers. *Id.; Cf. Pulliam v. Allen*, 466 U.S. 533 (1984) (state magistrate could be sued for injunctive relief even though he was acting within his official capacity). Thus, cases in the Second Circuit and elsewhere limit the doctrine of arbitral immunity to liability for money damages. *E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas*, 551 F.2d 1026, 1031 (5th Cir. 1977); *Trans World Airlines, Inc. v. Sinicropi*, 1994 WL 132233 at *1 (S.D.N.Y. Apr. 14, 1994) ("as a matter of law, arbitral immunity…does not shield an [arbitrator] from claims sounding in equitable relief"); *Kemner v. District Council of Painting and Allied Trades No. 36*, 768 F.2d 1115 (9th Cir. 1985) (overturning district court's dismissal of case on arbitral immunity grounds since equitable relief, rather than damages, was sought). Accordingly, like judges, arbitration providers are subject to appropriate injunctive relief.

B.    Sound Policy Rejects Extending Arbitral Immunity to Cases Seeking Injunctive Relief.    Any extension of an immunity doctrine is to be undertaken only with great care.  Even in the context of judicial immunity, the United States Supreme Court has urged great caution: "absolute immunity ... is 'strong medicine, justified *only* when the danger of [officials being] deflect[ed from the effective performance of their duties] is *very great*.'"  *Forrester v. White*, 484 U.S. 219, 230 (1988), *quoting Forrester v. White*, 792 F.2d 647, 660 (7th Cir. 1986) (Posner, J., dissenting)(emphasis supplied).  Extending immunity signals that those who benefit are not accountable.  And, because *Austern* establishes that arbitration providers are not liable for money damages the Court must exercise great care before extending immunity further to bar appropriate equitable relief.

The *Austern* Court observed that "arbitral immunity is essential to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants."  898 F.2d at 886.  While this is true in the context of a suit for money damages, the rationale for immunity evaporates in the context of a suit seeking specific performance of the AAA's express contractual promises and commitments.    The United States Supreme Court made this very point very powerfully in rejecting the extension of the doctrine of judicial immunity to claims seeking injunctive relief:

> [I]njunctive relief against a judge raises concerns different from those addressed by the protection of judges from damages awards. The limitations already imposed by the requirements for obtaining equitable relief against any defendant - - a showing of an inadequate remedy at law and of a serious risk of irreparable harm … severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants.

*Pulliam*, 460 U.S. at 536 (internal citation omitted).

7

Notwithstanding *Pulliam*, the AAA urges this court to fashion arbitral immunity by analogizing to the doctrine of judicial immunity. Of course, both doctrines seek to preserve the integrity of adjudicative proceedings by protecting decision makers from reprisal. But the case for extending immunity to injunctive relief in the context of arbitrations is dramatically less compelling than the judicial context where it was <u>rejected</u> by the Supreme Court in *Pulliam*.[3] Unlike judicial proceedings, arbitrations are typically cloaked in secrecy and review of a panel's award is severely curtailed. *See* 9 U.S.C. §10(a); *Goldfinger v. Lisker,* 508 N.Y.S. 2d 159, 161 (N.Y. 1986) ("Precisely because arbitration awards are subject to such judicial deference, it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded"). Manifestly, extending immunity to injunctive relief sought against arbitration providers (who do not function like a judge at any point) is even more unsuitable. Let us be plain -- the AAA would have this Court declare that the AAA enjoys unfettered freedom to seduce clients with vacuous commitments to promote the integrity and neutrality of its arbitration proceedings. The AAA proclaims that this Court is categorically <u>powerless</u> to enforce the AAA's promises and commitments.

  C. <u>The Cases Cited by the AAA Do Not Support Extending Arbitral Immunity</u>. The AAA cites several decisions from other circuits which it declares extends arbitral immunity in the context of arbitration providers to the injunctive relief sought in this case. The AAA's primary authority is *Tamari v. Conrad*, 552 F.2d 778 (7th Cir. 1977). **AAA Memorandum in Support of Motion to Dismiss at p. 12.** Review of that case, however,

---

[3] The lack of any financial deterrent or other meaningful procedural safeguards has led thoughtful scholars to criticize harshly the current scope of arbitral immunity. *E.g.,* Weston, *Reexamining Arbitral Immunity in an Age of Mandatory and Professional Arbitration*, 88 MINN. L. REV. 449, 509-10 (2004). *A fortiori,* the doctrine should not be further extended to preclude injunctive relief as this would foreclose any accountability by arbitration providers.

demonstrates that it only bars suits against the individual tainted _arbitrators_ (not the case here).[4]
The _Tamari_ panel reasoned:

> [D]efendants are individuals who … agreed to serve as arbitrators, at nominal pay, at the request of the Chicago Board of Trade … individuals such as defendants cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit.

_Id_. at 780.   Regardless of whether _Tamani_ is correctly decided, the AAA stands in dramatic contrast with the individual defendants in that case.   A sponsoring organization like the AAA may be sued in equity without influencing the arbitrators.   And unlike the nominally paid arbitrators in _Tamani_, the AAA is a vast international organization, with offices throughout the United States and abroad, and according to its website is the nation's largest full-service alternative dispute resolution provider.[5]

To the extent that the Seventh Circuit's decision in _Tamari_ decided more than thirty years ago is argued as support for arbitral immunity that forecloses injunctive relief, it: (i) is inconsistent with the Second Circuit's limitation on the doctrine in _Austern_, and (ii) extends arbitral immunity into a region of equitable relief where even judicial immunity does not extend. _Pulliam_, 460 U.S. at 536.   Moreover, even the Seventh Circuit has since undermined any continued vitality to _Tamani_.  _See Caudle v. Am. Arbitration Ass'n,_ 230 F.3d 920, 922 (7th Cir. 2000)(observing that the AAA likely could not successfully assert immunity to an order that it finish an arbitration for which it already had been paid).[6]

---

[4]       The AAA incorrectly asserts that the "arbitration forum organization" was sued in _Tamari_.   The opinion notes that the defendants are "individual arbitrators," and there is no mention of the forum organization as a defendant.

[5]       http://www.adr.org/drs.

[6]       The other cases cited by the AAA in support of its assertion that courts may not entertain equitable relief against the AAA do _not_ support this proposition.   Rather, these cases hold that the AAA is not a "proper party"

## IV.  **THE AAA IS THE ONLY PROPER AND NECESSARY PARTY**

The AAA has refused to remove two arbitrators whose law firms have enjoyed profitable relationships/connections with Goldman Sachs.  In the case of one arbitrator, his firm profited handsomely from an attorney-client relationship with Goldman Sachs during the arbitration.  And the other arbitrator failed to disclose his firm's recent and substantial attorney-client relationship with Goldman Sachs.  Both of these individuals published demonstrably false attestations respecting past and current connections with Goldman Sachs.  And each has been subject to the corrupting influence of a third arbitrator who has been removed for cause due to his failures to disclose and his relationship with Goldman Sachs.

While neither Goldman Sachs nor the tainted arbitrators are free from blame for this fiasco, it is the AAA that represented, assured, promised and committed to the Hasans that the arbitration would be conducted before a panel that made full, fair and timely disclosures of any relationships/connections with Goldman Sachs.  **Verified Complaint at ¶¶15-19.**  Moreover, it is not possible to compel either Goldman Sachs or the individual arbitrators to provide the relief the Hasans seek.  That relief is not simply the removal of the tainted arbitrators – the Hasans seek appointment of replacement arbitrators who will make full, fair and timely disclosures consonant with the AAA rules, website representations and the sworn arbitrator "Notice of Appointment" forms.

