Theodore L. Hecht (TH-5497)
Schnader Harrison Segal & Lewis LLP
140 Broadway, Suite 3100
New York, New York 10005-1101
Phone No.: (212) 973-8000
Fax No.: (212) 972-8798
E-mail: thecht@schnader.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MALIK M. HASAN and SEEME G. HASAN, Plaintiffs, | : | ECF CASE |
| - against - | : | 08-CV-03189 (GBD) |
| AMERICAN ARBITRATION ASSOCIATION, INC., Defendant. | : | |

**DEFENDANT AMERICAN ARBITRATION ASSOCIATION'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO AAA'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii-iii |
| PRELIMINARY STATEMENT | | 1 |
| POINT I | THE HASANS DO NOT HAVE A CLAIM AGAINST AAA | 1 |
| POINT II | THE HASANS AGREED NOT TO BRING SUIT AGAINST AAA | 4 |
| POINT III | ARBITRAL IMMUNITY APPLIES | 5 |
| POINT IV | THE ACTION AGAINST AAA LACKS ANY LEGAL UNDERPINNING | 9 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**Page**

**CASES**


Austern v. Chicago Bd. Options Exch., Inc., 898 F.2d 882 (2d Cir. 1990) ........ 5-7

Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892 (2d Cir. 1997) ........ 9

Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 203 F.R.D. 677 (S.D. Fla. 2001), aff'd in part, dism. in part, 312 F.3d 1349 (11th Cir. 2002) ........ 7, 8

Caudle v. American Arbitration Association, 230 F.3d 920 (7th Cir. 2000) ........ 1-3

Christina Blouse Corp. v. Int'l Ladies Garment Workers' Union, Local 182, 492 F. Supp. 508 (S.D.N.Y. 1980) ........ 9

Erving v. Virginia Squires Basketball Club, 349 F. Supp. 716 (E.D.N.Y. 1972) ........ 9

Fleming Companies, Inc. v. FS Kids, LLC, 02-CV-059E(F), 2003 WL 2132895 ........ 9

Int'l Med. Group, Inc. v. American Arbitration Association, 312 F.3d 833 (7th Cir. 2002) ........ 2, 3, 5, 7

Kemner v. Dist. Council of Painting and Allied Trades No. 36, 768 F.2d 1115 (9th Cir. 1985) ........ 8

New England Cleaning Servs., Inc. v. American Arbitration Association, 199 F.3d 542 (1st Cir. 1999) ........ 6

Olson v. Nat'l Ass'n Sec. Dealers, 85 F.3d 381 (8th Cir. 1996) ........ 3

Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970 (1984) ........ 6, 8

Tamari v. Conrad, 552 F.2d 778 (7th Cir. 1977) ........ 6-8

## TABLE OF AUTHORITIES (cont'd)

**Page**

### FEDERAL STATUTES

42 U.S.C. §1983 ........................................................................................................6

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq* ........................................................................9

### OTHER AUTHORITIES

American Arbitration Association Commercial Rules, R-48(b)........................................4

American Arbitration Association Commercial Rules, R-48(d)........................................4

American Arbitration Association Commercial Rules, R-50(d)........................................7

## PRELIMINARY STATEMENT

Defendant AAA[1] submits this memorandum in reply to the Hasans' memorandum of law in opposition to AAA's motion to dismiss the Complaint ("Hasan Memo").

## POINT I

## THE HASANS DO NOT HAVE A CLAIM AGAINST AAA

The Hasans argue that they have cognizable claims against AAA arising from AAA's appointment of arbitrators because AAA is the "only proper and necessary party" and is the "real party in interest." (Hasan Memo. at 10, 13.) While they seek to disqualify arbitrators hearing their pending claim against Goldman Sachs, the Hasans do not effort an explanation as to why Goldman Sachs is not the true real interested party; nor do they identify any legally recognized interest AAA has in the outcome of the arbitration.

