UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

MALIK M. HASAN and SEEME G. HASAN,                  :
                                                    :
                              Plaintiffs,           :        08 Civ. 3189 (GBD)
                                                    :
              -against-                             :
                                                    :
AMERICAN ARBITRATION ASSOCIATION, INC.,             :
                                                    :
                              Defendant.            :
-------------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE
TO FILE AMICUS BRIEF, AND AMICUS BRIEF OF,
GOLDMAN SACHS 1998 EXCHANGE PLACE FUND, L.P., et al**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

THE APPLICABLE LEGAL STANDARD........................................................................ 2

I.   THE COURT LACKS JURISDICTION TO HALT THE
     ONGOING NEW YORK ARBITRATION ................................................................. 2

II.  PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE HARM...................... 3

III. PLAINTIFFS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS
     ON THE "MERITS" OF THEIR CHALLENGES TO THE ARBITRAL PANEL .... 4

     A. Plaintiffs Contractually Agreed that, Prior to an Award, the AAA Has the
        Sole Power to Remove Arbitrators. ...................................................................... 4

     B. Plaintiffs' Allegations of Bias Do Not Demonstrate "Evident Partiality" .............. 5

        1. The Charge of Religious Bias Leveled Against Mr. Barrett Does Not
           Demonstrate "Evident Partiality" ....................................................................... 5

        2. Plaintiffs' Allegations of Indirect, Remote, and Speculative Business Matters
           Are Insufficient to Disqualify the Arbitrators ..................................................... 6

     C. The Removal of Mr. Mattiaccio in No Way Disqualifies
        Messrs. Barrett or Sharp ...................................................................................... 11

IV.  THE BALANCE OF HARDSHIPS DOES NOT FAVOR PLAINTIFFS................. 12

V.   THE DOCTRINE OF UNCLEAN HANDS
     MANDATES DENIAL OF EQUITABLE RELIEF.................................................... 12

VI.  THE PROPOSED INJUNCTION WOULD IMPERMISSIBLY DISTURB THE
     STATUS QUO AND AMOUNT TO FINAL RELIEF ............................................. 15

VII. THE PUBLIC INTEREST BARS THE REQUESTED INJUNCTION.................... 15

CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Astoria Med. Group v. Health Ins. Plan,
11 N.Y.2d 128 (1962) ............................................................................................ 3

Aviall, Inc. v. Ryder Sys., Inc.,
110 F.3d 892 (2d Cir. 1997)................................................................................... 3

Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,
638 F.2d 568 (2d Cir. 1981).......................................................................... 2, 3, 12

Cristina Blouse Corp. v. Int'l Ladies Garment Workers' Union, Local 162,
492 F. Supp. 508 (S.D.N.Y. 1980)......................................................................... 3

Dow Corning Corp. v. Safety Nat'l Cas. Corp.,
335 F.3d 742 (8th Cir. 2003) ............................................................................... 11

Erving v. Va. Squires Basketball Club,
349 F. Supp. 716 (E.D.N.Y.), aff'd, 468 F.2d 1064 (2d Cir. 1972) ..................... 3

Fleming Cos. v. FS Kids, LLC,
No. 02-CV-0059E(F), 2003 WL 21382895 (W.D.N.Y. May 14, 2003) ............. 3

Globe Transport & Trading (U.K.) Ltd. v. Guthrie Latex, Inc.,
722 F. Supp. 40 (S.D.N.Y. 1989).......................................................................... 7

Hambros Bank, Ltd. v. Meserole,
287 F. Supp. 69 (S.D.N.Y. 1968)........................................................................ 15

Hunt v. Mobil Oil Corp.,
654 F. Supp. 1487 (S.D.N.Y. 1987)................................................................... 6-7

In re Drexel Burnham Lambert Inc.,
861 F.2d 1307 (2d Cir. 1988)................................................................................ 5

Kamerling v. Massanari,
295 F.3d 206 (2d Cir. 2002)................................................................................. 3

Knapp v. Walden,
367 F. Supp. 385 (S.D.N.Y. 1973)...................................................................... 15

Marine Prods. Exp. Corp. v. M.T. Globe Galaxy,
977 F.2d 66 (2d Cir. 1992).................................................................................. 11

Masthead MAC Drilling Corp. v. Fleck,
549 F. Supp. 854 (S.D.N.Y. 1982)........................................................................ 3

**Page(s)**

Mazurek v. Armstrong,
520 U.S. 968 (1997)................................................................................................... 2

McCulloch v. Hartford Life & Accident Ins. Co.,
No. 3:01 CV 1115 (AHN), 2005 WL 3144656 (D. Conn. Nov. 23, 2005) ...................... 9

Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefits Funds,
748 F.2d 79 (2d Cir. 1984)............................................................................................ 5, 6

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
460 U.S. 1 (1983)......................................................................................................... 15

Pemex-Refinacion v. Tbilisi Shipping Co.,
No. 04 Civ. 02705(HB), 2004 WL 1944450 (S.D.N.Y. Aug. 31, 2004) .......................... 11

Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co., Inc.,
698 F. Supp. 504 (S.D.N.Y. 1988)................................................................................. 3-4

Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,
324 U.S. 806 (1945)..................................................................................................... 12-13

Pulliam v. Allen,
466 U.S. 522 (1984)..................................................................................................... 2

Robert W. Stark, Jr., Inc. v. N.Y. Stock Exch., Inc.,
346 F. Supp. 217 (S.D.N.Y. 1972)................................................................................. 16

Sanford Home for Adults v. Local 6, IFHP,
665 F. Supp. 312 (S.D.N.Y. 1987)................................................................................. 7

Thomas C. Baer, Inc. v. Architectural & Ornamental Iron Workers Local Union No. 580,
813 F.2d 562 (2d Cir. 1987).......................................................................................... 5

**Other Authorities**

1 Martin Domke, Domke on Commercial Arbitration § 25.5 (3d ed. 2007) ...................... 5

11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2946
(2d ed. 1995) ................................................................................................................ 12

11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948
(2d ed. 1995) ................................................................................................................ 15

American Arbitration Association Commercial Rules, Rule R-1(a) ................................. 4

American Arbitration Association Commercial Rules, Rule R-16(a) ............................... 8

**Page(s)**

American Arbitration Association Commercial Rules, Rule R-17(b) ................................ 4-5

American Arbitration Association Commercial Rules, Rule R-19.................................... 11-12

Amici, the Goldman Sachs Parties,[1] hereby move for leave to file and ask the Court to consider the following memorandum of law in opposition to the motion by Plaintiffs Malik M. Hasan and Seeme G. Hasan for a preliminary injunction, which seeks to enjoin the arbitration between Plaintiffs and the Amici that has been actively proceeding for two years before the American Arbitration Association (the "New York Arbitration").  As parties to the New York Arbitration, the Amici have an interest in seeking to ensure an expeditious resolution of the arbitration -- particularly in light of the history of Plaintiffs' overall proliferations of litigations and their specific efforts, in federal court starting four years ago, to avoid or derail the arbitration.

## PRELIMINARY STATEMENT

The current action by Plaintiffs is their third court effort to avoid or disrupt the New York Arbitration.  Two federal judges, most recently Judge Naomi Reice Buchwald of this Court, who decried Plaintiffs' "continued resistance to arbitration," rejected those prior efforts (see infra p. 14).  Having previously sought unsuccessfully to vitiate the parties' arbitration clause, Plaintiffs then attacked the arbitrators in submissions to the AAA and now this Court.

Amici submit that Plaintiffs' motion should be denied for numerous reasons -- in addition to the reasons cited by Defendant AAA concerning the Court's lack of jurisdiction:  (i) Plaintiffs cannot show irreparable harm; (ii) they have no likelihood of success on the merits of their twice-rejected claim that the two challenged arbitrators are disqualified to serve; (iii) Plaintiffs have unclean hands; and (iv) the requested injunction would be an impermissible mandatory

---

[1]    The Goldman Sachs Parties are:  Goldman Sachs 1998 Exchange Place Fund, L.P.; Goldman Sachs 1999 Exchange Place Fund, L.P.; Goldman Sachs Management Partners, L.P.; Goldman Sachs Management, Inc.; Goldman, Sachs & Co.; and The Goldman Sachs Group, Inc.

injunction, would disturb the status quo, would amount to granting Plaintiffs the final relief they

seek, and would be against the public interest.

## THE APPLICABLE LEGAL STANDARD

As movants for an "extraordinary and drastic remedy," Buffalo Forge Co. v. Ampco-

Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (internal quotation marks and citation

omitted), Plaintiffs bear a heavy burden of making a "clear showing":[2]  (1) that they would

suffer irreparable harm absent injunctive relief; and (2) either (a) a likelihood of success on the

merits of their underlying claims, or (b) sufficiently serious questions going to the merits to make

them fair game for litigation and that the balance of hardships tips decidedly in their favor.  Id.

Plaintiffs cannot meet these tests, and their own conduct renders them ineligible for equitable

relief.

## I.
## THE COURT LACKS JURISDICTION TO HALT THE ONGOING NEW YORK ARBITRATION

A preliminary injunction must be denied, at the threshold, because the Court lacks

jurisdiction.  As shown in the AAA's papers on its motion to dismiss, the AAA is (i) not a proper

party, and (ii) is protected by arbitral immunity.[3]  Furthermore, as shown in the AAA's brief in

opposition to the motion for preliminary injunction, a federal court has no power to stay an

---

[2]      Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948, at 129-30 (2d ed. 1995)).

[3]      Plaintiffs' reliance on Pulliam v. Allen, 466 U.S. 522 (1984), to defeat the AAA's claim on the scope of arbitral immunity is entirely misplaced.  That case permitted an action against a state judge for injunctive relief in the context of a claimed denial of substantial constitutional rights, a deprivation that is often considered irreparable harm.  Here, Plaintiffs, while they inject the word "constitutional" on occasion, admit virtually from the outset that they rely on a contractual right derived from the AAA's rules and code of conduct and complain about lost time and money (arbitral fees).  The case law is clear that under the FAA such claims do not constitute a showing of irreparable harm and may be adequately remedied at law.  See infra Point II, pp. 3-4.

