Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams. PLLC
Attorney for Plaintiffs
2 Penn Plaza. Suite 1910
New York, New York 10121
(212)292-5663

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MALIK M. HASAN and SEEME G. HASAN, Plaintiffs, | |
| v. | 08 Civ. 3189 (GBD) |
| AMERICAN ARBITRATION ASSOCIATION, INC., Defendant. | |

**PLAINTIFFS' REPLY MEMORANDUM**
**IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**


TABEL OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. THE GROUNDS FOR PRELIMINARY INJUNCTIVE RELIEF ARE SATISFIED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. THIS COURT HAS THE POWER TO REMOVE ARBITRATORS PRIOR TO THE RENDERING OF AN AWARD . . . . . . . . . . . . . . . . . . . . 3

III. COMMERICIAL ARBITRATION RULE R-17(b) DOES *NOT* IMMUNIZE THE AAA FROM THE INJUNCTIVE RELIEF SOUGHT . . 4

IV. THE BALANCE OF THE AAA'S ARGUMENTS ARE UNCONVINCING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# TABLE OF AUTHORITIES

**Cases** **Page**

*Astoria Medical Group v. Health Insurance Plan*,
227 N.Y.S. 2d 401, 403 (N.Y. 1962) . . . . . . . . . . 4, 6

*Aviall, Inc. v. Ryder System, Inc.*,
110 F.3d 892, 895 (2d Cir. 1997) . . . . . . . . . . 3

*Aviall, Inc. v. Ryder System, Inc.*,
913 F.Supp. 826 (S.D.N.Y. 1996), aff'd , 110 F.3d 892 (2d Cir. 1997) . . . . . . . . . . 3, 4

*Belanger v. State Farm Mut. Auto. Ins. Co.*,
74 A.D.2d 938, 426 N.Y.S.2d 140, 141 (3d Dep't 1980) . . . . . . . . . . 7

*Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*,
448 F.3d 573, 580 (2d Cir. 2006) . . . . . . . . . . 6

*Bronx Household of Faith v. Bd. Of Educ'n*,
331 F.2d 342, 348-49 (2nd Cir. 2003) . . . . . . . . . . 2

*Christina Blouse Corp. v. Intern'l Ladies Garment Workers' Union*,
492 F.Supp. 508, 510-11 (S.D.N.Y. 1980) . . . . . . . . . . 4

*Cory v. New York Stock Exchange*,
691 F.2d 1205, 1211 (6th Cir. 1982) . . . . . . . . . . 7, 8

*Curtis Properties Corp. v. Greif Cos.*,
212 A.D.2d 259, 265-266, 628 N.Y.S. 628 (1st Dep't 1995) . . . . . . . . . . 6

*Doctor's Assocs., Inc. v. Distajo*,
66 F.3d 438, 456 (2d Cir. 1995) . . . . . . . . . . 4

*Erving v. Virginia Squire Basketball Club, L.P.*,
349 F.Supp. 716, 719 (E.D.N.Y. 1972), aff'd 468 F.2d 1064 (2nd Cir. 1972) . . . . . . . . . . 4

*Fleming Companies, Inc. v. FS Kids, L.L.C,*.
2003 WL 21382895, *4 (W.D.N.Y. May 14, 2003) . . . . . . . . . . 3

*Lusk v. Village of Cold Spring*,
475 F.3d 480 (2nd Cir. 2007) . . . . . . . . . . 2

*Masthead Mac Drilling Corp. v. Fleck*,
549 F.Supp. 854, 856 (S.D.N.Y. 1982) . . . . . . . . . . 4

*Metropolitan Property and Cas. Ins .Co. v. J.C. Penny Cas. Ins. Co.*,
780 F.Supp. 885, 894 (D.Conn. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rabinowitz v. Olewski*,
100 A.D.2d 539, 473 N.Y.S. 2d 232 (2d Dep't 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Russo*,
74 F.3d 1383, 1395 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Statutes and Other Authorities**

Commercial Arbitration Rule R-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Commercial Arbitration Rule R-17(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

Local Rule of the USDC of the SDNY and EDNY 6.1 . . . . . . . . . . . . . . . . . . . . . . . . . 1

F.R.E. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Plaintiffs, Malik M. Hasan, M.D. and Seeme G. Hasan (collectively, the "Hasans"), through their undersigned counsel, respectfully submit this Reply Memorandum in further support of their Motion for a Preliminary Injunction targeting the American Arbitration Association ("AAA").

