Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams. PLLC
Attorney for Plaintiffs
2 Penn Plaza. Suite 1910
New York, New York 10121
(212)292-5663

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                                   :
MALIK M. HASAN and SEEME G. HASAN,                                 :
                                                                   :
                              Plaintiffs,                          :
                                                                   :
        v.                                                         : 08 Civ. 3189 (GBD)
                                                                   :
AMERICAN ARBITRATION ASSOCIATION,                                  :
INC.,                                                              :
                                                                   :
                              Defendant.                           :
                                                                   :
------------------------------------------------------------------ X


**MEMORANDUM OF LAW IN OPPOSITION
TO MOTION FOR LEAVE TO FILE *AMICUS BRIEF***

## **TABLE OF CONTENTS**

TABEL OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iii-iv

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

I.    THE GOLDMAN SACHS PARTIES ARE COMPLICIT AND NO
       "FRIEND OF THE COURT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

A.    The Goldman Sachs Parties Continuously Disregarded the AAA Directive
       Requiring Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

B.    The Goldman Sachs Parties Continuously Disregarded an Arbitrator
       Directive Requiring Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

C.    The Goldman Sachs Parties Continue to Cloak the Breadth/Extent of their
       Relationships/Connections with the Arbitrators' Law Firms . . . . . . . . . . . . .    4

D.    Due Process is Shred by the Goldman Sachs Parties' Deception . . . . . . . . .    5

II.    THE GOLDMAN SACHS PARTIES OFFER ONLY INAPPROPRIATE
        PARTISAN ADVOCACY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

III.    THE GOLDMAN SACHS PARTIES IMPERMISSIBLY ADVANCE
         NEW ALLEDGED "FACTS" AND LEGAL THEORIES . . . . . . . . . . . . . .    7

IV.    THE PROFFERED AMICUS BRIEF IS UNTIMELY AND UNFAIRLY
         PREJUDICIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Abu-Jamal v. Horn,*
2000 WL 1100784 (E.D.Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,*
492 F.3d 132, 138 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

*Bano v. Union Carbide Corp.,*
273 F.3d 120, 128 n.5 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

*Club v. FEMA,*
2007 WL 3472851 (S.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

*International Brotherhood of Elec. Workers v. CSX Transp., Inc.,*
446 F.3d 714, 720 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

*James Square Nursing Home, Inc. v. Wing,*
897 F.Supp. 682, 683 n. 2 (N.D.N.Y. 1995), *aff'd on other grounds,* 84 F.3d 591 (2nd
Cir.), *cert denied,* 519 U.S. 949 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,*
149 F.R.D. 65, 82 (D. N.J. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

*Long Island Soundkeeper Fund, Inc. v. New York Athletic Club,*
1995 WL 358777, at *1 (S.D.N.Y. June 14, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

*Onondaga Indian Nation v. State,*
1997 WL 369389 (N.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

*Sciotto v. Marple Newton School Dist.,*
70 F.Supp. 2d 553, 556 (E.D.Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

*S.E.C. v. Bear, Stearns & Co., Inc.,*
2003 WL 22000340 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

*United States v. Ahmed,*
788 F. Supp. 196, 198 n.1 (S.D.N.Y.), *aff'd on other grounds,*
 980 F.2d 161 (2nd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2, 8

*United States v. El-Gabrowny,*
844 F. Supp. 955, 957 n.1 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

*United States v. Gotti,*
755 F. Supp. 1157, 1158 (E.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Village of Elm Grove v. Py,*
724 F.Supp. 612, 613 (E.D.Wis. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Plaintiffs, Malik M. Hasan, M.D. and Seeme G. Hasan (collectively, the "Hasans"), through their undersigned counsel, respectfully submit this Memorandum of Law opposing the Goldman Sachs Parties' request for leave to file an *amicus curiae* brief opposing the preliminary injunctive relief sought by the Hasans.

## PRELIMINARY STATEMENT

The Hasans' motion for preliminary injunctive relief seeks entry of an order directing the American Arbitration Association ("AAA") to replace two arbitrators in an arbitration pending in New York City (the "New York Arbitration"). These arbitrators (William L.D. Barrett and Ronald C. Sharp) -- in defiance of: (i) the AAA's governing rules, (ii) the AAA's promises, assurances, representations and commitments to the Hasans, and (iii) their own *sworn attestations* -- have repeatedly refused to disclose relationships/connections between their respective law firms and the Hasans' arbitration adversaries (the Goldman Sachs Parties).[1] These serious derelictions of disclosure duties are long-standing and pronounced, and they require nothing less than prompt removal of the arbitrators.[2]

In part, the concealing of these relationships/connections was possible because the Goldman Sachs Parties *also concealed* from the AAA and the Hasans these

---

[1]     As reflected in the Hasans' Memorandum of Law in support of their request for preliminary injunctive relief (which is incorporated here), these consistent refusals to disclose have persisted despite: (i) repeated requests of the arbitration panel members for full, fair and timely disclosures, and (ii) specific identification to the arbitrators of some of their firms' clients whose relationships/connections necessitate disclosure.

[2]     One cannot fairly ask the Hasans to repose confidence in two arbitrators who have repeatedly refused (in distressing violation of their sworn attestations) to make required disclosures -- despite being afforded multiple opportunities to do so -- of their direct and indirect relationships/connections to the Goldman Sachs Parties. In this case any remedy other than prompt removal of Messrs. Barrett and Sharp would further seriously compromise the integrity of the New York Arbitration.

relationships/connections despite unambiguous directions from the AAA *that specifically required such disclosures by the Goldman Sachs Parties.*  Against this backdrop the Goldman Sachs Parties now characterize themselves as a "friend of the Court," and proffer an *amicus curiae* brief that seeks to distract from the central issue in this case -- the arbitrators' betrayal of their sworn duty and refusal to disclose that which is required. For a host of reasons, the Court should decline to receive the proposed *amicus* submission.

