Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams. PLLC
Attorney for Plaintiffs
2 Penn Plaza. Suite 1910
New York, New York 10121
(212)292-5663


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
MALIK M. HASAN and SEEME G. HASAN,                                  :
                                                                    :
                          Plaintiffs,                               :
                                                                    :
     v.                                                             : 08 Civ. 3189 (GBD)
                                                                    :
AMERICAN ARBITRATION ASSOCIATION,                                   :
INC.,                                                               :
                                                                    :
                          Defendant.                                :
                                                                    :
------------------------------------------------------------------- X
_____

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AN INJUNCTION PENDING APPEAL
_____

Plaintiffs, Malik M. Hasan, M.D. and Seeme G. Hasan (collectively, the "Hasans"), through their undersigned counsel, respectfully submit this Memorandum in Support of their Motion for an Injunction Suspending Proceedings in the Underlying Arbitration Pending Appeal and request expedited consideration thereof.

### PRELIMINARY STATEMENT

At the District Court level, the Hasans sought specific enforcement of fundamental promises, assurances, commitments and representations published to them by the American Arbitration Association ("AAA") in connection with AAA-sponsored

arbitration in New York City. Accordingly, the Hasans sought the immediate entry of an Order directing the AAA promptly to replace two members of the arbitration panel appointed by the AAA. That Motion was supported by: (i) the Verified Complaint, (ii) the Affidavit of Glenn W. Merrick, (iii) the Report of the Expert Opinions of Professor Seth E. Lipner -- a respected scholar, practioner and highly-regarded expert in the field of arbitration., and (iv) a Memorandum of Law in Support of the Motion for Preliminary Injunction  See Docket Entry #'s 1, 4-6.

On June 10, 2008, the Court denied Plaitniffs' motion for Preliminary Injunction, and simultaneously entered an Order granting the AAA's Motion to Dismiss. A copy of the Court's June 10 Order is attached hereto as Exhibit A. On June 18, 2008, Plaintiffs filed a Notice of Appeal, which appeals the June 10 Order.

The Court provided no details concerning its reasoning in the June 10 Order, but presumably the Court agreed with at least one of the AAA's arguments for dismissal. However, it is respectfully submitted that none of the AAA's arguments for dismissal are consistent with this Circuit's caselaw, and that there are serious issues going to the merits in this case. Moreover, this case seeks to prevent a tainted arbitration panel from presiding over an Arbitration set for a hearing in January of 2009. The requested relief will be far less effectual -- if not mooted -- absent an injunction suspending arbitration proceedings pending the Second Circuit's consideration of this appeal. We therefore request that the Court preserve the status quo pending appeal by ordering the AAA to suspend proceedings in the underlying arbitration pending appeal.

As a preliminary matter, the Court retains jurisdiction to consider a stay pending appeal, even though the case is now pending before the Second Circuit. *Hawaii Housing*

*Auth. v. Midkiff*, 463 U.S. 1323, 1324, 104 S.Ct. 7, 77 L.Ed.2d 1426 (1983) (Rehnquist, Circuit Justice) (a notice of appeal did not prevent a lower court from recalling its mandate because "it is well settled that a court retains the power to grant injunctive relief to a party to preserve the status quo during the pendency of an appeal...."), Fed. R. Civ. P. 62(c) (providing district court power to grant an injunction while an appeal is pending).

### I.   An Injunction Preserving The Status Quo Pending Appeal is Warranted

The Second Circuit has recently instructed:

> [t]o obtain a preliminary injunction a party must demonstrate: (1) that [he or she] will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor.

*Lusk v. Village of Cold Spring*, 475 F.3d 480, 485 (2nd Cir. 2007), citing *Bronx Household of Faith v. Bd. Of Educ'n,* 331 F.3d 342, 348-49 (2nd Cir. 2003).

Applying the standards articulated in *Lusk* and *Bronx Household of Faith*, this Court should enter the requested injunctive relief to at least preserve the status quo pending the Second Circuit's determination of the legal issues on appeal.

### A.   There Are Sufficiently Serious Questions Going To The Merits To Make Them A Fair Ground For Litigation

Plaintiffs will not re-hash all of the arguments on Plaintiffs' fully submitted Motion for a Preliminary Injunction (Docket Entry #3) and Defendant's fully submitted Motion to Dismiss (Docket Entry #10). However, a concise review of the principal legal issues which arose in the previous briefing is warranted to show that (1) the case raises serious issues going to the merits, (2) the Court's dismissal of this case at the pleading

stage is not consistent with the precedent in this Circuit, and (3) injunctive relief pending appeal, is warranted.