---

to a dispute that can be resolved without its joinder.  They are not germane to this pre-award suit seeking to compel the AAA to replace tainted arbitrators.  For instance, *Seligman v. Allstate Ins.Co.*, 195 Misc. 2d 553, 555-56, 756 N.Y.S.2d 403, 405-06 (Sup. Ct. Nassau Co. 2003) holds that the AAA is not a proper party in a motion to vacate an arbitration award.  The court reached a similar result in *Southwire Co. v. NSA Ltd.*, 248 Ga. App. 226 (Ga. App. 2001).  The only other case the AAA cites for the proposition that arbitral immunity extends to equitable relief involved a suit to enjoin the conduct of an arbitration.  The dispute is resolvable via injunction against the parties; it does not require joinder of the AAA as a necessary party.  *Everlast World's Boxing Headquarters Corp. v. Joan Hanson & Co.* (attached to the AAA's Memorandum in support of its dismissal motion).  In contradistinction, the AAA is a necessary party to this suit seeking to enforce, via injunction, its promises and commitments to the Hasans.

The AAA cites three categories of cases that stand for unremarkable propositions that are simply inapposite to the case at bar. ***None of these cases cited by the AAA seek to specifically enforce AAA representations, assurances, promises and commitments***. First, the AAA cites *Intern'l Medical Group v. Am. Arbitration Ass'n*, 312 F.3d 833 (7th Cir. 2002) (which dismissed claims against the AAA seeking money damages for malicious prosecution, abuse of process and "bad faith arbitration"). That case stands for the well-established proposition that the AAA is immune from claims for ***money damages***. The second category cited by the AAA is a collection of decisions where the AAA, or another sponsoring organization, is inappropriately named in a suit to enjoin an arbitration.[7]   The third category consists of two cases where the sponsoring organization was improperly named in suits seeking to confirm or vacate arbitration awards.[8]   These are all easily distinguishable. The case at bar involves ***injunctive relief*** (not money damages as in *Intern'l Medical Group*), and the latter two categories of cases cited by the AAA involve litigation where there is no reason to join the sponsoring organization as a party.

This case is very different. The Hasans have alleged a claim against the AAA based upon *its* express representations, assurances, promises and commitments to them. These were not made by Goldman Sachs or the individual arbitrators:

> Like judges, arbitrators have no interest in the outcome of the dispute between the parties to the contract and should generally not be compelled to become parties to the dispute. In the face of motions to dismiss, courts often apply this principle under concepts of immunity and conclusions

---

[7]    The cases cited by the AAA in this category are: *MJR International, Inc. v. Am. Arbitration Ass'n*, 2007 WL 2781669 (S.D. Ohio September 24, 2007); *Aberle Hosiery Co. v. Am. Arbitration Ass'n*, 337 F.Supp. 90 (E.D.Pa. 1972); *Candor Central School Dist. v. Am. Arbitration Ass'n*, 97 Misc.2d 267, 411 N.Y.S.2d 162 (Sup. Ct. Tioga Co. 1978); *Sothwire; Everlast World's Boxing Headquarters Corp. v. Joan Hanson & Co.* (attached to the AAA's Memorandum in support of its dismissal motion); *Peters Sportsware Co. v. Am. Arbitration Ass'n*, 427 Pa. 152 (1967); *Hospitality Ventures of Coral Springs, L.C. v. Am. Arbitration Ass'n*, 755 So.2d 159 (Fla. Dist. Ct. App. 2000).

[8]    The cases cited by the AAA in this category are:  *Corey v. New York Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982) and  *Southwire Co. v. NSA Ltd.*, 248 Ga. App. at 229.

that the arbitrators and organizing bodies are not the real parties in interest. ***Where, however, a claim is presented asserting an independent cause of action against an arbitral body, one contending that the body has liability that is distinct from that of the parties to the arbitration proceeding and falls outside of the scope of recognized immunities, the arbitral body is a real party in interest.***

*Garcia v. Wayne Homes, LLC and American Arbitration Association*, 2002 Ohio App. LEXIS 1917 at *58 (Ohio App. 2002)(emphasis added); *accord International Medical Group, Inc. v. American Arbitration Ass'n,* 149 F.Supp.2d 615, 629 (S.D.Ind. 2001), *aff'd* 312 F.3d 833 (7th Cir. 2002), *cert. denied,* 540 U.S. 822 (2003)("a claim asserting an independent cause of action against the arbitral body, one contending that the body has liability that is distinct from that of the parties to the arbitration proceeding, would not be subject to [arbitral] immunity and would be one in which the body is a real party in interest").

## V.    AAA Commercial Arbitration Rule 48 Does Not Bar this Suit

Finally, for purposes of completeness it is appropriate to address Rule 48 of the AAA's Commercial Arbitration Rules. Relying on Rule 48(b) and 48(d), the AAA argues that it is "immune" from the claims asserted by the Hasans. **AAA Memorandum in Support of Motion to Dismiss at pp. 6-10.**

A.    Rule 48(b) Does Not Bar this Suit. Rule 48(b) provides: "[n]either the AAA nor any arbitrator in a proceeding under these rules is a ***necessary or proper party*** in judicial proceedings relating to the arbitration" (emphasis supplied). It simply is inapplicable here. On its face, Rule 48(b) does not address whether the AAA can be sued for injunctive relief seeking specific enforcement of the AAA's representations, assurances, promises and commitments published to induce clients to use its arbitration services. Rather, Rule 48(b) frees the AAA from the burden of being drawn into the frequent judicial skirmishes between arbitration parties. The rule recognizes (as do the cases cited by the AAA and discussed in

Section IV, *supra*) that, at most, the AAA is a "nominal party" -- not a "real party in interest" -- in court battles such as those: (i) seeking to establish or resist federal jurisdiction, (ii) determine the arbitrability of disputes, or (iii) confirm or vacate arbitration awards.[9]  *See e.g., Caudle,* 230 F.3d at 922 [arbitration sponsoring organizations "are not the real parties in interest," *citing* Fed.R.Civ.P. 17(a)]; *Intl. Med. Group, Inc.,* 149 F.Supp. at 626-28; *Garcia,* 2002 Ohio App. LEXIS 1917 at *58 (Ohio App. 2002)("arbitrators have no interest in the outcome of the dispute between the parties … and should *generally* not be compelled to become parties to the dispute").

In this case, however, the AAA *is the real party in interest* because the AAA *is* the direct target of the relief sought (compelling the AAA to replace two arbitrators consonant with its representations, assurances, promises and commitments to the Hasans).

B.     Rule 48(d) Does Not Bar this Suit.     Rule 48(d) provides that "[p]arties to an arbitration *under these rules* shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration *under these rules* relating to the arbitration" (emphasis supplied).  This rule provides that the AAA is not liable for injunctive relief for acts or omissions in connection with any arbitration "*under these rules*."  The point, of course, is that for the provision to apply -- the arbitration "under these rules" must be conducted by the AAA *consistent with these rules*.