In support of their argument, the Hasans rely substantially on a passage in Caudle v. American Arbitration Association, 230 F.3d 920, 922 (7th Cir. 2000) which they describe as showing that the "unanimous" "Seventh Circuit has already rejected the interpretation urged by the AAA [that it is not the real party in interest]." (See Hasan Memo. at 14.) The quoted passage is *dicta* by which the Caudle court posed a hypothetical where a party paid a filing fee "and the Association had pocketed the money without arbitrating the dispute." (See Hasan Memo. at 14-15.) The court speculated that under that scenario it is unlikely that AAA could claim

---

[1] Defined terms in AAA's memorandum of law in support of its motion to dismiss dated April 30, 2008 ("AAA's Dismissal Memorandum") are used and incorporated herein.

immunity.[2] (*Id.*) However, the same court in Int'l Med. Group, Inc. v. American Arbitration Association, 312 F.3d 833, 843 (7th Cir. 2002), specifically noted that the hypothetical posed in Caudle was just that, a hypothetical of an issue which was not determined. The Int'l Med.Group court stated:

> The district court [in Caudle] dismissed the suit after finding that the AAA was entitled to immunity. We vacated and remanded with instructions to dismiss for want of jurisdiction . . . . Before vacating on this ground, however, we discussed arbitral immunity, questioning whether the principle was properly understood as immunity rather than a conclusion that arbitrators and sponsoring organizations are not the real parties in interest. We hypothesized a scenario in which the AAA might be liable for its actions. . . .We declined to decide the issue, however, because we determined that there was no jurisdiction for Caudle to bring the case in federal court.

Int'l Med. Group, 312 F.3d at 844 (emphasis added).

The Int'l Med. Group court went on to find that AAA is both an improper party to a lawsuit concerning arbitral determinations and protected by arbitral immunity. The court stated:

> IMG now seizes upon the *Caudle* hypothetical and argues that the AAA's assertion of jurisdiction over it . . . is outside the scope of arbitral immunity. IMG misses an important distinction between the *Caudle* hypothetical and the circumstances presented here. In the *Caudle* hypothetical, the facts giving rise to the potential claim have nothing to do with arbitrabilty or with the administrative duties of the AAA. The claim that one may not retain a payment for services that are never rendered can be stated entirely without reference to the arbitration. Here, however, the claim is integrally related to the administrative tasks of the AAA . . . similar to the administrative tasks of a court clerk accepting a complaint for filing.

---

[2] The Hasans do not quote the full Caudle passage. The following portion was left out: "Caudle contends that his grievance that he paid $3,400 [arbitration fee] yet has not received an arbitration - is like this hypothetical - and thus outside the scope of arbitral immunity. We need not decide whether that is so, because there is a more fundamental question, one the district judge did not mention: What is this case doing in federal court?" Caudle, 230 F.2d at 922.

Id. at 844. The Int'l Med. Group court thus found that the appropriate remedy for an erroneous determination by AAA is for the "wronged party" to seek relief against its adverse party in the arbitration, and held that AAA is an unnecessary party to judicial proceedings concerning its arbitral rulings and is protected by the doctrine of arbitral immunity. Int'l Med. Group, 312 F.3d at 844.

Similar to the plaintiff in Int'l Med.Group, the Hasans seize upon the Caudle hypothetical as support for their argument that AAA is the only necessary and real party in interest and their true adversary; and the Hasans similarly miss the important distinction between the hypothetical and the circumstances here. The Hasans' Complaint concerns AAA's appointment of arbitrators which function is integrally related to AAA's administrative duties regarding the Arbitration. The Hasans' judicial claims cannot be stated entirely - indeed cannot be stated at all - without reference to the Arbitration.

Moreover, AAA's administrative function is similar to the role of the jurors' clerk, when sending juror panels to the district judge for selection, and the role the court plays in seating the jurors. Just as an objection to error in jury selection is raised in an appeal between the parties to the trial (where neither the clerk, court, or jurors are joined), any judicial challenge to AAA's appointment of arbitrators must be between the parties to the Arbitration without AAA's joinder.[3] AAA is an improper, unnecessary and disinterested party to this lawsuit and the Complaint should be dismissed.