2

arbitration or remove an allegedly biased arbitrator prior to an award, where as here, the

arbitration is based on the Federal Arbitration Act.[4]

## II.
## PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE HARM

As the Court of Appeals has squarely and repeatedly held, "[A] showing of irreparable

harm . . .is the sine qua non for the grant of . . . equitable relief," Buffalo Forge, 638 F.2d at 569

(2d Cir. 1981), and is "perhaps the single most important prerequisite for the issuance of a

preliminary injunction." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (per curiam)

(internal quotation marks and citation omitted). Plaintiffs cannot satisfy this requirement.

Plaintiffs' sole claim of alleged irreparable injury is this: "Absent preliminary injunctive

relief directing the AAA to remove Messrs. Sharp and Barrett from the New York Arbitration

panel, the Hasans will be required to continue to arbitrate before a panel the majority of which

has material, undisclosed relationships/connections with Goldman Sachs." Plaintiffs' Mem. at

18. But no award has issued, and the outcome of the arbitration is a matter of speculation.

Should an award issue against Plaintiffs, they can challenge it in court by a motion to vacate

under the FAA. Indeed, that is their exclusive remedy.

The presence of this post-award remedy as to purported arbitrator bias or conflict defeats

any claim of irreparable harm. See, e.g., Pompano-Windy City Partners, Ltd. v. Bear, Stearns &

Co., Inc., 698 F. Supp. 504, 519 (S.D.N.Y. 1988) ("Even if the eventual arbitration turned out to

---

[4]       Plaintiffs' cases (Plaintiffs' Mem. at 13) for the proposition that courts have power to remove arbitrators prior to award are irrelevant as either 1) peculiar state court cases that do not fall under the FAA (Astoria Med. Group v. Health Ins. Plan, 11 N.Y.2d 128 (1962), or 2) cases -- unlike this case -- in which a specific arbitrator had been named in the agreement itself (Erving v. Va. Squires Basketball Club, 349 F. Supp. 716 (E.D.N.Y.), aff'd, 468 F.2d 1064 (2d Cir. 1972); Masthead MAC Drilling Corp. v. Fleck, 549 F. Supp. 854 (S.D.N.Y. 1982); and Cristina Blouse Corp. v. Int'l Ladies Garment Workers' Union, Local 162, 492 F. Supp. 508 (S.D.N.Y. 1980)). In those cases, a pre-award challenge to a named arbitrator was held to be a matter of contract reformation, under general principles of contract law. At least two federal courts (including the Second Circuit) have so described and distinguished those cases. See Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892, 895-96 (2d Cir. 1997) (distinguishing these very cases); Fleming Cos. v. FS Kids, LLC, No. 02-CV-0059E(F), 2003 WL 21382895 (W.D.N.Y. May 14, 2003) (same).

be unfair, any resultant injury would not be 'irreparable.' If the arbitration were in fact biased, plaintiffs could challenge that award and, if successful, it will have no effect. If there were no bias, the award will properly receive the effect to which it is entitled by law. The possible expense incurred in defending an arbitration is not, of course, irreparable harm.").

### III.
### PLAINTIFFS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE "MERITS" OF THEIR CHALLENGES TO THE ARBITRAL PANEL

As discussed above and in the brief of Defendant AAA, the Court has no jurisdiction at this juncture to delve into the merits of Plaintiffs' claims relating to the continued service of the arbitrators. However, should the Court nevertheless entertain Plaintiffs' challenges to the arbitrators at this premature juncture, Plaintiffs cannot show a likelihood of success on the merits or sufficiently serious questions to make them fair game for litigation.

### A.     Plaintiffs Contractually Agreed that, Prior to an Award, the AAA Has the Sole Power to Remove Arbitrators

The Commercial Rules of the AAA are incorporated into the arbitration agreements in the LPAs and are binding on Plaintiffs.[5] Plaintiffs filed three motions with the AAA to disqualify Mr. Barrett and two to disqualify Mr. Sharp, in addition to sending a multitude of email making the same arguments. The AAA considered Plaintiffs' arguments, rejected all of them, and reaffirmed the service of the two arbitrators. Under the Commercial Rules, the AAA's determinations with regard to Messrs. Barrett and Sharp are final. See Commercial Rule R-17(b) ("Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the

---

[5]      The arbitration clauses in the Limited Partnership Agreements governing the 1998 and 1999 Exchange Funds provide that "[a]ny dispute or controversy arising out of or relating to this Agreement shall be determined and settled by arbitration . . . *in accordance with then prevailing Commercial Arbitration Rules of the American Arbitration Association*." Limited Partnership Agreements, § 16.17 (emphasis added). Moreover, Rule R-1(a) of the AAA's Commercial Arbitration Rules provides: "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association . . . under its Commercial Arbitration Rules . . . ."