**PRELIMINARY STATEMENT**

The AAA's untimely opposition[1] to the Hasans' preliminary injunction motion merely incorporates and re-hashes the arguments advanced in its memorandum in support of the AAA's Motion to Dismiss. The AAA reargues that it is not a "necessary or proper party," and that this Court is impotent -- in the face of arbitral immunity -- to address in equity the AAA's serious dereliction in refusing to replace arbitrators who refuse to publish complete and truthful disclosures. In fact, as described in careful detail in the Hasans' Memorandum of Law in Opposition to the AAA's Motion to Dismiss, which memorandum is expressly incorporated herein: (i) the AAA is the necessary and proper party defendant in this litigation, and (ii) notwithstanding the doctrine of "arbitral immunity, this Court has ample equitable power to enforce the AAA's promises, representations, assurances and commitments respecting full, fair and timely disclosures by its arbitrators.

The Hasans are entitled to injunctive relief directing the AAA to promptly remove William L.D. Barrett and Ronald C. Sharp as arbitrators in the New York Arbitration. Each of these individuals has consistently refused to disclose -- in direct contravention of the AAA's rules, the AAA's commitments to its arbitration clients and the arbitrators' sworn declarations -- material connections and relationships between the law firms in which they are principals and the

---

[1] The Hasans filed their motion for preliminary injunctive relief on April 28, 2008. The motion was served by Federal Express overnight delivery for receipt on April 29. ***See*** **Docket Entry No. 7**. Pursuant to Local Rule 6.1(b), the AAA was afforded ten business days, or until May 13, 2008, to file its opposition. The AAA elected not to file until May 15. In the context of the urgent relief needed in this case, unexplained delay should not be lightly tolerated.

Hasans' arbitration adversaries. Individually and collectively, (i) these connections and relationships, and (ii) the continuing refusals to disclose them as required by the AAA's rules, should have caused the prompt removal of Messrs. Barrett and Sharp when this information was discovered by the Hasans and shared with the AAA.

Moreover, last October the third panel member was summarily removed for concealing his law firm's attorney-client relationship(s) with the Hasans' arbitration adversaries. However, before his removal this corrupted arbitrator participated for more than two years in the arbitration proceedings (including innumerable arbitration arguments and interim panel discussions and decisions). This third arbitrator's participation further tainted the two other arbitrators who the Hasans seek to have removed, and their continued role as arbitrators undermines the core integrity of the New York Arbitration.

## ARGUMENT

### I. THE GROUNDS FOR PRELIMINARY INJUNCTIVE RELIEF ARE SATISFIED

In its Response Memorandum, the AAA eschews any attempt to argue that the standards for preliminary injunctive relief prescribed by the Second Circuit *Lusk v. Village of Cold Spring*, 475 F.3d 480 (2nd Cir. 2007), are not satisfied in this case. More particularly, the AAA does *not* attempt to argue or suggest that: (i) the Hasans will not be irreparably harmed if this Court's injunctive relief is not granted, (ii) the Hasans are not likely to succeed on the merits, and (iii) the balance of the hardships do not tip decidedly in favor of entering the injunctive relief sought by the Hasans. *Id.* at 485, *citing Bronx Household of Faith v. Bd. Of Educ'n*, 331 F.3d 342, 348-49 (2nd Cir. 2003). Rather, the AAA scornfully declares that none of this is of any consequence because it operates with absolute immunity – putatively beyond this

Court's power to enforce in equity that which is fundamentally required in a just adjudicatory process.