## I.   The Goldman Sachs Parties Are Complicit and No "Friend of the Court"

There is no prescribed standard for whether a federal trial court should entertain an *amicus curiae* submission.  Rather, the "district court has broad inherent authority to permit or deny an appearance as *amicus curiae* in a case." *James Square Nursing Home, Inc. v. Wing,* 897 F. Supp. 682, 683 n. 2 (N.D.N.Y.1995), *aff'd on other grounds,* 84 F.3d 591 (2nd Cir.), *cert. denied,* 519 U.S. 949 (1996).  Where appropriate, *amicus curiae* submissions may be "of aid to the court and offer insights not available from the parties." *United States v. El-Gabrowny*, 844 F. Supp. 955, 957 n.1 (S.D.N.Y. 1994).  When this purpose is not served, however, leave to submit *amicus* papers should be denied.  *See e.g., United States v. Ahmed*, 788 F. Supp. 196, 198 n.1 (S.D.N.Y.), *aff'd on other grounds,* 980 F.2d 161 (2nd Cir.1992).

Here, the Goldman Sachs Parties eschew candor, discount their role in the cover up that necessitated in the filing of the captioned suit and proffer manifestly partisan advocacy in the guise of *amicus curiae*.  Little is required to expose the alarming guile of the Goldman Sachs Parties -- they are certainly no "friend of the Court."

A.    The Goldman Sachs Parties Continuously Disregarded the AAA Directive Requiring Disclosure.    In connection with its appointment of the arbitration panel in the New York Arbitration, the AAA four times transmitted a continuing directive to the parties.  On March 24, 2005 (in connection with the appointment of Mr. Barrett), March 31, 2005 (in connection with the appointment of Mr. Sharp), May 17, 2005 (in connection with the appointment of Richard L. Mattiaccio) and April 27, 2007 (in connection with the reappointment of Mr. Barrett upon his move to Butzel Long, P.C.) the AAA instructed that: "if either party or their counsel knows of any contact or conflict [in respect of the members of the arbitration panel] that **may be** relevant [to removal of one or more panel members], they are to communicate this information to the [AAA] within ten (10) days" (emphasis supplied) (the "AAA Directive").  *See* collected correspondence attached as **Exhibit 1**.  In response to the AAA Directive, the Goldman Sachs Parties have continuously chosen to remain mute.  In fact, despite the AAA Directive the Goldman Sachs Parties elected actively to _conceal_ their relationships/connections with the law firms in which the panel members are principals (more fully described in the Hasans' Memorandum of Law in support of their request for preliminary injunctive relief).

B.    The Goldman Sachs Parties Continuously Disregarded an Arbitrator Directive Requiring Disclosure.    As noted above, one of the persons ultimately appointed to the arbitration panel was Mr. Mattiaccio.  During the course of the ongoing proceedings, Mr. Mattiaccio was enticed to change law firms.  In May of 2007, Mr. Mattiaccio published an announcement that he was leaving his prior law firm to become a partner in Squire, Sanders & Dempsey, LLP ("SSD").  In his May 29, 2007

announcement, Mr. Mattiaccio specifically directed "that the parties and their counsel disclose … any contacts they may have had with … [SSD] … and that the parties and their counsel update their disclosures as the case proceeds" (the "Mattiaccio Directive"). *See* **Exhibit 2** attached.  In response to the Mattiaccio Directive, the Goldman Sachs Parties again elected to remain mute and to secrete from the AAA and the Hasans material information concerning their attorney-client relationships.

On October 11, 2007, under the pressure of a disqualification motion filed by the Hasans, Mr. Mattiaccio published a supplemental disclosure confirming that "one or more Goldman Sachs-related entities are clients of SSD."  On October 31, 2007, the AAA removed Mr. Mattiaccio from the New York Arbitration panel.  Because the Goldman Sachs Respondents continue to choose to withhold critical information -- the length, nature, breadth and depth of the attorney-client relationship between the Goldman Sachs Parties and SSD remains deeply buried.

C.    The Goldman Sachs Parties Continue to Cloak the Breadth/Extent of their Relationships/Connections with the Arbitrators' Law Firms.    The full breadth/extent of the concealed relationships/connections between the Goldman Sachs Parties and the law firms in which Messrs. Sharp and Barrett are principals remain shrouded.  One can fairly deduce that the deeply troubling relationships/connections that the Hasans discovered on their own via internet research (detailed in the Hasans' motion for preliminary injunctive relief) are merely the "tip of the iceberg."  The Hasans have access only to some limited, publicly available information -- that accessible via internet search engines.  It is highly probable that full access to the Goldman Sachs Parties' in-house systems for managing retained counsel would reveal many additional

relationships/connections with the arbitrators and their law firms that should have been disclosed under the AAA Directive.

        D.      Due Process is Shred by the Goldman Sachs Parties' Deception.

These machinations are thoroughly mind numbing!  Undoubtedly, the deceit by the Goldman Sachs Parties stems from their expectation of securing a shockingly unfair advantage in the New York Arbitration.    The prospect that the concealed relationships/connections would necessitate the removal of Mr. Mattiaccio and the other arbitrators[3] -- at truly enormous cost to the Hasans -- was of no moment to the Goldman Sachs Parties.  Stated plainly, fundamental fairness has been sacrificed by the Goldman Sachs Parties' ongoing concealment and their corruption of the New York Arbitration. *See International Brotherhood of Elec. Workers v. CSX Transp., Inc.*, 446 F.3d 714, 720 (7th Cir. 2006) (due process requires an impartial decision by the arbitration panel).

## II.    **The Goldman Sachs Parties Offer Only Inappropriate Partisan Advocacy**

        Although many *amicus curiae* submissions advocate a result that tends to favor one side of litigation, such submissions should be rejected where the putative

---

[3]      In their proposed *amicus* brief the Goldman Sachs Parties torture the doctrine of waiver beyond recognition.  They profess that the Hasans "waived" any conflict arising out of the representation of Goldman Sachs Europe by the law firm to which Mr. Barrett moved (Butzel Long P.C.) during the arbitration proceedings.  In fact, Mr. Barrett ***failed to disclose*** that Butzel Long P.C. enjoyed a <u>current</u> representation of Goldman Sachs Europe.  In the April 27, 2007 disclosure that he published in connection with his change of law firms, Mr. Barrett disclosed only that his new law firm "*<u>has performed</u>* [in the past] real estate work for Goldman Sachs Europe Limited" (emphasis supplied).  It was not until Mr. Barrett was pressured by the Hasans' disqualification motion, and a direct inquiry by the AAA, that Mr. Barrett issued his January 3, 2008 disclosure stating that "Goldman Sachs Europe *<u>is</u>* a [current] client of [Butzel Long, P.C.]" (emphasis supplied).  Mr. Barrett's failure to make full, honest and timely disclosure does not satisfy that required of arbitrators by the AAA rules or the law in this circuit.  *See Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 138 (2d Cir. 2007)("arbitrators must take steps to ensure that the parties are not misled into believing that no nontrivial conflict exists").  A party being misled by misinformation cannot be deemed to have "waived" that about which that party was being deceived.  And to have a "waiver" argument advanced by the Goldman Sachs Parties -- who actively participated in the misinformation published to the AAA and the Hasans – wanders into the surrealistic.