This case seeks an Order requiring the AAA to remove two individuals who purport to serve as "neutral" arbitrators in a dispute between the Hasan's and Goldman Sachs & Co. ("Goldman Sachs") -- one failed to disclose an attorney-client relationship with Goldman Sachs, while the other failed to disclose a recent attorney-client relationship with Goldman Sachs as well as present dealings between Goldman Sachs and his law firm. Both the failures to disclose and the conflicts themselves fatally undermine the integrity of any arbitration presided over by these men. And to make matters worse, a third arbitrator was actually removed for cause by the AAA for failing to disclose his relationship with Goldman Sachs, but not before serving on the Panel for over two years, and further tainting the Panel.

While the Courts are sometimes reluctant to interfere with arbitrator appointment prior to there being a final arbitration award, this case is truly exceptional – an attorney from a firm with an **undisclosed attorney-client relationship** with Goldman Sachs purports to preside over an arbitration involving his firm's client, and all three original Panel members failed to disclose attorney client relationships between Goldman Sachs and their law firms. Plaintiffs are aware of no reported case with facts resembling these.

The AAA made three principal arguments in support of its Motion to Dismiss. (Docket Entry #12). Presumably the Court agreed with at least one of them. First, the AAA argued that they are absolutely immune from any lawsuit based on its conduct in administering the arbitration. This argument ignores the following points, all of which Plaintiffs raised in opposition to the Motion to Dismiss:

4

- The Second Circuit limits arbitral immunity to cases sounding in money damages. See *Austern v. Chicago Board of Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990). And at least one Court in this District has expressly held that "as a matter of law, arbitral immunity…does not shield an [arbitrator] from claims sounding in equitable relief." *Trans World Airlines v. Sinicropi*, 1994 WL 132233 at *1 (S.D.N.Y. Apr. 14, 1994).

- The Second Circuit has previously recognized that a Court has the power to remove an arbitrator prior to an award being rendered. See *Aviall, Inc. v. Ryder System, Inc.*, 110 F.3d 892, 895 (2d Cir. 1997); *Erving v. Virginia Squires Basketball Club, L.P.*, 349 F.Supp. 716, 719 (E.D.N.Y. 1972), *aff'd* 468 F.2d 1064 (2nd Cir. 1972).

- The Supreme Court has held that even judges are not immune from the type of prospective injunctive relief sought in this case. *See Pulliam v. Allen*, 466 U.S. 533 (1984).

- None of the cases provided by the AAA provide them anything resembling absolute immunity for their refusal to follow their own rules, promises and commitments.

Second, the AAA argued that it is not the real party in interest. But the cases they cite for that proposition all arise in the context of motions to either confirm/reject an arbitration award, or motions to compel arbitration. These are matters that can be litigated amongst the parties to the underlying dispute and do not require the joinder of

5

the AAA. But here, the case alleges an independent cause of action against the AAA, contending that the AAA is answerable in a manner that is distinct from that of the parties to the arbitration proceeding. In such a case the AAA is a proper and necessary party. *See International Medical Group, Inc. v. American Arbitration Assoc.,* 149 F.Supp.2d 615, 629 (S.D. Ind. 2001) *aff'd* 312 F.3d 833 (7th Cir. 2002).

Third, the AAA argued that its own rules, which given the benefit of a favorable reading purport to provide it immunity from suit, bars this case. But the AAA's rules merely free the AAA from the burdens of being dragged into a dispute amongst parties arbitrating before it. Under the AAA's interpretation of their rules, they could never be sued for any tort against someone who agrees to arbitrate a case under the AAA's rules, rendering the AAA's promises and commitments completely unenforceable, and the contracts between the AAA and its clients completely illusory. Moreover, exculpatory provisions are unmistakably disfavored in New York. See Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 515 (2d. Cir. 2001).

Accordingly, the pending appeal raises serious questions going to the merits of whether this case should have been dismissed on the pleadings. And once these threshold legal issues are resolved in Plaintiffs' favor, the Second Circuit will likely focus on the transparent absurdity of allowing an arbitrator to hear the merits of a case involving one of his firm's existing clients, especially where the arbitrator failed to disclose the relationship. Another arbitrator has a well-documented, disqualifying, but previously undisclosed tie to Goldman Sachs. And a third arbitrator was disqualified for his undisclosed ties to Goldman Sachs, but not before further tainting the arbitration panel.