That this interpretation is the correct one is obvious for both textual and logical reasons.  First, in drafting Rule 48(d) the AAA did not extend the terms of Rule 48(d) to any and all commercial arbitrations sponsored by the AAA.  Rather, it expressly limited the applicability of Rule 48(d) to "any arbitration <u>under these rules</u>."  Second, in order for the phrase "under these rules" to make sense it must mean "consistent with these rules."  Were it otherwise, the AAA

---

[9]     *See* notes 6, 7 and 8 and accompanying text, *supra*.

would be free to disregard – with impunity and without legal consequence – any one or more of the commercial arbitration rules.  As long as some of the Commercial Arbitration Rules were observed, the AAA would be immunized by Rule 48(d) based upon a claim that the arbitration was being conducted "under these rules."  Third, any other interpretation of Rule 48(d) renders illusory the AAA's agreement to provide its commercial arbitration services in exchange for a fee.  This follows because the AAA's Commercial Arbitration Rules expressly represent to parties such as the Hasans that the AAA is *obligated* to comply with the Commercial Arbitration Rules.  *See, e.g.,* Rule R-2 ("[t]he …*duties* of the AAA are *prescribed* … in these rules").  *Cf Health Services Management Corp. v. Hughes,* 975 F.2d 1253, 1259-60 (7th Cir. 1992)(the AAA has "no discretion" not to communicate "any information that it has received from an … arbitrator as to potential impartiality, bias, or financial or personal interest to the parties").  However, if the AAA's interpretation of Rule 48(d) is correct, the AAA's promises are illusory because it is not required to fulfill its contractual commitments (notwithstanding the express representation contained in Rule R-2) because it is immune from any legal consequences from its failure to do so.  *See Curtis Properties Corp. v. Greif Cos.*, 212 A.D.2d 259, 265-266, 628 N.Y.S.2d 628 (1st Dep't 1995)(courts eschew interpretation that renders a contract illusory and therefore unenforceable for lack of mutual obligation).

It is noteworthy that the Seventh Circuit has already rejected the interpretation urged upon this Court by the AAA.  In *Claudle*, Judge Easterbrook wrote for a unanimous Court. He observed:

> Suppose Caudle [an arbitration party in that case] had paid the full $9,200 the AAA specified [the AAA's fee in that case], and the Association had pocketed the money without arbitrating the dispute; it is unlikely that the AAA could claim "immunity" in response to a demand for a refund ***(or an order to furnish the arbitration services for which it had been paid)***.

230 F.3d at 922 (emphasis supplied).  The Seventh Circuit recognized that the AAA had an _enforceable_ obligation to perform consistent with that which it has promised, represented, committed and assured.

Importantly, AAA Commercial Arbitration Rule R-16(a) provides that every person appointed as a AAA arbitrator "_shall_ disclose … any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or _any_ financial or personal interest in the result of the arbitration or _any_ past or present relationship with the parties or their representatives (emphasis supplied).[10]  Rule R-17(a) provides that any arbitrator "_shall_ perform his … duties [including the disclosure duties] with diligence and in good faith and _shall_ be subject to disqualification for … (ii) … refusal to perform his … duties [including the disclosure duties] with diligence and in good faith."  Undeniably, the Verified Complaint alleges with particularity and in detail the substantial and continuing defaults by the AAA in respect of its implementation of Rules R-16(a) and R-17(a).  In those instances when the AAA refuses to perform its vital duties "under these rules" -- so as to protect arbitration clients from tainted arbitrators [as expressly contemplated by Rules R-16(a) and R-17(a)] -- Rule R-48(d) is no shield from a federal injunction mandating that the AAA do so.

C.    _Exculpatory Provisions are Unmistakably Disfavored_.  Provisions that purport to exculpate for future acts are strongly disfavored, and will not be enforced where, as here, the claim arises out of the AAA's reckless indifference to the rights of the Hasans.  _See Sommer v. Federal Signal Corp._, 79 N.Y.2d 540, 593 N.E.2d 1365, 1371 (1992) ("It is the public policy of this State … that a party may not insulate itself from damages caused by grossly

---

[10]    This crucial and continuing obligation is reinforced in: (i) the AAA website representations, assurances, promises and commitments; (ii) the AAA Arbitrators' Ethical Code; and (iii) the "Notice of Appointment" forms attested as accurate and complete by each arbitrator.

negligent conduct"), *citing* Restatement [Second] of Contracts §195[1] (intentional or reckless conduct vitiates contractual term limiting liability).

Even if the AAA's conduct is viewed as short of reckless, exculpatory clauses are plainly disfavored and are subject to the "closest of judicial scrutiny." *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001). In order to be enforced an exculpatory release must reflect *the unequivocal expression* of the party giving up his or her legal rights. *Id.* (emphasis supplied); *see also, Bradley v. Step Tourism*, 1986 WL 12719, * 47-48 (S.D.N.Y. 1986) ("it must appear plainly and precisely that the limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility").

The "exculpatory" provision upon which the AAA relies in this case, Rule 48(d) of the AAA Commercial Arbitration Rules, arises not in any instrument directly executed by the Hasans. Rather, it is buried in technical rules which, in turn, the AAA declares are incorporated wholesale into Goldman Sachs' lengthy and complicated adhesion agreements (which mandate arbitration of disputes in arbitration sponsored by the AAA). **AAA Memorandum in Support of Motion to Dismiss at p. 6**. These AAA rules are not set forth in the Goldman Sachs agreements, and these agreements say nothing about where they might be located. At the risk of stating the obvious, the AAA can offer no evidence that the Hasans had any knowledge about the contents of Rule 48(d). In the language of *Golden Pacific Bancorp*, there is no evidence of an "unequivocal expression" by the Hasans to relinquish any right to enforce the AAA's promises, assurances, commitments and representations. *See Gross v. Sweet*, 49 N.Y.2d 102, 107-108 (1979).

Finally, even if the foregoing were not sufficient to defeat the AAA's claim of "exculpation," public policy would render such a provision unenforceable here. As discussed in

Section II, supra, the New York federal and state judiciary retains the power to remove arbitrators. Neither the AAA nor any other arbitration sponsor can be permitted to cancel this important function (especially where the doctrine of arbitral immunity has already shielded the AAA from liability for money damages).

## CONCLUSION

For the foregoing reasons, the Hasans respectfully request that the AAA's motion to dismiss promptly be denied.

Dated:  New York, New York
        May 14, 2008

Respectfully submitted,

_____
Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams, PLLC
2 Penn Plaza, Suite 1910
New York, NY 10121
Phone:  (212) 292-5663
Fax:  (646) 536-8905
Dan@LawyerQuality.com


G.W. MERRICK & ASSOCIATES, LLC

Glenn W. Merrick
Marc L. Schatten
Suite 912, 5445 DTC Parkway
Greenwood Village, Colorado 80111
Telephone: 303-831-9400
Facsimile:  303-771-5803
E-mail:     gwm@gwmerrick.com

ATTORNEY FOR PLAINTIFFS MALIK M.
HASAN, M.D. and SEEME G. HASAN

Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams. PLLC
Attorney for Plaintiffs
2 Penn Plaza. Suite 1910
New York, New York 10121
(212)292-5663


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X
                                   :

MALIK M. HASAN and SEEME G. HASAN,   :

                           :

                 Plaintiffs,     :

                           :

    v.                       : 08 Civ. 3189 (GBD)

                           :

AMERICAN ARBITRATION ASSOCIATION,    :
INC.,                             :

                           :

                 Defendant.     :

                           :
---------------------------------------------------------------------- X
_____

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF AND REQUEST FOR EXPEDITED
CONSIDERATION THEREOF**
_____


          Plaintiffs, Malik M. Hasan, M.D. and Seeme G. Hasan (collectively, the

"Hasans"), through their undersigned counsel, respectfully submit this Memorandum in

Support of their Motion for Preliminary Injunctive Relief and request expedited

consideration thereof.  The Hasans seek specific enforcement of fundamental promises,

assurances, commitments and representations published to them by the American

Arbitration Association ("AAA") in connection with AAA-sponsored arbitration in New

York City.  Accordingly, the Hasans seek the immediate entry of an Order directing the

AAA promptly to replace two members of the arbitration panel appointed by the AAA. This Motion is supported by: (i) the Verified Complaint, (ii) the attached Affidavit of Glenn W. Merrick, and (iii) the attached Report of the Expert Opinions of Professor Seth E. Lipner -- a respected scholar, practioner and highly-regarded expert in the field of arbitration.