---

[3] Courts have rejected the Hasans' theory that they have an independent direct action against AAA for alleged failure to provide services which comply with its rules. See e.g., Olson v. Nat'l Ass'n Sec. Dealers, 85 F.3d 381, 383 (8th Cir. 1996) ("[a] sponsoring organization is

*...Continued*

**POINT II**

**THE HASANS AGREED NOT TO BRING SUIT AGAINST AAA**

The Complaint alleges that two federal courts found that the Hasans and Goldman Sachs have a binding agreement to arbitrate their claims pursuant to AAA Rules. The Hasans now argue to this Court that AAA Rules do not apply. With respect to Rule 48(b), memorializing the parties' agreement that "AAA is not a proper or necessary party in judicial proceedings relating to the arbitration," the Hasans argue that the rule "is simply inapplicable" because, according to the Hasans, it does not address injunctive relief seeking "specific enforcement" of AAA's statements concerning its arbitral administrative functions, in this case its function to appoint arbitrators. Hasan Memo. at 12.

The simple answer is the Hasans' action concerning arbitrator appointment cannot be characterized as anything other than a judicial proceeding relating to the Arbitration between the Hasans and Goldman Sachs. Courts have repeatedly enforced the provisions set out in AAA's Rule 48(b). (See AAA's Dismissal Memorandum).

With respect to Rule 48(d) precluding lawsuits against AAA for injunctive relief, the Hasans make two arguments to show that the Rule does not apply to them. The Hasans' first argument is that "for the provision to apply – the arbitration '***under these rules***' must be conducted by the AAA ***consistent with these rules***." (Emphasis in original.) (Hasan Memo. at 13.) The simple answer to that argument is that the Rule specifically provides that the parties

---

*(Continued from previous page)*
immune from civil liability for improperly selecting an arbitration panel, even when the selection violates the organization's own rules.").

agree not to seek injunctive relief "for any act or omission in connection with any arbitration under these rules." The Rules' articulation of the words "act or omission" plainly include a litigant's claim that an arbitral determination was "inconsistent" with the Rules, as the case here where the Hasans allege that AAA's acts and omissions resulted in the appointment of arbitrators which the Hasans contend should have been disqualified.

The Hasans' second argument is that their agreement with Goldman Sachs does not incorporate AAA Rules (or they were otherwise unaware of, or not bound by, the Rules' content). (See Hasan Memo. at 16.) The Complaint alleges that prior court orders directed the parties to arbitrate their claims under AAA Rules. AAA is proceeding to administer the Arbitration in accordance with the parties' Arbitration agreement. AAA should not be required to now litigate, in the instant judicial proceeding, the application of AAA Rules to the Arbitration. See Int'l Med. Group, 312 F.3d at 844 ("AAA need not be a party to that action and should be spared the burden of litigating the appropriateness of its exercise of jurisdiction.")

**POINT III**

**ARBITRAL IMMUNITY APPLIES**

The Hasans argue that the doctrine of arbitral immunity does not apply to their request for an injunction. They first argue that "the Second Circuit has specifically limited the scope of arbitral immunity to cases sounding in money damages. *See Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990)." (Hasan Memo. at 1.) The Hasans' description of Austern is wrong; no where in the opinion is the scope of arbitral immunity limited to money damages. Indeed, Austern gives expansive treatment to the doctrine, stating that a sponsoring

organization is "entitled to immunity for all functions that are integrally related to the arbitral process." Austern, 898 F.2d at 886.

The Hasans' argument principally relies on Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970 (1984). Pulliam concerned a 42 U.S.C. §1983 civil rights lawsuit involving extreme deprivation of federal constitutional rights where a federal court injunction was sought against a Virginia state court magistrate who repeatedly jailed persons for non-imprisonment offenses. The majority in the 5-4 divided Pulliam Court concluded that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." Pulliam, 466 U.S. at 541-42, 104 S.Ct. at 1981.