4

AAA shall determine whether the arbitrator should be disqualified under the grounds set out

above, and shall inform the parties of its decision, which decision shall be <u>conclusive</u>.")

(emphasis added).  Since Plaintiffs have agreed that the AAA's ruling is conclusive, they are

barred from seeking additional relief, certainly before an award is entered.  None of Plaintiffs'

cited cases involve such a conclusive agreement providing for the finality of appointments.


**B.**    **Plaintiffs' Allegations of Bias Do Not Demonstrate "Evident Partiality"**

In the Second Circuit, the applicable standard under the FAA for disqualification --

"evident partiality" -- exists only when "a reasonable person <u>would have to conclude</u> that an

arbitrator was partial to one party to the arbitration."  <u>Morelite Constr. Corp. v. N.Y.C. Dist.</u>

<u>Council Carpenters Benefits Funds</u>, 748 F.2d 79, 84 (2d Cir. 1984) (emphasis added).  Plaintiffs'

allegations of bias do not meet this standard.[6]

1.    <u>The Charge of Religious Bias Leveled Against Mr. Barrett Does Not Demonstrate</u>
      <u>"Evident Partiality"</u>

The principal purported "evidence" for the charge of religious bias (Plaintiffs' Mem. at 6-

7; Merrick Aff. ¶ 12E) against Mr. Barrett is that he assured the Goldman Sachs Parties' counsel

that a motion filed by Plaintiffs on Yom Kippur would not be decided on "the holy day" and

therefore counsel need not be concerned about their inability to respond to the motion on that

day.  In context, it is clear that Mr. Barrett was referring to Yom Kippur as a holy day for one of

Respondents' attorneys, who is Jewish.  But it would not matter how he was using the phrase

---

[6]    A long line of cases recognizes that disqualification motions are often manipulative, and should be carefully reviewed for manipulation, lest they become "an effective tactic for harassment and delay" if considered in the absence of a clear right to relief.  <u>See, e.g.</u>, <u>In re Drexel Burnham Lambert Inc.</u>, 861 F.2d 1307, 1312 (2d Cir. 1988).  Furthermore, rulings of an arbitrator may not be used to show bias or partiality.  "Partiality is not established merely by an arbitrator's consistent reliance on the prevailing party's evidence, <u>nor by the arbitrator's conclusions in the prevailing party's favor</u>.  The claimant must establish specific facts that indicate improper motives on the arbitrator's part."  1 Martin Domke, <u>Domke on Commercial Arbitration</u> § 25.5 (3d ed. 2007) (emphasis added) (footnotes omitted).  <u>See</u> <u>Thomas C. Baer, Inc.</u> <u>v. Architectural & Ornamental Iron Workers Local Union No. 580</u>, 813 F.2d 562, 565 (2d Cir. 1987) ("[T]he fact that the arbitrator found in favor of the Union clearly does not satisfy Baer's burden of showing partiality.").

because respect for one religion is not evidence of religious or any other kind of bias against

Plaintiffs.  Furthermore, while Plaintiffs construe the email as suggesting a pro-Jewish bias or

"*perhaps* anti-Islamic bias," Plaintiffs' Mem. at 7 (emphasis added), pure speculation: "perhaps"

is no basis for disqualification.[7]

        2.     <u>Plaintiffs' Allegations of Indirect, Remote, and Speculative Business Matters Are
Insufficient to Disqualify the Arbitrators</u>

The alleged undisclosed "relationships" between Mr. Barrett's and Mr. Sharp's law firms

(no allegation is made in this connection regarding the arbitrators personally) and Goldman

Sachs are so attenuated as to not even require disclosure, much less do they meet the standard of

"evident partiality."  Plaintiffs' Motion also fails because they assert that the arbitrators exhibit

an <u>appearance</u> of partiality (<u>see</u>, <u>e.g.</u>, Plaintiffs' Mem. at 7, 17) -- a standard the Second Circuit

has squarely rejected as a basis for disqualifying an arbitrator.  <u>See</u> <u>Morelite Constr. Corp.</u>, 748

F.2d at 79.

Rulings in this Circuit also make clear that nondisclosure of insignificant connections

between an arbitrator and a party does not constitute evident partiality as a matter of law.  <u>See</u>,

<u>e.g.</u>, <u>Hunt v. Mobil Oil Corp.</u>, 654 F. Supp. 1487, 1501, 1503 (S.D.N.Y. 1987) (rejecting

assertions an arbitrator was biased or "evidently partial" by reason that others in his law firm

represented non-party entities in transactions with parties "unrelated to any issue in the