## II. THIS COURT HAS THE POWER TO REMOVE ARBITRATORS PRIOR TO THE RENDERING OF AN AWARD

Once again, the AAA proclaims that this Court is powerless in the exercise of its equity jurisdiction to direct removal of the arbitrators that the AAA appoints. As the Hasans have previously explained, the controlling judicial precedent and sound public policy are decidedly to the contrary. The Second Circuit has explicitly recognized that under the Federal Arbitration Act ("FAA") the federal courts retain the power to direct the pre-award removal of arbitrators where, as here, the continuation of the arbitration would be "invalid under general contract principles." *Aviall, Inc. v. Ryder System, Inc.*, 110 F.3d 892, 895 (2d Cir. 1997). Pre-award removal of an arbitrator is justified "when the court concludes that one party has deceived the other, that unforeseen intervening events have frustrated the intent of the parties, or that the unmistakable partiality of the arbitrator will render the arbitration a mere prelude to subsequent litigation." *Id., citing Aviall, Inc. v. Ryder System, Inc.*, 913 F. Supp. 826 (S.D.N.Y. 1996), *aff'd*, 110 F.3d 892 (2d Cir. 1997); *Fleming Companies, Inc. v. FS Kids, L.L.C.*, 2003 WL 21382895, *4 (W.D.N.Y. May 14, 2003) (citing *Aviall* for the proposition that pre-award removal of arbitrator is appropriate if "the parties' intent to have their dispute resolved by a neutral party had been frustrated.").

Arguing to the contrary, the AAA cites only cases decided well before the Second Circuit opinion in *Aviall* was announced. To the extent that it is claimed that these earlier cases strip this Court of the power to direct removal of tainted arbitrators, the decisions upon which the AAA relies represent a view that is no longer accepted or controlling. Only the most recent

decision, *Aviall*, controls. *See*, *Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 456 (2d Cir.1995) (federal courts are bound by "most recent precedent").

Moreover, the AAA ignores a long line of New York federal and state court cases affirming that the New York courts are imbued with inherent authority to remove arbitrators prior to issuance of an award. *See e.g., Astoria Medical Group v. Health Insurance Plan,* 227 N.Y.S.2d 401, 403 (N.Y. 1962) ("we are persuaded that, in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been entered"); *Erving v. Virginia Squires Basketball Club, L.P.*, 349 F. Supp. 716, 719 (E.D.N.Y. 1972), *aff'd* 468 F.2d 1064 (2nd Cir. 1972) (arbitrator designated by the contract was removed because he worked at a law firm representing the defendant in underlying arbitration); *Masthead Mac Drilling Corp. v. Fleck*¸ 549 F.Supp. 854, 856 (S.D.N.Y. 1982)(court has inherent authority to appoint a neutral arbitrator when "potential bias of designated arbitrator would make arbitration proceedings simply a prelude to later judicial proceedings challenging the arbitration award"); *Christina Blouse Corp. v. Intern'l Ladies Garment Workers' Union,* 492 F. Supp. 508, 510-11 (S.D.N.Y. 1980) (former attorney for a party to the arbitration does not qualify as a proper arbitrator if objection is made to him -- he must be displaced); *Rabinowitz v. Olewski*, 100 A.D.2d 539, 473 N.Y.S.2d 232 (2d Dep't 1984) (pre-award removal of arbitrator appropriate under court's inherent power to disqualify an arbitrator).

## III. COMMERCIAL ARBITRATION RULE R-17(b) DOES *NOT* IMMUNIZE THE AAA FROM THE INJUNCTIVE RELIEF SOUGHT

The AAA also urges that it is immunized by its Commercial Arbitration Rule R-17(b) from this Court's equitable power. That rule states, in pertinent part: "[u]pon objection of a party to the continued service of an arbitrator … the AAA shall determine whether the

arbitrator should be disqualified ***under the grounds set out above*** … which decision shall be conclusive" (emphasis supplied).