*amicus curiae* shun objective analysis and become "an advocate of one of the parties to the litigation." *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp*., 149 F.R.D. 65, 82 (D. N.J. 1993); *United States v. Gotti*, 755 F.Supp. 1157, 1158 (E.D.N.Y. 1991) (rejecting *amicus* brief where "it is apparent that the NYCLU has come as an advocate for one side"); *Club v. FEMA*, 2007 WL 3472851 (S.D. Tex. 2007); *Sciotto v. Marple Newtown School Dist*., 70 F. Supp.2d 553, 556 (E.D. Pa. 1999) ("It is apparent to this Court that the petitioner is better characterized as "*amicus reus*," or friend of the defendant, than *amicus curiae*").

The proposed *amicus curiae* brief of the Goldman Sachs Parties is a classical example of a strident, partisan submission. It repeatedly attacks the Hasans,[4] and seeks to divert the Court's attention from the gravamen of this litigation -- two arbitrators' betrayal of their sworn duty and refusal to disclose that which was plainly required. The proposed submission is further designed to insulate the Goldman Sachs Parties from accountability; this is not the stuff of *amicus curiae*. *See Long Island Soundkeeper Fund, Inc. v. New York Athletic Club*, 1995 WL 358777, at *1 (S.D.N.Y. June 14, 1995) ("Denial of leave to appear as *amicus* in a situation such as this, in which the applicant appears to have its own particular interests in the outcome of the litigation, is far from unprecedented"); *S.E.C. v. Bear, Stearns & Co., Inc*., 2003 WL 22000340 (S.D.N.Y.) (rejecting *amicus curiae* submission where it is being offered not as a friend of the court); *Sciotto*, 70 F. Supp.2d at 555 (participation is not appropriate where "*amici* represent[ ] business interests that will be ultimately and directed affected by the court's

---

[4]    For example, the proposed submission by the Goldman Sachs Parties accuses the Hasans of "unclean hands" and suggests that they are unworthy of the Court's protection. The Goldman Sachs Parties omit that their accusations have already been rejected by another federal district court, *see* note 5 and accompanying text, *infra*. The Goldman Sachs Parties also ignore that they actively concealed that the law firms in which Messrs. Barrett and Sharp are principals are two of the outside law firm that they retain.

ruling on the substantive matter before it"); *Village of Elm Grove v. Py,* 724 F. Supp. 612, 613 (E.D.Wis. 1989)(same).

### III.    The Goldman Sachs Parties Impermissibly Advance New Alleged "Facts" and Legal Theories

*Amicus curiae* briefs are most frequently employed in the appellate context (where the factual record has already been developed by the parties in the trial court). These are designed to assist the appellate court in achieving a fair understanding of complex legal issues. *Amicus* papers are considerably less useful in the trial courts where they seek to raise new facts and issues. One federal judge recently observed: "District Courts must keep in mind the differences between the trial and appellate court forums in determining whether it is appropriate to allow an *amicus curiae* to participate. Chief among those differences is that a district court resolves fact issues. An *amicus* who argues facts should rarely be welcomed." *Club v. FEMA,* 2007 WL 34728751 (S.D. Tex. 2007).

This "unwelcome" approach is precisely that adopted by the Goldman Sachs Parties. Throughout, their proffered *amicus curiae* brief declares "facts" not supported by competent evidence and constructs issues not raised by the parties. For instance, the proffered brief re-advances the assertion that the Hasans have "unclean hands" (an assertion that has previously been categorically *rejected* by the federal district court in Denver)[5] based upon a distorted and misleading account of prior litigation that is

---

[5]    In the federal court suit in Denver that antedated the arbitration, *Hasan, et al. v. Goldman Sachs & Co., et al.*, Civil Action No. 04-cv-1225, Hon. Marcia Krieger **denied** the Goldman Sachs Parties' Motion for Preclusion and Other Relief in which they accused Dr. Hasan of testifying falsely. In her ruling from the bench on December 6, Judge Krieger emphasized that the claim that Dr. Hasan testified falsely is not credible. She expressly stated: "this court believes that Dr. Hasan has testified sincerely and truthfully as to his recollection ..." **Trans. of Hearing [Bench Ruling] on December 5, 2005 at p. 464**. The

not part of any record before this Court. Additionally, at pages 6-11 of their proposed *amicus curiae* brief the Goldman Sachs Parties urge a slant on documents previously produced to this Court. They promote a carefully crafted "spin" on the facts that have been uncovered by the Hasans -- one that marginalizes and rationalizes the continuing refusal to disclose the connections/relationships between the Goldman Sachs Parties and the law firms in which Messrs. Barrett and Sutton are principals. ***What the Goldman Sachs Parties do not offer, even in their proposed role as "amicus curiae," is full disclosure of their past and present relationships/connections to the arbitrators and their law firms***. It has been observed that "with friends like these …"

The proposed *amicus curiae* brief also drives off in new directions in instances where the Goldman Sachs Parties differ with the approach of the AAA to this case. For instance, unlike the AAA the Goldman Sachs Parties profess that the: (a) Hasans cannot demonstrate "irreparable harm," (b) "balance of hardships does not favor [the Hasans]," (c) doctrine of "unclean hands" bars injunctive relief, and (d) proposed injunctive relief would "impermissibly" disturb the status quo. In this sense, the Goldman Sachs Parties seek to impermissibly advance a separate and differing approach to the trial court litigation. *See, Bano v. Union Carbide Corp*., 273 F.3d 120, 128 n. 5 (2nd Cir. 2001) ("In ordinary circumstances, an *amicus* will not be permitted to raise issues not argued by the parties"); *Ahmed*, 788 F. Supp. at 198 n.1 (leave to appear *amicus curiae* denied because interests are adequately represented by one of the parties); *Onondaga Indian Nation v. State*, 1997 WL 369389 (N.D.N.Y. 1997) (admonishing that *amicus* papers will not be permitted to present new or different issues).