> Forty years ago the Supreme Court instructed:
>
> This rule of arbitration and this canon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another.

*Commonwealth Coating Corp. v. Continental Cas. Co.*, 393 U.S. 145, 150 (1968). Justice White's concurring opinion underscores the importance of full, fair and timely disclosure in the arbitration process:

> The arbitration process functions best when an amicable and trusting atmosphere is preserved … This end is best served by establishing an atmosphere of frankness at the outset, through _disclosure_ by the arbitrator of _any financial transactions_ which he _has had_ … with either of the parties. … [i]t is far better that the relationship [between an arbitrator and one of the parties] be _disclosed_ at the outset, when the parties are free to reject the arbitrator or accept him with knowledge of the relationship and continuing faith in his objectivity, than to have the relationship come to light after the arbitration … That role [judging an arbitrator's impartiality] is best consigned to the parties, who are the architects of their own arbitration process …

*Id.* at 151 (1968) (White, J. concurring)(emphasis supplied).

Accordingly, the federal and state judiciary has repeatedly underscored the independent duty of arbitrators to investigate diligently -- and to _disclose fully_ -- direct and indirect relationships and potential conflicts. Failure to do so creates the "reasonable impression of partiality." *Schmitz v. Zilveti,* 20 F.3d 1043, 1048 (9th Cir. 1994); *accord, New Regency Prods., Inc. v. Nippon Herald Films, Inc.,* 501 F.3d 1101, 1105-10 (9th Cir. 2007); *Close v. Motorists Mut. Ins. Co.,* 486 N.E.2d 1275, 1278-79 (Ohio App. 1985); *see also, Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,* 492 F.3d 132, 137-38 (2nd Cir. 2007).

### B. PLAINTIFFS WILL BE IRREPERABLY HARMED IF AN INJUNCTION DOES NOT ISSUE

While the Court apparently did not reach the issue of whether a Preliminary Injunction should issue, the undisputed, underlying facts suggest that time is very much of the essence.

Absent injunctive relief suspending the Underlying Arbitration pending appeal, the Hasans will be required to continue to arbitrate before a panel the majority of which has material, undisclosed relationships/connections with Goldman Sachs. As the Court admonished in *Commonwealth Coating Corp.,* 393 U.S. at 150, "any tribunal permitted by law to try cases and controversies must not only be unbiased, but also must avoid even the appearance of bias." This is all the more compelling given the narrow scope of the judicial review of arbitration awards possible under the Federal Arbitration Act. *See* 9 U.S.C. §10(a); *Goldfinger v. Lisker,* 508 N.Y.S. 2d 159, 161 (N.Y. 1986)("Precisely because arbitration awards are subject to such judicial deference, it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded").

Moreover, as discussed in more detail at Pages 22-23 of the Memorandum of Law in Support of a Motion for Preliminary Injunction, there is finally one untainted arbitrator (Joanne Barak) who was appointed after the AAA removed Mr. Richard Mattiaccio for cause due to his firm's previously undisclosed relationship with Goldman Sachs. Mr. Barak's continued service with the two tainted arbitrators threatens her own ability to serve.

It is no answer to suggest that the Hasan's simply go through the Hearing and challenge the award on the basis of arbitrator partiality. The Hasan's not only have the

legal right to an impartial panel, they bargained for an impartial panel which was expressly promised by the AAA.

For all of the foregoing reasons, the Hasans respectfully urge that this Court enter prompt injunctive relief pending appeal as follows:

A. Directing the AAA to suspend the Underlying Arbitration pending the Second Circuit's consideration of the pending appeal.

Dated: New York, New York
June 30, 2008

Respectfully submitted,

_____
Daniel L. Abrams (DA 7258)
Law Office of Daniel L. Abrams, PLLC
2 Penn Plaza, Suite 1910
New York, NY 10121
Phone: (212) 292-5663
Fax: (646) 536-8905
Dan@LawyerQuality.com
Attorneys for Plaintiffs

G.W. MERRICK & ASSOCIATES, LLC

Glenn W. Merrick
Marc L. Schatten
Suite 912, 5445 DTC Parkway
Greenwood Village, Colorado 80111
Telephone: 303-831-9400
Facsimile: 303-771-5803
E-mail:   gwm@gwmerrick.com

ATTORNEY FOR PLAINTIFFS MALIK M. HASAN, M.D. and SEEME G. HASAN

9