## I.    The Litigation/Arbitrartion Background

The Hasans are Pakistani immigrants and are committed and faithful followers of Islam.  They are residents of Nevada but maintain property in Colorado. **Verified Complaint at ¶¶1, 2**.  During 1998 and 1999, the Hasans were induced by members of the Private Client Services group of Goldman Sachs & Co. ("Goldman Sachs") to invest approximately $8 million in two Exchange Funds that were promoted, sponsored and managed by Goldman Sachs and its affiliates.[1]  These two Exchange Funds were constructed with billions of dollars in contributed equity securities, raised from hundreds of investors nationwide, and generated nearly $200 million in fees and commissions for Goldman Sachs and its affiliates.  **Merrick Affidavit at ¶5**.

In 2004, the Hasans filed suit in the federal district court in Denver seeking rescission and/or monetary damages arising out of their purchase of limited partnership interests in these Exchange Funds.  The Hasans allege that Goldman Sachs and its affiliates grossly misrepresented to the Hasans the process for selection and management -- and were, in fact, culpable in the process of the selection and management -- of the securities chosen for inclusion in the Funds.  Their pleadings underscore

---

[1]    Specifically, the Hasans invested in the 1998 Exchange Place Fund, L.P. and Goldman Sachs 1999 Exchange Place Fund, L.P.

numerous and manifest violations of federal and state statutes and rules, as well as under numerous rights to relief under the common law. *Id*. **at ¶6**.

Ultimately, the federal court in Denver determined that the Hasans are bound under the terms of the Exchange Funds' limited partnership agreements to pursue their claims in arbitration sponsored by the AAA in New York City. Accordingly, the federal judge in Denver transferred the case to the United States District Court for the Southern District of New York (for purposes of enforcing the arbitration determination). Upon transfer, Judge Naomi Buchwald entered an Order compelling arbitration. As a result of Judge Buchwald's Order, the litigation that had been transferred to her was consolidated into an AAA-sponsored arbitration proceeding that has been prosecuted in New York City (the "New York Arbitration"). *Id*. **at ¶7**.

## II.     The AAA's Promise, Assurance, Commitment and Representation to the Hasans of Full, Fair and Timely Disclosures by its Arbitrators

On its website, the AAA promises, assures, commits and represents to its arbitration clients (including the Hasans) that "integrity" is one of the core values of the AAA.[2] The AAA further promises, represents and assures its arbitration clients that the "AAA has long held its … arbitrators to strict codes of ethics and model standards of conduct to ensure fairness and impartiality in conflict management."[3] The AAA website declares that once "a case is filed, parties may select from the AAA's National Roster of over 8,000 impartial experts, or neutrals, to hear and resolve their cases."[4]

---

[2]     http://www.adr.org/aaa_mission.

[3]     *Id.*

[4]     http://www.adr.org/about_aaa.

The AAA expressly promises, assures, commits and represents to its arbitration clients (including the Hasans) that one of the cornerstones of the AAA's "foundation of integrity" is that "[a]rbitrators that serve on AAA panels are _bound_ by the Code of Ethics for Arbitrators in Commercial Disputes."[5]  Further, the "NEUTRALS eCenter" set of pages on the AAA website assures that one of the critical qualifications of AAA arbitrators is dedication "to _upholding_ the AAA Code of Ethics for Arbitrators."[6]

In furtherance of its promises, assurances, commitments and representations, the AAA has adopted the Code of Ethics for Arbitrators in Commercial Disputes (the "Ethical Code").  In its Preamble, the Ethical Code instructs that it "sets forth generally accepted standards of ethical conduct" for AAA arbitrators. Of particular import to this case, the Ethical Code expressly provides that AAA arbitrators timely _shall disclose_:

A.  All direct and _indirect_ _interests_ in the outcome of the arbitration **[Ethical Code at Canon II.A.(1)]**; and

B.  All present and _past_ financial, business or professional relationships "that might reasonably affect impartiality or lack of independence _in_ _the_ _eyes_ _of_ _any_ _of_ _the_ _parties_" **[_Id._ at Canon II.A.(2)]**.

The Ethical Code further promises, represents and assures that "_any_ _doubt_ as to whether disclosure is to be made or not _should_ _be_ _resolved_ _in_ _favor_ _of_ _disclosure_." **[_Id._ at Canon II.D]**.  Finally, the Ethical Code declares that the duty to disclose by AAA arbitrators is a continuing one that obtains throughout all phases of AAA-sponsored arbitration.  **[_Id._ at Canon II.C]**.

---

[5]    http://www.adr.org/sp.asp?id=22036.

[6]    http://www.adr.org/si.asp?id=4223.

Further underscoring the AAA's promise, assurance, commitment and representation to its arbitration clients of full, fair and timely disclosure by its arbitrators is the "Notice of Appointment" form employed by the AAA to appoint persons to its arbitration panels.  Indeed, this form was executed, <u>under</u> <u>oath</u>, by each of the arbitrators in the New York Arbitration, and it was delivered by the AAA to the Hasans prior to final confirmation of each member of the panel.  This form expressly and conspicuously declares that the AAA arbitrators have disclosed "*any past or present relationship* with the parties … *direct or indirect, whether financial, professional … or of any other kind*." That form goes on to instruct that "*any doubts* should be resolved in favor of disclosure."[7]

### III.      The AAA's New York Arbitration Panel

The AAA circulated an initial list of fifteen names of potential arbitrators in the New York Arbitration.  When the parties failed to agree on a panel from that initial list, the AAA appointed to the arbitration panel three lawyers -- each of whom practices in prestigious law firms on the East Coast -- to hear and determine the merits of the Hasans' claims against Goldman Sachs and its affiliates.  **Merrick Affidavit at ¶**9.

The AAA appointed William L.D. Barrett, a former member of the AAA Board of Directors and a former member of its Executive Committee, who practices law in New York City.  At the time of his appointment, Mr. Barrett disclosed that Goldman

---

[7]      Additionally, the "NEUTRALS eCenter" pages on the AAA website underscores the AAA's promise, assurance, commitment and representation of comprehensive disclosure to the parties. Under "Disclosure and Challenge of an Arbitrator," the following imperative is set forth:

Q:      Are there any general principals regarding disclosures?
A:      Yes.  They are as follows:  Every disclosure, <u>no</u> <u>matter</u> <u>how</u> <u>insignificant</u>, should be communicated to the parties …

http://www.adr.org/si.asp?id=2521.

Sachs is one of the underwriters for municipal bonds issued by one of his firm's clients. The Hasans timely objected to the retention of Mr. Barrett as a member of the panel, but that objection was overruled by the AAA. Mr. Barrett was subsequently selected as the panel Chair. In his Notice of Appointment Form, Mr. Barrett affirmed, _under oath_, that he understands that as an AAA arbitrator he is governed by the Ethical Code. *Id.* **at ¶9A**.

The AAA also appointed Ronald Case Sharp (who practices law in Bridgeport, Connecticut) and Richard L. Mattiaccio (who practices law in New York City). Messrs. Sharp and Mattiaccio each declared in their Notice of Appointment forms that they had no disclosures to make in connection with the New York Arbitration. Each of Messrs. Sharp and Mattiaccio affirmed, _under oath_, in their respective Notice of Appointment forms, that they understood that as AAA arbitrators they are governed by the Ethical Code. *Id*. **at ¶9B**.