Pulliam's holding concerns legal principles very different than those applicable to the present case. In this case, AAA's authority to appoint arbitrators in the Arbitration does not derive from State action, but rather from the Hasans and Goldman Sachs' purely private contractual agreement which includes, among its terms, their agreement to arbitrate under AAA Rules. Thus, the Hasans and Goldman Sachs' private agreement includes a covenant that the parties mutually agree that AAA is not a proper party to any judicial proceeding concerning their Arbitration and they will not bring any lawsuit against AAA for injunctive relief. The Hasans and Goldman Sachs' agreement is binding on them, and arises from private transactions inapposite to any rule of law derived from Pulliam, and should be enforced by the Court.

Tamari v. Conrad, 552 F.2d 778 (1977), which was decided before Pulliam, held that the principles and policies justifying arbitral immunity apply equally to judicial proceedings seeking injunctive relief. Subsequent to Pulliam, several federal courts, when dismissing actions, including actions for injunctive and monetary relief against AAA and other sponsoring organizations, have cited Tamari with approval. See e.g., New England Cleaning Servs., Inc. v.

American Arbitration Association, 199 F.3d 542, 546 (1st Cir. 1999) (where money damages sought for wrongful exercise of arbitral jurisdiction, court held that "[n]ot least, failure to extend immunity to the AAA in these circumstances could discourage it from sponsoring future arbitrations[]" citing Tamari); Int'l Med. Group, 312 F.3d at 843 (arbitral immunity a ground to dismiss injunctive and monetary claims, citing Tamari); Austern, 898 F.2d at 886 (in case for money damages sought for a failure of a sponsoring organization to appoint arbitrators in manner consistent with its rules, court stated "the Courts of Appeals that have addressed the issue have uniformly immunized arbitrators from civil liability for all acts performed in their arbitral capacity[,]" citing, among others, Tamari).

Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 203 F.R.D. 677 (S.D. Fla. 2001), aff'd in part, dism. in part, 312 F.3d 1349 (11th Cir. 2002) is instructive. In Brandon, an arbitral party, MedPartners, claiming arbitrator bias in allowing an amended claim, obtained a state court injunction against AAA. Brandon, 203 F.R.D. at 681. The case was subsequently removed to federal district court. The district court dissolved the injunction against AAA, finding that

> [a]ll of the federal courts of appeals that have considered this question have found that arbitrators enjoy strict arbitral immunity from precisely the sort of lawsuit MedPartners filed against [AAA] in state court – a suit designed to interfere with arbitral jurisdiction. . . . . Just as it would interfere unduly with the legal system to permit suits against empaneled jurors, a suit against a chosen arbitration panel threatens to scuttle the efficacy of arbitration and to intimidate the panel from adjudicating the dispute. For this very reason, no doubt, the AAA Rules, to which MedPartners agreed, provide at Rule R-50(d) that "neither the AAA nor any arbitrator shall be liable to any party for any act or omission in connection with any arbitration conducted under these rules." Moreover, a prearbitration injunction also is unnecessary to protect MedPartners' legal interests since an arbitration award is subject to judicial review through a motion to modify, amend, or vacate the award – just as a jury verdict is subject to appellate review. Simply put, if an unwarranted award is levied against MedPartners or the arbitration panel

> is composed of bias or unqualified members, MedPartners has a federal judicial remedy available.

Brandon, 203 F.R.D. at 688.[4] Thus, in the years since Pulliam, courts continue to find arbitral immunity necessary to enforce the public policy encouraging arbitration and the reasons for so finding are equally applicable to actions for monetary and non-monetary relief.

Tamari provides a basis for distinguishing Pulliam. Pulliam found that a federal injunction against a state magistrate has historic roots in the common law writ of mandamus (See Pulliam, 466 U.S. 530-36, 1975-78.) Tamari, 552 F.2d at 781, drew a distinction between the writ and arbitral immunity:

> Tamari argues that this suit is analogous to a mandamus action in which a judge is the defendant. We find it more comparable to an attempt by a dissatisfied litigant to sue the members of a jury, seeking a declaration that the jury's verdict was void on the ground that the selection of the juror is improper. Such a suit would not be permitted to go forward because it would place an unfair burden on the jurors and would discourage citizens from becoming jurors. Moreover, there would be no need to allow such a suit. The litigant would be able to obtain the relief sought by challenging the composition of the jury on appellate review of the original action. By pressing his claim in this latter manner he would properly place the burden of his litigation on his actual adversary rather than on the members of the jury.[5]