---

[7]       The true facts relating to this one communication are these:  On Saturday, September 22, Plaintiffs' counsel transmitted an email to the Panel seeking additional time to file expert reports allegedly because of a September 20 order granting Goldman Sachs additional time to respond to discovery allowed by the Panel.  Later on Saturday, Mr. Kaiser, a colleague of Mr. Gitter, counsel for the Goldman Parties, responded to Plaintiffs' email asking the Panel not to act on Plaintiffs' request for an extension until Mr. Gitter returned to the office on Monday, explaining that Mr. Gitter was observing the Yom Kippur holiday that day and that Mr. Featherstone (another counsel for the Goldman Parties) was out of the country on other business.  The Merrick Affidavit (at ¶ 12E) is misleading to the extent that it asserts that Goldman Sachs asked that the Panel merely to "not act upon this request"; Mr. Kaiser's email asked the Panel to wait for a response from Mr. Gitter on Monday, after the Yom Kippur holiday.  Plaintiffs' Complaint (¶ 24) is also misleading in portraying Mr. Barrett's email as a gratuitous response to Plaintiffs' motion, because it was in direct response to Mr. Kaiser's (Goldman's) email request to have until Monday to respond to Plaintiffs' motion.

arbitration," and challenges based on assertions that law partners new to the law firm of the arbitrator continued to provide legal services to a party or its affiliate during the arbitration); Sanford Home for Adults v. Local 6, IFHP, 665 F. Supp. 312, 317 (S.D.N.Y. 1987) ("Neither did the Second Circuit suggest that 'parties to arbitration may have awards set aside by seeking out and finding tenuous relationships between the arbitrator and the successful party.'") (citation omitted); Globe Transport & Trading (U.K.) Ltd. v. Guthrie Latex, Inc., 722 F. Supp. 40, 47 (S.D.N.Y. 1989) (no evident partiality where arbitrator failed to disclose that his law firm had hired, in mid-arbitration, a lateral partner who had previously represented one of the parties -- arbitrator's relationship with the party was too attenuated to warrant disqualification).

Plaintiffs' reliance on the AAA's Code of Ethics (see, e.g., Plaintiffs' Mem. at 4) is insufficient to warrant disqualification. The Ethical Code, while it illuminates the importance of disclosure, is hortatory. It is not controlling in the New York Arbitration because it has not been incorporated into the AAA Commercial Arbitration Rules.[8]

Mr. Barrett: Plaintiffs refer (Plaintiffs' Mem. at 9-10, 15-16; Merrick Aff. ¶¶ 17-22) to the same attenuated "connections" between Goldman Sachs and Mr. Barrett's law firm that the AAA already rejected three times as grounds for removal or disqualification. Because the AAA's determinations reaffirming Mr. Barrett's service are conclusive and binding, Plaintiffs' challenge must be rejected.

---

[8]    See Preamble to AAA Code of Ethics for Arbitrators in Commercial Disputes (2004) ("However, this Code does not form a part of the arbitration rules of any such organization unless its rules so provide.") Moreover, it is well settled that any non-disclosure which may have violated AAA ethical standards "constitute[s] at worst a technical violation" and cannot amount to "evident partiality" under the FAA, as the AAA Code of Ethics has not been incorporated into federal law." Sanford, 655 F. Supp. at 318 (internal quotation marks and citations omitted).

    Furthermore, Plaintiffs' citation to the S.I.C. Arbitrator's Manual (Plaintiffs' Mem. at 15 n.11) is irrelevant. The preamble to that manual states that it was compiled "by members of the Securities Industry Conference on Arbitration (SICA) as a guide for arbitrators." The manual thus applies to the S.I.C., not the AAA, refers to the UCA, not the FAA, and is merely a guide. In fact, Plaintiffs' "expert" concedes in his "report" (¶ 30) that the manual is does not apply to the AAA.

In any event, the alleged "connections" of Mr. Barrett's law firm with Pacific Capital Cash Assets Trust and Alger Funds are neither grounds for removal nor required to be disclosed. These entities are not parties to the arbitration and their remote transactions (investments in the commercial paper of Goldman Sachs) are not part of or at issue in the arbitration, the same missing elements found important to the outcome in the Hunt case.[9]

These relationships of clients are not direct relationships of Mr. Barrett or even his law firm, especially in the absence of any evidence that Mr. Barrett was personally involved in any legal services concerning them. There was no need to make any disclosure under AAA Commercial Rule R-16(a)[10] or otherwise because the matters are trivial and tenuous, and do not begin to suggest "evident partiality."

Plaintiffs make allegations concerning "Goldman Sachs Europe" (Plaintiffs' Mem. at 6, 9, 15; Merrick Aff. ¶¶ 19, 22), but the facts are these: In April 2007, Mr. Barrett disclosed to the AAA and the parties that his firm was merging with Butzel Long PC and that his new law firm "has performed real estate work for Goldman Sachs Europe Limited."[11] Merrick Aff., Ex. E. At that time, Plaintiffs did not object or call for more disclosure. Plaintiffs argue that Mr. Barrett's later January 3, 2008 disclosure, where he stated that "Goldman Sachs Europe is a client of

---

[9]    Plaintiffs also rely (Plaintiffs' Mem. at 9; Merrick Aff. ¶ 17) on a publicly disclosed "arrangement" for Alger to make certain payments to Goldman Sachs. The disclosure shows that Goldman Sachs was one of 23 identified major brokerage houses with such an arrangement. But Plaintiffs do not even claim that this "arrangement" has anything to do with the dispute in arbitration, or that Mr. Barrett or his firm provided any legal services in connection with it.