First, Rule 17(b) by its express terms applies only to motions seeking to disqualify an arbitrator on grounds described in Rule 17 ("under the grounds set forth above"). The text of Rule 17 does not mention an arbitrator's refusal to disclose material relationships/connections with one of the arbitration parties or their affiliates. To the contrary, "disclosure" is expressly dealt with in a different rule -- AAA Commercial Arbitration Rule R-16. Thus, on the text of Rule R-17(b), the purported conclusiveness of any "disqualification" decision by the AAA does not apply to decisions respecting removal based upon arbitrators' refusals to disclose in a full, fair and timely manner.

Second, if the expansive interpretation of Rule R-17(b) invited by the AAA is correct [such that it applies to breaches of Rule R-16 in addition to breaches of Rule R-17(a)], such an expansive interpretation wars with the Federal Arbitration Act ("FAA"). For instance, Section 10(a) of the FAA expressly empowers the federal courts to vacate arbitration awards that are the product of fraud, undue means, partiality or corruption of the arbitrators. However, if the AAA "determination" that arbitrators are not subject to disqualification on these grounds is "conclusive," subsequent judicial review of an award predicated on these grounds is barred. Such an interpretation of Rule R-17(b) cannot be squared with Section 10(a) of the FAA.

Third, even were Rule 17(b) to be construed to apply to failures to disclose as required under Rule R-16 (which it facially should not), the "conclusiveness" of the AAA's determination arises contractually. But, the AAA's interpretation of Rule R-17(b) would render manifestly illusory the AAA's contractual commitment to insure that its arbitrators provide full, fair and timely disclosures (as reflected in its rules, website commitments and arbitrator Notice

of Appointment forms). The interpretation of Rule R-17(b) advanced by the AAA would mean that the AAA is that it is free to disregard -- with complete legal impunity -- its disclosure commitments because judicial enforcement of its representations, promises and commitments is categorically impossible. Simultaneously, of course, the AAA asserts that those clients with whom it bargains to provide arbitration services are bound by a contractual waiver of any judicial review of the AAA's disqualification determinations. In sum, the AAA would have this Court interpret Rule R-17(b) such that the AAA's contractual commitment (full, fair and timely disclosure by its arbitrators) is wholly unenforceable, while the clients' contractual commitment (waiving all judicial review) is strictly enforceable. The law is to the contrary -- this Court should spurn the AAA's invitation to interpret Rule R-17(b) in a fashion that renders the AAA's contractual commitment of full, fair and timely disclosure illusory. *See Curtis Properties Corp. v. Greif Cos.*, 212 A.D.2d 259, 265-266, 628 N.Y.S.2d 628 (1st Dep't 1995).

Fourth, even if Rule R-17(b) applies to failures to disclose as required by Rule 16, and even if the contractual waiver of judicial review is supported by consideration, the AAA's interpretation of the rule is unconscionable and wars with the public policy of New York. *See*, *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 580 (2d Cir. 2006) (contracts contrary to public policy are unenforceable). As reflected in the decisions cited above, the public policy of New York is to preserve in the federal and state courts the authority to entertain appropriate pre-award challenges to arbitration panels. *See*, *Astoria Medical Group*, 227 N.Y.S.2d at 403; *Aviall*, 110 F.3d at 895; and 9 U.S.C. 10(a)(2). This is all the more critical since the AAA has offered not a scrap of evidence that the Hasans were alerted to the purported waiver of judicial review. There is no support for a conclusion that the Hasans knowing and intelligently waived independent judicial review of the integrity and

impartiality of the arbitrators when they participated in transactions memorialized in massive legal documents that -- buried somewhere in the boilerplate -- mandate AAA arbitration of disputes.