---

"unclean hands" defense sponsored by the Goldman Sachs Parties is manifestly baseless in the face of Judge Krieger's determination.

**IV.**    **The Proffered Amicus Brief is Untimely and Unfairly Prejudicial**

Not surprisingly, the federal trial courts decline to consider amicus curiae briefs that are regarded as untimely. *Abu-Jamal v. Horn*, 2000 WL 1100784 (E.D. Pa. 2000) (*amici* must "demonstrate that a proposed brief is permissible, helpful and timely"). In the instant case, the Complaint was filed on March 31, 2008 and the Hasans' motion seeking preliminary injunctive relief was filed on April 28. Nevertheless, the Goldman Sachs Parties offer no explanation for their delay until May 22 to submit their motion to file a proposed *amicus curiae* brief. (This was the same day that the Hasans' Reply in support of their motion for preliminary injunctive relief was due).

There is no established mechanism for the Hasans to challenge or counter the new set of contentions advanced by the Goldman Sachs Parties (at least none absent express leave of this Court). And even were leave to be granted, the follow on briefing would inevitably promote further delay in a deeply disturbing arbitration atmosphere that clearly requires immediate judicial attention. The gamesmanship of the Goldman Sachs Parties is not the hallmark of a "friend of the Court."

**CONCLUSION**

The Hasans respectfully urge the Court to deny the Goldman Sachs Parties leave to file their putative *amicus curiae* brief and to participate as *amicus curiae*. Only in the event that the Court elects to entertain the Goldman Sachs Parties' brief, the Hasans seek leave to file a response, and five (5) business days notice before said response is due.

9

Dated:  New York, New York
        June 2, 2008

Respectfully submitted,

_____

Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams, PLLC
2 Penn Plaza, Suite 1910
New York, NY 10121
Telephone:  (212) 292-5663
Facsimile:  (646) 536-8905
E-mail:  Dan@LawyerQuality.com


G.W. MERRICK & ASSOCIATES, LLC
Glenn W. Merrick
Marc L. Schatten
Suite 912, 5445 DTC Parkway
Greenwood Village, Colorado 80111
Telephone: 303-831-9400
Facsimile: 303-771-5803
E-mail:    gwm@gwmerrick.com

ATTORNEY FOR PLAINTIFFS, MALIK M.
HASAN, M.D. and SEEME G. HASAN

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401.435-6529
internet: http://www.adr.org/

March 24, 2005

Via Facsimile

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO 80202

Re: 13 168 01990 04
     Goldman Sachs 1998 Exchange Place Fund, L.P.,
     Goldman Sachs 1999 Exchange Place Fund, L.P.,
     Goldman Sachs Management Partners, L.P., The
     Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
     Goldman Sachs Management, Inc.
     and
     Malik M. Hasan, M.D. and Seeme G. Hasan


Dear Parties:

Arbitrator Barrett made the enclosed disclosure.

Please advise the Association of any objections to the appointment of Arbitrator Barrett by March 31, 2005, copying the other side. The arbitrator shall not be copied on any comments related to the disclosure.

If any objections are raised, the other party may respond within five business days. The AAA will make a determination regarding the arbitrator's continued service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten days.

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

Paula C. Dubois
Case Manager
401 431 4789
duboisp@adr.org

Katharine M. Legeros
Supervisor
401 431 4714
LegerosK@adr.org



EXHIBIT
1

Paula Dubois

Sent:     Wednesday, March 23, 2005 10:44 AM
To:       Paula Dubois
Subject:  Goldman Sachs

Dear Paula:

Our office has run a computer check on this case and I have the following additional disclosures:

My firm represents the Trust for Cultural Resources which issues municipal bonds for institutions such as the Museum of Modern Art. Goldman Sachs is one of the underwriters for these bonds.

Cleary Gottlieb represented a party in an arbitration in 2002 where my firm represented the opposing party.

Please advise the parties of these disclosures.

Many thanks for your help.

Bill Barrett

Paula Dubois

Sent:      Wednesday, March 23, 2005 12:03 PM
To:        Paula Dubois
Subject:   Goldman Sachs

Dear Paula:

Please add to the disclosure I sent you this morning that I have no personal involvement with these matters and they would not affect my ability to be impartial in this arbitration.

I should have added this in the original letter.

Many thanks,

Bill Barrett

American Arbitration Association
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

March 31, 2005

Via Facsimile

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO 80202

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

Dear Parties:

This will acknowledge receipt of a letter dated March 30, 2005, from Respondent, a copy of which has been exchanged with the other party.

At this time we are requesting the comments of Claimant with respect to Respondent's letter. Said comments are to be received by April 7, 2005.

Inasmuch as we were unable to complete the panel from the arbitrator list submitted, we have, in accordance with the Rules, administratively appointed Ronald Case Sharp. Enclosed please find Arbitrator Sharp's biographical data, signed oath and notice of fee arrangements.

Please advise the Association of any factual objections to the appointment of Ronald Case Sharp by April 7, 2005, copying the other side.

If any objections are raised, the other party may respond within five (5) business days. The AAA will make a determination regarding the arbitrator's service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten (10) days.

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

Paula C. Dubois
Case Manager
401 431 4789
duboisp@adr.org

Katharine M. Legeros
Supervisor
401 431 4714
LegerosK@adr.org

Encl.

ALL AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
  Goldman Sachs 1998 Exchange Place Fund, L.P.,
  Goldman Sachs 1999 Exchange Place Fund, L.P.,
  Goldman Sachs Management Partners, L.P., The
  Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
  Goldman Sachs Management, Inc.
  and
  Malik M. Hasan, M.D. and Seeme G. Hasan

## NOTICE OF APPOINTMENT

**To: Ronald Case Sharp**

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment.