On or about April 27, 2007, Mr. Barrett advised the parties in writing that his law firm (Hollyer, Brady, Barrett and Hines, LLP) would the following month be acquired by Butzel Long P.C. In connection with that acquisition, Mr. Barrett disclosed that "Butzel Long *has performed* real estate work for Goldman Sachs Europe Limited." *Id*. **at ¶10**. On or about May 29, 2007, Mr. Mattiaccio advised the parties in writing that he was leaving his current law firm (Pavia & Harcourt, LLP) for the New York City branch of Squire Sanders & Dempsey, LLP ('SSD"). Mr. Mattiaccio made no further disclosures in connection with that move. *Id*. **at ¶11**.

On September 22, 2007, following a series of unfavorable, prejudicial preliminary rulings that reflect bias and appearance of partiality, *id*. **at ¶¶8, 12A-D**, the

Hasans' counsel received an e-mail authored by Mr. Barrett which very disturbingly suggested a pro-Jewish (or perhaps anti-Islamic) bias. More particularly, in addressing a non-emergency motion which happened to be lodged with the panel by the Hasans on Yom Kippur -- which merely sought a brief extension of time, and which did not seek any expedited attention or treatment -- Mr. Barrett wrote, "*a New York panel* would not consider it seemly to give cognizance to papers served on *the holy day*, and the same will not be reviewed until the next business day" (emphasis supplied).[8] *Id*. at ¶12E.

On October 9, 2007, the Hasans lodged a Verified Motion seeking to remove Messrs. Barrett and Mattiaccio from the panel. By that time, the evidence of actual bias and apparent partiality had reached a crescendo. *Id*. at ¶**13**. On October 11, 2007, after being made aware that he was a target of the Hasans' removal motion, Mr. Mattiaccio issued a supplemental disclosure. In his supplemental disclosure he revealed, for the first time, that "one or more Goldman Sachs-related entities are clients of SSD." At no time prior to October 11, 2007 had Mr. Mattiaccio disclosed this crucial information. *Id*. at ¶**14**. On October 31, 2007, under pressure from the Hasans' removal motion filed earlier in the month, the AAA removed Mr. Mattiaccio as a panel member. In that same order, the AAA reaffirmed Mr. Barrett as an arbitrator.[9] *Id*.

---

[8]    As Pakistani immigrants, and as committed and faithful followers of Islam, the Hasans have experienced grave concern respecting whether they will be able to have their claims against Goldman Sachs fairly determined by a panel of impartial arbitrators in New York City. They are mindful that it is widely reported that those responsible for the horrific September 11, 2001 attack on New York City are Islamic extremists, directed by Osama Bin Laden. It is also frequently reported that these persons are said to be extended sanctuary in a mountainous region of Pakistan bordering Afghanistan. The instruments providing for arbitration in New York City all antedate the hideous sneak attack on New York City. The limited partnership agreements and solicitation materials respecting the Exchange Funds at issue in the New York Arbitration all antedate by several years the September 11, 2001 terrorist attack.

[9]    After Mr. Mattiaccio was removed, the AAA appointed Joanne Barak (of New York City) to the panel on January 7, 2008.

After the removal of Mr. Mattiaccio, the Hasans began an investigation respecting other undisclosed relationships/connections involving Goldman Sachs and the other panel members and/or their law firms.  Since the Hasans do not have access to these law firms' conflicts check systems, their investigation has, of necessity, been limited to the incomplete information that can be gleaned via internet searches using online search engines.  As a result of their searches, the Hasans discovered that the law firms in which Messrs. Sharp and Barrett have long been principals have enjoyed and profited from several _undisclosed_ connections/relationships with Goldman Sachs and/or its affiliates.  **_Of course, Goldman Sachs had remained conspicuously silent about these connections and relationships throughout the New York Arbitration proceedings_**.  The Hasans promptly notified the AAA in writing of the undisclosed connections/relationships that they had uncovered, and they sought the removal of Messrs. Sharp and Barrett.  **_Id_. at ¶15**.

The Hasans learned and reported to the AAA that Mr. Sharp's law firm (Pullman & Comley, LLC) had substantial and undisclosed relationships with Goldman Sachs.  A few years prior to the commencement of the New York Arbitration that firm had been engaged to represent Goldman Sachs and other underwriters in respect of the issuance by the State of Connecticut of hundreds of $708 million of Special Tax Obligation bonds (the largest in the state's history).  The Hasans also learned and reported to the AAA that Mr. Sharp's law firm had previously represented an issuer (Peoples Bank Credit Card Mutual Trust) of $370 million of securities that were underwritten by Goldman Sachs and others.  None of this information had been disclosed

by Mr. Sharp, and he declined to disclose how long these key relationships with Goldman Sachs continued. *Id***. at ¶16**.

In the case of Mr. Barrett, the Hasans' searches revealed (and they promptly reported to the AAA) that two of Mr. Barrett's flagship mutual fund clients maintain financial relationships with Goldman Sachs. One of these clients (Pacific Capital Cash Assets Trust) has for several years held in its portfolio approximately $20 million in commercial paper issued by Goldman Sachs. The other mutual fund client (The Alger Institutional Funds) had established a financial arrangement under which it compensates Goldman Sachs representatives for introducing clients to its mutual fund investment opportunity. These relationships between Mr. Barrett's clients and Goldman Sachs are believed to have continued to the present. *Id***. at ¶17**.

Following discovery of these undisclosed relationships, the Hasans moved the AAA to remove Messrs. Sharp and Barrett from the New York Arbitration panel. Prompted by the Hasans' reports to the AAA, on January 3, 2008 the AAA transmitted a letter to Messrs. Sharp and Barrett requesting full disclosure (and particularly respecting identified clients). *Id.* **at ¶18**. Mr. Barrett responded within a matter of hours. He disclosed that Pacific Capital Cash Assets Trust and The Alger Institutional Funds are clients of his prior and current law firm. In sharp contrast to his April 27, 2007 disclosure (which recites that Goldman Sachs Europe is a *former client* of Butzel Long P.C.), Mr. Barrett's January 3, 2008 disclosure states that "Goldman Sachs Europe *is* a client of [Butzel Long, P.C.]."[10] But again, Mr. Barrett declined to disclose the nature,

---

[10] On February 12, 2008, Mr. Barrett issued yet another written disclosure. This time Mr. Barrett declared that "Goldman Sachs Europe is not a current client of Butzel Long." This February 12, 2008 disclosure avers that "the principal client on the matter was JPMorganChase, not Goldman Sachs"

duration, breadth or financial magnitude of the Goldman Sachs engagement to his firm. And, again, Mr. Barrett refused to disclose the continuing relationships/connections between his mutual fund clients and Goldman Sachs.  *Id.* at ¶**19**.

Mr. Sharp responded to the AAA's January 3, 2008 letter the following day.  He acknowledged that his law firm had previously represented People's Bank Credit Card Master Trust.  But he again declined to disclose his firm's representation of Goldman Sachs.  He also declined to disclose that Goldman Sachs underwrote hundreds of millions of dollars in securities issued by People's Bank Credit Card Master Trust.  *Id.* at ¶**20**.

Based upon the continuing failure of Messrs. Sharp and Barrett to make full, fair and timely disclosures -- as required by the Ethical Code, the AAA's promises, assurances, commitments and representations published on its website, and the sworn attestations set forth in the arbitrators' Notice of Appointment forms, on January 22, 2008 the Hasans lodged with the AAA their renewed motion to remove Messrs. Sharp and Barrett from the New York Arbitration panel.  The Hasans attached copies of the results of their internet searches to corroborate their assertions respecting the material non-disclosures. *Id.* at ¶**21**.  On February 12, 2008, the AAA transmitted to the Hasans yet another deeply troubling, shifting and contradictory disclosure published by Mr. Barrett. *Id*. at ¶**22**.  Without comment other than reciting that it had reviewed the arguments of the parties, the AAA reaffirmed the appointment of Messrs. Sharp and Barrett to the New York Arbitration panel.  *Id*. at ¶**23**.