---

[4] On appeal, the court declined to review MedPartners' argument that arbitral immunity does not extend to injunctive relief. "Even if arbitral immunity does not prevent all injunctions against arbitrators, *but see Tamari v. Conrad*, 552 F.2d 778 (7th Cir. 1977) (arbitral immunity protects arbiter from injunctive relief), the injunction in this case was improperly entered and ripe to be dissolved." Brandon, 312 F.3d at 1359.

[5] Kemner v. Dist. Council of Painting and Allied Trades No. 36, 768 F.2d 1115, 1119-20 (9th Cir. 1985), cited by the Hasans, is distinguishable as the court found authority in Section 301 of the LMRA to enjoin a union-management grievance committee from acting in excess of the jurisdiction allowed by the collective bargaining agreement. As cited by AAA, courts have repeatedly held that injunctions concerning the extent of AAA's jurisdiction are to be directed to the parties to the arbitration and are precluded against AAA under the doctrine of arbitral immunity.

**POINT IV**

**THE ACTION AGAINST AAA LACKS ANY LEGAL UNDERPINNING**

The Hasans argue that AAA is subject to this lawsuit asserting an interlocutory challenge to arbitrator qualification and cite to cases where courts have not enforced arbitration agreements designating specific arbitrators pursuant to "the FAA's directive that an agreement to arbitrate shall not be enforced when it would be invalid under general contract principles." (See Hasan Memo. at 3 and discussion in Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892, 895-96 (2d Cir. 1997).) In such pre-award court proceedings, a party is required to demonstrate "some kind of infirmity with the contracting process or the arbitration agreement itself[,]" and any attacks against the qualification of an arbitrator appointed under AAA Rules must "wait until after arbitration award." Fleming Companies, Inc. v. FS Kids, LLC, 02-CV-059E(F), 2003 WL 2132895 * 6. (W.D.N.Y.) (cited in Hasan Memo at 3). Thus, courts have reformed arbitration agreements when one party was fraudulently induced at the time it entered the agreement to accept an unfit arbitrator (See Aviall, 110 F.3d at 895-96 (discussion of Christina Blouse Corp. v. Int'l Ladies Garment Workers' Union, Local 182, 492 F. Supp. 508 (S.D.N.Y. 1980)); or where the originally contractually designated arbitrator was no longer in office, and his replacement belonged to the law firm representing the adverse party. (*Id.* at discussion of Erving v. Virginia Squires Basketball Club, 349 F. Supp. 716 (E.D.N.Y. 1972)).

The Hasans' agreement to arbitrate is with Goldman Sachs, not AAA. The Complaint alleges that prior courts have found the Arbitration agreement between the Hasans and Goldman Sachs to be valid. In any event, AAA is not a proper, necessary or interested party in any effort

by the Hasans to reform their Arbitration agreement and there is no authority allowing a party to sue AAA during the Arbitration based upon an objection to arbitrator appointment.

The Hasans request a broad injunction against AAA, requiring continuing judicial oversight and subjecting AAA to potential successive motions for contempt and demands for fines and jail should either party allege that AAA has failed to fulfill its "commitment, assurances, and promises." This case presents with great clarity every judicially articulated policy reason for precluding lawsuits against AAA: the threat of retaliation by unhappy arbitral parties; prolix proceedings in dereliction of arbitral neutrality; substantial costs, burdens, and time for appearing and responding in court proceedings; lack of necessity and interest; the arbitral parties' own agreement not join to AAA as a party; and the risk of repetitive judicial applications prior to award.

**CONCLUSION**

AAA's motion should be granted and the Complaint dismissed.

Dated: New York, New York
May 21, 2008

Respectfully submitted,

SCHNADER HARRISON SEGAL & LEWIS LLP

By: Theodore L. Hecht, Esq. (TH-5497)