[10]    Rule R-16(a) provides: "Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration."

[11]    In fact, his April 2007 disclosure includes a further advisory -- that Butzel Long "represents" National Life Insurance Company in a matter "adverse" to Goldman Sachs. Merrick Aff., Ex. E. This disclosure of "adversity" to Goldman Sachs further refutes the implications Plaintiffs seek to draw.

[Butzel Long, P.C.]" (Merrick Aff., Ex. J), is "in sharp contrast" to his earlier disclosure

(Plaintiffs' Mem. at 9; see also Merrick Aff. ¶ 22 (alleging "conflicting disclosures")).  But there

is simply nothing inconsistent in the two statements, particularly with Mr. Barrett's prompt

clarification in his additional disclosure dated January 8, 2008 (which Plaintiffs omit), where he

stated that "with respect to my disclosure of January 3, 2008, it was *not my intention to say*

*anything different* regarding Goldman Sachs Europe than was previously disclosed in my

disclosure dated April 27, 2007" (Kaiser Decl., Ex. A) (emphasis added), and his final disclosure

of February 12, 2008, where he stated that all representations were closed and "Goldman Sachs

Europe is not a current client of Butzel Long."[12]  Merrick Aff., Ex. M.

Mr. Barrett made the various disclosures in response to inquiries during the arbitration.

The New York Arbitration does not involve any "Goldman Sachs Europe" affiliate or its

activities.  Moreover, the law firm's relationship with "Goldman Sachs Europe" was promptly

disclosed in April 2007 (before Mr. Barrett joined Butzel Long) and Plaintiffs did not seek any

further clarification or make any objection until November.  A party's failure to timely inquire,

object and/or seek removal, having notice, constitutes a waiver.  McCulloch v. Hartford Life &

Accident Ins. Co., No. 3:01 CV 1115 (AHN), 2005 WL 3144656, at *3 (D. Conn. Nov. 23,

2005) ("Disqualification motions must be made at the earliest possible moment after the movant

obtains knowledge of facts demonstrating the bases for the claim.").

Mr. Sharp:  Plaintiffs again refer (Plaintiffs' Mem. at 8-9, 13-15; Merrick Aff. ¶ 16) to

the same attenuated "connections" between Mr. Sharp's law firm (Pullman & Comley LLC) and

---

[12]    Mr. Barrett's February 12 disclosure relates that he made a personal inquiry into his new firm's main office in Detroit; that the matter was inherited when Mr. Barrett's firm merged with Butzel Long in May 2007; that the principal client on the matter was JPMorgan Chase, not Goldman Sachs; that Mr. Barrett had no personal knowledge of or involvement in the matter, which involved a mortgage some years ago and was completed at that time, except that in July of 2007 it was necessary to file a release of mortgage, a ministerial act; and that "the matter is completely finished . . . ."  Merrick Aff., Ex. M.

Goldman Sachs that were previously considered and rejected (twice) by the AAA. By Rule, those determinations are final and defeat the motion for preliminary injunction for the reasons stated earlier.

Plaintiffs assert that, "[a] few years prior to the commencement of the New York Arbitration that firm had been engaged to represent Goldman Sachs and other underwriters in respect of the issuance by the State of Connecticut of $708 million in investment bonds." Merrick Aff. ¶ 16. It appears that Plaintiffs are referring to a Connecticut state bond issuance that took place around October 2001 (three and a half years before Mr. Sharp was confirmed as arbitrator), where Pullman & Comley represented a syndicate led by Salomon Smith Barney, which happened to include Goldman Sachs, Lehman Brothers, and Ramirez & Co. Inc. as junior members of the syndicate. There is no indication that Mr. Sharp was personally involved in the firm's representation; Plaintiffs do not even make that claim.

The other alleged connection is that the firm "had previously represented an issuer (Peoples Bank Credit Card Mutual Trust) of hundreds of millions of dollars of securities that had been underwritten by Goldman Sachs and others." Id. Plaintiffs' argument with regard to the latter alleged "relationship" is misleading because an internet search discloses that Plaintiffs are referring to transactions involving Peoples Bank Trust from 1996-1999, involving the securitization of credit card payables. In those transactions (according to underwriting agreements found on the internet) Pullman & Comley served as special Connecticut counsel to Peoples Bank Trust on Connecticut state income tax issues and Connecticut state banking law matters, and to opine that the Trust had a security interest in the underlying receivables. Pullman & Comley were not the lead law firm for the issuer and did not represent Goldman Sachs or even the underwriting syndicate.

In neither instance do Plaintiffs show, or even claim, that Mr. Sharp was personally involved. These are stale events, concluded years ago, unrelated to the matters at issue in the arbitration. They therefore do not constitute any relationship or conflict of interest, matters requiring disclosure, or grounds for disqualification.