## IV. THE BALANCE OF THE AAA'S ARGUMENTS ARE UNCONVINCING

The AAA also contends that authorizing federal judges to remove arbitrators prior to an award may increase cost and delays associated with arbitration proceedings. **AAA Opposition Memorandum at p. 3**. The AAA further complains that allowing such challenges "would emasculate the appeal provisions of the [FAA]." ***Id.* at p. 5**, *citing Corey v. New York Stock Exch*., 691 F.2d 1205, 1211 (6th Cir. 1982).[2]

The first of these two points is counter-intuitive and it lacks cogency. While judicial removal of arbitrators is invariably accompanied by cost and delay, failure to do so in appropriate cases is even more burdensome. This follows because completing an arbitration where the award will likely be subject to meritorious challenge and vacation is certainly more expensive/time consuming than addressing the problems with the arbitration before additional time and money is wasted. *Metropolitan Property and Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co*., 780 F. Supp. 885, 894 (D. Conn. 1991); *Belanger v. State Farm Mut. Auto. Ins. Co.*, 74 A.D.2d 938, 426 N.Y.S.2d 140, 141 (3d Dep't 1980). Moreover, failure to address obvious arbiter problems will cause real but non-quantifiable erosion in public confidence in an arbitration process subject only to limited judicial review post award. Finally, the arbitration providers are in the best position to minimize cost/delay associated with pre-award judicial

---

[2] The AAA devotes an entire page arguing that Professor Seth Lipman's expert opinion is not admissible under the provisions of F.R.E. 702 because it contains "legal conclusions." **AAA Opposition Memorandum at p. 4**. Professor Lipner's report was submitted to the Court primarily to explain how the arbitrator selection and disclosure process works, and the importance of that process to arbitration participants. The Second Circuit has instructed that expert witnesses are entitled to explain the process and to draw appropriate "conclusions" from the information presented. *E.g., United States v. Russo*, 74 F.3d 1383, 1395 (2nd Cir. 1996). This is precisely what Professor Lipner's expert report does. *See, e.g.*, Lipner Report at ¶¶17-24.

intervention by scrupulously enforcing their disclosure rules designed to insure the integrity of the arbitration process.

The AAA cite to *Corey* for the second of these arguments is flatly perplexing. Unlike this case (where injunctive relief is sought) the Plaintiff in *Corey* sought ***money damages*** which have long been barred by the doctrine of arbitral immunity. And, unlike this case *Corey* did not involve any pre-award challenge to the arbitration panel members. Instead, it involved a post-award suit for damages against the stock exchange based upon the alleged wrongdoing of the arbitrators. In this context, the Sixth Circuit observed, in *dicta*, that "[t]o allow a [post-award] collateral attack against arbitrators and their judgments would also emasculate the appeal provisions of the federal Arbitration Act." *Id*. at 1211. The relevance of this extraneous remark to the case at bar remains wholly a mystery.

**CONCLUSION**

For all of the reasons set forth in the Hasans' Memorandum of Law in Support of the prayer for preliminary injunctive relief, and for the further reasons discussed herein, this Court should promptly grant the Hasans' request for injunctive relief.

Dated: New York, New York
May 22, 2008

Respectfully submitted,

Daniel L. Abrams

Digitally signed by Daniel L. Abrams
DN: cn=Daniel L. Abrams, o=Law Office Of Daniel L. Abrams, PLLC, ou, email=Dan@lawyerquality.com, c=US
Date: 2008.05.22 16:52:45 -04'00'

Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams, PLLC
2 Penn Plaza, Suite 1910
New York, NY 10121
Phone: (212) 292-5663
Fax: (646) 536-8905
Dan@LawyerQuality.com

G.W. MERRICK & ASSOCIATES, LLC

Glenn W. Merrick
Marc L. Schatten
Suite 912, 5445 DTC Parkway
Greenwood Village, Colorado 80111
Telephone: 303-831-9400
Facsimile: 303-771-5803
E-mail: gwm@gwmerrick.com

ATTORNEY FOR PLAINTIFFS MALIK M. HASAN, M.D. and SEEME G. HASAN