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☑ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☑ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☑ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☑ |
| 7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned? | ☐ | ☑ |
| 8. Have you ever served as an expert witness or consultant to any | ☐ | ☑ |

| | Yes | No |
|---|---|---|
| 9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases? | ☐ | ☑ |
| 10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration? | ☐ | ☑ |
| 11. Have you ever sued or been sued by either party or its representative? | ☐ | ☑ |
| 12. Do you or your spouse own stock in any of the companies involved in this arbitration? | ☐ | ☑ |
| 13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators? | ☐ | ☑ |
| 14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions? | ☐ | ☑ |

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☒ I have conducted a check for conflicts and have **nothing to disclose.**

☐ I have conducted a check for conflicts and have made disclosures on an attached sheet.

## THE ARBITRATOR'S OATH

State of Connecticut
County of Fairfield } SS: BRIDGEPORT

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: March 29, 2005     Signed: _____
                                    RONALD CASE SHARP

Sworn before me this 29th day of March , 2005

JOSEPH LIPNICKAS
NOTARY PUBLIC

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

## Notice of Compensation Arrangements

**To:** Ronald Case Sharp

You have been invited to serve as an arbitrator in the above matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your panel biography states otherwise, you are willing to comply with the Association's *Billing Guidelines for Commercial, Construction, and Employment Neutrals*, which are enclosed. If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your panel biography, you must notify the Association prior to accepting your appointment so that the parties can determine whether they still seek your services as an arbitrator.

*Your Compensation*

This matter is being administered under the Regular procedures of the Commercial Arbitration Rules. As such, you will be compensated at the following rates, per the rate structure indicated on your biographical record:

| | |
|---|---|
| Hearing Time: | $275.00 per hour |
| Study Time: | $225.00 per hour |
| Travel Time: | $130.00 per hour |

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

*Your Expenses*

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your Case Manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

*Deposits and Payment*

Payment for your compensation is the obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payment. During the course of the proceeding the Case Manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, the Case Manager will advise you of the total amount on deposit. Should the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees, *The time to deal with this issue is prior to the commencement of the hearings*. Should you decide to suspend the proceedings, your Case Manager can assist you in issuing an appropriate order to the parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform the Case Manager prior to exhausting the current deposit. The Case Manager will then make arrangements with the parties for additional deposits per your instructions.

In order to receive payment, please submit bills promptly. Your bills should be submitted in a format that is presentable to the parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the AAA will release payment from the amounts deposited by the parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one party's deposit to cover another party's obligation without written permission to do so.

In the event your Award is delivered prior to payment by the parties of the agreed upon compensation, the Association is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The Association may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the Association be liable for any failure to collect any or all the monies due. The Association is authorized to subtract a reasonable amount for collection and attorney's fees.

## Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the AAA's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your Case Manager.

## ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may view this information by logging in to the AAA's Neutrals eCenter. You may also contact your Case Manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

I am willing to accept appointment on this matter under the compensation terms detailed above.

Signed: _R C Shye_  Date: _3/29/05_

_Ronald Cruse Sharp_

**Contact** American Arbitration Association
950 Warren Avenue
East Providence, RI 02914
telephone: 866-293-4053  facsimile: 401-435-6529

Commercial Panel
Ronald Case Sharp, Esq.

**Current Employer-Title**  Pullman & Comley, LLC - Partner

**Profession**  Attorney - Corporate Law, Tax Law, General Business Law, Securities, Contracts, Mergers and Acquisitions, Employment, Banking, Business Succession, Estate Planning

**Work History**  Partner, Chair of Business Enterprises Department and Chair of the International Law Section, Pullman & Comley, LLC, 1991-present; Partner, Brody & Brody, 1964-91.

**Experience**  Engaged as a specialist in business and tax planning and transfers, the purchase and sale of businesses, family-owned businesses, estate planning, operations and administration and the succession of family owned business from one generation to another.  Represented clients involved in complex business and financial transactions, the sale or purchase of businesses, international and commercial transactions, antitrust issues, tax-free organizations and business restructuring and dissolutions.  Represents many non-profit organizations involved in obtaining state and federal grants.  Over 20 years' experience as a lecturer on business and tax subjects for the Connecticut Bar Review and for various professional and trade groups.  Represents medical professionals regarding their medical practice, ownership of medical buildings, operation of affiliated health-related enterprises and compliance with federal and state laws, including Medicare regulations.  Represents foreign clients in the U.S. including a large French manufacturer and a foreign partner in a manufacturing joint venture.  Established in the U.S. a business and factory for a Danish manufacturer using industrial development bonds.  Established leveraged employee stock ownership plans.  Has handled numerous estates, both simple and complex, including estate planning.  Represents closely held businesses, professional practices and lending institutions in all business matters, including commercial transactions, tax and business planning, financing, retirement plans, reorganizations, acquisitions, mergers and dissolutions.

**Alternative Dispute Resolution Experience**  Experienced arbitrator in commercial and securities disputes.  Has handled hearings in Bridgeport, Stamford, and New Haven, Connecticut, over the years, either as the sole arbitrator, a member of a three-arbitrator panel, or as the chairperson of a panel, with awards ranging from $1 to over $1 million, including the following: sole arbitrator of a dispute to determine the value of a minority equity interest in a managed care organization owned by a hospital and a publicly traded HMO; panel chairperson on a dispute over substantial damages and recoverable assets on a securities fraud matter between a broker and his brokerage firm employer with a reasoned award; and sole arbitrator of a contract and employment dispute with a reasoned award.

**Alternative Dispute Resolution Training**  Attended AAA Neutrals Conference, Atlanta,

10/04; ACE004 - Practical Tips for Dealing with Delay Tactics of Parties and Advocates, Atlanta, 10/04; Arbitrator Roundtable on Discovery: Enough is Enough, or is it?, East Hartford 9/04; Arbitrator Roundtable: The Revised Commercial Arbitrator Code of Ethics: What Does it Mean for You?, East Hartford, 2/04; Attended AAA Neutrals Conference, Providence, 8/03; ACE002 - Pro Se: Managing Cases Involving Self-Represented Parties, Providence, 8/03; Annual Arbitrator Update 2002; AAA Commercial Arbitrator II Training, Hartford, 2/01; AAA Commercial Arbitrator Training, Orlando, 10/98; Commercial Arbitrator Training Workshop, Hartford, 1994; Mediator Training Workshop, Hartford, 1994.