---

(emphasis supplied), and that the most recent work on this engagement had occurred in July of 2007. **Merrick Affidavit at ¶22**.

Having exhausted their remedies with the AAA, the Hasans filed the captioned suit. The suit seeks specific enforcement of the AAA's vital promises, assurances, commitments and representations to the Hasans that the merits of the dispute shall be determined only by arbitrators that have made full, fair and timely disclosures. Having fully and timely fulfilled their obligations to the AAA (including the payment to the AAA of more than $100,000 in fees associated with the New York Arbitration) the Hasans are fully entitled to the preliminary and permanent injunctive relief that they seek.

## IV.    A Preliminary Injunction is Plainly Warranted

The Second Circuit has recently instructed:

> [t]o obtain a preliminary injunction a party must demonstrate: (1) that [he or she] will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor.

*Lusk v. Village of Cold Spring*, 475 F.3d 480, 485 (2nd Cir. 2007), *citing Bronx Household of Faith v. Bd. Of Educ'n,* 331 F.3d 342, 348-49 (2nd Cir. 2003).

Applying the standards articulated in *Lusk* and *Bronx Household of Faith*, this Court should enter the requested preliminary injunctive relief (requiring the AAA promptly to replace Messrs. Sharp and Barrett). The entry of a preliminary injunction is necessary because: (i) the AAA has materially breached its promises, assurances, commitments and representations to the Hasans that only persons who make full, fair and timely disclosures will serve on the arbitration panel; (ii) requiring the Hasans to continue in arbitration before arbitrators who falsely attest to full disclosure -- while simultaneously concealing connections (direct and indirect, past and present) with the

Hasans' adversaries -- will cause the Hasans immediate and irreparable injury; (iii) upon removal of Mr. Mattiaccio, removal of the balance of the panel is required; and (iv) the balance of the hardships weigh decidedly in favor of requiring the AAA to replace Messrs. Sharp and Barrett.

        **A.**        **The Vital Importance of Full, Fair and Timely Disclosure to a Just Arbitration Process**.    The AAA's promise, assurance, commitment and representation of full, fair and timely disclosure by its arbitrators is fundamental to an honest adjudicatory process.   Forty years ago the Supreme Court instructed:

> This rule of arbitration and this canon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another.

*Commonwealth Coating Corp. v. Continental Cas. Co*., 393 U.S. 145, 150 (1968).

Justice White's concurring opinion underscores the importance of full, fair and timely disclosure in the arbitration process:

> The arbitration process functions best when an amicable and trusting atmosphere is preserved … This end is best served by establishing an atmosphere of frankness at the outset, through *disclosure* by the arbitrator of *any financial transactions* which he *has had* … with either of the parties. … [i]t is far better that the relationship [between an arbitrator and one of the parties] be *disclosed* at the outset, when the parties are free to reject the arbitrator or accept him with knowledge of the relationship and continuing faith in his objectivity, than to have the relationship come to light after the arbitration … That role [judging an arbitrator's impartiality] is best consigned to the parties, who are the architects of their own arbitration process …

*Id.* at 151 (1968) (White, J. concurring)(emphasis supplied).

The motion for preliminary injunctive relief seeks only modest and conventional relief -- specific enforcement of the AAA's promises, assurances, commitments and representations to the Hasans. It does so by seeking prompt entry of an Order directing the AAA to replace two arbitrators who have repeatedly declined to publish full, fair and timely disclosures respecting their connections with the Hasans' adversaries. Indeed, the courts of New York have long recognized the inherent judicial power summarily to remove arbitrators prior to the conclusion of arbitration proceedings *even in cases not turning on the promises, assurances, commitments and representations of an arbitration sponsor to the parties*. *See, e.g., Astoria Medical Group v. Health Insurance Plan,* 227 N.Y.S.2d 401, 403 (N.Y. 1962)("we are persuaded that, in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been entered"); *Erving v. Virginia Squires Basketball Club, L.P.*, 349 F.Supp. 716, 719 (E.D.N.Y. 1972), *aff'd* 468 F.2d 1064 (2nd Cir. 1972); (arbitrator designated by the contract was removed because he worked at a law firm representing the defendant in underlying arbitration proceeding); *Masthead Mac Drilling Corp. v. Fleck¸* 549 F.Supp. 854, 856 (S.D.N.Y. 1982)(court has inherent authority to appoint a neutral arbitrator when "potential bias of designated arbitrator would make arbitration proceedings simply a prelude to later judicial proceedings challenging the arbitration award"); *Christina Blouse Corp. v. Intern'l Ladies Garment Workers' Union,* 492 F. Supp. 508, 510-11 (S.D.N.Y. 1980)(former attorney for a party to the arbitration does not qualify as a proper arbitrator if objection is made to him and he must be displaced).

      **B.**    <u>**Mr. Sharp has Repeatedly Declined to Fulfill his Sworn Disclosure Obligations**</u>.   In the case of Mr. Sharp, the Hasans' internet search revealed

(and they promptly reported to the AAA) that his law firm, Pullman & Comley, LLC, had been engaged a few years prior to the commencement of the New York Arbitration to represent Goldman Sachs and other underwriters in respect of the State of Connecticut's issuance of $708 million in investment bonds.  The September 26, 2001 press release represented that the bond offering "was the largest Special Tax Obligation bond sale in the State's history."  **Merrick Affidavit at ¶16**.  The Hasans further reported to the AAA that their internet search had uncovered that Mr. Sharp's law firm had represented an issuer (Peoples Bank Credit Card Mutual Trust) in a 1998 transaction involving $370 million of securities that were underwritten by Goldman Sachs and others.  *Id*.

Prompted by the Hasans' report, the AAA sent a letter to Mr. Sharp dated January 3, 2008.  That letter identified reputed clients, and again asked for full disclosure of all relationships/connections to the arbitration parties.   Mr. Sharp responded the following day.  He acknowledged that his law firm had represented People's Bank Credit Card Master Trust. ***Id*. at ¶20**.  But he <u>*refused*</u> <u>*to*</u> <u>*disclose*</u> his firm's representation of Goldman Sachs in the Connecticut Special Tax Obligation bond offering, and he <u>*failed*</u> <u>*to*</u> <u>*disclose*</u> the relationship between People's Bank Credit Card Master Trust and Goldman Sachs.  Both of these should be easily ascertained from his firm's conflicts system.  ***Id***.