**C.    The Removal of Mr. Mattiaccio in No Way Disqualifies Messrs. Barrett or Sharp**

Repeating a November 2007 motion to the AAA to disqualify the arbitrators, Plaintiffs argue that the removal of Mr. Mattiaccio requires the automatic removal of Messrs. Barrett and Sharp and the appointment of a completely new panel. See Plaintiffs' Mem. at 18-21. This argument has been specifically rejected by the AAA, and its determination is final and defeats the motion for preliminary injunction.

The argument is also frivolous. In each case cited by Plaintiffs, the arbitration agreement at issue had no procedures or rules providing for a panel vacancy. In that unique factual situation, which is not the case here, the common law rule holds that a new panel must be appointed. See, e.g., Marine Prods. Exp. Corp. v. M.T. Globe Galaxy, 977 F.2d 66, 68 (2d Cir. 1992) ("[W]here one member of a three-person arbitration panel dies before the rendering of an award *and the arbitration agreement does not anticipate that circumstance*, the arbitration must commence anew with a full panel.") (emphasis added) (citation omitted); Pemex-Refinacion v. Tbilisi Shipping Co., No. 04 Civ. 02705(HB), 2004 WL 1944450, at *5 (S.D.N.Y. Aug. 31, 2004) (same).

Here, as previously noted, the arbitration agreements explicitly incorporate the Commercial Rules of the AAA, which do provide for filling a vacancy. The common law rule thus does not apply. See, e.g., Dow Corning Corp. v. Safety Nat'l Cas. Corp., 335 F.3d 742, 749 (8th Cir. 2003) (no new panel required where "the remaining arbitrators concluded that the agreement authorized them to proceed with a substitute party-arbitrator"). Under AAA

11

Commercial Rule R-19, the AAA clearly has the authority to fill the vacancy created by Mr. Mattiaccio's departure with a substitute arbitrator, and the AAA has done so.

* * *

In sum, Plaintiffs' arguments for the "merits" are neither likely to succeed nor do they raise "serious" questions that are "fair game" for litigation.

**IV.**
**THE BALANCE OF HARDSHIPS DOES NOT FAVOR PLAINTIFFS**

To meet the balance of hardships test, "the movant must show that the harm which he would suffer from the denial of his motion is 'decidedly' greater than the harm his opponent would suffer if the motion was granted." Buffalo Forge, 638 F.2d 568 at 569.

Plaintiffs have not shown any immediate, cognizable, irreparable harm from denial of their motion: all that will happen is that the status quo will be maintained and the New York arbitration will continue. The result of the arbitration is uncertain and challengeable by a motion to vacate the award. Because their alleged harm is speculative, Plaintiffs cannot show that the harm they will suffer should the arbitration proceed is immediate, concrete, and "decidedly greater" than the harm the Goldman Sachs Parties will suffer should the arbitration be enjoined and the arbitrators removed.

**V.**
**THE DOCTRINE OF UNCLEAN HANDS**
**MANDATES DENIAL OF EQUITABLE RELIEF**

"As a matter of public policy, equitable relief typically will not be granted to an individual who has acted in bad faith with respect to the transaction that has been brought before the court." 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2946 at 106 (2d ed. 1995). As the Supreme Court has stated:

> The guiding doctrine in this case is the equitable maxim that 'he who comes into equity must come with clean hands.' This maxim is far more than a

12

> mere banality.  It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.

Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945).  The prior court history demonstrates that Plaintiffs are ineligible for equitable relief.

Plaintiffs first filed their claims in June 2004 in two suits in the United States District Court for the District of Colorado in Denver.  The claims asserted in their Statement of Claim in the arbitration dated May 15, 2006 are almost a word for word repetition of their amended complaint in the Colorado federal court, claims that Amici submit are frivolous.

Equally frivolous were the arguments Plaintiffs urged upon the Colorado court to avoid the arbitration clause.  As the docket sheet now lodged with the Clerk of this Court shows, between June 2004 and November 2005, Plaintiffs managed to engineer in federal court three complaints, dozens of motions, 22 depositions, thousands of pages of documents produced by Goldman Sachs, interrogatories, numerous other pleadings and correspondence, and two and a half days of evidentiary hearings.

On December 6, 2005, Judge Marcia Krieger of the United States District Court for the District of Colorado, in a lengthy opinion, thoroughly rejected all of Plaintiffs' arguments and ordered the case transferred to New York federal court for the purpose of compelling arbitration in New York City.  See Tr. of Hearing Vol. V (Dec. 6, 2005) (Bench Ruling) at 495:21-24, 496-97 (now lodged with the Clerk of this Court under Hasan v. Goldman Sachs 1998 Exch. Place Fund, L.P., et al., 05 Civ. 10508, 05 Civ. 10509 (S.D.N.Y.)).[13]  Among her findings, Judge

---

[13]    The transcript was originally filed in the District of Colorado in Hasan v. Goldman Sachs 1998 Exch. Place Fund, L.P., et al., Civ. A. No. 04-cv-1225, 04-cv-1226 (Dist. Colo. Dec. 6, 2005) (Docket No. 242)), and was subsequently transferred and received in this Court.  See Hasan v. Goldman Sachs 1998 Exch. Place Fund, L.P., et al., 05 Civ. 10508, 05 Civ. 10509 (S.D.N.Y. December 14, 2005) (Docket No. 1).