**Professional Licenses**   Admitted to the Bar: Connecticut, 1964; U.S. District Court, District of Connecticut, 1964.

**Professional Associations**   American Bar Association (Tax Section, Continuing Legal Education Committee of Closely Held Corporations, Vice Chairman); Connecticut Bar Association.

**Education**   Yale University (BA-1957); U.S. Marine Corps School (Lieutenant-1961); University of Connecticut (JD-1964).

**Publications and Speaking Engagements**   Guest lecturer on arbitration, Fairfield University Business School.

**Compensation**          $250.00 Per Hour
$200.00 per hour for study time and executive sessions. No travel time charge for hearings in New Haven or Fairfield counties in Connecticut.

**Citizenship**   United States of America

**Locale**   Bridgeport, CT

*Ronald Case Sharp, Esq.*


American Arbitration Association
*Dispute Resolution Services Worldwide*

Northeast Case Management Center
Catherine Shanks
Vice President

Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

May 17, 2005

Via Facsimile

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY  10006

Glenn W. Merrick, Esq.
Senn Visciano Kirschenbaum Merrick, P.C.
1801 California Street, Suite 4300
Denver, CO  80202

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

Dear Parties:

Inasmuch as we were unable to complete the panel from the arbitrator list submitted, we have, in accordance with the Rules, administratively appointed Richard Mattiaccio.  Enclosed please find Mr. Mattaccio's biographical data and disclosure.

Please advise the Association of any objections to the appointment of Richard by May 24, 2005, copying the other side.

If any objections are raised, the other party may respond within five (5) business days.  The AAA will make a determination regarding the arbitrator's service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten (10) days.

Please do not hesitate to contact us with any questions and/or concerns.

Sincerely,

Paula C. Dubois
Case Manager
401 431 4789
duboisp@adr.org

Katharine M. Flanagan
Supervisor
401 431 4714
FlanaganK@adr.org

Encl.

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

## NOTICE OF APPOINTMENT

To:   Richard Mattiaccio

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The Association will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the Association. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|  | Yes | No |
|---|---|---|
| 1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☒ |
| 2. Have you represented any person against any party to the arbitration? | ☐ | ☒ |
| 3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☐ | ☒ |
| 4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work? | ☐ | ☒ |
| 5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding? | ☐ | ☒ |
| 6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony? | ☐ | ☒ |

NO.
R.L.M.

7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned?    ☐ ☒

8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case?    ☐ ☒

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?    ☒ ☐

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration?    ☐ ☒

11. Have you ever sued or been sued by either party or its representative?    ☐ ☒

12. Do you or your spouse own stock in any of the companies involved in this arbitration?    ☒

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?    ☐ ☒

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?    ☐ ☒

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☐ I have conducted a check for conflicts and have **nothing to disclose.**

☒ I have conducted a check for conflicts and have **made disclosures on an attached sheet.**

## THE ARBITRATOR'S OATH

State of New York
County of New York } SS:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: _May 13, 2005_          Signed: _Richard L. Mattiaccio_

Sworn before me this _13_ day of _May_          , 20 _05_

_Kostadina Lambrou_

KOSTADINA LAMBROU
Notary Public, State of New York
No. 01LA5041943
Qualified in Queens County
Commission Expires April 10, 2009

## Disclosures of Arbitrator Richard L. Mattiaccio

1.  In the early or mid-1990's, I served as an arbitrator in a commercial arbitration in New York in which Mr. Gitter and his then-firm, Paul Weiss, served as counsel for one of the parties. I do not recall whether Mr. Gitter represented claimant or respondent. I do not recall any of the details of the award or of the case, other than that the product was baby wipes manufactured in Israel. If the parties request further information regarding this matter, I could review a file that is now in off-site storage. (Due to a less-than-perfect conversion to a new computer system since that case, I am unable to access any information of that vintage by computer.)

2.  I have served as counsel in two separate litigated matters in which Cleary Gottlieb has been opposing counsel. In the early 1990's, I represented Ferrara Foods, a former U.S. importer against the Italian pasta company, DeCecco, in a case in the S.D.N.Y. in which my client alleged breach of an agreement to renew the exclusive distribution agreement. The case was settled after denial of defendant's summary judgment motion. The Cleary partner handling the matter for defendant was Jonathan Blackman. In the late-1990's, I represented Ugo Castellano, an individual plaintiff in a federal securities fraud case in the S.D.N.Y. against Young & Rubicam, in which plaintiff alleged a failure to disclose material information regarding the value of his shares at the time he agreed to retire, giving rise to a call on his shares at book value. Following an appeal of summary judgment, the case was tried to a jury, resulting in a verdict for plaintiff in 2002, and the case was settled. The Cleary partner representing Y&R was Lawrence Friedman.

3.  From approximately October 1997 through October 1999, in connection with her employment as Vice President of the New York branch of the French Bank CIC-Union Européenne, Martha Skidmore, who is now an associate at Pavia & Harcourt LLP, was the bank's account officer responsible for the lending relationship with the Goldman Sachs Group. (This occurred before Ms. Skidmore attended law school.) In that capacity, Ms. Skidmore managed the bank's credit exposure to Goldman Sachs entities and interacted regularly with members of Goldman's treasury department, especially with respect to their needs for letters of credit.

    I generally do not communicate with attorneys at my firm regarding matters in which I serve as an arbitrator, and I would not communicate with Ms. Skidmore regarding this case.

I do not believe the matters disclosed herein would affect my impartiality or ability to perform my oath.

May 13, 2005

Richard L. Mattiaccio

P&H - 415944.3 :99999/217

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between:

Re: 13 168 01990 04
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc.
    and
    Malik M. Hasan, M.D. and Seeme G. Hasan

## Notice of Compensation Arrangements

**To:**    Richard Mattiaccio

You have been invited to serve as an arbitrator in the above matter. It is important that you understand the terms of your compensation and the role you play in ensuring that you receive payment for fees and expenses that you may incur during your service. This invitation to serve is based on our assumption that unless your panel biography states otherwise, you are willing to comply with the Association's *Billing Guidelines for Commercial, Construction, and Employment Neutrals*, which are enclosed. If you expect to assess charges that fall outside those guidelines and those charges are not detailed on your panel biography, you must notify the Association <u>prior to accepting your appointment</u> so that the parties can determine whether they still seek your services as an arbitrator.