As the Hasans' access to information is severely limited, it was not possible to determine how long Mr. Sharp's firm continued to represent Goldman Sachs in connection with the Connecticut bond offering (or on other undisclosed matters).  *See Christina Blouse Corp.,* 492 F.Supp. at 510-11 (former attorney for a party to the arbitration does not qualify as a proper arbitrator and he must be replaced).  Nor was it

possible to determine how long Mr. Sharp's law firm enjoyed a connection to Goldman Sachs in respect of the People's Bank Credit Card Mutual Trust engagement.  What is known is that the New York Arbitration had been commenced in August of 2004, and Mr. Sharp was appointed to the panel the following Spring.  Upon learning the information set forth herein, Mr. Sharp should have been removed by the AAA.  **Lipner Expert Report at ¶¶24-27, 32-34 and Conclusion.**[11]

       **C.**     **Mr. Barrett has Repeatedly Declined to Fulfill his Sworn Disclosure Obligations**.     Stated charitably, Mr. Barrett's disclosures respecting his current firm's relationships/connections with Goldman Sachs are cheekily inconsistent and contradictory.  At the time that his prior firm was acquired by Butzel Long, P.C. in April of 2007, Mr. Barrett disclosed only that "Butzel Long *has performed* real estate work for Goldman Sachs Europe Limited" (implying a past attorney-client relationship).  **Merrick Affidavit at ¶10**.  Less than eight months later, in response to the January 3, 2008 letter from the AAA, Mr. Barrett disclosed -- for the first time -- that "Goldman Sachs Europe *is* a client of BL [Butzel Long, P.C.]" (conveying a present attorney-client relationship).  *Id.* **at ¶19**.  Then, five weeks later, on February 12, 2008, Mr. Barrett issued yet another troubling and conflicting disclosure.  This time Mr. Barrett wrote that "the principal client on the matter was JPMorganChase, not Goldman Sachs" (emphasis supplied), and that the most recent work on this engagement had occurred in July of 2007.  *Id.* **at ¶¶22-23**.  And at no time has Mr. Barrett elected to disclose the duration,

---

[11]    Indeed, THE ARBITRATOR'S MANUAL, published in 2007 by the Securities Industry Conference on Arbitration advises (at p. 6) that a challenge for cause to an arbitrator should be granted where an "[a]rbitrator or any members, shareholder, or associate of, or of counsel to his or her law firm has been in the relation of attorney and client, with … any party within three (3) years of the filing of the arbitrationclaim." http://www.finra.org/web/groups/med_arb/documents/mediation_arbitration/p009668.pdf .

breadth and/or financial significance to his firm of its engagement by Goldman Sachs or its subsidiary as is plainly mandated by the AAA.[12]

Additionally, Mr. Barrett has failed to disclose other important connections with Goldman Sachs. The Hasans' internet search uncovered that two of Mr. Barrett's flagship mutual fund clients maintain important relationships with Goldman Sachs. One of these clients (Pacific Capital Cash Assets Trust) has for several years held in its portfolio approximately $20 million in commercial paper issued by Goldman Sachs. *Id.* **at ¶17**. Mr. Barrett's other mutual fund client (The Alger Institutional Funds) has established a financial arrangement under which it compensates Goldman Sachs representatives for introducing clients to its mutual fund investment opportunity. *Id*. Both of these relationships/connections with Goldman Sachs are believed to continue to the present.

As with Mr. Sharp, at the Hasans' inducement the AAA sent Mr. Barrett a January 3, 2008 letter. That letter identified reputed clients and again asked for full disclosure of all relationships/connections to the arbitration parties. Mr. Barrett responded within a matter of hours. He disclosed that Pacific Capital Cash Assets Trust and The Alger Institutional Funds are clients of his former and current law firms. But he elected not to disclose that these are *his* *clients,* and he failed to disclose that these clients have *important, established and continuing business dealings with Goldman Sachs*. **Id. at ¶19**. Upon discovery of the relationships uncovered by the Hasans Mr. Barrett should have been removed by the AAA. **Lipner Expert Report at ¶¶22-23, 26-27, 32-34 and Conclusion**.[13]

---

[12]    http://www.adr.org/si.asp?id=2521.
[13]    *See* note 11, *supra*.

**D.**    **Messrs. Sharp and Barrett Must be Removed Because They Have Each Provided False Attestation in Connection with the New York Arbitration**.    The AAA's failure to replace Messrs. Sharp and Barrett insults to the very core of arbitration integrity.  The AAA's decision would place these individuals in the position of judging the merits of an adjudicatory proceeding in which each of them has sworn falsely.  It is now manifest that notwithstanding the Notice of Appointment forms executed *under oath* by each of them, Messrs. Sharp and Barrett have not disclosed "*any past or present relationship* with the parties … *direct or indirect, whether financial, professional … or of any other kind*."  Nor have they embraced that "*any doubts* should be resolved in favor of disclosure."   At the risk of stating the obvious, the Hasans' bargain with the AAA did not include having this significant dispute decided by those who provide false attestations on their path to a seat on the arbitration panel.

**E.**    **Preliminary Injunctive Relief is Necessary to Avoid Irreparable Harm to the Hasans**.    The federal and state judiciary has repeatedly underscored the independent duty of arbitrators to investigate diligently -- and to *disclose fully* -- direct and indirect relationships and potential conflicts.  Failure to do so creates the "reasonable impression of partiality."  *Schmitz v. Zilveti,* 20 F.3d 1043, 1048 (9th Cir. 1994); *accord, New Regency Prods., Inc. v. Nippon Herald Films, Inc.,* 501 F.3d 1101, 1105-10 (9th Cir. 2007); *Close v. Motorists Mut. Ins. Co.,* 486 N.E.2d 1275, 1278-79 (Ohio App. 1985);  *see also, Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,* 492 F.3d 132, 137-38 (2nd Cir. 2007).  The "requirement for full disclosure by arbitrators is a serious and far-reaching one."  *Federal Vending, Inc. v. Steak & Ale of Florida, Inc*., 71 F.Supp.2d 1245, 1249 (S.D. Fla. 1999)("arbitrators must take steps to

ensure that the parties are not misled into believing that no nontrivial conflict exists"); *see also*, *Applied Industrial Materials Corp.*, 492 F.3d at 137 (an arbitrator who knows of a material relationship with a party and fails to disclose it would lead a reasonable person to conclude that the arbitrator was partial to one side).

Absent preliminary injunctive relief directing the AAA to remove Messrs. Sharp and Barrett from the New York Arbitration panel, the Hasans will be required to continue to arbitrate before a panel the majority of which has material, undisclosed relationships/connections with Goldman Sachs. As the Court admonished in *Commonwealth Coating Corp.,* 393 U.S. at 150, "any tribunal permitted by law to try cases and controversies must not only be unbiased, but also must avoid even the appearance of bias." This is all the more compelling given the narrow scope of the judicial review of arbitration awards possible under the Federal Arbitration Act. *See* 9 U.S.C. §10(a); *Goldfinger v. Lisker,* 508 N.Y.S. 2d 159, 161 (N.Y. 1986)("Precisely because arbitration awards are subject to such judicial deference, it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded").

## F. **Preliminary Injunctive Relief is also Necessary in the Face of the Removal of Mr. Mattiaccio**. On October 31, 2007, the AAA removed Mr. Mattiaccio from the arbitration panel. It did *not* do so because Mr. Mattiaccio was "unable to perform the duties of [the office of an arbitrator];" rather he was removed by the AAA for disclosure misconduct. Although the AAA Commercial Arbitration Rules provide that the AAA may fill a panel vacancy when the vacancy is the result of an arbitrator being "*unable to perform the duties of the office*" (such as by death or

incapacity),[14] the rules are silent with respect to what is to occur when an arbitrator is removed by the AAA for failure to comply with the Ethical Code or other misconduct.

It is obvious that in the arbitration at issue consists of more than just a final hearing on the merits.  Indeed, in this case the arbitration panel has been exposed to: (a) a very large number of motions, responses, replies and other papers submitted to the panel, (b) numerous telephone conferences among counsel for the parties and the panel members (both with respect to the motions that have been filed and other pre-hearing matters), and (c) at least one in person pre-hearing conference conducted in New York City among counsel for the parties and members of the arbitration panel.  It is indisputable that in this case the initial panel members have worked closely together, spent a very significant time reviewing and discussing materials and conferring with each other.  Some twenty four (24) "Procedural Orders" have been issued.  In sum, these panel members have been deeply and profoundly exposed to each other's influence.  *See Schmitz,* 20 F.3d at 1049.