Krieger found that Plaintiff Dr. Malik Hasan, who is extraordinarily wealthy, is a well-educated, sophisticated, and intelligent businessman who, at the time of Plaintiffs' subscriptions to the Funds, had "25 years of experience with regard to investments in equities, bonds, options, and commodities." Id. at 455-56.

After transfer to New York, Plaintiffs fought arbitration for months before the Judge Naomi Reice Buchwald.  On April 19, 2006, Judge Buchwald entered an order, "in light of plaintiffs' continued resistance to arbitration of these matters" holding that Plaintiffs must arbitrate.  Order at 2, Hasan v. Goldman Sachs 1998 Exch. Place Fund, L.P., et al., 05 Civ. 10508, 05 Civ. 10509 (S.D.N.Y. Apr. 20, 2006) (Docket No. 3).  On April 27, 2006, Plaintiffs' counsel, further demonstrating that continuing resistance to arbitrate, wrote a letter to the panel claiming the order was ambiguous because it allegedly "does not actually contain any language compelling arbitration."[14]  Judge Buchwald thereupon entered a second Order and Judgment dated May 3, 2006, again compelling arbitration of Plaintiffs' claims in the New York Arbitration.  See Order, Hasan v. Goldman Sachs 1998 Exch. Place Fund, L.P., et al., 05 Civ. 10508, 05 Civ. 10509 (S.D.N.Y. May 8, 2006) (Docket No. 4).  Those two years of federal court proceedings imposed on the Goldman Sachs Parties millions in legal fees, costs and other damages, which are the centerpiece of the Goldman Sachs Parties' counterclaims in the New York Arbitration.

Amici submit that the present action and motion are brought in bad faith, for the sole purpose of continuing to delay the arbitration as long as possible.

---

[14]     The letter by Plaintiffs' counsel was attached as an exhibit to Amici's motion to clarify Judge Buchwald's order of April 19, 2006, submitted under cover of a May 1, 2006 Letter from Max Gitter to the Court, and is lodged with the Clerk of this Court.

**VI.**
**THE PROPOSED INJUNCTION WOULD IMPERMISSIBLY DISTURB THE STATUS QUO AND AMOUNT TO FINAL RELIEF**

The purpose of a preliminary injunction is to preserve the status quo, and therefore a preliminary injunction that would disturb the status quo may not issue.  See, e.g., Hambros Bank, Ltd. v. Meserole, 287 F. Supp. 69, 72 (S.D.N.Y. 1968) (denying preliminary injunction because it "would not preserve the status quo, but would upset it"); see also 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948 (2d ed. 1995).  Here, Plaintiffs seek to remove two of the three panel arbitrators and enjoin an arbitration that has been ongoing for several years between the parties, upsetting the status quo and forcing the parties to relitigate the entire arbitration.

Furthermore, it is improper to issue a preliminary injunction when such relief would in effect provide the final relief sought in the complaint.  See, e.g., Knapp v. Walden, 367 F. Supp. 385, 388 (S.D.N.Y. 1973) (denying on this ground a preliminary injunction seeking to remove a company's directors, whom movant considered "unworthy of trust"); see also 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.2 (2d ed. 1995).  Here, Plaintiffs even seek a final mandatory injunction to remove the arbitrators.  "Such a result would be a misuse of the preliminary injunction."  Knapp, 367 F. Supp at 388 (citing United States v. Adler's Creamery, 107 F.2d 987, 990 (2d Cir. 1939)).

**VII.**
**THE PUBLIC INTEREST BARS THE REQUESTED INJUNCTION**

The preliminary injunction should be denied as a matter of public interest.  Federal policy strongly favors arbitration.  See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  If Plaintiffs were granted the relief they seek, it would encourage other participants in arbitration to use, as Plaintiffs have done, myriad tactics to avoid and drag out the

arbitration proceedings and then, when that fails, to bring injunction motions in federal court.

See, e.g., Robert W. Stark, Jr., Inc. v. N.Y. Stock Exch., Inc., 346 F. Supp. 217, 231 (S.D.N.Y.

1972) (denying a preliminary injunction because it "might lead to a veritable stampede" to

follow plaintiff's bad example).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be

denied.

Dated:  New York, New York
      May 22, 2008                Respectfully submitted,

                             CLEARY GOTTLIEB STEEN & HAMILTON LLP
                             Attorneys for Amici, the Goldman Sachs Parties

                             By:    s/ Max Gitter
                                       Max Gitter

                             One Liberty Plaza
                             New York, New York  10006
                             (212) 225-2000
                             MGitter@cgsh.com

Of Counsel:

Bruce Featherstone
FEATHERSTONE PETRIE DESISTO LLP
600 17th Street, Suite 2400
Denver, CO 80202
(303) 626-7100

16