*Your Compensation*

This matter is being administered under the Regular procedures of the Commercial Arbitration Rules. As such, you will be compensated at the following rates, per the rate structure indicated on your biographical record:

       Hearing Time:          $3,000.00 per day
       Study Time:             $425.00 per hour

Inasmuch as you are agreeing to serve in this matter at the above rate, any subsequent change to your published rate after your appointment will not apply to this case.

*Your Expenses*

On most cases, your expenses should be nominal and will be reimbursed immediately after you submit them. For any single expense over $25, please include a receipt with your request for reimbursement.

If you anticipate that you will incur significant expenses, such as airfare or hotel room costs, please advise your Case Manager in advance so that the parties can be asked to make deposits prior to you incurring the expense.

*Deposits and Payment*

Payment for your compensation is the obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payment. During the course of the proceeding the Case Manager will ask that you provide an estimate of the amounts needed to cover your fees. Generally this occurs immediately after the preliminary hearing, although on longer or more complex cases it can occur immediately upon appointment or after each series of hearings.

Unless you specify otherwise, the parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, the Case Manager will advise you of the total amount on deposit. Should the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. If you decide to go forward without full deposits, you may not subsequently delay the rendering of the award for lack of payment of your fees. *The time to deal with this issue is prior to the commencement of the hearings.* Should you decide to suspend the proceedings, your Case Manager can assist you in issuing an appropriate order to the parties.

If you realize that you are spending more time on this matter than you originally estimated, it is your obligation to inform the Case Manager prior to exhausting the current deposit. The Case Manager will then make arrangements with the parties for additional deposits per your instructions.

In order to receive payment, please submit bills promptly. Your bills should be submitted in a format that is presentable to the parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the AAA will release payment from the amounts deposited by the parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. Further, we will not use one party's deposit to cover another party's obligation without written permission to do so.

In the event your Award is delivered prior to payment by the parties of the agreed upon compensation, the Association is authorized but not obligated to seek to collect those monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The Association may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However, under no circumstances whatsoever will the Association be liable for any failure to collect any or all the monies due. The Association is authorized to subtract a reasonable amount for collection and attorney's fees.

## Failure to Disclose and Forfeiting Compensation

As an arbitrator in this matter, you have an ongoing obligation to disclose any direct or indirect relationship with the case participants. Your failure to make disclosures in a timely manner would be a serious transgression and may be grounds for your removal as arbitrator from this case and/or from the AAA's Roster of Neutrals. Should this occur, you may be required to forfeit the compensation for the time you spent on this matter after you should have made such disclosures.

If you are willing to serve on this matter per the compensation terms detailed above, please complete and sign the following section and return it, along with your Notice of Appointment, to your Case Manager.

## ARBITRATOR MUST COMPLETE THE FOLLOWING SECTION

Compensation payments, and the corresponding IRS reporting, will be made to either to you individually (attributed to your Social Security Number) or to your employer (attributed to the Employer Identification Number), based on the preference you indicated and as recorded in your panel record. If you are unsure of your current payment preference, you may contact your Case Manager or the AAA Department of Neutrals' Services. Promptly inform the AAA if this information is incorrect or changes during the case, or if an address correction is necessary.

If the AAA does not have the payee's tax information on record, we must withhold 31% of compensation payments, as required by the IRS. Reimbursements of expenses are not subject to withholding and are not reported to the IRS.

 I am willing to accept appointment on this matter under the compensation terms detailed above

Signed: _Richard L. Mattiaccio_     .     Date: _5/13/05_

Contact American Arbitration Association
950 Warren Avenue
East Providence, RI 02914
telephone: 866-293-4053  facsimile: 401-435-6529

*(LLP)*

Commercial Panel
Richard L. Mattiaccio, Esq.

**Current Employer-Title**  Pavia & Harcourt - Partner, Chair of Litigation and Arbitration Practice Group

**Profession**  Litigating Attorney - International, Commercial, Licensing, Distribution and Franchise, Trademark/Copyright, Antitrust, Business Torts, Media and Entertainment, Securities, Banking, Product Liability, Executive Employment, Art Law

**Work History**  Pavia & Harcourt, 1983-present; Associate, Simpson, Thacher & Bartlett, 1979-83; Law Clerk, Chief Judge Daniel M. Friedman, U.S. Court of Claims, 1978-79.

**Experience**  Litigation practice has included pre-trial, trial, and appellate work in complex civil cases involving the above-mentioned areas of law; counseling European clients in the avoidance of litigation; negotiating and drafting exclusive license and distribution agreements; advice in connection with the purchase and sale of privately-held companies or their assets and in connection with the merger of professional services firms.  Recent experience as an advocate in litigation has included:  defense of an Italian bank in class actions brought against foreign bank defendants pursuant to U.S. antitrust and anti-terrorism laws; representation of plaintiff, a retired manager-director-shareholder of an employee-owned advertising agency, in a federal securities fraud case that proceeded to a jury trial and verdict for plaintiff; defense of Lanham Act, RICO and common law claims brought by alleged New Jersey and Florida franchisees of an Italian supplier of high-fashion clothing and accessories; service as plaintiffs' counsel and as defense counsel in claims of wrongful termination or non-renewal of exclusive licensing, distribution and franchise agreements in a variety of fields; representation of an oppressed minority shareholder of a Delaware corporation manufacturing in South Carolina, resulting in the buy-out of the majority shareholder; defense of a licensor/supplier of high-fashion eyewear in a case in which the U.S. licensee/distributor sought to enjoin termination of the exclusive license agreement; representation of terminated executives and employers of terminated executives in various disputes as to whether there was cause for termination under the governing employment agreements; enforcement of the rights of the owner of a film library; and  representation of the Republic of Italy, in the U.S. District Court, Southern District of New York and U.S. Court of Appeals, Second Circuit, to obtain the repatriation of a fourth-century B.C. artifact of cultural significance.