It has also been established that prior to May 29, 2007, Mr. Mattiaccio had been negotiating to move from his previous law firm to SSD.  Because Mr. Mattiaccio elected not to provide any further disclosure, it is not known how long this mutual courting process had been underway prior to May of 2007.  It has also been established by Mr. Mattiaccio's October 11 supplemental disclosure that "one or more Goldman

---

[14]     Rule R-19 of the AAA Commercial Arbitration Rules provides, in pertinent part, as follows:

(a) If for any reason an arbitrator is *unable to perform the duties of the office*, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

Sachs-related entities are clients of SSD."[15]    This attorney-client relationship was concealed from the Hasans.  Moreover, because Mr. Mattiaccio elected not to make a more robust disclosure on October 11 -- *and because Goldman Sachs did not elect to champion a candid disclosure* -- the length, nature, breadth and depth of the attorney-client relationship between Goldman Sachs and SSD remained concealed.

The situation involving the New York Panel is intolerable.  No one can assure that crucial panel decisions and "Procedural Orders" -- which critically impact the direction of the case and its ultimate resolution -- have not been tainted by the corrupting influence of Mr. Mattiaccio's participation and/or the relationships/connections with Goldman Sachs enjoyed by the firms in which Messrs. Mattiaccio, Sharp and Barrett are principals.  The Hasans never bargained for these improprieties.

The federal courts have not been reluctant to require the replacement of the entire panel, and the appointment of a new panel, even in much less odious circumstances.  *See*, *Marine Products Export Corp. v. M.T. Global Galaxy*, 977 F.2d 66, 68 (2nd Cir. 1992)(death of a panel member before award is rendered requires beginning again with a new panel); *Pemex – Refinacion v. Tbilisi Shipping Co.,* 2004 U.S. Dist LEXIS 17478 (S.D.N.Y. 2004)(new panel must be appointed in 11-year old arbitration even where party who appointed panel member who died is willing to proceed with substitute panel member); *Cia de Navegacion Omsil, S.A. v. Hugo Neu Corp.,* 359 F.Supp. 898, 899 (S.D.N.Y. 1973) (death of panel member requires appointment of new

---

[15]        The similarities with Mr. Barrett are striking.  Mr. Barrett has also declined (even in the face of the AAA's January 3, 2008 letter) to make full disclosure respecting the length, nature, breadth and depth of the representation of Goldman Sachs and its affiliates by Butzel Long P.C.

panel where existing panel members have "worked together and been exposed to each other's influence").

It follows that since Mr. Mattiaccio was removed, this Court should direct the AAA to remove the balance of the panel (Messrs. Sharp and Barrett).

G.    **A Balance of the Hardships Weighs Decidedly in Favor of Replacing Messrs. Sharp and Barrett**.    The Hasans have already paid the AAA in excess of $100,000 in fees in connection with the New York Arbitration.  They have fully and timely complied with all of their obligations under their contractual arrangement with the AAA.  For its part, the AAA has declined to fulfill its promises, assurances, commitments and representations to the Hasans that the arbitrators deciding the New York Arbitration will publish full, fair and timely disclosures of their relationships/connections with Goldman Sachs.

Absent removal of Messrs. Sharp and Barrett, the Hasans will be forced to continue in arbitration before a panel the majority of which has: (i) failed to make full, fair and timely disclosures consistent with the Ethical Code, the AAA website and the sworn Notice of Appointment forms signed by them _under_ _oath_, (ii)  provided false attestations about connection with Goldman Sachs and its affiliates, (iii)  enjoyed undisclosed and important relationships/connections with the Hasans' adversaries, and (iv) been subjected to the corrupting influence of an arbitrator that has been removed by the AAA for cause.

Conversely, if the AAA is directed to remove Messrs. Sharp and Barrett, the parties will be afforded the opportunity to continue the New York Arbitration before a panel that has fully disclosed and that is free of bias and the appearance of partiality.  The

AAA will be required to do no more than that it promised, assured, committed and represented that it would do from the inception.

### V.    Time is of the Essence in Respect of Preliminary Injunctive Relief

Time is of the essence respecting the Hasans' request for preliminary injunctive relief. On February 12, 2008, the AAA denied the Hasans' motion to remove Messrs. Sharp and Barrett. Now, the AAA has scheduled a telephone conference for May 1, 2008 during which the panel intends to schedule the arbitration merits hearing days and to establish other pre-hearing deadlines. Of course, prompt entry of the requested injunctive relief will minimize wasted time and expense for the parties and witnesses. As the Second Circuit has emphasized, enforcing broad and timely disclosure reduces the role of the judiciary in determining an arbitrator's impartiality after an award has been made. *Sanko S.S. Co. v. Cook Industries, Inc.,* 495 F.2d 1260, 1263-64 (2nd Cir. 1973).

Ms. Barak's recent appointment to the panel in the place of Mr. Mattiaccio underscores yet another compelling reason for prompt injunctive relief. She did not participate in the prior hearings, discussions and deliberations of the panel. Nor did she participate in deciding prior disputes or in fashioning the procedural orders that were entered by the panel. In order to preserve the integrity of these proceedings and minimize her exposure from corrupting influences, it is critical that the preliminary injunctive relief be granted on an expedited basis. *See Schmitz,* 20 F.3d at 1049 ("The arbitrators are not isolated from each other; they hear and decide the case as a panel after joint discussion, debate and deliberation. Each panel member has an opportunity to persuade the others."); *Masthead Mac Drilling Corp.,* 549 F.Supp. at 856 (federal courts have the inherent

power to remove a arbitrator when the "potential bias … would make arbitration proceedings simply a prelude to later judicial proceeding challenging the arbitration award.").

For all of the foregoing reasons, the Hasans respectfully urge that this Court enter prompt preliminary injunctive relief as follows:

A.    Directing the AAA promptly to replace Messrs. Sharp and Barrett as members of the New York Arbitration panel with persons who are free of bias and the appearance of impartiality -- who will make full, fair and timely disclosures consonant with the (i) Ethical Code; (ii) promises, assurances, commitments and representations of the AAA website; and (iii) the attestation set forth in the arbitrators' Notice of Appointment form;

B.    Directing the AAA to bar Messrs. Sharp and Barrett from (i) participating in any further hearings, discussions and/or deliberations of the panel, and (ii) involving themselves in deciding disputes or in fashioning orders for the panel;

C.    Directing the AAA to implement such action as may be necessary or appropriate to recover from Messrs. Mattiaccio, Sharp and Barrett any monies or compensation that may have been paid to them from the fees paid to the AAA by the Hasans so that such monies may be transferred to replacement members of the New York Arbitration panel; and

D.    Granting the Hasans such other and further relief as may be appropriate under the prevailing circumstances.

Dated:  New York, New York
           April 28, 2008

Respectfully submitted,

_____
Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams, PLLC
2 Penn Plaza, Suite 1910
New York, NY 10121
Phone:  (212) 292-5663
Fax:  (646) 536-8905
Dan@LawyerQuality.com
Attorneys for Plaintiffs


G.W. MERRICK & ASSOCIATES, LLC

Glenn W. Merrick
Marc L. Schatten
Suite 912, 5445 DTC Parkway
Greenwood Village, Colorado 80111
Telephone: 303-831-9400
Facsimile:  303-771-5803
E-mail:      gwm@gwmerrick.com

ATTORNEY FOR PLAINTIFFS MALIK M. HASAN, M.D. and SEEME G. HASAN