**Alternative Dispute Resolution Experience**  Experience as a neutral has included service as sole arbitrator, chair, and panel member in claims of wrongful termination of license and distribution agreements; shareholder disputes in privately-held companies; contract dispute between a hedge fund manager and the founders of funds under management; an investment banker's claim to a guaranteed minimum bonus; a dispute regarding termination of a patent consulting and representation agreement; a claim of infringement of a certification mark; an ASCAP appeal; a dispute between a

performing artist and his manager as to scope of representation; and partnership disputes, including a claim brought under a law firm partnership agreement. Advocacy has included representation of claimants/respondents in international, commercial and large/complex arbitration cases arising from termination or failure to renew license to manufacture, exclusive supply, franchise-type or distribution agreements; represented claimant is oil services supplier in UNCITRAL arbitration against a multi-national organization; defense of a claim for stipulated damages under an international aircraft charter agreement; representation of the purchaser of certain assets and liabilities of an engineering firm in an arbitration to adjust the purchase price; and representation of a minority shareholder in an arbitration brought to determine the fair value of his shares.

**Alternative Dispute Resolution Training**   Faculty, AAA Workshop, Safeguarding the Award: Top Strategies for Protecting an Arbitration Award from Vacatur, New York, December 7, 2004; Attended AAA Neutrals Conference, Atlanta, 10/04; ACE001 - Arbitration Awards: Safeguarding, Deciding & Writing Awards, Atlanta, 10/04; faculty, AAA Workshop, Arbitration Awards, Tips & Traps-Reduce or Minimize Challenges When the Case is Over, New York, September 22, 2004; Arbitrator Update 2004, Atlanta, 10/04; Annual Arbitrator Update 2002; AAA Commercial Arbitrator II Workshop, New York, 2/01; AAA Commercial Arbitrator Training, New York, 9/00; AAA Advanced Arbitrator Training, New York, 4/91.

**Professional Licenses**   Admitted to the Bar: New York, 1979; U.S. District Court: Southern and Eastern Districts of New York; U.S. Court of Appeals: Second, District of Columbia, and Federal Circuits; U.S. Supreme Court.

**Professional Associations**   New York State Bar Association (Commercial Section; Federal Litigation Section); Association of the Bar of the City of New York (Product Liability Committee, Past Chair; Professional Responsibility Committee).

**Education**   Columbia University (BA-1975; JD-1978).

**Publications and Speaking Engagements**   Speaker, "Avoiding the Arbi-Trial: How B2B Arbitration Can Be Expeditious and Cost Effective," at ABA Section of Dispute Resolution, Sixth Annual Conference, April 17, 2004; co-editor, chapter on Italy, INTERNATIONAL E-COMMERCE, CCH, 2001; author of articles for non-lawyers on U.S. legal practice, published in several languages.

**Compensation**        $3,000.00 Per Day
                        $425.00 Per Hour
Hourly rate applies to conferences, study time, and deliberations. The first three hours of conference and study time are without charge.

**Languages**   Italian

Richard L. Mattiaccio, Esq.

**Citizenship** United States of America, Italy

**Locale** New York, NY

Richard L. Mattiaccio, Esq.

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

April 27, 2007

## VIA E-MAIL

Bruce A. Featherstone, Esq.
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 2400
Denver, CO 80202

Max Gitter, Esq. N. Inna Reznik, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006

Glenn W. Merrick, Esq.
G.W. Merrick & Associates, LLC
5445 DTC Parkway
Suite 912
Greenwood Village, CO 80111

Re: 13 168 01990 04
    Malik M. Hasan, M.D. and Seeme G. Hasan
    (claimants)
    and
    Goldman Sachs 1998 Exchange Place Fund, L.P.,
    Goldman Sachs 1999 Exchange Place Fund, L.P.,
    Goldman Sachs Management Partners, L.P., The
    Goldman Sachs Group, Inc. and Goldman, Sachs & Co.
    Goldman Sachs Management, Inc. John Does 1-100
    and Lender Parties 1-100 (Respondents)

Dear Parties:

William Barrett has made a disclosure, as detailed in the enclosed letter dated April 27, 2007.

Please advise the Association of any objections to the appointment of Mr. Barrett by May 4, 2007, copying the other side. The arbitrator shall not be copied on any comments related to the disclosure.

You may also share and manage correspondence through AAA's WebFile. The Case Manager will determine who should receive viewing privileges and grant access accordingly.

If any objections are raised, the other party may respond within five business days. The AAA will make a determination regarding the arbitrator's continued service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten days

Please do not hesitate to contact me with any questions and/or concerns.

Sincerely,

Lilay Kollie for Hannah R. Cook
Case Manager
401 431 4708
cookh@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

Encl.

Dear Hannah:

Would you please advise the parties and the other arbitrators of the following disclosure.

It is expected that on May 4, 2007, Hollyer Brady Barrett and Hines, where I have been a partner for 20 years, will be acquired by Butzel Long PC, based in Detroit. Hollyer Brady will become the New York City office of that firm. I will become a shareholder of that firm.

A conflicts check of that firm has turned up the following:

Butzel Long has performed real estate work for Goldman Sachs Europe Limited.

It represents National life Insurance Company in a matter adverse to Goldman Sachs.

These matters would not affect my ability to be an impartial arbitrator in this case.

Many thanks for your help.

Bill Barrett

---

See what's free at AOL.com.

4/27/2007

<u>RICHARD L. MATTIACCIO  SUPPLEMENTAL ARBITRATOR DISCLOSURE</u>

Malik M. Hasan, M.D. and Seeme G. Hasan, v. Goldman Sachs 1998 Exchange Place
Fund, L.P., et. al

AAA Commercial Rules Case No. 13 168 01990 04

Disclosure Date:  May 29, 2007

I have the following disclosure:

> I will be leaving Pavia & Harcourt LLP (P&H) in July 2007 to become a partner in
> Squire Sanders & Dempsey LLP.  I will be joined in this new endeavor by two P&H
> partners, Steven Skulnik and Victor Genecin.  We will be located in the New York
> office:

<div align="center">

Squire Sanders & Dempsey, LLP
350 Park Avenue
New York, New York 10022-6022
Tel: 212.872.9800

</div>

I am not aware of any reason why the matters disclosed herein would affect in any way
my neutrality in this case.

I request that the parties and their counsel disclose at this time any contacts they may
have had with me, P&H or Squire Sanders & Dempsey LLP that are not mentioned in
this or prior disclosures I have made, and that the parties and their counsel update their
disclosures as the case proceeds.

<div align="center" style="margin-left:50%;">

_Richard L. Mattiaccio_
Richard L. Mattiaccio

</div>

**EXHIBIT**

**2**